IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| DANESH NOSHIRVAN, | |
| Plaintiff, | |
| v. | Civil Case No.: 2:23-cv-01218 |
| JENNIFER COUTURE, an individual, RALPH GARRAMONE M.D., an individual, RALPH GARRAMONE M.D. P.A. d/b/a GARRAMONE PLASTIC SURGERY, CENTRAL PARK OF SOUTHWEST FLORIDA, LLC, WRAITH, LLC, SULLIVAN STREET INVESTMENTS, LLC, HAIRPIN TURN, LLC, OMG REALTY, LLC, RG WEIGHT MANAGEMENT, LLC, CENTRAL PARK SOUTH, LLC, BRANTLEE, LLC, LEGACY OF MARIE GARRAMONE, LLC, GARRAMONE MARKETING, INC., 5681 DIVISION LLC, THE LAW OFFICE OF PATRICK TRAINOR ESQ, LLC d/b/a THE LAW OFFICE OF PATRICK TRAINOR, PATRICK TRAINOR, an individual, and ANTI-DOXING LEAGUE INC., | **DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1) AND MEMORANDUM THEREOF** |
| Defendants. | |

## RELIEF SOUGHT

**COMES NOW**, defendants Jennifer Couture, Ralph Garramone M.D.,

Ralph Garramone M.D. P.A. d/b/a Garramone Plastic Surgery, Central Park Of

Southwest Florida, LLC, Wraith, LLC, Sullivan Street Investments, LLC, Hairpin

1

Turn, LLC, OMG Realty, LLC, R G Weight Management, LLC, Central Park South, LLC, Brantlee, LLC, Legacy of Marie Garramone, LLC, Garramone Marketing, Inc., 5681 Division LLC, The Law Office of Patrick Trainor Esq, LLC d/b/a The Law Office of Patrick Trainor, Patrick Trainor, an individual, and Anti-Doxing League Inc., (hereinafter collectively referred to as "Defendants"), by and through the undersigned counsel, hereby moves to dismiss plaintiff Danesh Noshirvan's ("Danesh") complaint pursuant to *Rule 12(b)(1) of the Federal Rules of Civil Procedure*, lack of subject matter jurisdiction, or in the alternative for a summary judgment.

Pursuant to *Rule 13(a) of the Federal Rules of Civil Procedure* the claims in the instant action should have been filed as compulsory counterclaims in the Prior Action, where Danesh is defendant in the District Court for the Middle District of Florida, Fort Myers Division, entitled *Jennifer Couture and Ralph Garramone, M.D. P.A. d/b/a Garramone Plastic Surgery v. Danesh Noshirvan*, Civil Case No.: 2:23-cv-00340-SPC-KCD, (Dec. 15, 2023) ("Prior Action") ECF No. 83.

Further, Defendants move for sanctions under *Rule 11* against Danesh's Counsel, who brought provably false allegations, which he would have discovered had he performed a reasonable pre-filing inquiry, or he knowingly presented false and scandalous allegations, for improper purposes.

## PROCEDURAL HISTORY

On May 30, 2023, Jennifer Couture ("Couture") and Ralph Garramone,

M.D. P.A. d/b/a Garramone Plastic Surgery (Garramone") commenced the Prior

Action.  On November 30, 2023, the Prior Action was dismissed without prejudice,

and allowed Couture and Garramone to refile.  On December 15, 2023, Couture

and Garramone refiled the Prior Action.  On December 22, 2023, as defendant,

Danesh filed a Motion to Dismiss the Prior Action which is pending.

**MEMORANDUM OF LAW**

The instant action is an attempt to circumvent the compulsory counterclaims

rule and avoid filing an Answer in the Prior Action.  The claims in the instant

action now pending should have been asserted as compulsory counterclaims in the

Prior Action pursuant to *Rule 13(a)*, because they arise out of the same transaction

or occurrence as the subject matter of the Prior Action, they are logically related to

same, and involve the same witnesses, evidence, and facts.  Further, Danesh

connects the two actions by cross-referencing allegations in the Prior Action as

alleged support for his claims in the instant action.  *See* Pl. FAC ¶¶ 134, 138, 204.

## I.   LEGAL STANDARD

This action should be dismissed, as its claims automatically gives rise to

supplemental jurisdiction to the court deciding the Prior Action pursuant to *28*

*U.S.C. § 1367*, because the claims arise out of the same transaction or occurrence

as the subject matter of the Prior Action, are logically related to same, and involve

the same witnesses, evidence, and facts.  Federal courts have limited subject matter jurisdiction, or in other words, they have the power to decide only certain types of cases for which there has been a congressional grant of jurisdiction.  *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).  "Because a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."  *Id.  Rule 12(b)(1) of the Federal Rules of Civil Procedure* allows a court to dismiss an action for lack of subject matter jurisdiction on motion by a party.  Any time a court determines that it lacks subject-matter jurisdiction the court must dismiss the action.  *Fed. R. Civ. P. 12(h)(3)*.

The compulsory counterclaims rule pursuant to *Rule 13(a)* states "that a pleading must state as a counterclaim any claim that at the time of its service the pleader has against an opposing party if the claim arises out of the transaction or occurrence that is the subject matter of the opposing party's claims."  *Fed. R. Civ. P. 13(a)(1)(A).*  The purpose of the compulsory counterclaims rule is to eliminate multiplicity of litigation.  *Fed. R. Civ. P. 13(a)*.

A compulsory counterclaim arises out of the transaction or occurrence that formed the subject matter of the prior action.  *Montgomery Ward Dev. Corp. v. Juster*, 935 F.2d 1378, 1381 (11th Cir. 1991).  To determine whether claims are

compulsory counterclaims that should have been raised in the prior action, the courts apply the four-prong test set forth in *Montgomery Ward*: (1) are the issues of fact and law raised by the prior action and the instant action largely the same?  (2) would res judicata bar the subsequent suit on the instant action absent the compulsory counterclaim rule?  (3) will substantially the same evidence support or refute Danesh's claims as Defendants claims in the prior action?  (4) is there any logical relation between the instant action and the prior action?  *Id.*  An affirmative answer to any of the foregoing questions would mean that the claims made in the instant action are compulsory counterclaims to the prior action.  *Id.*

In determining whether claims arise from the same series of transactions or occurrences, the logical relationship test is applied.  *Barber v. America's Wholesale Lender*, 289 F.R.D. 364, 367 (M.D. Fla. 2013).  There is a logical relationship when the same operative facts serve as the basis of both actions. *Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985).  Only claims that do not arise from common operative fact are not logically related.  *Montgomery Ward,* 935 F.2d at 1381.  The logical relationship standard is a loose standard one which permits a broad realistic interpretation in the interest of avoiding multiplicity of suits.  *Plant v. Blazer Fin. Servs. Inc.*, 598 F.2d 1357, 1361 (5th Cir. 1979).

Danesh's direction of a campaign of online and telephonic harassment against Couture and Garramone is at the heart of both the Prior Action and the instant action.  Based on affirmative answers to prongs one, three, and four of the *Montgomery Ward* test, the claims herein are compulsory counterclaims, further, the same witnesses, same evidence, and same or similar facts must be presented.

## II.  <u>OPERATIVE FACTS</u>

Danesh is known for using his TikTok account *@thatdaneshguy* to exploit mundane, aberrational events in the lives of ordinary people by doxing them to turn their lives upside down by causing employment terminations and similar hardships, which is what he calls "accountability" for his own financial gain and to satisfy a desire to humiliate his victims.  *See* Exhibit D ¶¶ 7, 10, 25, 49.

The Court in the Prior Action described Danesh's conduct as:

Someone recorded Plaintiff Jennifer Couture during an argument. And someone [a minor-teenager] provided that video to [Danesh] and paid his fee.  Danesh went to work.  He edited the video and reposted his version targeting Couture.  Many of his followers berated Couture by text and phone call.  They found her family, the schools her children attended, and employers and contacted them.  Over the next several months, [Danesh] posted twelve videos about Couture.  He encouraged his followers to report Couture to Southwest Florida Crimestoppers.  And he falsely reported to the Florida Department of Children and Families that Couture had harmed her child.

[Danesh] did not target only Couture.  He also targeted Garramone Plastic Surgery (her employer and family).  Garramone similarly received calls, texts, emails, and negative online reviews.  Garramone responded to a negative review by stating that it was not from a former or current patient.  [Danesh] then accused Garramone of

6

slander and questioned why Garramone took out a PPP loan. [Danesh]'s videos forced Garramone to terminate contracts with surgeons who worried about reputational harm. Patients canceled scheduled procedures.

*Couture, et al. v. Noshirvan, et al.*, M.D. Fla., Civil Case No. 2:23-cv-00340-SPC-KCD, (Nov. 30, 2023) ECF No. 81.

Danesh's fee is paid as tips and gifts through TikTok or mobile payment services like CashApp. Exhibit D ¶ 7. Prior to January 26, 2022, Danesh was a complete stranger to Couture and Garramone, who resided 1,300 miles from them. *See* Pl. FAC at p. 3, ¶¶ 50-51, 102, 136. On January 26, 2022, Couture was video recorded arguing with a person in a parking lot. *See* Pl. FAC at p. 3, ¶¶ 47-55, 92-102, 136. *See also* Exhibit D at 2. On the same day, a third-party paid Danesh a fee and provided him Couture's personal identifying information ("PII"). *See* Exhibit D ¶ 10. Danesh commenced a campaign of online and telephonic harassment by publishing a TikTok video that disclosed Couture's identity, and incited the cultlike subset of his followers known as "Danelanders" to participate by describing Couture as a "Karen" (derogatory term for White woman). Danesh customarily brands his victims as "white supremacists," or similar to prove that they deserve "accountability" and to incite Danelanders. *See* Exhibit D at 2.

Danelanders immediately directed at least 728 abusive and threatening text messages, such as *"die you dumb cunt,"* and *"eat shit and die, kill yourself,"* at Couture, and hundreds of similar emails, phone calls, posts to her social media

accounts, and professional review sites.  *See* Exhibit D ¶¶ 10-13, figs. 3, 4.  There is no doubt Danesh intended to incite Danelanders, because he threatened Coutre in a direct message that the "fun hasn't even started yet…each round is going to get more intense," with help from my "1.3 fams."  Exhibit D ¶¶ 22-25, figs. 7-9.

On January 28, 2022, Danesh learned in addition to Couture and Garramone's professional relationship there is a familial link.  Danesh immediately published a video to disclose this relationship, and as intended, incited Danelanders to immediately target Garramone with hundreds of calls, emails, and negative social media postings.  The attack was similar to a brute force computer hack and paralyzed its practice.  Exhibit D ¶¶ 42-45.  When Garramone responded by stating the persons posting the negative reviews were not current or former patients, Danesh claimed Garramone had slandered him, which he does when a victim blocks abusive callers, or deletes harassing social media posts.  Exhibit D ¶¶ 37, 44.

Danesh has posted at least twelve (12) original TikTok videos about Couture and Garramone, wherein he fabricates allegations, and discloses private and personal information that he acquires from Couture and Garramone's ex-spouses and a former employee of Garramone.

In the instant action, Danesh inverted acts he committed against Defendants as described in the Prior Action, to claim Defendants did same to him, and lodges a

series of conclusory statements, baseless suppositions, knowing falsehoods, and scandalous allegations for the enjoyment of his social medial followers.  *See* Pl. Fac. ¶¶ 47-50.  Danesh claims he is unemployed and does not earn money from leading and participating in campaigns of online and telephonic threats and harassment.  Pl. FAC ¶¶ 92, 101.  However, Danesh alleges Defendants' caused him to suffer significant financial harm through a conspiracy of threats and harassment, whereby Defendants: (1) purchased internet domain thatdaneshguy.com to create a defamatory website about him.  Pl. FAC ¶¶ 104-105, 134-135; (2) endangered Danesh by reporting a "swatting" incident at his home (*swatting is generally accepted as falsely reporting an armed incident at a home or business in order to draw heavily armed police response that could hurt or kill the target*).  Pl. FAC ¶ 145; and (3) employed an unnamed party Joey Camp as their "online reputation management company" who harassed, threatened, and defamed him at Defendants' direction (Danesh cites to allegations in paragraph 40 of the Prior Action, Exhibit D ¶ 40).  Pl. FAC ¶ 204.

Since 2020 Danesh has doxed and harassed hundreds of people, like Couture and Garramone via his TikTok account @thatdaneshguy.  Pl. FAC. ¶¶ 92, 95. Here, the earliest date Defendants became aware of Danesh's existence and/or the existence of his TikTok account @thatdaneshguy was January 26, 2022, when he was paid to dox and harass Couture.  Pl. FAC at p. 3, ¶¶ 50-51, 102, 136.

The first branch of the alleged conspiracy to defame did not happen. Defendants' never purchased internet domain thatdaneshguy.com or created a website to defame him, which he knows.  Pl. FAC ¶¶ 134-135.  According to the free to access, publicly available domain registration of the Internet Corporation for Assigned Names and Numbers' (ICANN), internet domain thatdaneshguy.com was created and registered on September 16, 2021, more than four (4) months before Defendants knew Danesh existed, by a private registrant, who is apparently located in Toronto, Canada.  *See* Exhibit A.  Defendants had no knowledge or awareness of Danesh's existence or awareness or knowledge of the existence of TikTok account @thatdaneshguy until January 26, 2022.  *See* Pl. FAC at p. 3, ¶¶ 50-51, 102, 136.

Moreover, on January 13, 2023, the undersigned received a phone call from Danesh's attorney named Laura Catlett.  The undersigned informed Ms. Catlett that her phone call was the first knowledge he had of the internet domain and website, and that neither he, nor Defendants owned, controlled, managed, or were connected to the website or domain in any manner.  Defendants' denial required further investigation to determine its ownership, but Danesh neglected to do it.

The second branch of Defendants' alleged conspiracy is offline harassment, which allegedly consisted of Defendants "swatting" Danesh.  Pl. FAC ¶ 145. Danesh knows Defendants had no involvement with this alleged swatting, because

it occurred **December 21, 2021, at 4:20 p.m.**, and Danesh publicly disclosed this alleged swatting incident when he tweeted from his now banned Twitter account also known as @thatdaneshguy, that **"I was just swatted…,"** whereby he stated the **"list of people it can be [is] long, but its's most likely…"** and he named the alleged culprit.  *See* Exhibit B.  In the tweet Danesh included photographs of himself standing with several responding police officers.  *Id.*  Had Danesh's counsel performed a simple internet search or interviewed his client he would have discovered this claim was false.

Third, Danesh cross-references paragraph 40 of the Prior Action, to allege Couture and Garramone hired an individual named Joey Camp as their "online reputation management company," who harassed, threatened, and defamed him at Defendants' direction.  Pl. FAC ¶ 204.  This allegation is borne of the false information Danesh was fed by Couture and Garramone's ex-spouses.  The real facts are that on January 31, 2022, Couture and Garramone executed a 12-month contract with NetReputation.com, a leading online reputation management company.  *See* Exhibit C.  The contracted rate was $7,050.00 per month for NetReputation.com to respond and defend Couture and Garramone against the false and defamatory allegations in Danesh's videos, social media postings, and native content (commissioned advertisements designed to look like real news articles), which Danesh paid to publish in the *International Business Times of*

11

Singapore (ibtimes.sg), *dexerto.com, wegotthiscovered.com, com,* and

*deathmilitia.com. See* Exhibit C.  *See also* Exhibit D, ¶¶ 28-30.

## III.   <u>RULE 11 SANCTIONS</u>

When a pleading, written motion, or other paper is presented the attorney

must certify to the best of his "knowledge, information, and belief, formed after an

inquiry reasonable under the circumstances" that the claim "is not being presented

for any improper purpose, such as to harass, cause unnecessary delay, or needlessly

increase the cost of litigation," and "claims, defenses, and other legal contentions

are warranted by existing law or by a nonfrivolous argument," and "factual

contentions have evidentiary support or, if specifically so identified, will likely

have evidentiary support."  *Fed. R. Civ. P. 11(b)(1)-(3).*  The court uses an

objective standard to "tests the signer's conduct by inquiring what was reasonable

to believe at the time the pleading, motion, or other paper was submitted."

*Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987).  Sanctions are

appropriate "if at time of filing complaint, attorney has failed to make necessary

reasonable inquiry, sanctions are applicable despite any good faith belief counsel

may have had as to validity of claims."  *Bergquist v. Fid. Info. Servs., Inc.*, 399 F.

Supp. 2d 1320, 1334 (M.D. Fla. 2005).

Here, had a reasonable pre-filing inquiry been performed false allegations

would not have been filed.  The ICANN registration for *thatdaneshguy.com*, which

shows it was created by a private registrant September 16, 2021, would have been

discovered and not brought.  Second, Danesh publicized the alleged swatting

incident December 21, 2021, also before Defendants knew Danesh existed.

Further, Couture and Garramone hired NetRepuration.com to perform online

reputation management for them, nobody else.

Lastly, Danesh alleges "an undisclosed person obtained recorded

conversations and text messages implicating" the undersigned engaged in a

conspiracy, and included screenshots of these purported text messages.  Pl. FAC. ¶

87-88.  *See also* text messages Pl. FAC at 26.  The "undisclosed person" is an

individual whose initials are "R.C." and the reason Danesh described him as an

undisclosed person is because Danesh has published videos, wherein he described

R.C. as a pedophile who trafficked his own children and encouraged his followers

to report R.C. to the police.  Pl. FAC. ¶ 88.

On June 3, 2022, R.C. called me concerning Danesh's video of him.  The

call quickly went sideways when R.C. demanded a cash payment for a copy of a

confidential non-disclosure agreement, which he claimed was proof that TikTok

Creators with large followings like Danesh are employed by TikTok.  I refused to

pay and located a copy of the alleged confidential NDA online within seconds.

On June 26, 2022, R.C. asked me via text message if I wanted the NDA.

The text message in the upper left-hand corner of page 26 of the instant action is

my response to R.C., wherein I told R.C. the NDA was meaningless and that if he wanted to pursue an action against Danesh as a plaintiff I would first subject him to a "polygraph interview."  Pl. FAC at 26.  R.C. did not respond.

On July 8, 2022, R.C. called me and accused me of cyberstalking him and someone named Brittany.  The text message in the lower righthand corner of page 26 is my response to R.C., which I sent after I received several late-night voicemail messages from R.C., in an obvious state of inebriation, who repeatedly threatened me with Bar complaints if I did not pay him.  Then on July 13, 2022, I received a phone call from an attorney named Stacy Grant, who called on behalf of R.C. to demand that I stop cyberstalking R.C. and Brittany.  I advised Ms. Grant that I was not cyberstalking R.C. and had no idea who Brittany was, and that I did not employ anyone cyberstalking R.C. or Brittany and claims that I was were lies.

I was not a sender, nor recipient of the text messages in the upper right and lower lefthand corners of page 26 and they are not connected to the other two text messages.  The manipulation of these text messages was done for shock value, to mislead the court, and to titillate Danesh's social medial following.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that its motion to dismiss be granted and Plaintiff's counsel be sanctioned

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

14

Defendants certify that on January 30, 2024, Defendants counsel attempted to meet and confer with Plaintiff's counsel, but he was unavailable.  Further, in the Prior Action, Plaintiff's counsel informed Defendants' counsel that he was unavailable to meet and confer until February 9, 2024.

WHEREFORE, Defendants respectfully request that the First Amended Complaint be dismissed with prejudice.

Date: January 30, 2024

_____
Patrick Trainor, Esq.
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Defendants*

## CERTIFICATION OF SERVICE

I hereby certify that on January 30, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Nick Chiappetta
Chiappetta Trial Lawyers
8401 Lake Worth Rd., Suite 130
Lake Worth, Fla. 33467
P: (561) 768-4500
F: (561) 7686-4600
nick@chiappettalegal.com
*Attorney for Plaintiff Danesh Noshirvan*

_____
Patrick Trainor