IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANESH NOSHIRVAN
an individual,

    Plaintiff,

vs.

JENNIFER COUTURE, an individual,
RALPH GARRAMONE M.D, an individual,
RALPH GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY.,
CENTRAL PARK OF SOUTHWEST
FLORIDA, LLC, WRAITH, LLC,
SULLIVAN STREET INVESTMENTS, LLC,
HAIRPIN TURN, LLC, OMG REALTY, LLC,
R G WEIGHT MANAGEMENT, LLC,
CENTRAL PARK SOUTH, LLC,
BRANTLEE, LLC, LEGACY OF MARIE
GARRAMONE, LLC, GARRAMONE
MARKETING, INC., 5681 DIVISION LLC,
THE LAW OFFICE OF PATRICK TRAINOR,
PATRICK TRAINOR, an individual, and
ANTI-DOXING LEAGUE INC.

    Defendant(s).
_____/

CASE NO:
2:23-cv-01218-JES-NPM

**PLAINTIFF DANESH NOSHIRVAN'S RESPONSE IN OPPOPSITION TO DEFENDANTS MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT, AND MOTION FOR RULE 11 SANCTIONS**

    **COMES NOW** plaintiff, Danesh Noshirvan a/k/a "@ThatDaneshGuy" ("Noshirvan"), by and through his attorneys, file this Response in Opposition to defendants, Jennifer Couture ("**Couture**"), Ralph Garramone M.D ("**Garramone**"),

Ralph Garramone M.D. P.A. D/B/A Garramone Plastic Surgery ("**Garramone Plastic Surgery**"), Central Park Of Southwest Florida, LLC ("**Central Park**"), Wraith, LLC ("**Wraith**"), Sullivan Street Investments, LLC ("**Sullivan St. Invest**."), Hairpin Turn, LLC ("**Hairpin**"), Omg Realty, LLC ("**OMG Realty**"), R G Weight Management, LLC ("**R G Weight**"), 5681 Division LLC ("**5681 Div**."), Garramone Marketing, Inc. ("**Garramone Marketing**"), Legacy Of Marie Garramone, LLC ("**Legacy**"), Central Park South, LLC ("**CPS**"), Brantlee, LLC ("**Brantlee**"), The Law Office of Patrick Trainor ("**Trainor Law Firm**"), Patrick Trainor ("**Trainor**"), Anti-Doxing League Inc. ("**ADL**") collectively ("**Defendants**"), Motion to Dismiss, Motion for Summary Judgment, and Motion for Rule 11 Sanctions, and states as follows:

## I.   Introduction

On January 26, 2022, Couture was caught on camera committing acts of violent against a young women in a Dunkin Donuts parking lot. (Doc. 26, ¶¶44-50). Noshirvan, an independent journalist, reported on Couture's story and published her wrongdoing in a Tiktok video that went viral. Couture was arrested for those recorded wrongdoings on February 20, 2022. *Id.*

As a result of Noshirvan's news reporting of Couture, in the viral TikTok video, Couture and Garramone claimed to receive harassing phone calls, emails, and

negative online reviews from Noshirvan's viewership and the general public. (See Doc. 83, p.4,10-1, 13 and 16 in 2:23-cv-00340). Couture and Garramone filed their lawsuit against Noshirvan on May 22, 2023. (See Doc. 1, 9 and 83 in 2:23-cv-00340). However, Couture's and Garramone's First and Second Amended Complaint never plausibly alleged that Noshirvan personally committed a tort against them (because he did not). (See generally, Doc. 9 and 83). Instead, they alleged a "tin foil hat" conspiracy where they attempt to impute the cyberstalking and harassment actions of Noshirvan's viewership and the general public onto Noshirvan without any plausible evidence in an attempt to silence Noshirvan's news reporting. *Id*. Couture's and Garramone's conspiracy theory is the equivalent of asking this Court to hold Howard Stern or John Oliver responsible for the actions of their audience or viewership based upon something they said. Couture's and Garramone's allegations stem from actions of third parties who acted on their own accord.

Judge Polster Chappell dismissed Couture's and Garramone's cyberstalking and harassment count in their First Amended Complaint with prejudice. (See Doc. 81 in 2:23-cv-00340). Even when ordered to pare down the Second Amended Complaint to the essential facts necessary for each remaining claim, Couture and Garramone simply rehashed allegations of their dismissed count for cyberstalking and harassment and repackaged it in the form of a claims of conspiracy to defame

and tortiously interfere with defamatory statements. (Doc. 83 in 2:23-cv-00340). However, Couture and Garramone failed to quote a single defamatory statement and admitted that the third-party online reviews were "opinions based on personal experience as current or former employees." (Doc. 86, p. 8 in 2:23-cv-00340). To date, Couture and Garramone still have not filed a well-plead complaint that states a single viable cause of action. Simply put, Couture's and Garramone's claims do not arise from the same operative facts, nor does the claim activate any legal rights for Noshirvan. The only similarities relate to the viral Tiktok video of Couture. Noshirvan's claims here, are at best, permissive counter claims.

Right around May 04, 2022, (a few months after Couture was arrested), Noshirvan started receiving messages from Joseph A. Camp ("Camp"). Around that same time. Camp posted a picture of himself at Defendants' property - 6535 Winkler Rd, Fort Myers, FL 33919. (Doc. 26, ¶¶101-105, 110). Around May 20, 2022, while Couture and Garramone were in Pennsylvania for a graduation ceremony, Camp broadcasted a video while sitting in Defendants' pool. (*Id.* at 107-110). Camp has repeatedly confirmed that he is not working alone. Camp while living at the Winkler property discussed funding the conspiracy, distributing thousands of defamatory flyers, posting Noshirvan's face on a billboard, pennysavers, mass emailing defamatory content to businesses near where Noshirvan resides, publishing a

television advertisement, and asking his followers to report Noshirvan to DFS. (*Id*. at 107, 111).

On or about May 20, 2022, Garramone and allegedly Couture went to Pennsylvania for a college graduation. (*Id.* at 113). They appeared to have taken a detour and ended up in a butcher shop near Noshirvan's home – where defamatory flyers were found in the restroom by the owner shortly after a wig woman was seen leaving the restroom. (*Id*. at 114-115). The butcher shop owner's daughter confirmed same.

The basis for Noshirvan's First Amended Complaint ("FAC") at D.E. 26, stems from a series of transactions and occurrences that started on or about May 04, 2022, and run through date current. (See D.E. 26, ¶¶40-53, 94-143). The operative facts that activate Noshirvan's legal rights consist of an agreement by Defendants' to: defame him, tortiously interfere with his business relationships, deplatform him, cause his child to be placed in foster care, and destroy his reputation. (*Id.* 126-134). In short, Defendants' were angry about the viral TikTok video and subsequent arrest of Couture. Vengeance was sought in the form of reputational and financial destruction, injury, and harm, to Noshirvan and his family. Camp confirmed that Defendants' agreement to cause harm to Noshirvan and family was "a sustained operation." (*Id.* at 135).

Finally, Defendants' argue that "[t]he first branch of the alleged conspiracy to defame did not happen." (Doc. 46, P. 10) Defendants' limited denial impliedly concedes the remainder – that the majority of Noshirvan's conspiracy claims did happen as alleged. This implication was confirmed by the fact that Defendants' only take issue with three discreet factual allegations that are not dispositive of any of Noshirvan's causes of action. First, Defendants' allege the "internet domain" "thatdaneshguy.com" was created prior to January 26, 2022. (Doc. 46, p.10). However, this argument omits the fact that the secretly held domain was updated on February 10, 2023 – 3 months before Couture and Garramone sued Noshirvan. Second, they allege that a previous swatting incident in 2021 somehow proves that they did not cause Noshirvan to be swatted in the year 2022 or 2023. Third, Defendants' allege that because they furnished an online reputation management contract, that they could not have conceivably hired Camp to manage Noshirvan's reputation. Defendants' assertions defy logic, nor do they disprove any of Noshirvan's valid claims.

## II. Defendants' 12(b)(1) Motion For Lack Of Subject Matter Jurisdiction Is Really A Mislabeled Motion To Transfer And Consolidate

Federal courts are courts of limited subject-matter jurisdiction. *See PTA–FLA, Inc. v. ZTE USA, Inc.,* 844 F.3d 1299, 1305 (11th Cir. 2016). To resolve cases on the merits, federal courts require both authority over the category of claim in suit

(subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so the decision will bind the parties. *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir.2000). Subject matter jurisdiction involves the court's statutory power to hear a case. *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008). A federal district court can hear a case only if it has "at least one of three types of subject matter jurisdiction: (1) jurisdiction under specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *PTA–FLA, Inc.*, 844 F.3d at 1305. In order for a federal district court to properly exercise diversity jurisdiction over a case, the action must be between "citizens of different States" and the amount in controversy must exceed $75,000.00 dollars, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

This Court previously satisfied itself of its subject matter jurisdiction in this case. (See D.E. 28). Defendants' do not allege a lack of diversity in citizenship from any defendant, nor do they allege that the amount in controversy has not been met. Additionally, Defendants do not expressly allege that venue in Middle District of Florida is improper. Rather, Defendants argue that Noshirvan was required to answer their frivolous Second Amended Complaint in 2:23-cv-00340-SPC-KCD ("SAC") and add a counterclaim. (See D.E. 46, p. 3-6; *Cf.* D.E. 83 in 2:23-cv-00340-SPC-

KCD). Simply put, Defendants,' in hope of saving their SAC from a second dismissal, allege that this matter should be before Judge Polster Chappell.

Defendants fundamentally misunderstand "subject matter jurisdiction" and conflate it with "case jurisdiction." The issue here is more accurately described as case jurisdiction. Case jurisdiction refers to a district court's jurisdiction to act in a case over which it has subject matter jurisdiction. *Schmidt v. JJJTB, Inc.*, 357 So. 3d 208, 211 (Fla. 2d DCA 2023).

In *Republic Health Corp. v. Lifemark Hosps. of Florida, Inc.*, 755 F.2d 1453, 1454 (11th Cir. 1985), The Eleventh Circuit Court of Appeals addressed whether the district court errored by dismissing with prejudice on the ground that the complaint constituted a compulsory counterclaim to a prior action under Rule 13(a). The Appellate Court began its analysis by stated that "[d]ismissal with prejudice is a severe sanction which should only be used in extreme circumstances." *Ramsey v. Signal Delivery Service, Inc.*, 631 F.2d 1210, 1214 n. 5 (5th Cir.1980). It has been described as a "sanction of last resort," *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir.1982), generally "reserved for cases of willful disobedience to court orders." *Id.* The Appellate Court went on to state "[h]ad the district judge felt the claim more properly belonged in the Bankruptcy Court, he could have so ordered or transferred such. Certainly, fundamental fairness would have required some course of action other than dismissal…." *Id.* at 1455.

In that same vein, if this Court finds Noshirvan's claims to be compulsory counterclaims, it should transfer the action pursuant to 28 U.S.C 1406(a). The interests of justice would be better served by transferring the action instead of dismissal. A dismissal would waste additional time, money, and judicial resources since all parties have responded in this action.

### a. Venue is proper

Pursuant to 28 U.S.C. § 1391(a), a civil action wherein jurisdiction is founded solely on diversity of citizenship may be brought in (1) a judicial district where any defendant resides or (2) a judicial district in which a substantial part of the events giving rise to the claim occurred. "[A] defendant corporation is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). 28 U.S.C. Section 1404(a) allows a district court to transfer any civil action to a district where it might have been brought for the convenience of the parties and witnesses and in the interests of justice. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir.1996). 28 U.S.C. Section 1404(a) places the decision of whether a motion for a change of venue should be granted within the sound discretion of the court. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 654 (11th Cir.1993).

### b. Noshirvan's First Amended Complaint Does Not Contain Compulsory Counterclaims

All counterclaims that are not compulsory are "permissive." Permissive counterclaims are claims that do "not aris[e] out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(b); *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1066 (E.D. Cal. 2005)(explaining counterclaims and supplemental jurisdiction). Whether a claim is a compulsory counterclaim hinges on whether the claim of the defendant is "logically related" to the claim(s) asserted by the plaintiff. *See Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc.*, 31 F.3d 445, 448 (7th Cir.1994).

Florida utilizes the logical relationship test, adopted by federal courts, to determine whether a party has a compulsory counterclaim. *Londono v. Turkey Creek, Inc.*, 609 So. 2d 14, 19 (Fla. 1992). Under the logical relationship test, "[a] claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." *Id*; *U.S. ex rel. Mueller v. Eckerd Corp.*, 184 F.R.D. 686, 687 (M.D. Fla. 1999)(finding claims did not arise out of the "same transaction or occurrence").

As part of this test, the court "analyze[s] whether the essential facts of the various claims are so logically connected that considerations of judicial economy

and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Amer.*, 827 F.2d 1246, 1249 (9th Cir.1987). However, the "logical relationship" is an imprecise phrase with no universally agreeable meaning. *See Kissell Co. v. Farley*, 417 F.2d 1180, 1183 (7th Cir.1969); *see also Burlington Northern Railroad Company v. Strong*, 907 F.2d 707, 711 (7th Cir.1990)("there is no formalistic test to determine whether suits are logically related").

In *U.S. ex rel Mueller*, the district court addressed the "purpose of Rule 13(a)" "to achieve economy, fairness, and consistency" by bringing "logically related" suits together. However, the district court distinguished claims where "the factual and legal issues" only pertain to one factual issue, and beyond that no similarities existed. *Id.* at 687. In such case, the district court stated that "[t]he underlying factual and legal principles giving rise to these two claims are vastly different and do not arise from the same transaction or occurrence." *Id.*

In *Londono*, the Florida Supreme Court assessed a Homeowner's initial lawsuit regarding HOA declaration issues and the management companies claim of slander, spread of malicious information, and publication of defamatory billboards. *Id.* at 20. The court found that the " two lawsuits" were "separate controversies with distinct and unrelated facts." The court held that the slander action was not a compulsory counterclaim. The *Landono* court's analysis assessed the operative well-pled facts of each complaint to determine whether the same aggregate of operative

facts serves as the basis of both claims and that the aggregate core of facts upon which the original claim rests activates additional legal rights.

Defendants' have yet to plead plausible facts in their SAC to state a cause of action. Their SAC is likely subject to a second dismissal. (See D. E. 83-4 in 2:23-cv-00340). Defendants' SAC is poorly re-casted harassment and cyberstalking complaint alleged in contravention of a Court Order. (See D.E. 81, 83 at ¶52 and 59, and 84). Furthermore, Defendants SAC fails to properly plead any operative facts that would (1) create legal liability for Noshirvan, (2) serve as the basis for both Noshirvan and Defendants' claims, and (3) show any core of facts in the original claim would activate any legal rights for Noshirvan. *Id.*

More specifically, all of the alleged harassment in the SAC "occurred between January 26, 2022, through August of 2022 by unknown individuals." (See D.E. 83, p.4, ¶¶9,10,12. P. 10, ¶¶26,28. P.11, ¶¶31-3, 35. P. 13, ¶40. P. 16, ¶45). Defendants do not allege a single fact that would impute legal liability on Noshirvan. (See D.E. 83 compare with D.E. 84 in 2:23-cv-00340). Instead, Defendants rehash the same dismissed harassment allegations. (See D.E. 46, p.6-11).

**III. Defendants' Frivolous Motion For Summary Judgment Should Be Denied Entirely**

    **a. The Court should not convert Defendants' motion into a motion for summary Judgment**

The Federal Rules of Civil Procedure provide that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment," and if a motion is so converted, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). "The decision to convert a motion to dismiss into a motion for summary judgment is committed to the sound discretion of the trial court." *Flynn v. Tiede–Zoeller*, Inc., 412 F.Supp.2d 46, 50 (D.D.C.2006). "In exercising this discretion, the 'reviewing court must assure itself that summary judgment treatment would be fair to both parties.' " *Bowe–Connor v. Shinseki*, 845 F.Supp.2d 77, 85–86 (D.D.C.2012) (quoting *Tele–Commc'ns of Key W., Inc. v. United States*, 757 F.2d 1330, 1334 (D.C.Cir.1985)). Therefore, "[i]n converting the motion, district courts must provide the parties with notice and an opportunity to present evidence in support of their respective positions." *Kim v. United States*, 632 F.3d 713, 719 (D.C.Cir.2011).

However, the Supreme Court and many district courts have repeatedly held, summary judgment is ordinarily appropriate ***only after*** the plaintiff has been given an adequate opportunity to conduct discovery." *McWay v. LaHood*, 269 F.R.D. 35, 39 (D.D.C.2010); accord *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99 (D.C.Cir.2012) ("[S]ummary judgment is premature unless all parties have 'had a full opportunity to conduct discovery.' " (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))); *Americable Int'l v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C.Cir.1997) ("[S]ummary judgment ordinarily 'is proper only after the plaintiff has been given adequate time for discovery.'"); see *Harper v. Lawrence Cnty.*, Ala., 592 F.3d 1227, 1232 (11th Cir.2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings. According to case law, 'not considering' such matters is the functional equivalent of 'excluding' them-there is no more formal step required.").

Here, discovery has not even started. (See Doc. 49). Yet Defendants' ask the Court to summarily decide the case. (See IV.b. below and compare with Doc. 46, p.2). The Exhibits attached to Defendants' Motion do not conclusively disprove any of Noshirvan's counts or claims. Thus, issues of fact remain. Furthermore, combining a motion to dismiss and motion for summary judgment may be improper. *See Hanson v. Same Day Funding Inc.*, 2:23-cv-00910-SPC-KCD (Judge Polster Chappell opinion at doc. 23)

### b. Defendants improperly attempt to utilize a 12(b)(1) motion to get inadmissible documents before the Court

Defendants failed to file any papers to support the evidentiary admission of any of its exhibits. *See Carson v. Gibson*, 595 So. 2d 175, 176–77 (Fla. 2d DCA 1992); *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1305 (11th Cir. 2022)(a preliminary stage, "the evidence" only needs be capable of authentication").

Defendants failed to show that its attached exhibits could be presented in a form that would be admissible in evidence." See Fed. R. Civ. P. 56(c)(2). All Defendants' Exhibits contain hearsay. Defendants also failed to show how any of their attached Exhibits would be dispositive on any of Noshirvan's claims.

### IV. Defendants' Motion for Rule 11 Sanction must be denied

#### a. Defendants failed to comply with the most basic requirements of Rule 11

Federal Rule of Civil Procedure 11(c)(2), provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

First, Rule 11 requires a party filing a "motion for sanctions" to make that motion "separate [and apart] from any other motion." Defendants failed to prepare and file a separate motion seeking sanctions. (See D.E. 46, p. 12, in 2:23-cv-01218-JES-NPM). Instead, Defendants included their request as part of their 12(b)(1) Motion to Dismiss in an improper attempt to utilizes inadmissible documents. (See id. at p. 12). Second, Defendants failed to comply with Rule 5 as far as their combined motion, i.e., D.E. 46, was not served in accordance with Fed. R. Civ. P. 11(b)(1)(2)(A-F). In fact, the first time Defendants provided the undersigned with a

copy of the motion was on January 30, 2024, after filing it through CM/ECF. (See D.E, 46, p. 15). Third, Defendant's failed to provide the required 21-day safe harbor <u>before</u> filing their Motion with the Court. *See Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1345 (11th Cir. 2022).

### b. Defendants' presented no admissible evidence

Rather than submit admissible evidence to this Court, Defendants attempt to utilize documents attached to their 12(b)(1) Motion to Dismiss. Defendants' failed to attach an affidavit, declaration, or other paper to make the attached Exhibits admissible. It is improper for Defendants to utilize inadmissible documents attached to their 12(b)(1) Motion to Dismiss as their basis for sanctions or for summary judgment. (*See id*. at p. 12). Defendants confuse the Court's review of documents outside of a complaint on a factual 12(b)(1) motion to dismiss and the evidentiary burden required to submit evidence at hearing or trial. Exhibits A-C attached to their motion to dismiss lack foundation, authentication, and contain hearsay. *See In re Intern. Mgmt. Associates, LLC*, 781 F.3d 1262, 1266 (11th Cir. 2015); *United States v. Johnson*, 594 F.2d 1253, 1257 (9th Cir.1979) (the proponent of a writing or record must demonstrate the admissibility of the underlying writings or records, as a condition precedent to introduction of the it into evidence); *United States v. Caldwell*, 776 F.2d 989, 1001–02 (11th Cir.1985) (holding that Rule 901 required

enough evidence that a jury "could have reasonably concluded" that a document was authentic).

### c. Defendants' attachments to its motion do not conclusively prove that any of Noshirvan's allegations are frivolous

Defendants attach various documents to their motion as Exhibit A-C. Exhibit A – the ICANN printout is hearsay – as Defendants attempt to prove the matter asserted. However, setting that aside, the ICANN document shows that the domain was 'created" on September 16, 2021, updated as of February 10, 2023, and held by a "private customer" under customer number "7151571251" by a company called Contact Privacy Inc. who is based out of Toronto, Canada. Exhibit A does not explain the February 10, 2023 "update", indicate who is "private customer - 7151571251", or when that "private customer" gained control of the domain.

Defendants' Exhibit A in no way proves or disproves Noshirvan's allegation that "Defendants <u>caused</u> a defamatory website to be built and published about Noshirvan." (See D.E. 26, ¶126). In fact, Defendants completely omitted the February 10, 2023 "update" in the ICANN document or the fact that domain owner's name is hidden by Contact Privacy, Inc. Defendants' claim that Exhibit A is conclusive proof of the matter asserted is fictional.

Defendants next argue that because Noshirvan self-reported on Tiktok about being swatted on December 21, 2021, that Defendants' could not be responsible for swatting him thereafter. (D.E. 46, Ex. B). Defendants' argument is a fallacy. Swatting

events are not mutually exclusive. Defendants' assertion does prove that no other swatting occurred in 2022 or 2023, or that Defendants were not responsible for the swatting. (See D.E. 26, ¶137). It is sad but possible to be swatted more than once.

Defendants next argue that because they hired a company called "NetReputation.com," on January 31, 2022 – 5 days after Couture's fiasco in Dunkin Donut's parking lot, that they could not have hired Camp. Defendants' argument suffers the same infirmities as their swatting argument. Defendants hiring of NetReputation.com is not mutually exclusive from their hiring of Camp. Noshirvan's FAC depicts Camp at Defendant's property. (See D.E. 26, ¶¶100-110). Camp admits to being at his "bosses estate." (See D.E. 26, ¶101-105). Furthermore, Camp committed or discussed committing tortious acts in Defendants' guesthouse or pool. (See D.E. 26, ¶104-111). There is no way Noshirvan could have obtained a copy of NetReputation.com's contract with Garramone, absent seeking same in discovery.

V.  **PROCEDURAL DEFICIENCIES**

   a. **Defendants failed to comply with Court's Civil Action Order and Local Rule 3.01(g)'s initial meet and confer**

Plaintiffs did not properly discharge their good faith duty meet and confer under this Court's Civil Action Order and Local Rule 3.01(g) prior to filing their Motion. On January 30, 2024, Defendants' Counsel sent the following email: "Good afternoon Nick. I left you a voicemail to discuss *Noshirvan v Couture*, 2:23-cv-01218. I am filing a motion to dismiss with a motion for sanctions …. If you wish

to discuss please call me." Defendants' motion to dismiss was filed the same day. (Doc. 46). The motion was emailed to the undersigned for review for the first time after it was filed.

This Court's Civil Action Order, paragraph 8.a., requires compliance with Local Rule 3.01(g). The Civil Discovery Handbook section A. 2., defines the term "confer" in Rule 3.01(g) to mean a **substantive discussion**. Civil Discovery Handbook available online at https://www.flmd.uscourts.gov/civil-discovery-handbook/chapter01/a-courtesy-and-cooperation-among-counsel. Local Rule 3.01(g)(3), requires a movant to "try diligently for three days to contact [an unavailable] opposing party." Local Rule 3.01(g)(3). Rule 3.01(g)(3) expressly requires a party to attempt to contact an opposing party on three separate occasions prior to filing the motion. *Id.* Additionally, a follow-up certification of compliance is required.

A facial review of the docket (doc. 46) and Defendants' certification of compliance clearly shows that they did not comply with Local Rule 3.01(g)(3). Defendants' Motion was filed on the same day that Defendants' Counsel certified he first attempted to contact the undersigned for a meet and confer. No follow-up certification has been timely filed.

## VI. CONCLUSION

Accordingly, the Court should deny Defendants' Motion in its entirety, award fees and costs associated with this motion pursuant to the Civil Action Order (Doc. 24) or Rule 11 or transfer this case to Judge Polster Chappell who presides over case number 2:23-cv-00340 in the Middle District of Florida, Fort Myers Division.

>  Respectfully  submitted,
>
>  Nicholas A. Chiappetta, Esq.
>  **Chiappetta Trial Lawyers**
>  Attorneys for Mr. Noshirvan
>  8401 Lake Worth Rd., Suite 130
>  Lake Worth, FL 33467
>  Direct: (561) 768-4500
>  Fax:    (561) 768-4600
>  service@chiappettalegal.com
>  nick@chiappettalegal.com
>  www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
Law Office of Patrick Trainor, Esq., LLC
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*                    */s/ Nicholas A. Chiappetta*
                                             Nicholas A. Chiappetta