UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANESH       NOSHIRVAN,       an
individual,

        Plaintiff,

v.                                  Case No:  2:23-cv-1218-JES-KCD

JENNIFER    COUTURE,      an
individual, RALPH GARRAMONE
M.D., an individual, RALPH
GARRAMONE M.D. P.A., CENTRAL
PARK OF SOUTHWEST FLORIDA,
LLC, WRAITH, LLC, SULLIVAN
STREET   INVESTMENTS,   LLC,
HAIRPIN   TURN,   LLC,   OMG
REALTY,  LLC,  R  G  WEIGHT
MANAGEMENT,    LLC,    CENTRAL
PARK SOUTH, LLC, BRANTLEE,
LLC,   LEGACY   OF   MARIE
GARRAMONE,  LLC,  GARRAMONE
MARKETING,     INC.,    5681
DIVISION LLC, THE LAW OFFICE
OF PATRICK TRAINOR ESQ. LLC,
PATRICK    TRAINOR,      an
individual, and ANTI-DOXING
LEAGUE INC.,

        Defendants.

_____

**OPINION AND ORDER**

    This matter comes before the Court on review of Defendants'
Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc.
#46) filed on January 30, 2024. Plaintiff filed a Response in
Opposition (Doc. #50) on February 14, 2024. For the reasons set
forth below, the motion is denied.

**I.**

In <u>Couture v. Noshirvan</u>, Case No. 23-cv-340-SPC-KCD (hereinafter <u>Couture</u>), Jennifer Couture and Ralph Garramone M.D. P.A. sued Danesh Noshirvan (Noshirvan), TikTok Inc. Bytedance, Inc., 100 John Does, and 100 fictitious corporations. Plaintiffs allege that Noshirvan was paid to post videos of Couture exposing her personal information, and that Noshirvan subsequently: posted and reposted multiple videos of Couture and Dr. Garramone with their personal information; messaged Couture that the "fun hasn't even started yet"; chatted online with Couture posing as another person and posted screenshots of their conversation online; purchased native content sponsored advertisements; filed a complaint with the Florida Department of Children and Families (FDCF) alleging Couture was harming her child; urged his social media followers to report Couture to Southwest Florida Crimestoppers for stalking him; sent links of the videos to the social media accounts of Dr. Garramone's patients; and more. This allegedly resulted in the plaintiffs and their family receiving hundreds of text messages and multiple phone calls, voicemails, emails, messages on social media, and negative business reviews, people soliciting Couture's mother's house, FDCF receiving hundreds of complaints about Couture regarding her child, FDCF visiting Couture and her child to investigate the allegations, and

multiple patients and surgeons terminating their relationship with Dr. Garramone.

Noshirvan thereafter filed this lawsuit (hereinafter Noshirvan) alleging that Couture, Dr. Garramone, and others are implicated in the hiring of a third-party, Joseph Camp, to harass and defame Noshirvan, and that either they or Camp have: created an account named "Victims of That Danesh Guy" on various social media platforms; made a video calling Noshirvan a "child predator"; urged people to report Noshirvan for child abuse and neglect; made false claims to child protective services about Noshirvan's child on at least three separate occasions; left negative flyers of Noshirvan and his wife in the restroom of a local butcher shop; published negative advertisements of Noshirvan in local classifieds; put up negative local billboards of Noshirvan; built and published a website called 'www.thatdaneshguy.com'; made false or fake reports to social media platforms about Noshirvan; published hundreds of negative and false posts about Noshirvan; sent hundreds of threatening messages to Noshirvan; got authorities to send a SWAT team to Noshirvan's home on the basis of false reports[1]; sent pictures to Noshirvan of he and his family at their home; distributed flyers at a school falsely alleging Noshirvan was a child rapist; sent threatening emails to

---

[1] The parties refer to this as "swatting."

Noshirvan's donors; and more. This allegedly resulted in, among other things, some of Noshirvan's donors withdrawing their support, Noshirvan and his family having to temporarily relocate, and Noshirvan being investigated by child protective services.

Defendants in Noshirvan have filed a motion to dismiss pursuant to Rule 12(b)(1) asserting that the district court lacks subject matter jurisdiction. Defendants argue that because the two cases share the same facts and evidence and are logically related, the claims in the second lawsuit should have been brought as compulsory counterclaims pursuant to Fed. R. Civ. P. 13(a) in Couture, not as a freestanding case. Because Noshirvan failed to comply with Rule 13(a), defendants argue that the district court has no subject matter jurisdiction.[2]

## II.

The Supreme Court has emphasized the distinction between limits on "the classes of cases a court may entertain (subject-matter jurisdiction)" and "nonjurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Fort Bend Cnty., Texas v. Davis, 587 U. S. ----

---

[2] Defendants also move for summary judgment in the alternative, and assert Plaintiff's Amended Complaint warrants Fed. R. Civ. P. 11 sanctions.

, 139 S.Ct. 1843, 1848-49 (2019)(internal citations omitted); <u>see also</u> <u>Wilkins v. United States</u>, 598 U.S. 152, 156–57 (2023). A "jurisdictional" prescription sets the bounds of the "court's adjudicatory authority," while nonjurisdictional rules govern how courts and litigants operate within those bounds. <u>Santos-Zacaria v. Garland</u>, 598 U.S. 411, 416 (2023). Courts will "treat a procedural requirement as jurisdictional only if Congress 'clearly states' that it is." <u>Boechler v. Commissioner</u>, 596 U.S. 199, 203 (2022)(quoting <u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 515 (2006)); <u>Wilkins</u>, 598 U.S. at 157–58. The Supreme Court has characterized an array of mandatory claim-processing rules and other preconditions to relief as nonjurisdictional. <u>See</u> <u>Fort Bend Cnty., Texas</u>, 139 S. Ct. at 1849–50.

Rules of civil procedure do not create subject matter jurisdiction. The Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts." Fed .R. Civ. P. 82. The Supreme Court has stated the same, <u>Schacht v. United States</u>, 398 U.S. 58, 64 (1970) ("The procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional . . . ."); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 n. 13 (1966) ("[T]he Federal Rules of Civil Procedure do not expand the jurisdiction of federal courts . . . ."), noting that such a

proposition was "axiomatic." Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 370 (1978).

Defendants rely on Fed. R. Civ. 13(a), which provides:

(1) *In General.* A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.

(2) *Exceptions.* The pleader need not state the claim if:

(A) when the action was commenced, the claim was the subject of another pending action; or

(B) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under this rule.

This compulsory counterclaim rule is clearly a nonjurisdicitonal provision. Rule 13(a) "was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." S. Const. Co. v. Pickard, 371 U.S. 57, 60 (1962). Whether the claims in Noshirvan are compulsory counterclaims or not, the failure to plead them as such has no subject matter jurisdiction implications. Therefore, the motion to dismiss is denied.

Defendants' alternative argument for summary judgment is also denied. First, Defendants inappropriately combine a motion to

dismiss with a motion for summary judgment.[3] Second, summary judgment is premature. As Plaintiff's point out, "discovery has not even started," (Doc. #50, p. 14), and the Eleventh Circuit "has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." Snook v. Tr. Co. of Georgia Bank of Savannah, 859 F.2d 865, 870 (11th Cir. 1988).

Defendants' contention that the Amended Complaint warrants the imposition of Rule 11 sanctions on Plaintiff's counsel is unwarranted. Under the Rule's safe harbor provision, a Rule 11 motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Properly practiced, that means that:

> when a litigant identifies a filing that he believes
> violates Rule 11—say, a frivolous pleading—he can draft
> a sanctions motion and serve it on the opposing party.
> But he cannot file that motion just yet. Instead, service
> of the motion notifies the opposing party of the possible
> violation and starts the 21-day safe harbor clock.

---

[3] In accordance with the controlling Case Management and Scheduling Order, "[a] motion for summary judgment must include a memorandum of law in support and a specifically captioned section titled, 'Statement of Material Facts' in a single document," among other things. (Doc. #64, p. 5.)

Huggins v. Lueder, Larkin & Hunter, LLC, 39 F.4th 1342, 1346 (11th Cir. 2022). "Although the notice need not be in writing and with the formality of pleadings, the notice given, or evidence of the giving of notice, must be a part of the record." Baker v. Alderman, 158 F.3d 516, 527 (11th Cir. 1998). There is no evidence of notice in the record and Plaintiff's counsel states he was not appropriately given any. (Doc. #50, pp. 18-19.) Further, none of Defendants' arguments convince the Court that any of the three types of conduct that warrant Rule 11 sanctions are present. See Didie v. Howes, 988 F.2d 1097, 1104 (11th Cir. 1993).

Accordingly, it is hereby

**ORDERED:**

Defendants' Motion to Dismiss (Doc. #46) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this __15th__ day of April 2024.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Counsel of Record

8