## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DANESH NOSHIRVAN
an individual,

                                 CASE NO:
                                 2:23-cv-01218-JES-NPM

       Plaintiff,

vs.

JENNIFER COUTURE, an individual,
RALPH GARRAMONE M.D, an individual,
RALPH GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY.,
CENTRAL PARK OF SOUTHWEST
FLORIDA, LLC, WRAITH, LLC,
SULLIVAN STREET INVESTMENTS, LLC,
HAIRPIN TURN, LLC, OMG REALTY, LLC,
R G WEIGHT MANAGEMENT, LLC,
CENTRAL PARK SOUTH, LLC,
BRANTLEE, LLC, LEGACY OF MARIE
GARRAMONE, LLC, GARRAMONE
MARKETING, INC., 5681 DIVISION LLC,
THE LAW OFFICE OF PATRICK TRAINOR
ESQ, LLC d/b/a THE LAW OFFICE OF
PATRICK TRAINOR, PATRICK TRAINOR,
an individual, and
ANTI-DOXING LEAGUE INC.

       Defendant(s).

_____/

## PLAINTIFF, DANESH NOSHIRVAN'S MOTION TO COMPEL
## DEFENDANT, JENNIFER COUTURE'S TO
## PROVIDE BETTER RESPONSES, OVERRULE OBJECTIONS, AND
## PRODUCE DOCUMENTS IN RESPONSE TO
## <u>NOSHIRVAN'S FIRST REQUEST FOR PRODUCTION</u>

Pursuant to Federal Rule of Civil Procedure 34, plaintiff, Danesh Noshirvan ("Noshirvan"), by and through undersigned counsel, file this Motion to Compel Defendant, Jennifer Couture's ("Couture") Response To Noshirvan's First Request For Production – served on April 16, 2024.  In support of this Motion, Noshirvan states the following:

1.     Noshirvan filed this instant action on December 26, 2023 (Dkt. 1). On April 08, 2024, this Court issued a Case Management and Scheduling Order. Dkt. 64.

2.     On April 16, 2024,  Noshirvan served his First Request for Production on Couture.  A copy of Noshirvan's discovery request is attached as **Exhibit 1**.

3.     On May 16, 2024, Couture responded to Noshirvan's First Request for Production. A copy of Couture's Response is attached as **Exhibit 2**.

4.     In Couture's Response, she listed 20 paragraphs of general objections. Those general objections included, but were not limited to:

a.     "documents   concerning   communications"   with   people "Couture never knew existed";

b.     Evidentiary objections - because Noshirvan's request "has not provided evidence that sufficiently shows such person(s) is/are connected to the social media account username named in the Request";

c.    "documents concerning communications" "with persons who concealed their true identity";

d.    "communications made by Couture via any social media account";

e.    "attorney-client privilege, work-product privilege, [litigation] or any other privilege" (no privilege log has been provided or produced).

f.    "overly broad, unduly burdensome, harassing, expensive, oppressive, cumbersome, vague, ambiguous, and irrelevant";

5.    Noshirvan's request labeled as paragraph 1, requested production of "every item listed on your Rule 26 Initial Disclosures served on April 15, 2024." Couture objected with the following: "attorney-client privilege, the work product privilege, are overly broad, unduly burdensome, not within the scope of litigation, and are not relevant and not likely to lead to the discovery of relevant evidence."

6.    Couture provided no privilege log,  failed to expound on her conclusory objections or even address what she was going to produce in response to Noshirvan's request labeled as paragraph 1. Couture has not produced any documents in response to Noshirvan's First Request for Production. This is classic stonewalling.

7.    Noshirvan's request labeled as paragraph 2, requested production of "documents and ESI contain any form of communication between you and Joseph

A. Camp or any of his aliases." Couture objected that the request "factually presupposes the existence of communications" and stated Couture will produce any non-privileged documents in her possession. Couture has not listed any items on privilege log. She has not produced documents.   And, this response intentionally omits that Couture will produce documents within her custody and control.

8.     Noshirvan's request labeled as paragraph 5, requested production of "every social media profile you have owned since January 01, 2019, through date current." Couture objected stating the request is overbroad, unduly burdensome, not within the scope of litigation, is not likely to lead to the discovery of relevant evidence, requires her to create a documents, and again intentionally omits that Couture will produce documents within her custody and control.

9.     Noshirvan's request labeled as paragraph 6, requested production of "documents and ESI containing communications between [Couture] and Joseph A. Camp or any of his aliases."  Couture objected because the request "factually presupposes Couture knows the identity(ies) of Camp's alleged aliases", is overly broad, unduly burdensome, not within the scope of litigation, and are not relevant and not likely to lead to the discovery of relevant evidence. And again, intentionally omits that Couture will produce documents within her custody and control.

10.    Noshirvan's request labeled as paragraph 7, requested production of "documents and ESI containing communications between [Couture] and Zack Bonfilio a/k/a @themisfitpatriot that occurred for the last 3 years."  Couture objected because the request "failed to identify @themisfitpatriot", Couture lacks sufficient knowledge to corroborate the allegation that Zack Bonfilio, is overly broad, unduly burdensome, not within the scope of litigation, and are not relevant and not likely to lead to the discovery of relevant evidence. And again, intentionally omits that Couture will produce documents within her custody and control.

11.    Noshirvan's request labeled as paragraph 8, requested production of "communications between [Couture] and @fighting.crime.with.a.pen a/k/a Tiffany Chhoum for the last 4 years. Couture made the same boilerplate objection as stated in paragraph 10 supra.

12.    Noshirvan's request labeled as paragraph 9, requested production of "communications between you and @wonderlandnews a/k/a Cassandra D. Wilde for the last 4 years.´ Couture made the same boilerplate objection as stated in paragraph 10 supra, and adds that "to the best of her knowledge she has never communicated with a person named Cassandra D. Wilde."

13.    However, Ms. Wilde appears to have been in communication with Couture:



14.    Noshirvan's request labeled as paragraph 11, requested production of "document and ESI communication between [Jennifer Couture] and Chris Couture.   Couture objected stating the request is "overly broad, unduly burdensome, not within the scope of litigation, and are not relevant and not likely to lead to the discovery of relevant evidence, requires production of sealed confidential legal documents concerning child custody." Couture said she would produce non-privileged documents, but produced nothing.

15.    However, we know that Couture allowed Joseph A. Camp to live with her in May of 2022:



16. Noshirvan's request labeled as paragraph 13, requested production of "document and ESI communication between [Jennifer Couture] and Emily Botyos." Couture responded "none." However, we know Couture Communicated with Emily Botyos regarding the January 26, 2022, event and Noshirvan.

17. Noshirvan's request labeled as paragraph 15-16, requested production of "document and ESI communication between [Jennifer Couture] and Patrick Trainor and Trainor's law firm for the last two year." Couture objected citing work product and attorney-client privilege. Again, no privilege log has been produced or provided to date. Noshirvan has no way to tell if the communications are in fact privileged. Couture also objected that the request is "overly broad,

unduly burdensome, not within the scope of litigation, not relevant [or] likely to lead to the discovery of relevant evidence", or requires document creation.

18.     Noshirvan's request labeled as paragraph 17, requested production of "any communications between [Couture] and Ralph Garramone, M.D. that mention, discuss, or relate to any allegations in the First Amended Complaint." Couture made the same boilerplate objection as stated in  paragraph 8 supra. Couture also added work product and attorney -client privilege, claiming misnumbering (despite no misnumbering),  some random statement about "@johnthecatman." Noshirvan is not certain where that statement came from.

19.     Noshirvan's request labeled as paragraph 19, requested production of "documents and ESI" showing Couture was "in Pennsylvania in May of 2022." Couture responded by stating that "she will produce all non-privileged documents in her possession." However, she has raised no privilege, produced no privilege log, and has not produced any documents.

20.     Noshirvan's request labeled as paragraph 22-23, requested production of "documents and ESI" "containing communications between" Couture and former and current employees of Garramone Plastic Surgery. Couture objected to alleging "employee confidentiality laws, HIPAA privacy laws, confidentiality and non-disparagement clauses with settlement agreements,

attorney-client privilege, the work product privilege," and requires document creation. Couture also objected that the request overly broad, unduly burdensome, excessive in time, not within the scope of litigation, and is not relevant and not likely to lead to the discovery of relevant evidence.

21.     First, there attorney-client privilege, the work product privilege does not apply in this context. Second, even if they did, disclosure to a third-party would waive the privilege. Third, Couture has not provided a privilege log. Fourth, HIPAA applies to patients – not employee communications. The remainder boilerplate objections should be overruled.

22.     Noshirvan's request labeled as paragraph 24, requested production of "documents and ESI" "between you and Patrick Trainor regarding Joseph A. Camp." Couture objected claiming  attorney-client and work product privilege, overly broad, unduly burdensome, excessive in time, not within the scope of litigation, and is not relevant and not likely to lead to the discovery of relevant evidence. The privilege does not apply to communications made in furtherance of committing a crime. *United States v. Zolin*, 491 U.S. 554, 562–63, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

23.     Noshirvan's request labeled as paragraph 25 requested production of "documents and ESI" "that show your payments to recipients via GiveSendGo,

Zelle,GoFundMe, Paypal, Venmo, Wise, and any other electronic fund transfer platform for the last 4 years." Couture frivolously objected to attorney-client and work product – among other basic objections. See Exhibit 2, ¶25.

24.     Noshirvan's request labeled as paragraph 26 requested production of "documents and ESI" "that shows you were a victim of "sextortion" or "blackmailed" by Danesh Noshirvan." Couture objected claiming "the request failed to define "sextortion," and "blackmailed"" Couture also raised attorney-client and work product privilege, overly broad, unduly burdensome, not within the scope of litigation, excessive in time, and seeks documents that are not relevant and not likely to lead to the discovery of relevant evidence.   This request seeks documents relevant to  defamatory statements Couture made about Noshirvan.

25.     Noshirvan's request labeled as paragraph 30 requested production of "documents and ESI" "that you intend to utilize to support your affirmative defenses." Couture stated she "will produce all relevant non-privileged documents." However, todate no documents have been produced.

26.     Noshirvan's request labeled as paragraph 31-2 requested production of "any bank statements from your" personal and entity owned "accounts showing any payment made to Joseph A. Camp or any of his aliases." Couture objected on the basis of authentication, presupposition, attorney-client and work

product, and that the request is overly broad, unduly burdensome, not within the scope of litigation, excessive in time, and seeks documents that are not relevant and not likely to lead to the discovery of relevant evidence and requires her to create a document or documents that do not exist. If there are none. Couture needs to state so. If these payments to Camp exist, She must produce them. No Privilege log has been provided and Couture provides no explanation for her frivolous objections.

27.   Noshirvan's request labeled as paragraph 39 requested production of "[Couture's] text messages for every cellular phone, watch, or electronic device owned by [her] from [her] cellular provider from January 01, 2022, through date current." Couture objected that the request was overly broad, unduly burdensome, not within the scope of litigation, irrelevant not likely to lead to the discovery of relevant evidence, financially oppressive, and subject to attorney-client and work product privileges. No privilege has been provided and based on the alleges, it is questionable whether any privilege would or could apply.

28.   Noshirvan's request labeled as paragraph 41 requested production of Couture's "personal social media profiles" Couture objected that the document does not exist and she does not possess. However, Couture has the following accounts:





29.     Noshirvan's request labeled as paragraph 42 requested production of "any photographs [Couture has] from the May 2022 Bucknell University graduation" – in Pennsylvania. Couture agreed to produce but never produced any documents.

30.     Noshirvan's request labeled as paragraph 43 requested production Couture's "personal twitter/X accounts." See ¶28, supra. And Exhibit 2, ¶43. No documents were produced.

31.     Noshirvan's request labeled as paragraph 44 requested production of "documents and ESI" "that relates to, or is mentioned in, the allegations of Noshirvan's First Amended Complaint." Couture stated she will produce any non-privileged documents in her possession. However, she has produced no documents to date.

32.     Noshirvan's request labeled as paragraph 45 requested production of "documents and ESI" "that mentions D'ambly v. Exoo, 2:20-cv-12880, (D.N.J.)." Couture objected claiming attorney-client and work product privilege, among other boilerplate objections. See Exhibit 2.

33.     Noshirvan's request labeled as paragraph 46-47 requested production of "documents and ESI" "that relates to, or mentions @victimsofdanesh or @vistimsofthatdaneshguy from May 2022 through date current." Couture cited her objections as to paragraph 18. See Exhibit 2.

34.     Noshirvan's request labeled as paragraph 48 requested production of "documents and ESI" "that shows you know Joseph A. Camp." Couture objected that it presupposes a factual allegation that has not been proven. Is she claiming the 5th amendment? Further, her remaining boilerplate objections are without support. See Exhibit 2.

35.     Noshirvan's request labeled as paragraph 49 requested production of "documents and ESI" "that shows that Joseph A. Camp was on the Wrinkler property in May of 2022." Couture objected that it presupposes a factual allegation that has not been proven. Is she claiming the 5th amendment? Further, her remaining boilerplate objections are without support. See Exhibit 2.

36. Noshirvan's request labeled as paragraph 49 requested production of "documents and ESI" "related to [Couture's] Lee County criminal arrest - case number: 22CF000256. Couture objected stating overly broad, unduly burdensome, not within the scope of litigation, and not likely to lead to the discovery of relevant evidence.

37.     In short, Couture's remaining responses 50-63 all suffer from the same defects and should be overruled.

38.     The problem with Couture's responses are multifold. First, a qualified objection, which includes "notwithstanding the above" or "without waiving such objection", "preserves nothing, and constitutes only a waste of effort and the resources of both the parties and the court." *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399, 401 (S.D. Fla. 2008); *Martin v. Zale Delaware, Inc.*, 8:08-CV-47-T-27EAJ, 2008 WL 5255555, at *2 (M.D. Fla. Dec. 15, 2008). The "practice leaves the requesting party

uncertain as to whether the question has actually been fully answered, or only a portion of it has been answered." *Guzman*, 249 F.R.D. at 401.

39.     Similarly, here, Couture agreed to produce non-privileged documents. However, she has not produced single responsive document. Her action begs the questions – do documents exist, does a privilege apply, and if so, where are the documents or Couture's privilege log.

40.     "The law in the Eleventh Circuit makes clear that boilerplate discovery objections are tantamount to no objection being raised at all and may constitute a waiver of the discovery being sought." *Rivera v. 2K Clevelander, LLC, No. 16-21437-Civ*, 2017 WL 5496158, at *4 (S.D. Fla. Feb. 22, 2017). Many of Couture's objections are boilerplate objections. See, Exhibit 2. A district court may overrule such objections on this basis alone. See Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); see also *FDIC v. Brudnicki*, 291 F.R.D. 669, 674 n.4 (N.D. Fla. 2013) ("[T]he form boilerplate objections shall not be considered by the Court and are nullity."); *Walton Constr. Co., LLC v. Corus Bank*, No. 4:10cv137, 2012 WL 13029592, at *1 (N.D. Fla. Apr. 18, 2012) (rejecting boilerplate objections as "meaningless"). That Defendant subsequently attempted to provide specific objections in its response to Plaintiff's motion to compel is unavailing. *See Lorenzano v. Sys., Inc.*, No. 6:17-cv-422, 2018 WL 3827635, at *3 (M.D. Fla. Jan. 24, 2018) ("[T]he Court will

not rely on Systems' post hoc justifications for its boilerplate objections. To the extent that Systems tried to raise specific objections in its Response, the Court finds that Systems waived these objections.").

41.   The Civil Discovery Handbook also provides: "[b]oilerplate objections such as "the request is overly broad, unduly burdensome, and outside the scope of permissible discovery" are insufficient without a full, fair explanation particular to the facts of the case." Civil Discovery Handbook, A.6.

## Memorandum of Law

### I.  Standard

The Federal Rules of Civil Procedure permit parties to obtain discovery of any nonprivileged matter relevant to the parties claims and defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); see also, e.g., *United States ex rel. Jacobs v. CDS, P.A.*, No. 4:14-cv-00301-BLW, 2016 WL 4146077, at *2 (D. Idaho Aug. 3, 2016) ("The allegations of the complaint logically shape the scope of discovery...."). Factors used to determine proportionality under this standard are the importance of the issues at stake, the amount in controversy, the parties' access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden outweighs the likely benefit. Fed. R. Civ. P. 26(b)(1).

The party moving under rule 37 to compel discovery must demonstrate that the request satisfies Rule 26's relevance requirement. See, e.g., *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). The party resisting discovery "has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing, inter alia, *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)); *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570 (11th Cir.1992) ("[d]iscovery should be tailored to the issues in the particular case").

Here, Noshirvan's discovery requests are specifically tailored to the First Amended Complaint. Noshirvan's requests are facially relevant. Couture bears the burden of sustaining her objections. Further, Noshirvan posits the request are proportional to the needs and significance of the case.

## II. Privilege

### a. Generally

This case is diversity jurisdiction case. Thus, privilege is governed Florida State privilege law. Florida courts have consistently held that the claimant of the privilege has the burden of presenting competent, substantial evidence to establish that the incident reports were prepared in anticipation of litigation. *In Wal–Mart Stores, Inc. v. Weeks*, 696 So.2d 855 (Fla. 2d DCA 1997); *Universal City Dev. Partners, Ltd. v. Pupillo*, 54 So. 3d 612, 615 (Fla. 5th DCA 2011)(concurence)(argument by

counsel that the incident reports are work product does not constitute substantial, competent evidence); *Marshalls of MA, Inc. v. Minsal*, 932 So.2d 444 (Fla. 3d DCA 2006) (holding that the party asserting the work-product privilege must present substantial, competent evidence in the form of testimony or evidence to establish that the requested incident reports were prepared in anticipation of litigation). The burden does not shift onto the party requesting the documents until the claimant of privilege properly establishes that the privilege exists. *Pupillo*, 54 So. 3d at 615.

"When a party asserts the work-product privilege, Florida law requires that the trial court hold an in-camera inspection of the discovery material at issue in order to rule on the applicability of the privilege." *Marshalls of M.A., Inc. v. Witter*, 186 So. 3d 570, 573 (Fla. 3d DCA 2016)(quoting *Snyder v. Value Rent-A-Car*, 736 So.2d 780, 782 (Fla. 4th DCA 1999)(internal quotation omitted)); *Genovese v. Provident Life & Accident Ins. Co.*, 74 So. 3d 1064, 1068 (Fla. 2011),

### b. Attorney-Client

The scope of the attorney-client privilege is "guided by 'the principles of the common law ... as interpreted by the courts ... in the light of reason and experience.' " *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998), citing Fed. Rule Evid. 501, *Funk v. United States*, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933). Traditionally, the privilege applies to confidential communications between the client and his or her attorney made in order to obtain

legal advice. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 503.10 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed.1997). The privilege covers much more than "any sort of admission of criminal wrongdoing," and includes "matters which the client would not wish divulged," *Swidler*, at 408, 118 S.Ct. 2081. There is no balancing test to define its contours. Id. at 409, 118 S.Ct. 2081.

The privilege has limits, however. It protects "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege," *Fisher*, 425 U.S. 391, and it "cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose." *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir.1991). Moreover, the privilege is subject to exceptions. The privilege does not apply to communications made in furtherance of committing a crime. *United States v. Zolin*, 491 U.S. 554, 562–63, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *Weinstein's Federal Evidence*, § 503.31. Additionally, attorney-client privilege does not protect communications in furtherance of an intentional tort that undermines the adversary system itself. *Madanes v. Madanes*, 199 F.R.D. 135 (S.D.N.Y. 2001)(applying crime-fraud exception).

Here, as alleged, interstate racial hate crimes, including the conspiracy to stalk and harass Noshirvan (among others) is sufficient to disallow any privilege for "apply to communications made in furtherance" thereof.

### c. Work product

In that same vein, the crime-fraud exception also applies to work product. *See In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir.1995). Furthermore, the work-product privilege only protects documents and papers of an attorney prepared in anticipation of litigation. Incident reports, internal investigative reports, and information gathered by employees to be used to defend against litigation are generally protected by the work-product privilege. *Royal Caribbean Cruises, Ltd. v. Doe*, 964 So.2d 713, 718 (Fla. 3d DCA 2007). However, materials assembled in the ordinary course of business or pursuant to public requirements unrelated to litigation are excluded from work product. *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994)(documents created for a business purpose and not in anticipation of litigation are not protected by the work product doctrine.). Furthermore, any work-product intended or expected to be used at trial is not protected by the work-product privilege. *Northup v. Acken*, 865 So. 2d 1267, 1270 (Fla. 2004)(stating that if the evidence or material are reasonably expected or intended to be disclosed to the court or jury at trial, it must be identified, disclosed,

and copies provided to the adverse party in accordance the discovery requests of the opposing party).

### III.        Sanctions are appropriate for Couture's Stonewalling

"If a motion to compel "is granted — or if the disclosure or requested discovery is provided after the motion was filed — the court must . . . require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). *See, e.g., CMR Constr. & Roofing, LLC v. ASI Preferred Ins. Corp.*, No. 219CV442FTM29MRM, 2020 WL 9172016, at *3 (M.D. Fla. May 1, 2020)." Dkt. 131.

Here, mandatory sanctions are appropriate. Couture's boilerplate objections should be deemed a complete failure to respond to Noshirvan's First Request for Production.

WHEREFORE, Noshirvan respectfully requests that the Court grant this Motion, enter an order overruling Couture's objections, compelling her to produce the requested documents within 10 days, allow Noshirvan to supplement this motion with a fee and cost affidavit, and any other relief this Court deems just and proper.

### IV.    Request for an In-person hearing

Noshirvan requests an in-person hearing to address the discovery matters contained in this motion.

## Local Rule 3.01(g) Certification

The undersigned certifies that on June 20, 2024, met and conferred, via telephone, with counsel for Defendants. Counsel for Defendants claim non-receipt despite proof of email service. Counsel for Defendants opposes this motion.

DATED: June 21, 2024.

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Mr. Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:     (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
Law Office of Patrick Trainor, Esq., LLC
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiffs*

/s/ Nicholas A. Chiappetta
Nicholas A. Chiappetta