## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DANESH NOSHIRVAN
an individual,

        CASE NO:
        2:23-cv-01218-JES-NPM

        Plaintiff,

vs.

JENNIFER COUTURE, an individual,
RALPH GARRAMONE M.D, an individual,
RALPH GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY,
CENTRAL PARK OF SOUTHWEST
FLORIDA, LLC, WRAITH, LLC,
SULLIVAN STREET INVESTMENTS, LLC,
HAIRPIN TURN, LLC, OMG REALTY, LLC,
R G WEIGHT MANAGEMENT, LLC,
CENTRAL PARK SOUTH, LLC,
BRANTLEE, LLC, LEGACY OF MARIE
GARRAMONE, LLC, GARRAMONE
MARKETING, INC., 5681 DIVISION LLC,
THE LAW OFFICE OF PATRICK TRAINOR,
PATRICK TRAINOR, an individual, and
ANTI-DOXING LEAGUE INC.

        Defendant(s).

_____/

## PLAINTIFF DANESH NOSHIRVAN'S RESPONSE IN OPPOPSITION TO DEFENDANT RALPH GARRAMONE M.D. P.A. d/b/a GARRAMONE PLASTIC SURGERY'S MOTION TO COMPEL DISCOVERY

Plaintiff, Danesh Noshirvan a/k/a "@ThatDaneshGuy" ("Noshirvan"), file

this Response in Opposition to  defendant, Ralph Garramone M.D. P.A. D/B/A

Garramone Plastic Surgery ("**GPS**"),  and states as follows:

## I.      Introduction

On December 26, 2023, Noshirvan filed a six-count complaint. See Dkt. 1. Noshirvan filed his First Amended Complaint on January 04, 2024. See Dkt. 26. The First Amended Complaint is the operative complaint. The nature of the action is a civil conspiracy and agency claim for defamation, tortious inference, misappropriation of likeness, and intentional infliction of emotional distress against seventeen defendants. *Id.* With the exception of the following entity defendants, The Law Office of Patrick Trainor, and Anti-Doxing League Inc., all other entity defendants operate out of, or maintain their "principal place of business," at 12998 S. Cleveland Ave., Fort Myers, Florida. *Id.* at 7. They are closely held entities owned by Dr. Ralph Garramone and are intimately entangled or intertwined as to simply be an extension of Dr. Garramone. *Id.* at 7.  In its motion, GPS "denies any wronging doing." However, that is obviously not the case. Joseph A. Camp has been seen by an eyewitness on GPS property multiple time in 2022. See 2:23-cv-00340-SPC-KCD, Dkt. 161, Ex 1.  GPS made payments to Joseph A. Camp. GPS's employees, Dr. Garramone and Jennifer Couture admit  to visiting Papa's Butcher shop in Mansfield, Pennsylvania during their trip to Bucknell University from May 20-22, 2022.[1] In short, GPS is well aware of its liability – that is why it is so intent on

---

[1] There is an oral stipulation on the record that occurred during the August 28, 2024, hearing before Magistrate Dudek.

seeking discovery into Noshirvan's damages or attempting to prematurely limit same.

## II.   **Factual and Procedural Background**

1.   On April 08, 2024, this Court issue a Case Management and Scheduling Order. Dkt. 64. This Order allowed the parties to begin discovery.

2.   On June 04, 2024, GPS propound its First Set of Interrogatories on Noshirvan. GPS specifically takes issue with Noshirvan's Response to paragraph 7 and 8.

3.   Noshirvan's Response is timely and returnable on September 03, 2024. See Fed. R. Civ. P. 6(a)(5)(extending time for legal holidays including Labor Day).

## III.   **Argument**

### a.   **Elements**

Noshirvan's First Amended Complaint alleges six separate counts.  Count 1 alleges civil conspiracy to tortiously interfere[sic]  with a parent-child relationship. See Dkt 26, p. 57-9.  To prevail in a claim for tortious interference  with a parent-child relationship Noshirvan is required to establish (1) an intentional effort by the defendant to detract the child from the parent's custody or service; (2) that the effort was willful; and (3) that the defendant knowingly invaded the child's parent's rights. *Stone v. Wall*, 734 So.2d 1038, 1042–1043 (Fla.1999).  The elements to prove a claim for tortious interference with a parent-child relationship do not expressly include

damages. Simply put, the damages in this count are general. The damages stems from an intentional effort to detract the child from custody or invade parental rights.

Count 2 alleges civil conspiracy to tortious[sic] interference  with a business relationship. See Dkt 26, p59-61. The elements of tortious interference with a business relationship are "(1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994). Here, the fourth element requires a showing of damages. As such, special, general, and consequential damages are available.

Count 3 alleges civil conspiracy to defame. See Dkt 26, p. 61-3. To establish a cause of action for defamation, a plaintiff must show: "(1) publication; (2) falsity; (3) the actor acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement is defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla.2008)). In Florida, slander is actionable *per se* without a showing of special damage if it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible

with the proper exercise of his lawful business, trade, profession, or office, or (d) the other being a woman, acts of unchasti[t]y. A published statement is libelous per se if: "(1) it charges that a person has committed an infamous[2] crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) it tends to injure one in his trade or profession." *Richard v. Gray*, 62 So.2d 597, 598 (Fla.1953).

Regarding the fourth element of a defamation claim, "[E]vidence of some actual injury," such as injury to reputation, personal humiliation, and mental anguish and suffering, is required for a plaintiff to recover for defamation. *Miami Herald Publ'g Co. v. Ane*, 458 So.2d 239, 242, 243 n. 3 (Fla.1984); *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014), aff'd (Feb. 17, 2015)(testimony by a plaintiff that he suffered severe emotional distress, including difficulty sleeping and concentrating at work as a result of the publication constitutes has evidence of actual damages). However, general damages concerning a plaintiff's dignity, reputation, and emotional harm need not be proved, see *F.A.A. v. Cooper*, –—— U.S. ——, 132 S.Ct. 1441, 1454, 182 L.Ed.2d 497 (2012), but public figures must

---

[2] Infamous is defined as "having a reputation of the worst kind", and "causing or bringing infamy. " Merriam Webster Dictionary online available at https://www.merriam-webster.com/dictionary/infamous Infamy is defined as a "reputation brought about by something grossly criminal, shocking, or brutal" or "an extreme and publicly known criminal or evil act." Merriam Webster Dictionary online available at https://www.merriam-webster.com/dictionary/infamy.

still show proof of actual malice to recover, *see Gertz v. Robert Welch, Inc*., 418 U.S. 323, 377, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)."[I]t is often difficult for a plaintiff to prove actual damages," so courts and juries have historically presumed some level of damage from defamatory publications. *Krauser v. Evollution IP Holdings, Inc*., No. 12–80977–CIV, 2013 WL 5313403, at *9 (S.D.Fla. Sept. 20, 2013) (citations omitted) (explaining where a plaintiff does not proffer evidence of actual damages, presuming damages allows a defamation claim to survive summary judgment, and plaintiff may be awarded nominal damages at trial as vindication of his reputation).

Here, Noshirvan alleged libel and slander per se. There is no doubt that terms and phrases like:  "child predator", "pedophile", "child groomer", "stalker," "sextortionist," "blackmailer", and statements that a person "rapes his own child" and "caused a 14-year-old to commit suicide"  "subject [the falsely accused] to hatred, distrust, ridicule, contempt, [and] disgrace."

Count 4 alleges civil conspiracy to intentionally inflict emotional distress. See Dkt 26, p. 64-5. To establish a cause of action for intentional infliction of emotional distress: 1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff and 4) that the conduct complained of caused the plaintiff's severe emotional distress. *Broberg v. Carnival Corp*., 303 F. Supp. 3d 1313, 1317 (S.D. Fla. 2017). Like Count 1, damages are not an element of the cause

of action. Noshirvan may recover general and punitive damages in the absence of medical bills.

Count 5 alleges civil conspiracy to misappropriate Noshirvan's likeness for commercial purposes. See Dkt 26, p.66-7. Under Florida law, Noshirvan may recover "damages for any loss or injury sustained by reason thereof, including an amount which would have been a reasonable royalty, and punitive or exemplary damages." §540.08(2), Fla. Stat. (2024).

Count 6 alleges that the Garramone entity defendants are responsible for Joseph A. Camp's actions.

The majority of Noshirvan's damages fall into the category of general or punitive damages. Where special damages have been incurred, GPS is aware of same. GPS, however, appears to conflate general damages with actual damages in an attempt to argue that general damages are speculative to advance its theory for summary judgment. Make no mistake, Noshirvan has provided 12.5 GB of data or roughly 11,500 documents (see Dkt.124 p. 4 and 13) – most of which contain proof of actual damages. General damages are usually harder to pinpoint with precision. For example, how much is an injury worth, when that injury has Google's algorithm defaming a person worldwide? How much is an injury worth, when an innocent person is false accused of being a "sexual predator", "child rapist" "pedophile", "

blackmailer", "sextortionist", and the like? How much is an injury worth, when a person is accused of causing the death of a child? You cannot un-ring these bells. No amount of monetary compensation will ever be enough to undue the damage caused by the defendants. Noshirvan has a myriad of proof of actual injury. Proof of actual injury is not the same as quantifying or placing a dollar value on that injury. At this early stage in the case, it is wholly inappropriate to ask Noshirvan to adopt a rough estimate quantifying a dollar value on his injuries.

### b. GPS's Interrogatory #7

GPS argues that Noshirvan's objections to paragraph 7 should be overruled. GPS alleges a red herring[3] – by raising after-the-fact issues with  Noshirvan's Rule 26 Initial Disclosure. Plaintiff's initial damages disclosure under Rule 26(a) is merely a preliminary assessment and is subject to revision. See Fed.R.Civ.P. 26(e) (providing for a party's duty to supplement or correct disclosure).

Noshirvan's Rule 26 Initial Disclosure was amended to provide the following calculations:  lost past income, each entity income was received from, and a calculation $XXXXX avg. per sub. x X sub. = XXXX per month x XX months =

---

[3] GPS was in possession of similar damage disclosures since May of 2024 – right after discovery started. And Florida courts have long since held that a party cannot be prejudiced when it had actual notice of the issue, fact, or matter it claims to be prejudiced by.  Furthermore, as GPS notably pointed out via email on August 30, 2024, to the undersigned,  discovery remains open until February 28, 2025. See Dkt. 64.

monetary amount. Actual figures were provided to GPS. For future income and lost business opportunities, Noshirvan provided an estimate calculation as a certified public account has not been retained yet. A mathematical calculation was provided (Avg. xxxx + xx% growth per year for a period of XXXX years = XXXXX). For Past Emotional Distress, Mental Anguish, Shame, Depression, Anxiety, Sleep Disturbance, Reputation, Loss of Enjoyment of Life, and Separation from Child, Noshirvan provided an estimate calculation (XXX per/hr x XX hrs x XXX days = $XXXX). Similarly, for future losses, Noshirvan provided a mathematical calculation as well  (XX per/hr. x XX hrs per day x XXXX yrs = $XXXX). Lastly for past and future Royalties, the calculations were broken down similarly XXXX amt. of publication  x XX per day x XXX days/years = $XXXX).

Rule 26 does not elaborate on the level of specificity required in the initial damages disclosure. *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 220 (N.D. Cal. 2003). However,  the "computation" of damages required by Rule 26(a)(1)(C) contemplates some analysis. *Id.*  For example, in a claim for lost wages, there should be some information relating to hours worked and pay rate. *See Bullard v. Roadway Exp.*, 3 Fed.Appx. 418, 420 (6th Cir.2001) (unpublished). *See also U.S. v. Rempel*, 2001 WL 1572190 (D.Alaska 2001) at *2 (government required to disclose computation of tax liability, the functional equivalent of damages calculation in a tort case); *First Nat. Bank of Chicago v. Ackerley Communications,*

*Inc.*, 2001 WL 15693 at *6, n. 6 (S.D.N.Y.2001) (calculation of damages requires more than merely setting forth figure demanded); *Kleiner v. Burns*, 2000 WL 1909470 at *2 (D.Kan.2000) (defendant is generally entitled to a "specific computation" of damages).

To that end, disclosing a precise figure for damages without a method of calculation may be sufficient in cases where other evidence is developed e.g. in the context of a preliminary hearing, and it is appropriate to defer further specification to e.g. development of expert testimony. *City & Cnty. of San Francisco, 218 F.R.D. at 220*("Plaintiffs need not engage at this stage in the level of detail sought by Defendants who seek e.g. a breakdown for each alleged act of fraud, statutory violation, etc. Defendants seek, in effect, responses similar to broad contention interrogatories which in most circumstances are premature at this early stage of litigation"); *Pine Ridge Recycling v. Butts County*, 889 F.Supp. 1526, 1527 (M.D.Ga.1995)(denying defendants motion because "arguments over the method of computation [were] premature since the method will necessitate expert testimony, which [was not due" until later in year 1995);  Moore's Federal Practice, Civil § 26.2 (2003).

In GPS's interrogatory number 7, Noshirvan wrote out the calculations in pain staking detail. However, GPS already had in possession rough estimates – with mathematical calculations.  Furthermore, GPS's request is premature at this early

stage in the litigation.  *See City & Cnty. of San Francisco*, 218 F.R.D. at 220 (not requiring specifically detailed damage breakdown from plaintiff at an early stage in the litigation); *Pine Ridge Recycling*, 889 F.Supp. at 1527. Noshirvan has no problem providing a more specific answer after experts have been retained and his general damage calculations are more than estimates.

Next GPS argues that under Rule 33(a)(2) governing interrogatories, an interrogatory may relate to any matter that may be inquired into under Rule 26(b). However, Rule 26(a)'s disclosure requirements are different than the duty to disclose information when an interrogatory is propounded. *Brown v. Nocco*, 8:16-CV-3155-T-17MAP, 2018 WL 8370065, at *2 (M.D. Fla. Apr. 11, 2018). Under Rule 33(b), "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *Brown* , 8:16-CV-3155-T-17MAP, 2018 WL 8370065, at *2; *see Hendricks v. Mirabilis Ventures, Inc.*, No. 07-cv-661-T-17EAJ, 2008 WL 423566, at *1 (M.D. Fla. Feb. 13, 2008)(citing the Middle District Discovery handbook and cautioning that "[i]nterrogatories that generally require the responding party to state the basis of particular claims, defenses, or contentions in pleadings or other documents should be used sparingly." *Schwarz v. City of Treasure Island*, 8:05-CV-1696-T-30MAP, 2010 WL 11474978, at *2

(M.D. Fla. Oct. 13, 2010)(citing Middle District Discovery (2001) at IV.A.8. and finding that the degree to which this case has progressed, a contention interrogatory would be appropriate here to identify and narrow Defendants' position for trial).

Noshirvan simply requests that this Court find GPS's interrogatory number 7 need not be answered by Noshirvan until after discovery has been completed.[4] Fed. R. Civ. P. 33(a)(2) ("[T]he court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.").

### c.  GPS's Interrogatory #8

GPS's 8th interrogatory asks Noshirvan to "identify each document (including electronically stored information) pertaining to each item of damages stated in .. response to Interrogatory No. 7." See Dkt 124-1. GPS admits to receiving "over **11,500 pages** worth of pictures, videos, text messages, social media and other internet, postings, and documents." Dkt 124, P. 4 and 13. GPS's admission operates as evidence that the request is burdensome. That "11,500 pages" equates to 12.5 GB of data. And while they do not contain bates numbering because the vast majority of

---

[4] Discovery in this case started on April 08, 2024.

documents are in digital non-PDF format, they do contain a specific identification

number. The picture below is representative of the production:



More specifically, each screenshot shows the date it was taken (i.e., 20220529

= May 29, 2022). Additionally, each document contains a independent verification

number and list the platform it was retrieved from. GPS's argument is that Noshirvan

should create a PDF document with a separate numbering system from 0-11,500.

GPS's argument seeks to require Noshirvan to undertake a laborious and redundant

task.   The request would be extremely time-consuming, cost prohibitive, and

inefficient. So much so, that Noshirvan would have to seek an application to the

Court for reapportionment  of the cost to GPS.

Further, if Noshirvan was forced to list every single document that goes to his

general damages, because of the shear volume of documentation produced by

Noshirvan in support of his claims, it would create an extreme time consuming

burden and be cost prohibitive cost. As previously explained, the large majority of Noshirvan's damages are general or punitive damages. Most of the documents Noshirvan produced establish same. GPS is essentially asking this Court to order Noshirvan to list or write out a "screenshot number" for thousands of screenshots. GPS already has in it possession, in separate folders, Noshirvan's tax returns and social media compensation documents, i.e., Noshirvan's special damages.   Even if this court were to find that the request was not unduly burdensome and cost prohibitive, the Court must find that the request is not proportional to the needs of this case.

Additionally, if Noshirvan were ordered to attempt to write out in a list each document most likely to be utilized, such an order would invade the work product privilege before exhibit disclosures are required. In that same vein, GPS makes arguments regarding waiver and a privilege log.   See Dkt. 124, p. 8. However, Noshirvan is not arguing that the documents he already produced are privileged. Noshirvan is simply stating that GPS's request for Noshirvan to organize the previously produced documents could invade work product privilege prematurely.[5] No privilege log is required. GPS's argument regarding same is a red herring. At

---

[5] Opinion work product enjoys almost absolute immunity, but that protection may be overcome in extraordinary circumstances. *Williamson v. Moore*, 221 F.3d 1177, 1182–83 (11th Cir. 2000) (citing *Cox v. Administrator United States Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir. 1994). The circumstances of this case are not extraordinary.

issue here is GPS's requested interrogatory answers, not production of documents. GPS, again, conflates the issue at hand. Simply put, GPS wants to invade Noshirvan's work product and have Noshirvan do its job for it.

### d. Memorandum

The scope of interrogatories, pursuant to Fed. R. Civ. P. 33(a)(2), "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete." *Doherty v. Regions Bank*, 219CV145FTM29MRM, 2021 WL 2806143, at *2 (M.D. Fla. Mar. 25, 2021). In addition, the Middle District of Florida Discovery Handbook provides that "[i]nterrogatories should be brief, simple, particularized, unambiguous, and capable of being understood by jurors when read in conjunction with the answer. They should not be argumentative nor should they impose unreasonable burdens on the responding party." *Id.* As for contention interrogatories, interrogatories calling for the responding party to state the basis of particular claims, the Handbook states that "[they] should be used sparingly and, if used, should be designed ... (2) to identify and narrow the scope of unclear claims, defenses, and contentions." *Id.* at 17. "Interrogatories that purport to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive." Civil Discovery Handbook 2024 IV.C.2; see also id at IV.C.4.("Interrogatories

designed to force an exhaustive or oppressive catalogue of information are generally improper. For example, an interrogatory such as "identify each and every document upon which you rely in support of your claim in Count Two" is objectionably overbroad…."); *see id.* at IV.C.6. ("If any interrogatory is objectionable because of overbreadth, the responding party, although objecting, must answer the interrogatory to the extent that the interrogatory is not overbroad.").

In *In re Seven Stars on Hudson Corp.*, 637 B.R. 180, 194 (Bankr. S.D. Fla. 2022), aff'd sub nom. *Seven Stars on the Hudson Corp. v. MDG Powerline Holdings, LLC*, 22-CIV-60299-RAR, 2022 WL 10046439 (S.D. Fla. Oct. 17, 2022), aff'd sub nom. *In re Seven Stars on the Hudson Corp.*, 22-13591, 2023 WL 4760713 (11th Cir. July 26, 2023), the Court addressed summary judgment, not discovery, and explained that Seven Stars "respond[ed] [to interrogatories] largely with narratives about the alleged causes of damages, without … "identifying any method of calculating or measuring how this conduct translated into "lost revenue." *Id.* The Court further found that Seven Star did not point to "other documents demonstrating or verifying its damages calculations." *Id.* Simply put, the court found that Seven Star "did not … provide any breakdown, calculation, itemization, or other support for its alleged damages."

Here, for paragraph 7, Noshirvan has provided a written breakdown, calculation or itemization of his damages. See Dkt. 124-1, ¶7. However, because

GPS's request is premature, Noshirvan maintains the position that it is inappropriate to quantify his actual damages at this time. With regards to paragraph 8, Noshirvan's tax returns, social media compensation, and  documents pertaining to "Thatdaneshguy" are business records well within the scope of Rule 33(d). *See Grethaka Sols. Ou v. Click Labs, Inc.*, 8:22-CV-1341-WFJ-SPF, 2023 WL 9104762, at *3, Fn. 2 (M.D. Fla. May 24, 2023)("Plaintiff is incorrect that under no circumstance could Defendant identify a business record in response to an interrogatory.") GPS's argument to the contrary is disingenuous at best.

Moreover, in addition to explaining the documents Noshirvan intends to utilize for special damages, Noshirvan did provide general parameters for documents, videos, emails, social media, and text messages that support his general damages. See Dkt. 1241 ¶8. Noshirvan did not simply regurgitate a narrative  about causation of damages. See Dkt. 1241 ¶7; see Civil Discovery Handbook, II.A.10.a (requiring the producing party to "specify the records to be produced in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer *as readily as could the party from whom discovery is sought*.).

Here, Noshirvan identified the records in sufficient detail to allow GPS to identify the records and to ascertain the answer as readily as Noshirvan could. The rule requires no more from Noshrivan. Noshirvan provided a "responsive, full, complete and unevasive" answer to interrogatory number 7.  *See Essex Builders*

*Grp., Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005). Noshirvan does not have the "necessary information" to be any more specific in answering interrogatory number 7. Noshirvan is still working on obtaining experts.

## IV.    Rule 37 Sanctions should not be awarded to GPS

Motions to compel discovery under Fed. R. Civ. P. 37(a) are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007). Rule 37, Federal Rules Civil Procedure, provides in relevant part:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

> Under Rule 37(c)(1), sanctions are not required if the non-disclosing party's

failure was substantially justified or harmless. "An individual's discovery conduct

should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' " *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993). A discovery mistake is harmless "if it is honest [ ] and is coupled with the other party having sufficient knowledge that the material has not been produced." *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003). Whether the opposing party suffered prejudice underlies the harmlessness determination. *See Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010). The non-disclosing party bears "[t]he burden of establishing that a failure to disclose was substantially justified or harmless." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)). However, "[t]he district court has broad discretion in determining whether a violation is justified or harmless" under Rule 37. *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012) (citation omitted).

Here, GPS's contention interrogatories are improper because they are overbroad and oppressive." Civil Discovery Handbook 2024 IV.C.2. GPS's interrogatories are overbroad and oppressive because they are designed to force an exhaustive or oppressive catalogue of information. *See id* at IV.C.4.(interrogatories requiring a part to identify each and every document upon which the party relies is objectionably overbroad);

## V.    Conclusion

Accordingly, the Court should deny GPS Motion in its entirety.

Respectfully  submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Mr. Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I  hereby  certify  that  on  September  03,  2024,  I  electronically  filed  the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
**Law Office of Patrick Trainor, Esq., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for all Defendants*
*except Garramone Plastic Surgery,*
*Jennifer Couture, Dr. Ralph Garramone,*
*and OMG Realty, LLC*

Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220

Anoosheh Shaikh, Esq.
Florida Bar No. 1039830
**DUANE MORRIS LLP**
201 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Tel: 561.962.2108
HWGurland@duanemorris.com
JJFannin@duanemorris.com
AShaikh@duanemorris.com
PNMendoza@duanemorris.com
JMagarin@duanemorris.com
Attorneys for Garramone Plastic Surgery

James R. Brown, Esquire (217573)
Sonny Romano, Esquire (1026152)
**WICKER SMITH O'HARA**
**McCOY & FORD, P.A.**
100 S. Ashley Dr., Suite 1800
Tampa, FL 33602
Telephone: (813) 222-3939
Facsimile: (813) 222-3938
jbrown@wickersmith.com
sromano@wickersmith.com
Tpacrtpleadings@wickersmith.com
*Attorneys for Dr. Ralph Garramone,*
*Jennifer Couture, and OMG Reality*

/s/ Nicholas A. Chiappetta
Nicholas A. Chiappetta