IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANESH NOSHIRVAN
an individual,

      Plaintiff,

vs.

JENNIFER COUTURE, an individual,
RALPH GARRAMONE M.D, an individual,
RALPH GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY,
CENTRAL PARK OF SOUTHWEST
FLORIDA, LLC, WRAITH, LLC,
SULLIVAN STREET INVESTMENTS, LLC,
HAIRPIN TURN, LLC, OMG REALTY, LLC,
R G WEIGHT MANAGEMENT, LLC,
CENTRAL PARK SOUTH, LLC,
BRANTLEE, LLC, LEGACY OF MARIE
GARRAMONE, LLC, GARRAMONE
MARKETING, INC., 5681 DIVISION LLC,
THE LAW OFFICE OF PATRICK TRAINOR,
PATRICK TRAINOR, an individual, and
ANTI-DOXING LEAGUE INC.

      Defendant(s).
_____/

CASE NO:
2:23-cv-01218-JES-NPM

### PLAINTIFF DANESH NOSHIRVAN'S RESPONSE IN OPPOSITION TO DEFENDANT RALPH GARRAMONE M.D. P.A. d/b/a GARRAMONE PLASTIC SURGERY'S MOTION TO COMPEL RESPONSES TO REQUEST FOR PRODUCTION 7, 8, AND 18 AND TO COMPLY WITH RULE 34

Plaintiff, Danesh Noshirvan a/k/a "@ThatDaneshGuy" ("Noshirvan"), files

this Response in Opposition to defendant, Ralph Garramone M.D. P.A. D/B/A

Garramone Plastic Surgery's ("**GPS**") Motion to Compel Response to Request for Production 7, 8, and 18, and to Comply with Rule 34, and states as follows:

### I.      Procedural and Factual Background

On December 26, 2023, Noshirvan filed a six-count complaint. See Dkt. 1. Noshirvan filed his First Amended Complaint on January 04, 2024. See Dkt. 26. Counts 1 and 6 in the First Amended Complaint were dismissed without prejudice on September 13, 2024. See Dkt. 130. In the Opinion and Order, this Court instructed Noshirvan to separate each alleged underlying independent wrong into a separate count." *Id.* at p. 10.   It is anticipated that Noshirvan's Second Amended Complaint will contain 18 or more separate alleged underlying independent wrongs.

On June 04, 2024, GPS propounded its First Request for Production. GPS's Request Number 7, sought "[c]orrespondence … sent to or received from James McGibney or anyone purporting to be James McGibney from January 2021 to the present. By virtue of discovery in 2:23-cv-00340-SPC-KCD, GPS already has in its possession, all correspondence between Noshirvan and McGibney from September 07, 2022 through August of 2024. GPS never identified how communications after August of 2024 could be relevant to any of its defenses during the meet and confer.

GPS's Request Number 8, sought "[c]orrespondence …[Noshirvan]

sent to or received from Garramone Plastic Surgery from January 2021 to the present. Again, GPS admitted on multiple occasions in 2:23-cv-00340-SPC-KCD, that GPS and Noshirvan did not know of each other prior to the Dunkin Donuts incident on January 26, 2022. See 2:23-cv-00340-SPC-KCD, Dkts. 1, 9, and 83. Secondly, GPS never explained how Noshirvan would know in what capacity Jennifer Couture and Dr. Ralph Garramone were acting when responding to social media comments. This point is illustrated by GPS's confusion in footnote 1 of its motion. Specifically, despite first alleging in (2:23-cv-00340-SPC-KCD) that Noshirvan contacted Jennifer Couture through the Facebook account Erica Sabonis, GPS now alleges that social media messages to a personal account would be responsive to 8th request for production and constitute correspondence with GPS. GPS's assertion is not factually supported and is clearly erroneous. GPS claiming now claiming ownership of Jennifer Couture's personal social media accounts?[1]

GPS's Request Number 18, requests "[d]ocuments evidencing any loss in business and/or income that you suffered from February 2022 to the present due to

---

[1] Dr. Ralph Garramone previously testified as GPS's corporate representative in 2:23-cv-00340-SPC-KCD. During that deposition, Dr. Ralph Garramone expressly stated that GPS only has 3 social media accounts. One on Facebook, Instagram, and Youtube. Dr. Garramone further testified that GPS was unaware of any of its employees social media accounts. GPS cannot now claim that its employees personal social media accounts constitute communications with GPS. GPS wants its cake and to eat it too.

the actions or omissions of **parties**[2] unrelated to this action." Here GPS's use of the parties is intentionally ambiguous. Does GPS mean unnamed by potentially liable persons to this action, or non-liable third- parties to this action, or both? GPS never clarified same or explained the degree of relatedness/unrelatedness each party must be, to be responsive to the request. If GPS simply wanted to see if Noshirvan lost income on any other basis than alleged in the Complaint, it could have said so more clearly in its request or during the meet and confer. It did not.

GPS argues that Noshirvan's response does not comply with Rule 34 because it allegedly does not have Bates labeling or a numbering scheme. Motion at p. 11. However, GPS cites the wrong rule. Rule 34(b)(2)(E)(ii) applies to electronically stored information ("ESI"). Rule 33(b)(2)(E)(i) applies to non-ESI materials. Noshirvan produced ESI materials in their native form.

GPS inaccurately argues that Noshirvan "failed to produce tax returns for the year 2021. Motion at p. 13. This assertion is patently incorrect. As is GPS's argument that Noshirvan's tax return for the year 2021 was not produced in PDF. For tax years

---

[2] By definition, the term party, is defined as (1) "a person or group taking one side of a question, dispute, or contest" or (2) "a person or group participating in an action or affair." Merriam Webster Dictionary online available at https://www.merriam-webster.com/dictionary/party. In Black's Law Dictionary 10th Ed., the term party is defined as "someone who takes part in a transaction. Id. at p. 1297. Alternatively, the term is subjected to a modifier. See id. at 1297-1298.

2022 and 2023, 21-22 individual pages (for each year) were sent in digital format. All three years of tax returns that were requested were produced in full.

Lastly, GPS argues that Noshirvan's response that he "will produce" the documents is insufficient. And that Noshirvan should identify each document produced to as responsive to the request. But GPS did not identify each document produced to as responsive to the request. However, it is now requesting the Court to hold Noshirvan to higher standard than it holds itself or Rules 34(b)(2)(E)(ii) and (iii) require.

For Request Number 7, Noshirvan agreed to GPS's new counsel previously provided McGibney correspondence from September 07, 2022 through August of 2024. For Request Number 8, Noshirvan agreed to provide GPS's new counsel with any correspondence between himself and GPS that he is aware of, which is likely none. Specifically, reserving as to the issue of whether Ralph Garramone or Jennifer Couture were operating in a personal or professional capacity, and if it was known to Noshirvan. For Request 18, Noshirvan agreed to provide any lost business income he suffered from February 2022 to present date as a result of third-parties or persons not mentioned in this action.

## II. Argument

### a. Rule 34(b)(2)(E)(ii) and (iii) does not require documents to be produced "in the usual course of business" or require a party to organize and label the documents into the categories

GPS incorrectly argues that Rule 34(b)(2)(E)(i) applies to Noshirvan's production. It does not. To support its argument, GPS adopts and paraphrases the following case: *Unlimited Res. Inc. v. Deployed Res.*, LLC, 3:07-CV-961-J-12MCR, 2009 WL 1563489, at *1 (M.D. Fla. June 3, 2009), order clarified, 3:07-CV-961-J-12MCR, 2009 WL 10671166 (M.D. Fla. June 5, 2009). Of note, *Unlimited* dealt with a party's production obligations under Rule 34(b)(2)(E)(i) – as did the *Williams* case quoted therein. However, Noshirvan's production was only ESI. Rule 34(b)(2)(E)(ii) and (iii) provide:

> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Unlike Rule 34(b)(2)(E)(i), which requires documents to be produced as "kept in the usual course of business" or organized, labeled, and categorized, Rule 34(b)(2)(E)(ii) only requires that ESI be produced as "ordinarily maintained" or in a "reasonably usable form." Furthermore, Rule 34(b)(2)(E)(iii) expressly denounces the imposition GPS is attempting to

impose by expressly not requiring a party to provide the same information in more than one format.

The Sedona Principles—"a leading resource on electronic discovery" matters—takes the position that Rule 34(b)(2)(E)(i) applies exclusively to physical documents and that Rule 34(b)(2)(E)(ii) applies exclusively to ESI. *In re Seroquel Prod. Liab. Litig.*, 244 F.R.D. 650, 656 (M.D. Fla. 2007). The Sedona Principles reason that the preamble to Rule 34(b)(2)(E) "uses the words 'documents or electronically stored information' in the disjunctive— suggesting that the requirements of (i), (ii), and (iii) do not all apply to both documents and ESI, and the language of the subparts is straightforward in addressing documents in (i), and ESI in (ii) and (iii)." The Principles further reason that, "with large scale ESI production, it would be burdensome to label every produced file 'to correspond to the categories of the request,' and there is little guidance as to how a party is to produce ESI as 'kept in the usual course of business.' *McCreight v. AuburnBank*, 3:19-CV-865-MHT-SMD, 2021 WL 6926818, at *2 (M.D. Ala. Mar. 30, 2021). *see also Fed. Deposit Ins. Corp. v. Old Republic Nat'l Title Ins. Co.*, 2013 WL 12096453, at *5 (S.D. Fla. Nov. 13, 2013) (holding that the responsive party satisfied the "reasonably usable form" requirement by producing emails in TIFF format with metadata included). *Cf. Indep. Mktg. Grp., Inc. v. Keen*, 2012 WL 207032, at *2 (M.D.

Fla. Jan. 24, 2012) (holding that the responsive party failed the "reasonably usable form" requirement by producing emails in "large PDF files lacking metadata and searchable text").

In short, the plain meaning of the text in Rule 34 supports the interpretation that Rule 34(b)(2)(E)(i) governs only the production of physical documents, while Rule 34(b)(2)(E)(ii) governs only the production of ESI. Here, GPS's motion expressly takes issue with Noshirvan's ESI production – as opposed to his document production. Motion at p. 11-2. For the ESI production, Noshirvan produced native screenshot photographs, audio recordings, videos, excel spreadsheets, and PDFs in ESI format. Each screenshot is a separate ESI file and specifically labeled as "ordinarily maintained" by Noshirvan. The ESI produced is in "reasonably usable form." Noshirvan is utilizing same in the form produced.

GPS failed to specify a form for the ESI production. When a requesting party fails or declines to specify a form that the producing party is offered a choice between producing in the form "in which it is ordinary maintained"— native format—or "in a reasonably useful form or forms." Fed.R.Civ.P. 34(b)(2)(E)(i)-(ii); *Anderson Living Tr. v. WPX Energy Prod., LLC*, 298 F.R.D. 514, 526 (D.N.M. 2014)("Because rule 34(b)(2)(E)(i) is not controlling, the Defendants are under no obligation to produce their discovery in the usual

course of business, nor to label it to correspond to the categories in the Plaintiffs' requests."). Noshirvan is not required to convert native documents into PDF's and Bates Label them as GPS erroneously suggests. See Fed. R. Civ. P. 34(b)(2)(E)(iii). Only in "exceptional circumstances" have courts compelled a producing party to further organize its documents. *See 3M Co. v. Kanbar, MK*, No. C06–01225 JW, 2007 WL 1725448, at *3, 2007 U.S. Dist. LEXIS 45232, at *7–10 (N.D.Cal.2007)(refusing to find exceptional circumstances where moving party complained about sorting through "a mass of documents" because outcome was a "predicament of [moving party's] own making" as a result of the "broad document requests").

Noshirvan did not convert a single physical document into electronic format for purposes his responsive production. All the files he provided were prepared and stored electronically. Thus, Rule 34(b)(2)(E)(i) is inapplicable to all of Noshirvan's production even the materials produced in PDF format. A copy of Noshirvan's Declaration is attached as **Exhibit A**.

> b. **Noshirvan produced his tax returns for the tax years 2021, 2022, and 2023.**

See Noshirvan's Declaration attached as **Exhibit A**.

I.    **Rule 37 Sanctions be awarded to Noshirvan**

Motions to compel discovery under Fed. R. Civ. P. 37(a) are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). "The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Oliver v. City of Orlando*, No. 6:06-cv-1671, 2007 WL 3232227, at *2 (M.D. Fla. Oct. 31, 2007). Rule 37, Federal Rules Civil Procedure, provides in relevant part:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

Under Rule 37(c)(1), sanctions are not required if the non-disclosing party's failure was substantially justified or harmless. "An individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' " *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993). A

discovery mistake is harmless "if it is honest [ ] and is coupled with the other party having sufficient knowledge that the material has not been produced." *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003). Whether the opposing party suffered prejudice underlies the harmlessness determination. *See Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010). The non-disclosing party bears "[t]he burden of establishing that a failure to disclose was substantially justified or harmless." *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 2009) (quoting *Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006)). However, "[t]he district court has broad discretion in determining whether a violation is justified or harmless" under Rule 37. *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012) (citation omitted).

On the other hand, because GPS did not show that Noshirvan failed to comply with Rule 34 or even argue the correct subsection of the rule governing Noshirvan's production, Rule 37 applies in Noshirvan's favor. See Fed. R. Civ. P. 37(a)(5)(B)("the court … must … require the movant, the attorney filing the motion, or both to pay the party … who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.").

### V.     Conclusion

Accordingly, the Court should deny GPS's Motion in its entirety, and order GPS or Duane Morris to pay Noshirvan's reasonable expenses in accordance with Rule 37(a)(5)(B), and any other relief this Court deems just and proper.

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Mr. Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
**Law Office of Patrick Trainor, Esq., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for all Defendants*
*except Garramone Plastic Surgery,*
*Jennifer Couture, Dr. Ralph Garramone,*
*and OMG Realty, LLC*

Harvey W. Gurland, Jr., Esq.

Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
Anoosheh Shaikh, Esq.
Florida Bar No. 1039830
**DUANE MORRIS LLP**
201 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Tel: 561.962.2108
HWGurland@duanemorris.com
JJFannin@duanemorris.com
AShaikh@duanemorris.com
PNMendoza@duanemorris.com
JMagarin@duanemorris.com
Attorneys for Garramone Plastic Surgery

James R. Brown, Esquire (217573)
Sonny Romano, Esquire (1026152)
**WICKER SMITH O'HARA**
**McCOY & FORD, P.A.**
100 S. Ashley Dr., Suite 1800
Tampa, FL 33602
Telephone: (813) 222-3939
Facsimile: (813) 222-3938
jbrown@wickersmith.com
sromano@wickersmith.com
Tpacrtpleadings@wickersmith.com
*Attorneys for Dr. Ralph Garramone, Jennifer Couture, and OMG Reality*

              */s/ Nicholas A. Chiappetta*
              Nicholas A. Chiappetta