## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DANESH NOSHIRVAN
an individual,

        Plaintiff,

vs.

JENNIFER COUTURE, an individual,
RALPH GARRAMONE M.D, an individual,
RALPH GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY,
CENTRAL PARK OF SOUTHWEST
FLORIDA, LLC, WRAITH, LLC,
SULLIVAN STREET INVESTMENTS, LLC,
HAIRPIN TURN, LLC, OMG REALTY, LLC,
R G WEIGHT MANAGEMENT, LLC,
CENTRAL PARK SOUTH, LLC,
BRANTLEE, LLC, LEGACY OF MARIE
GARRAMONE, LLC, GARRAMONE
MARKETING, INC., 5681 DIVISION LLC,
THE LAW OFFICE OF PATRICK TRAINOR,
PATRICK TRAINOR, an individual, and
ANTI-DOXING LEAGUE INC.

        Defendant(s).

CASE NO:
2:23-cv-01218-JES-NPM

_____/

## PLAINTIFF DANESH NOSHIRVAN'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER TO IMPLEMENT CONFIDENTIALITY AGREEMENT

Plaintiff, Danesh Noshirvan ("Noshirvan"), files this Response in

Opposition to Defendants' Joint Motion For Protective Order To Implement

Confidentiality Agreement, and states as follows:

## I.    Introduction

Defendants claim there is a "level of animosity between the parties." Dkt. 135, P. 2. Defendants' speak only of their own intra-personal feelings or animus. Noshirvan holds no ill will. He seeks only to hold the Defendants legally accountable for their actions in this action. Defendants' also claim their proposed Confidentiality Agreement is necessary to prevent "dissemination of case materials by all parties." *Id.* Noshirvan has not posted or disseminated any non-public materials received through discovery. Is this an admission that Defendants have already disseminated discovery materials?

A brief review of Defendants motion will clearly show this Court that Defendants seek to suppress speech and the free flow of publicly available information. For example, Defendants seek protection to stop Noshirvan from posting  lawsuit updates. For example, Noshirvan posted this Court's Order dismissing Jennifer Couture's Counterclaim.  See Dkt. 135, P. 4, ¶5.a. Defendants also seek protection from a nonparty third-party who posts publicly available information to a passive social media account.  See Dkt. 135, P. 4, ¶5.b. Finally, Defendants' seek protection because Noshirvan filed as an exhibit heavily redacted credit card payments, indicating that Garramone Plastic Surgery paid Joseph A. Camp (as depicted in paragraph 63 of the SAC) for his services. See Dkt. 135, P. 4, ¶5.c. Again, the "financial records" Defendants refer to, were in fact,

heavily redacted and no personal, private, or confidential, information was made public through the filing.

Defendants simply seek protection to hide their association with Joseph A. Camp and  wrongdoing from the public. This is not a valid basis for a protective order.  And in so seeking, ask this Court to sanction a proposed Confidentiality Agreement that blanketly makes confidential all "materials produced by a party" or subjectively "private or sensitive communications", which includes social media accounts. See Dkt. 135-1, P. 2. Put simply, Defendants do not seek to carve out with specificity particular categories of documents, i.e., trade secrets, confidential commercial information, financial,  or employment records. Instead, they ask for an order that allows for a completely subjective determination as to what is confidential including communications with Joseph A. Camp - a known public hazard.[1]  Defendants' proposed Confidentiality Order is not proper.  The right to, and presumption in favor of, public access allows for, and favors disclosure. Defendants have not shown that less intrusive means could not be deployed.

---

[1] https://edition.channel5belize.com/who-is-joseph-camp/
https://www.justice.gov/usao-wdmo/pr/former-student-sentenced-computer-hacking-university-central-missouri
https://www.youtube.com/watch?v=OajyneAiD2I
https://www.facebook.com/watch/?v=495560226363939

In short, Defendants collectively ask this Court to impose its proposed Confidentiality Agreement through Rule 26. Defendants should know that Rule 26 does not confer upon this Court the power to override a Noshirvan's liberty to contract freely (or reject a proposed contract terms) under the 14th Amendment to the U.S. Constitution. In that same vein, Defendants should know that the "court cannot compel parties to enter into a confidentiality agreement." Despite the obvious, Defendants now ask this Court to sanction their excessively over-protective proposed Confidentiality Agreement through Rule 26. The Court must deny Defendants request for a myriad of reasons which will be addressed in *seriatim*.

## II. Procedural and Factual Background

1. Noshirvan initially filed a six-count lawsuit alleging a civil conspiracy and agency in relation to his claims for defamation, IIED, tortious interference, and misappropriation of likeness. See Dkt. 1 and 26. On September 23, 2024, Noshirvan filed his Second Amended Complaint ("SAC"), which contains 19 counts and claims defamation, IIED, tortious interference, and misappropriation of likeness. See Dkt. 139.

2. On August 28, 2024, this Court held a hearing on discovery matters in

this case – 2:23-cv-01218 ("1218 Case"). During that hearing, this Court acknowledged Dr. Ralph Garramone's and Jennifer Couture's concerns for confidentiality and requested that the parties confer on the matter.

3.   The parties conferred on September 04, 2024. However, no agreement was reached. The substance of differing opinions relates to the terms, conditions, and requirements of Defendants proposed Confidentiality Agreement. See Dkt. 135-1. Noshirvan does not flatly oppose  confidentiality in the general sense. Noshirvan finds Defendants proposed Confidentiality Agreement to be too restrictive, noncompliant with the local rules, and not based on facts of this case. Despite the differences, Noshirvan proposed a less restrictive agreement. See Dkt. 135-2. Noshirvan's proposal aligns with Rule 26(c).

4.   On September 20, 2024, Defendants' filed a Joint Motion for Protective Order to Implement Confidentiality Agreement. See Dkt. 135. First, the issue of confidentiality was only raised by Dr. Ralph Garramone and Jennifer Couture as individuals at the August 28, 2024 hearing. However, all 17 Defendants have now joined their motion. Secondly, Defendants do not seek a Rule 26(c)(1)(G) protective order (Noshirvan's proposed agreement provides a Rule 26(c)(1)(G) protective order). As indicated by their motion,  they ask this court to "implement" or bootstrap their incongruent proposed Confidentiality Agreement through a Rule 26 protective order.

5.   In order to make their claim, Defendants rely heavily on another case - 2:23-cv-0340 ("0340 Case"). See Dkt. 135, ¶¶5.a., and 5.b. That case is not "at-issue" here. Discovery has closed in the 0340 Case. And, if it were really as big of an issue as Defendants now claim it is in the 0340 Case, then why have they not sought confidentiality in that case?

6.   Defendants claim that the "parties' respective claims are built on allegations of harmful social media posts." See Dkt. 135, ¶4. However, Defendants next sentence is conclusory and makes a mountain out of a mole hill.

7.   The only factual argument arising out of this case, Defendants make in support of their proposed Confidentiality Agreement pertains to heavily redacted but multiple credit card payments Garramone Plastic Surgery made to Joseph A. Camp allegedly for "IT" work.  Defendants use of the phrase "financial records" inaccurately describes the single line items that were not redact – only showing the payment and recipient.

8.   Noshirvan has not published any nonpublic materials received through discovery on social media.  Defendants do not argue otherwise. Instead, they argue that they do not want Noshirvan publishing lawsuit updates of public judicial records.

### III.   Argument

### a. The U.S. Constitution Prohibit This Court From Compelling Noshirvan To Agree Defendants Proposed Confidentiality Agreement.

The United States Supreme Court has accepted the notion that liberty of contract is an enforceable constitutional right under the due process clause. In *Frisbie v. United State*s, 157 U.S. 160 (1895), the Court, speaking through Justice David Brewer, offhandedly declared that "generally speaking, among the inalienable rights of the citizen is that of the liberty of contract." The freedom to contract "is indeed a constitutionally protected right." *City of Pompano Beach v. Beatty*, 222 So. 3d 598, 600 (Fla. 4th DCA 2017)(citing *Nw. Nat'l Life Ins. Co. v. Riggs*, 203 U.S. 243, 252–53, 27 S.Ct. 126, 51 L.Ed. 168 (1906)). And because of this constitutionally protected freedom, "contracts are voluntary undertakings, and contracting parties are free to bargain for—and specify—the terms and conditions of their agreement." *Beatty, 222 So. 3d 598.* It is not the province of the court to second-guess their wisdom or "substitute [its] judgment for that of the parties…." *Id.* Furthermore, this Court's own Civil Action Order acknowledges that the "court cannot compel parties to enter into a confidentiality agreement." Dkt. 25, P. 5, Fn. 3.

Based upon the August 28, 2024 hearing, Noshirvan believes that this Court accepted these principles when it stated that it would consider Rule 26(c) to fashion an appropriate remedy. Even if this Court accepts Defendants argument,

there is no viable mechanism that would allow the Court to adopt Defendants proposed Confidentiality Agreement verbatim and not impede upon constitutionally protected ground.  In that same vein, the Court's authority as provided by Rule 26  is not without its limits. Fed. R. Civ. P. 26(c)(1)(G).

### b. Federal Rule of Civil Procedure 26(c) does not expressly provide authority for the Court to implement Defendants' proposed Confidentiality Agreement as written

Rule 26(c) permits a court upon motion of a party to make a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed.R.Civ.P. 26(c)(G). The prerequisite is a showing of "good cause" made by the party seeking protection. *See id*. Federal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement. *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir.1985). This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential. *Id.*  The party seeking a protective order bears the burden of showing good cause for the order to issue. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, Ltd., 529 F. Supp. 866, 890 (E.D. Pa. 1981).

In order to establish good cause, it must be shown that disclosure will work a clearly defined and serious injury, *United States v. Lever Bros. Co.*, 193 F.Supp. 254 (S.D.N.Y.1961), cert. denied, 371 U.S. 932, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962),43 and

that the party resisting disclosure "will indeed be harmed by disclosure." *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 409 (N.D.N.Y.1973); *Smart Communications Holding, Inc. v. Correct Sols., LLC*, 8:20-CV-1469-JLB-JSS, 2022 WL 1081564, at *2 (M.D. Fla. Apr. 11, 2022)(restating Rule26(c)'s standard).   In order to show good cause, the injury which allegedly will result from disclosure must be shown with specificity, and conclusory statements to this effect are insufficient. *United States v. Hooker Chem. & Plastics Corp.*, 90 F.R.D. 421 (W.D.N.Y.1981); *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 90 (D.N.J. 1986)(Rule 26(c), as made plain by the Third Circuit, requires more than broad allegations that release will harm their overall standing for a showing of good cause).

Defendants' argument not only fails to substantiate a particularized and significant injury as required by Rule 26(c). The argument also runs counter to a fundamental purpose of discovery under the Federal Rules. All of the Federal Rules are informed by the admonition of Rule 1 that they "be construed to secure the just, speedy, and inexpensive determination of every action."

As a corollary, Defendants have not specifically alleged or shown that discovery materials were improperly disseminated or provided anything more than unadorned allegations. Most of which stem from a different case (0340 Case). Defendants only allege  that properly filed "pleadings, docket entries, orders, affidavits or depositions," which is subject to common-law right of access , *In re*

*Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987), is somehow improper. It is not. See U.S. Const., Amend. I ("Congress shall make no law … abridging the freedom of speech); Florida Const. Art. I, Sec. 4 ("No law shall be passed to restrain or abridge the liberty of speech or of the press.").  Put simply, Defendants' proposed Confidentiality seek to impose significant burdens on Noshirvan in order prevent him from prosecuting his case and chief. See Local Rule 1.11; *Cipollone*, 113 F.R.D. at 91 (explaining the presumption of open discovery).  Defendants conclusory statements about the potential perceived harm caused by dissemination of publicly available information does not reach the threshold for "good cause" under the Rule 26. Defendants' showings simply does not establish that substantial rights will be so tangibly prejudiced that injustice will result unless the discovery obtained in this litigation is limited to it.

### c. Local Rule 1.11 prohibits sealing documents through "a confidentiality agreement, a protective order, a designation of confidentiality, or a stipulation."

Rule 26 supplies the starting point for analyzing the merits of a proposed protective order, it does not end the inquiry. This Court's Civil Action Order specifically addresses the relief sought here. That provision is: "court cannot compel parties to enter into a confidentiality agreement." Dkt. 25, P. 5, Fn. 3. Defendants neither reference this language in their motion, nor explain why the

Court should make an exception in this case. See Dkt. 135. Defendants proposed

Confidentiality Order is deficient in another respect as well. In paragraph 7:

> Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to publicly file any information or item that has been designated "Confidential" or "Highly Confidential–Attorneys' Eyes Only" shall make reasonable efforts to coordinate with the Designating Party prior to such public filing, including but not limited to providing notice to the Designating Party of the intent to publicly file Confidential Information or Highly Confidential–Attorneys' Eyes Only Information **prior to the public filing and making appropriate motions to seal.**

Notably absent of Paragraph 7 is any mention of the requirement that the

parties establish to the Court's satisfaction why sealing the referenced Confidential

Information is necessary in the first place. Stated differently, paragraph 7

improperly places the burden of establishing sealing on the wrong party. Further,

there is a presumption of public access and "[s]ealing is not authorized by a

confidentiality agreement, a protective order, a designation of confidentiality, or a

stipulation." Local R. 1.11(a). In fact, a party seeking to file documents under seal

must establish 8 areas of inquiry. See Local R. 1.11(b). Additionally, Local rule 1.11

delays the filing of any documents by 14 to 21 days. Local R. 1.11(c-e). This runs

contrary to Rule 1's dictate – a "just, speedy, and inexpensive determination of

every action." Defendants proposed Confidentiality Agreement appears to be

improper because it suggests that the Court will mechanically seal any item at the

parties behest. See Local R. 1.11(a)(reaffirming the public's qualified constitutional

and common law right of access to materials filed in a case and prohibiting the submission of documents under seal absent compelling justification). Moreover, to the extent paragraph 7 contemplates the filing of another person's confidential item, it fails to acknowledge the strictures of Local Rule 1.11. See Local R. 1.11(d). A Confidentiality Order binds the Parties, not the Court, and good cause must be shown before a filing is sealed. *Gerdau Ameristeel US Inc. v. Zurich Am. Ins. Co.*, 20-82217, 2021 WL 7693671, at *2 (S.D. Fla. May 25, 2021).

"[M]otions to seal documents must be 'carefully and skeptically reviewed to ensure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting V*ideo Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) ("The common law right of public access to judicial documents is firmly rooted in our nation's history."). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("The party opposing disclosure of a judicial document must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant

protection ... broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test.").

### d. Right To Public Access

The general public possesses a common-law right to access judicial records, and judicial records are presumed to be public documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). Judicial records are presumed to be public documents because "[o]nce a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *See Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). With respect to discovery material, "material filed with discovery motions is not subject to the common-law right of access, whereas discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right...." *Chicago Tribune*, 263 F.3d at 1312.

"The common law right of access may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.' " *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (quoting *Chicago Tribune*, 263 F.3d at 1309). When determining whether good cause to seal exists, a district court must first look to "the nature and character of the information in question." *Id.* (quoting

Chicago Tribune, 263 F.3d at 1315) (internal quotation marks omitted). When balancing the public's common-law right to access judicial records "against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Id.* (citing *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). The Eleventh Circuit has ruled that a party's privacy or proprietary interest in information only overcomes the interest of the public in accessing the information in certain but limited situations. *Id.* (citing *Nixon*, 435 U.S. at 598).

Here, Defendants failed to properly raise a specific concerns and identify with actual facts what specific documents would cause harm to legitimate privacy interests. The degree and likelihood of injury to Defendants is nonexistent (at least as alleged in their motion). Simply claiming that being called a "child stalker" on social media does not meet the threshold standard. This is especially true because the statement is factually supported by a stipulation between the parties, which puts certain defendants in Noshirvan's hometown in May of 2022 when very specific acts were occurring. Dkt. 141. For example, around May 20-22, of 2022,

pictures were taken of Noshirvan in front of his home (while caring for his child), and sent directly to him in real time. Jennifer Couture was in Mansfield, Pennsylvania when these events occurred. Moreover, Defendants mainly rely on filings in another case, and social media posts of publicly available information made by a non-party as a basis to establish good cause. Defendants arguments miss the mark.

### e. Florida's Sunshine in Litigation Act

Florida's Sunshine in Litigation Act, § 69.081, Fla. Stat. (2024), prevent courts in this State from ordering parties to enter into confidentiality agreements or protective orders if the order  conceals a public hazard or any information concerning a public hazard (i.e., Joseph A. Camp). *See, e.g., Ford Motor Co. v. Hall-Edwards*, 21 So. 3d 99, 102 (Fla. 3d DCA 2009).  Florida's Sunshine in Litigation Act, § 69.081, Fla. Stat., provides in part:

(1) This section may be cited as the "Sunshine in Litigation Act."

(2) As used in this section, "public hazard" means an instrumentality, including but not limited to any device, instrument, **person**, procedure, product, or a condition of a device, instrument, **person**, procedure or product, that has caused and is likely to cause injury. (emphasis added).

(3) Except pursuant to this section, no court shall enter an order or judgment which has the purpose or effect of concealing a public hazard or any information concerning a public hazard, nor shall the court enter an order or judgment which has the purpose or effect of concealing any information which may be useful to members of the

public in protecting themselves from injury which may result from
the public hazard.

(4) Any portion of an agreement or contract which has the purpose or
effect of concealing a public hazard, any information concerning a
public hazard, or any information which may be useful to members
of the public in protecting themselves from injury which may result
from the public hazard, is void, contrary to public policy, and may
not be enforced.

Simply put, the Sunshine in Litigation Act prohibits this  Court from
entering an order which conceals information related to Joseph A. Camp - a public
hazard. § 69.081(3), Fla. Stat. (2004); *Goodyear Tire & Rubber Co. v. Jones*, 929 So. 2d
1081, 1084 (Fla. 3d DCA 2005). The plain language of subsection seven of the Act
requires the trial court "[u]pon motion and good cause shown by a party" to
examine the disputed documents to determine if they "consist of information
concerning a public hazard or information which may be useful to members of the
public in protecting themselves from injury which may result from a public
hazard." § 69.081(7); *Goodyear Tire & Rubber Co. v. Schalmo*, 987 So. 2d 142, 145 (Fla.
2d DCA 2008). If the documents or information meet this standard, the court must
allow their disclosure to the public. *Id.* Because the Act prohibits any court from
entering an order that has the effect of concealing a public hazard including <u>a
person</u>, a  trial court must determine whether its order would have had such an
effect prior to entering the order. *Jones*, 929 So. 2d at 1084.

In other words, when the Sunshine in Litigation Act is raised, the possible existence of a public hazard will limit the courts ability to utilize a confidentiality agreement or protective order. *Schalmo*, 987 So. 2d at 145. Therefore, the possible existence of a public hazard must be determined upfront. *Id.* Otherwise, the court would fail to comply with the essential requirements of the Act. *Id.*

### f. Defendants' one-sided Proposed Confidentiality Order is not narrowly tailored to comply with Rule 26

Equity demands that this Court reject Defendants' proposed Confidentiality Agreement. First, Defendants' robust one-sided Confidentiality Agreement applies in perpetuity. See Dkt. 135-1 ¶12. Any confidentiality order issued by the Court must be limited to, and end with, pretrial discovery. *See In re Alexander Grant & Co. Litig.*, 820 F.2d at 355 (a narrowly tailored "order, if issued upon good cause and limited to pretrial civil discovery, is not subjected to heightened scrutiny").

Second, unlike *In re Alexander Grant & Co. Litig.*, where the parties consented to the agreement, the terms were precisely drawn, and its duration was limited to the pretrial discovery process. Defendants proposed Confidentiality Agreement is not consented to, the terms are overbroad and all encompassing; not precise, and its duration is not limited to pretrial discovery. See Dkt. 135-1, ¶¶ 1,2, 4, 5, 6 (duplicated), 7, 12,18 and pages 15-21.

Third, Defendants proposed Confidentiality Agreement defines "confidential information to mean "<u>proprietary</u> nonpublic documents, information, or <u>other materials produced by a Party</u>, or private and/or <u>sensitive communications</u> or material form which the parties <u>could</u> suffer harm or harassment if publicly disseminated, that are designated by that Party as being "Confidential." Proprietary is defined as something owned, possessed, or held with an exclusive right.[2] The disjunctive "or" renders the definition vague, overly broad, and nearly all encompassing. The phrase "other materials produced by a Party" could quite literally mean any item a party produces. This phrase suffers from the same defects as the term proprietary. Sensitive is defined as "receptive to impressions", "highly responsive" and "calling for tact, care, or caution in treatment."[3] Lastly, the term "could" is indicative of speculation.  It does not particularize or specifically indicate a factual showing that disclosure would result in real injury sufficiently serious to warrant protection. The broad unsubstantiated term fails to satisfy the test.

Fourth, this Court should not impose perpetual continuing jurisdiction. (Dkt. 135-1, ¶¶5, 12,  and 18).

---

[2] Merriam-Webster Dictionary online available at https://www.merriam-webster.com/dictionary/proprietary

[3] Merriam-Webster Dictionary online available at https://www.merriam-webster.com/dictionary/sensitive

### g. Rule 37 Sanctions

Motions to compel discovery under Fed. R. Civ. P. 37(a) are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984). Rule 37, Federal Rules Civil Procedure, provides in relevant part:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.

Under Rule 37(c)(1), sanctions are not required if the non-disclosing party's failure was substantially justified or harmless. "An individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993). A discovery mistake is harmless "if it is honest [ ] and is coupled with the other party having sufficient knowledge that the material has not been produced." *Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1308 (N.D. Ga. 2003).

Whether the opposing party suffered prejudice underlies the harmlessness determination. *See Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010).

## V.    Conclusion

Accordingly, the Court should deny Defendants Motion in its entirety and any other relief this Court deems just and proper.[4]

Respectfully  submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Mr. Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:     (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 03, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
**Law Office of Patrick Trainor, Esq., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327

---

[4] This Court's Civil Action Order states: "If a party unreasonably claims protection for, or opposes protecting, confidential information, the court may impose an award of attorney's fees and costs against the offending party or counsel. See.Fed. R. Civ. P. 37(a)(5)."

Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for all Defendants*
*except Garramone Plastic Surgery,*
*Jennifer Couture, Dr. Ralph Garramone,*
*and OMG Realty, LLC*

Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
Anoosheh Shaikh, Esq.
Florida Bar No. 1039830
**DUANE MORRIS LLP**
201 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Tel: 561.962.2108
HWGurland@duanemorris.com
JJFannin@duanemorris.com
AShaikh@duanemorris.com
PNMendoza@duanemorris.com
JMagarin@duanemorris.com
Attorneys for Garramone Plastic Surgery

James R. Brown, Esquire (217573)
Sonny Romano, Esquire (1026152)
**WICKER SMITH O'HARA**
**McCOY & FORD, P.A.**
100 S. Ashley Dr., Suite 1800
Tampa, FL 33602
Telephone: (813) 222-3939
Facsimile: (813) 222-3938
jbrown@wickersmith.com
sromano@wickersmith.com
Tpacrtpleadings@wickersmith.com
*Attorneys for Dr. Ralph Garramone,*
*Jennifer Couture, and OMG Reality*

*/s/ Nicholas A. Chiappetta*
Nicholas A. Chiappett