```
               UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
                   FORT MYERS DIVISION
```

DANESH NOSHIRVAN, an individual,

       Plaintiff,

v.   Case No: 2:23-cv-1218-JES-KCD

JENNIFER COUTURE, an individual, RALPH GARRAMONE M.D., an individual, RALPH GARRAMONE M.D. P.A., CENTRAL PARK OF SOUTHWEST FLORIDA, LLC, WRAITH, LLC, SULLIVAN STREET INVESTMENTS, LLC, HAIRPIN TURN, LLC, OMG REALTY, LLC, R G WEIGHT MANAGEMENT, LLC, CENTRAL PARK SOUTH, LLC, BRANTLEE, LLC, LEGACY OF MARIE GARRAMONE, LLC, GARRAMONE MARKETING, INC., 5681 DIVISION LLC, THE LAW OFFICE OF PATRICK TRAINOR ESQ. LLC, PATRICK TRAINOR, an individual, and ANTI-DOXING LEAGUE INC.,

       Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on Ralph Garramone M.D., P.A., D/B/A Garramone Plastic Surgery's (Defendant) Amended Motion to Transfer (Doc. #136) filed on September 20, 2024.[1] Danesh Noshirvan (Plaintiff or Noshirvan) filed a Response in Opposition

---

[1] Defendant's original motion to transfer (Doc. #134) is therefore dismissed as moot.

(Doc. # 147) on September 27, 2024. For the reasons set forth below, the motion is denied.

## I.

Noshirvan published a Tik-Tok video of an altercation between Jennifer Couture (Couture) and another person. Noshirvan claims he was subsequently harassed by Couture, Defendant, and others. Meanwhile, Couture and Defendant believe they are the ones that have been harassed by Noshirvan. Defendant and Couture first sued Noshirvan in a case pending before the Honorable Judge Chappell. See Couture v. Noshirvan, Case No. 23-cv-340-SPC-KCD (hereinafter Couture). Noshirvan then filed the present case, suing Defendant, Couture, and others. Both cases are being litigated in the same district but before different judges. Defendant now moves to transfer the present case to Judge Chappell pursuant to Local Rule 1.07(a)(2)(B). The local rule reads that cases may be transferred:

> (A) By the Judge. If the transferee judge consents, the judge to whom the clerk assigns an action can transfer the action at any time and for any reason.
>
> (B) By a Party. If actions before different judges present the probability of inefficiency or inconsistency, a party may move to transfer a later-filed action to the judge assigned to the first-filed action. The moving party must file the motion in the later-filed action and a notice and a copy of the motion in the first-filed action. The proposed transferor judge must resolve the motion to transfer but can transfer the action only with the consent of the transferee judge. The transferee judge can order the clerk to assign to the later-filed action the magistrate judge in the first-filed action.

> (C) By the Chief Judge. If the judge in a first-filed action declines a transfer, the chief judge can transfer a later-filed action to the judge in the first-filed action upon a request from the judge in the later-filed action and after consultation with the judge in the first-filed action. The transferee judge can order the clerk to assign to the later-filed action the magistrate judge in the first-filed action.

M.D. Fla. R. 1.07(a)(2). As a judge of this court has previously stated:

> As the plain text instructs, a motion to transfer is discretionary from start to finish. The party need not move to transfer simply because his later-filed case satisfies the threshold standard of "probability of inefficiency or inconsistency." And nothing in Rule 1.07(a)(2)(B) mandates that a judge in the later-filed action grant a party's request to transfer, even if the party satisfies that threshold standard to seek a transfer. The decision to transfer thus resides with the judge in the later-filed action, but she can only transfer "with the consent of the transferee judge." Id. Aside from the consent requirement, the transfer decision remains purely discretionary. See Daniels v. Gov't Emps. Ins. Co., No. 8:19-cv-2612, 2020 WL 6599420, at *2 (M.D. Fla. Jan. 15, 2020) (Scriven, J.) ("The determination of the issue, however, is vested in the sound discretion in the Court."); Local Rule 1.07(a)(2)(A) (noting that a presiding judge may transfer "at any time and for any reason"); see also United States v. Musselwhite, 709 F. App'x 958, 967 (11th Cir. 2017) (explaining that the Local Rules on transfer "must be read in conjunction"). In exercising this discretion, courts within the Middle District consider a plaintiff's opposition to the transfer, the convenience of the parties, efficiency, and the interests of justice. See Petro Gate, Inc. v. Circle K Stores, Inc., No. 2:20-cv-246, 2020 WL 10458523, at *1 (M.D. Fla. Apr. 27, 2020) (Honeywell, J.)

Health Freedom Def. Fund, Inc. v. Biden, 572 F. Supp. 3d 1257, 1262 (M.D. Fla. 2021)(J. Mizelle)(footnote omitted).

**II.**

Defendant argues that "[t]ransferring this case would be in the best interest of all parties involved, particularly given the overlap of the parties and their counsel, the claims, the underlying facts, and discovery." (Doc. #136, p. 3.) Defendant further argues that "[t]ransferring this case to Judge Chappell will significantly enhance efficiency, as Judge Chappell is already well-versed in the relevant facts and parties." (Id. at p. 4.) Noshirvan opposes transfer on the grounds that the present case has more defendants, more claims, alleges different facts, and is at a different procedural stage. (Doc. #147, pp. 3-4.)

This Court has compared these two cases before:

> [Couture and Defendant] allege that Noshirvan was paid to post videos of Couture exposing her personal information, and that Noshirvan subsequently: posted and reposted multiple videos of Couture and Dr. Garramone with their personal information; messaged Couture that the "fun hasn't even started yet"; chatted online with Couture posing as another person and posted screenshots of their conversation online; purchased native content sponsored advertisements; filed a complaint with the Florida Department of Children and Families (FDCF) alleging Couture was harming her child; urged his social media followers to report Couture to Southwest Florida Crimestoppers for stalking him; sent links of the videos to the social media accounts of Dr. Garramone's patients; and more. This allegedly resulted in the [Couture and Dr. Garramone] and their family receiving hundreds of text messages and multiple phone calls, voicemails, emails, messages on social media, and negative business reviews, people soliciting Couture's mother's house, FDCF receiving hundreds of complaints about Couture regarding her child, FDCF visiting Couture and her child to investigate the allegations, and

> multiple patients and surgeons terminating their relationship with Dr. Garramone.
>
> Noshirvan thereafter filed this lawsuit (hereinafter Noshirvan) alleging that Couture, Dr. Garramone, and others are implicated in the hiring of a third-party, Joseph Camp, to harass and defame Noshirvan, and that either they or Camp have: created an account named "Victims of That Danesh Guy" on various social media platforms; made a video calling Noshirvan a "child predator"; urged people to report Noshirvan for child abuse and neglect; made false claims to child protective services about Noshirvan's child on at least three separate occasions; left negative flyers of Noshirvan and his wife in the restroom of a local butcher shop; published negative advertisements of Noshirvan in local classifieds; put up negative local billboards of Noshirvan; built and published a website called 'www.thatdaneshguy.com'; made false or fake reports to social media platforms about Noshirvan; published hundreds of negative and false posts about Noshirvan; sent hundreds of threatening messages to Noshirvan; got authorities to send a SWAT team to Noshirvan's home on the basis of false reports; sent pictures to Noshirvan of he and his family at their home . . . ; sent threatening emails to Noshirvan's donors; and more.

(Doc. #65, pp. 2-4)(footnote omitted).

Both cases share one common fact (that Noshirvan published a video of Couture), two claims (civil conspiracy and tortious interference with business relationship), and two parties (Noshirvan and Defendant). But this case has an additional sixteen parties, distinct claims like defamation and intentional infliction of emotional distress, and the substance of each shared claim is different, with each side accusing the other side of performing harassing conduct and alleging distinct facts. Additionally, the pleadings and discovery in Couture have closed,

while a new amended complaint was recently filed and discovery is still ongoing here.

Due to the dissimilarities between the two cases, transferring this case to Judge Chappell pursuant to Local Rule 1.07(a)(2)(B) is not warranted. E.g. Biden, 572 F. Supp. 3d at 1262; Parkervision, Inc. v. Qualcomm Inc., No. 6:14-cv-687, 2015 WL 12852308, at *2 (M.D. Fla. Mar. 9, 2015); Daniels v. Gov't Emps. Ins. Co., No. 8:19-cv-2612, 2020 WL 6599420, at *1-2 (M.D. Fla. Jan. 15, 2020); Mariani v. Nocco, No. 8:20-cv-2998, 2021 WL 3172920, at *1-2 (M.D. Fla. July 27, 2021)). As was stated in Biden, "[g]iven these differences, this Court is not convinced that significant economies of effort will result from a transfer." Id. at 1265.

Accordingly, it is hereby

**ORDERED**:

1. Defendant's Amended Motion to Transfer (Doc. #136) is **DENIED**.

2. Defendant's Motion to Transfer (Doc. #134) is **DISMISSED AS MOOT**.

**DONE and ORDERED** at Fort Myers, Florida, this __16th__ day of October, 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record