

EXHIBIT # E

FL GULF NEWS

# License to Doxx: Did a Florida Federal Court Just Sanction Doxxing as a Litigation Strategy?

TikTok harassment court case heats up as federal court green lights the controversial pu disclosure of private materials.

 RICHARD LUTHMANN
OCT 31, 2024

♡ 3     💬     ⟳ 2                                                        Sha

**NOTE**: We are covering the court case between Jennifer Couture and TikTok Conten Producer Danesh Noshirvan. We have been retained by a private party to investigat newsgather, and publish on this story and related matters with the potential for a documentary on Social Media and Cancel Culture. A legal battle is now pending in l Myers Federal Court. The ramifications will determine how the courts deal with mar emerging Internet issues, including "doxxing," the act of publicly providing persona identifiable information about an individual or organization, usually via the Internet and without their consent. We will explore the limits of the First Amendment, the available court recourse, and Cancel Culture generally.



© 2024 Scrivener, LLC · Publisher Terms

Substack · Privacy · Terms · Collection notice
Substack is the home for great culture


OCT 31, 2024

♡ 3     💬     ⟳ 2                                                                    Share

**NOTE**: We are covering the court case between Jennifer Couture and TikTok Content Producer Danesh Noshirvan. We have been retained by a private party to investigate, newsgather, and publish on this story and related matters with the potential for a documentary on Social Media and Cancel Culture. A legal battle is now pending in Ft. Myers Federal Court. The ramifications will determine how the courts deal with many emerging Internet issues, including "doxxing," the act of publicly providing personally identifiable information about an individual or organization, usually via the Internet and without their consent. We will explore the limits of the First Amendment, the available court recourse, and Cancel Culture generally.





# By Richard Luthmann

In a legal fight that now seems poised to play out not just in court but also in the court of public opinion, TikTok creator Danesh Noshirvan and Southwest Florida residents Jennifer Couture and Ralph Garramone continue to lock horns. The lawsuits between the parties, currently being heard in the U.S. District Court for the Middle District of Florida, have garnered attention for their dramatic accusations of harassment, child stalking, and conspiracy.

The latest development in this TikTok harassment court case has raised questions about whether the court's refusal to impose a protective or "gag" order means this fight will be tried as much in the media as in the courtroom—and whether anyone truly benefits from a federal court's apparent "license to doxx" ruling.



TikTok's @ThatDaneshGuy – Danesh Noshirvan

At the heart of the conflict is Noshirvan, a TikTok personality with a substantial following. He is a self-proclaimed "anchor baby" of Iranian immigrants who claims t Couture and Garramone engaged in a campaign of harassment aimed at him and h family. Noshirvan's accusations are sensational. He claims the couple hired a third party, Joey Camp, to stalk him and spread defamatory material, including false clain that he is a "pedophile."

FL GULF NEWS

# Jennifer Couture v. TikTok's Danesh Noshirvan: Ca You Successfully Sue For Online 'Doxxing'?

RICHARD LUTHMANN • DECEMBER 29, 2023



By Richard Luthmann

**Read full story** →

Couture and Garramone, on the other hand, maintain that they are the victims of Noshirvan's relentless online attacks. They initially sued him for legal claims related "doxxing," the act of publicly providing personally identifiable information about an individual or organization, usually via the Internet and without their consent.

According to their claims, Noshirvan is an online predator. His business model is predicated on doxxing. His TikTok posts are designed to incite his mob of Cancel Culture followers to harassment against them and their business, Garramone Plastic Surgery. Couture alleges that she and her family have endured a flood of negative reviews, harassment, unjust criminal charges, and reputational damage as a result o Noshirvan's actions.

License to Doxx: Did a Florida Federal Court Just Sanction Doxxing ...    https://luthmann.substack.com/p/license-to-doxx-did-a-florida-federal

# Legal Strategy and Denied Protective Order

In a recent ruling, the court denied a request from Couture and Garramone to seal discovery materials in the case. Their motion argued that Norshirvan has a history of ruining personal and professional reputations using materials made public. Their lawyers argued nothing would stop Danesh Noshirvan with a license to doxx them with discovery materials they provided. The TikToker would simply have more fodder to embarrass them in the media with materials irrelevant to the case.



Attorney Nick Chiapetta

Litigants on both sides of the case are required to make complete disclosures. Certain materials contain sensitive information, and Noshirvan's attorney, Nick Chiapetta,

acknowledged this much at a recent court hearing, defending the unilateral redaction of Social Security and EIN numbers from tax documents.

Couture and Garramone's legal team argue that unprotected materials would be Noshirvan's instrument to further poison public opinion and the jury pool, and unless a torrent of irrelevant private facts into the digital town square. It would be a court-sanctioned "license to doxx."

U.S. Magistrate Judge Kyle C. Dudek ruled against Couture and Garramone, stating that they had not shown good cause to warrant such a broad protective order.

Sympathetic to the privacy issues involved, Magistrate Judge Dudek denied the request, stating, "[T]here is too little information to discern what precise material is issue and needs protection."

This ruling effectively allows both sides to continue airing their grievances in public.



U.S. Magistrate Judge Kyle C. Dudek

Palpably, Judge Dudek's order also means that the federal courts tacitly sanction doxxing a license to doxx as part of a litigation strategy.

Without a protective order in place, the question remains: Will this case be tried in 1

Case 2:23-cv-01218-JES-KCD    Document 228-18    Filed 01/15/25    Page 8 of 22 PageID
4306

media through threats, intimidation, fear, bullying, and doxxing? And if so, does the
truth even really matter anymore after this Florida federal court ruling?

Couture and Garramone have already expressed concerns that Noshirvan's large so
media platform gives him an unfair advantage in shaping public opinion.

Noshirvan, however, argues that transparency is essential to exposing what he sees
Couture and Garramone's "misconduct."

Further, Noshirvan says the Florida Sunshine Law mandates transparency because c
Joey Camp's involvement. He labels Camp as a "public hazard."

U.S. District Court Judge Sheri Polster Chappell presides over one of the related cas
and has also ruled on critical motions shaping the litigation's trajectory.



U.S. District Court Judge Sheri Polster Chappell

In a previous decision, Judge Polster Chappell dismissed several of Couture's claims
setting the stage for this courtroom saga. Her rulings and those of Magistrate Dude
have heightened the stakes as both sides gear up for the legal and media battles
ahead.

Case 2:23-cv-01218-JES-KCD    Document 228-18    Filed 01/15/25    Page 9 of 22 PageID 4307

# Noshirvan's Allegations and the Response

According to Noshirvan, Couture and Garramone enlisted Joey Camp, whom Noshirvan describes as a "heavily racist white supremacist," to do their dirty work. Noshirvan claims that Camp repeatedly stalked his family, sent him threatening messages, and distributed flyers in his hometown, falsely labeling him a pedophile.

"They stalked my kids!" Noshirvan exclaimed. "Joey Camp was living in Jennifer's gu house, telling people on the internet to call child services on me."



Joey Camp

We spoke to Joey Camp, who claims he is "enjoying the air in Mexico City." Camp dismisses Danesh's claims as "pathological."

"Almost everything he says is false or twisted in some weird manner. But it's his shti It's how he makes money," Camp said.

Camp admitted moving to Belize but not to "flee" from Danesh or anyone else, as Noshirvan previously stated.

"My [soon-to-be ex] wife is from Belize and couldn't get her visa. I moved to Belize stay with her. We've spent tens of thousands with lawyers trying to do everything correctly and continue to do so," Camp said. "If we jumped the border and claimed asylum, she would have no legal problems," he's said tongue in cheek.

Camp also called Danesh a "blowhard" whose advertising revenues have "dried up" since COVID because he's no longer the "mask police."

"Danesh and I kind of do the same thing. We both take down people. The differenc I take down dirty politicians and corrupt public figures with the truth. Danesh hurts regular people for profit," Camp said. "I think Danesh is just plain jealous that I have talent."

License to Doxx ... a Florida Federal Court Just Sanction Doxxing ...   https://ruthm1a1in.substack.com/p/license-to-doxx-did-a-florida-federal



In a recent TikTok video, Noshirvan doubled down on his allegations. He presented
doctored photo of Camp as "The Joker" and revealed conversations with Camp's wi
in Belize.

Noshirvan says Couture and Garramone are "children stalkers" and accuses them of
attempting to tear his family apart. He also claimed that Couture and Garramone ha
lied in court by initially denying any connection to Camp, only to admit later that th
had hired him.

"They wanted to seal all the contents of this case because if the world knows what
actually happened, it might make them look bad," Noshirvan said.

According to Camp, and after a cursory review of the latest TikTok videos, it's clear t
the bad blood between Danesh Norshirvan and Joey Camp runs deep and pre-date
Couture and Garramone's involvement.

Case 2:23-cv-01218-JES-KCD   Document 228-18   Filed 01/15/25   Page 12 of 22 PageID 4310

Staying above the fray of the Camp-Noshirvan spat, Couture and Garramone have consistently denied Noshirvan's claims.



Dr. Ralph Garramone

"Unlike Danesh, we have been honest from day one," said Dr. Garramone. "I detailed the business relationship with Joey Camp under oath at our deposition. He was paid clean up the ugly Internet mess Danesh and his cancel culture mob of followers continue to make."

They insist that they hired Camp as a business and internet reputational consultant and never instructed him to target Noshirvan. Their legal team argues that Noshirva portrayal of the events is exaggerated and driven by a desire to vilify them in the public eye.

## A Battle for Public Opinion or Civilization?

With a license to doxx now an operative litigation strategy, both sides seem to be

Case 2:23-cv-01218-JES-KCD    Document 228-18    Filed 01/15/25    Page 13 of 22
PageID 4311

jockeying for control over how their stories are told. Noshirvan has leveraged his TikTok platform to rally his followers against Couture and Garramone, presenting himself as a victim of an elaborate conspiracy.

However, Couture's attorney, Patrick Trainor, argues that Noshirvan is using his licer to doxx to weaponize his platform, distort the facts, and fuel a misinformation campaign.



Is TikToker Danesh Noshirvan using the social media platform to fuel a misinformation campaign?

"This is not about free speech," Trainor said. "This is about an individual using their social media influence to harass and defame innocent people."

Couture and Garramone's defense suggests that Noshirvan has used his TikTok following to harass them, encouraging others to post negative reviews of Garramor Plastic Surgery and spreading defamatory material.

With a license to doxx as the state of play, Couture and Garramone may be at a disadvantage in the public opinion arena. Noshirvan's ability to broadcast his versic

of events to millions of followers already allow him to frame the narrative in his favo
Now, with a license to doxx sensitive and potentially intimate personal information,
Couture and Garramone face an undefendable media beast.

One of the most curious points is how Judge Polster Chappell and Magistrate Judge
Dudek could effectively sanction Noshirvan's continued doxxing practices when he
previously targeted other members of the federal judiciary.

In 2022, the TikToker faced heavy backlash after doxxing several U.S. Supreme Cour
justices following the **_Dobbs v. Jackson Women's Health Organization_** decision. I
the wake of the ruling overturning **_Roe v. Wade_** and effectively sending the abortio
rights debate to the states, Noshirvan published personal information about the
justices, including their home addresses and family details, urging his followers to
"voice their dissent."



12/11/2024, 1:40 PM

Many argued that this exposure put the justices and their families at risk, raising significant concerns over privacy, security, and the boundaries of online protest.

While some defended Noshirvan's actions as an exercise of free speech, many, including social media companies, condemned it as a dangerous form of harassment. Facebook and Twitter permanently suspended Norshirvan for violating "community standards."

TikTok, whose parent company Byte Dance is owned by the Chinese Communist Party supported Noshirvan's assault on the American Judiciary. They were the only major social media platform not to de-platform Noshirvan. Instagram initially banned him but has since reinstated him. TikTok has assigned Noshirvan a "business manager" t his account, and they profit from his activities monetarily and in other ways.

"TikTok is one gigantic active measure against the United States and its interests," s a Northern Virginia-based intelligence consultant who did not wish to be named. "Their business model is division, diversion, and disinformation within the American populace."

TikTok presents several critical threats to national security and astounding disinformation capabilities, including collecting an unprecedented body of media ic for training advanced deepfake-generating AI systems.

As the case progresses, whether Couture and Garramone can successfully counter Noshirvan's (and potentially the Chinese Communist Party's) public relations strateg remains to be seen.

# The Role of DARVO and Bullying

Couture and Garramone's legal team has raised significant concerns that they are n public officials or members of the federal judiciary, who have the power of the government to combat what Noshirvan labeled as "dissent" when he incited the

Counter Culture mob against SCOTUS.

The problem goes deeper because Couture and Garramone are private citizens, and there is no public value to the debate over institutions like the Supreme Court in the TikToker's actions against them. Moreover, Noshirvan is not expected to release public facts. Information obtained through discovery is, by its very definition, non-public.

"This is intentional, calculated, coordinated, and malicious activity. It's a business to plain and simple," Couture and Garramone's attorney, Patrick Trainor.

Danesh Noshirvan employs DARVO tactics—Deny, Attack, Reverse Victim, and Offender. He is also using his social media platform as a tool for bullying non-public figures and inciting harm against them.

DARVO, a manipulation strategy often used by abusers, is designed to shift blame onto the victim and cast the perpetrator as the real sufferer. Couture's defense argues that this is precisely what Noshirvan is doing, flipping the script by accusing them of the very harassment that he is responsible for.

"Noshirvan's entire approach is about making himself the victim while painting Jennifer Couture and her husband as the offenders," Trainor stated. "He's using his platform to reverse the roles, mislead his audience, and spur them to action."



12/11/2024, 1:40 PM



This billboard appeared in Mansfield, Pennsylvania, near to where Danesh Noshirvan lives.

The defense believes that Noshirvan is attempting to weaponize public opinion by portraying Couture and her family as aggressors. They claim it's Noshirvan who is instigating the harassment. Trainor pointed to allegations and threats related to a billboard that appeared in Mansfield, Pennsylvania, near where Norshirvan lives. Trainor says Danesh is using the billboard's presence as a pretext to launch attacks.

| 1× | 0:00 | | -0:43 | ▶ |

Noshirvan, with a "slurry voice" left a threatening message for Trainor in May, threatening him and his legal license. Since then, Noshirvan has sued the lawyer.

The concerns go beyond DARVO tactics. Couture's team is also accusing Noshirvan

License to Doxx Did a Florida Federal Judge's Preliminary Injunction Ruling Permit Doxing on... https://luthmann.substack.com/p/license-to-doxx-did-a-florida-federal

being an online bully, wielding the power of his nearly 2 million TikTok followers to unfairly target and intimidate those he disagrees with. The imbalance of power crea by his vast social media reach raises questions about whether this case can ever be fairly tried in the "court of public opinion."

As Dr. Phil McGraw has pointed out, bullying arises from an imbalance of power.

"To be a bully, there has to be an imbalance of power. When there's not, it is just ca a debate," McGraw says.

With Noshirvan's massive online influence, Couture and her legal team argue that t playing field is far from level.

"When you attack a citizen, and you use the power of the Internet, you use mob mentality, you incite people to gang up and cause boycotts, then it is beyond ugly,' Phil has explained, summarizing the concerns Couture's legal team is expressing ab Noshirvan's tactics.



License to Doxx – Did a Florida Federal...

"There is an imbalance of power there, and it is time that every one of us close rank
We have to stop this now. It's time that we push back against cancel culture. It's tim
that we push back against intimidation tactics."

Couture and Garramone's team argues that Noshirvan's online presence allows him
shape the narrative, potentially swaying public opinion before the courts can weigh
on the facts.

According to the lawyers, what began as a legal dispute has now become an online
smear campaign. Noshirvan allegedly incites his followers to urge "anyone who will
listen" to harass and boycott Garramone Plastic Surgery and further damage Coutur
Garramone, and their family's reputation.



Jennifer Couture

For Couture, this media-driven assault feels like a form of bullying, one that goes fa
beyond a simple legal disagreement or a middle school spat.

"[Danesh] continues to harm my family. Everything he falsely claims that Ralph and
have done to him, he has done to us," Couture said. "He's the worst kind of bully
because he's protected. The authority figures we are supposed to trust say there is

12/11/2024  1:40 PM

'nothing they can do' to protect our teenage daughter from him and his cancel cult social media mob. But simply ignoring them does not make them go away."

Whether Noshirvan's actions can be legally classified as harassment or protected free speech is a question for the courts. However, in the court of public opinion, Couture and Garramone argue that Noshirvan's vast social media influence gives him an unf advantage, enabling him to turn a legal case into a full-scale public relations battle with the federal court's stamp of approval of doxxing practices.

# Where Does the Case Go from Here?

As the legal proceedings progress, both sides are preparing for what could be a lengthy and contentious trial. Gag orders are generally disfavored, and the remedy speech is more speech.

However, the lack of even a limited protective order ensures that sensitive informat from discovery will continue to be strewn publicly across social media.

Here, media manipulation is a one-way street. Noshirvan has already doxxed the venerated public servants on the U.S. Supreme Court. His *chutzpah* has no limits, particularly with the backing of nearly 2 million followers, the power of TikTok, and palpably foreign powers hostile to the American way of life.

The federal court's inaction only fuels the fiery public battle between Noshirvan, Couture, and Garramone. The rules of engagement are not legal or judicial. Instead, the only "regulation" to date has been subject to the unreviewable judgment of the major social media companies, one of which is a Chinese Communist Party cut-out. This is problematic for the appearance of impropriety in the federal judiciary, particularly in the State of Florida, where TikTok is under ban and national security scrutiny. The public expects the courts would take a larger role.

More importantly, is the court inviting further doxxing against SCOTUS and other

Case 2:23-cv-01218-JES-KCD    Document 228-18    Filed 01/15/25    Page 21 of 22
PageID 4319

judicial officials?

For now, Noshirvan appears to have the upper hand in controlling the narrative because of his social media following. His TikTok videos continue to draw attention, while Couture and Garramone's attempts to keep Norshirvan "honest" and within "community guidelines" have been thwarted.

However, with the courts yet to rule on the substantive issues, it remains unclear which side will ultimately prevail.

As the court of public opinion weighs in, both sides must navigate the fine line between free speech and harassment. With so much at stake, this case could set a precedent for how the law addresses online defamation, harassment, and doxxing in the age of social media.

POLL

**Who do you think has the advantage in the Couture vs. Noshirvan legal battle?**

Danesh Noshirvan

Jennifer Couture

It's too close to call

Public opinion will decide

The courts will have the final say

Case 2:23-cv-01218-JES-KCD   Document 228-18   Filed 01/15/25   Page 22 of 22
PageID 4320

| Type your email... | Subscribe |
|---|---|

🔒 **Message Richard Luthmann**



3 Likes  ·  2 Restacks

← **Previous**

**Next**

## Discussion about this post

**Comments**     **Restacks**

Write a comment...