## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DANESH NOSHIRVAN
an individual,

                                            CASE NO:
                                            2:23-cv-01218-JES-NPM

        Plaintiff,

vs.

JENNIFER COUTURE, et'al,

        Defendant(s).

_____/

## PLAINTIFF DANESH NOSHIRVAN'S RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED JOINT MOTION FOR ENTRY OF A PROTECTIVE ORDER

Plaintiff, Danesh Noshirvan ("Noshirvan"), files this Response in Opposition to Defendants' Renewed Joint Motion For Entry of Protective Order, and states as follows:

### I.    Introduction

Defendants argue that they should be able to disseminate Noshirvan's Confidential Information to Joseph A. Camp ("Camp") and Richard A. Luthmann ("Luthmann"). See Dkt. 244, p. 7. Defendants do not argue how sharing Noshirvan's minor children's personal identifying information or Noshirvan's Confidential Information (as defined by Paragraph 1.(a)-(e)) with Camp or Luthmann is relevant or even necessary to this litigation. Instead, they attempt to

force disclosure of such information solely to harass and oppress Noshirvan. Counsel for Ralph Garramone M.D., P.A. d/b/a Garramone Plastic Surgery ("GPS"), Julian Jackson-Faninn, expressly stated in open court on January 24, 2025, that Camp could fall into the disclosure exceptions in paragraphs 7.iii, 7.vi., and 7.vii. See Dkts. 224, p. 13-4, and 244-1. Mr. Jackson-Faninn doubled down on that position in GPS's motion. See Dkt. 244, p. 13-4.[1] Arguably, Luthmann could fall into the same provisions. Essentially, Defendants' requested result would afford Defendants protection as stated in Paragraph 1. see Dkt. 244-2. But completely deny Noshirvan any protection at all. Defendants' position defies logic and runs contrary to the only reason Noshirvan would ever agree to any confidentiality provision — to protect his children.  Any order adopting such an obviously biased position would likely be overturned on interlocutory appeal.

To disguise the frailty of their arguments, Defendants claim that "the parties [only] harmed each other,…, by social media postings." Defendants understatement downplays reality.  On May 05, 2022, one day prior to the date Camp received payment from GPS (May 06, 2022), Camp made his first contact with Noshirvan via  text, direct, and instant message. See, e.g. 2:23-cv-00340, Dkt. 166-8. Camp ultimately sent hundreds of text, direct, and instant messages to

---

[1] Noshirvan interprets GPS's request to share Confidential Information with Camp as an admission that GPS and Defendant have been, and still are, working with Camp.

Noshirvan and family. Camp's actions progressed to Noshirvan's wife. Camp (1) contacted Noshirvan's wife's place of employment to have her fired, (2) left threatening voicemails, (3) publicly posted personal identifying information ("PII") like social security numbers, (4) made a video requesting his followers to report Noshirvan to Child Protective Services, (5) in that same video doxed Noshirvan by providing Noshirvan's residential address, (6) directed threats of physical violence directly Noshirvan's wife and minor children, (7) attempted to intimidate, harass, extort, and threaten Noshirvan's parents, Noshirvan and his immediate family, including minor children who are all under the age of seven years old, and (8) engaged interstate hate crimes including racial cyber harassment possibly in violation of 18 U.S.C. § 2261A, 18 U.S.C. § 875, 18 U.S.C. § 223, and 18 U.S.C. § 1028.[2] A true and correct copy of Noshirvan's Declaration is attached as **Plaintiff's 1**. (9) Camp has also engaged in witness intimidation and harassment. A true and correct copy of Brad LaPorte's declaration is attached as **Plaintiff's 2**. And this is just a brief overview. Significantly more has occurred.

In October of 2024, Richard A. Luthmann ("Luthmann") was hired by a private "third party", who is believed to be one or more of the Defendants,  to write libelous statements on his personal Substack.com digital bulletin board in

---

[2] In May of 2022, Camp was residing in or near Fort Myers, Florida. Camp did not permanently move to Belize until after August/September of 2022.

violation of 16 CFR § 255.5. Luthmann's libelous statements are predicated upon
his review of confidential materials including Noshirvan's expert witness reports
that were only disclosed to counsel for the Defendants. Thus, only the Defendants
and their counsel would have had access to those materials to disseminate same
to Luthmann and Camp.  A true and correct copy of Nicholas A. Chiappetta's
declaration is attached as **Plaintiff's 3.**

Additionally, both Camp and Luthmann have made, or implied, death
threats directed at Noshirvan and family. See  Dkt. 228-9. As recently as January
08, 2025, Noshirvan's sister-in-law received a real-life threat in the form of a
package. *Id.* The mysterious package contained a 4-page letter with citations to
Noshirvan's expert, Dr. Gordon's report. *Id.*  Dr. Gordon's report was
disseminated by one of the Defendants to Camp and Luthmann. On January 30,
2025,   Dr. Gordon   received   an   email   from   email   address
Yakusatiktok@proton.me.[3] See Plf.'s 3.

Despite what is obvious, Defendants ask this Court to adopt their proposed
Protective Order that does nothing to prevent dissemination of Noshirvan's

---

[3] Patrick Trainor, Aaron Alfano, Harvey Gurland, Julian Jackson-Fanin, Nick Gounaris, Jennifer Couture,
Richard Luthmann, and the undersigned were included on the email. Dr. Gordon interpreted the email to
constitute witness tampering. Also, two minutes prior to the previously mentioned email,
YakusaTiktok@proton.me, sent everyone listed except Dr. Gordon an email. In that first email, the user
behind Yakusatiktok@proton.me haphazardly attempted to make a defense for Defendants. Given
Camp's attitude and hand gestures at the Zoom hearing on January 28, 2025, it is not unreasonable to
believe that yakusatiktok@proton.me is just Camp interfering with the proceeding again. Camp has
already interfered on multiple occasions including attempt to bias the Court against Noshirvan and the
undersigned, and witness intimidation. See 2:23-cv-0340, Dkt.199-1 and Plaintiff's 2.

Confidential Information to Camp or Luthmann. It does not protect Noshirvan's innocent minor children from revictimization and provides no recourse to third parties for dissemination. Defendants should be ashamed. Period.

## II.    Procedural and factual Background

1.    Noshirvan filed a muti-count lawsuit alleging a civil conspiracy, aiding and abetting, and agency in relation to his claims for defamation, IIED, tortious interference, and misappropriation of likeness. See Dkt. 1 and 26. On September 23, 2024, Noshirvan filed his Second Amended Complaint ("SAC"). See Dkt. 139.

2.    On September 20, 2024, Defendants' filed a Joint Motion for Protective Order to Implement Confidentiality Agreement. See Dkt. 135. In that request, they ask this court to bootstrap an incongruent proposed Confidentiality Agreement through a Rule 26 protective order. *See id.* The Court denied the request. Dkt. 158.

3.    Defendants, again, rely heavily on 2:23-cv-0340 ("0340 Case") to support their argument. See Dkt. 135, ¶¶5.a., and 5.b. *Cf.* Dkt. 244. Defendants also reiterate the previous assertion that the "parties' respective only made harmful social media posts." See Dkt. 135, ¶4, *Cf.* Dkt.244.  That is not true. See Plt.'s 1 and 2.

4.    However, this Court has acknowledged that Camp has systematically engaged in unsolicited email communications, which Noshirvan believes was done to taint the Court's opinion of him and the undersigned. See 2:23-cv-0340, Dkt. 199-1. These emails are external indicators of Camp's methods.

5.    Camp has been directly linked and inextricably tied to GPS, Garramone, Couture, and Trainor. See 0340 Case, Dkt. 166-8, Plt.'s 2 and 6, and Jennifer Holliday's Declaration attached as **Plaintiff's 7**.

6.    Camp has threatened, harassed, intimidated, and attempted to extort expert witness, Brad LaPorte. See Plt.'s 2. And has done so to Robson Powers. See 0340 Case, Dkts. 31 and 34.  S*ee. e.g., Quiroz v. Superior Building Maintenance, Inc.*, Case No. 06–21594–CIV, 2008 WL 3540599, *1 (S.D.Fla. Aug. 12, 2008)(finding sufficient evidence of attempted witness tampering) and *Smart v. City of Miami Beach, Florida*, 933 F.Supp.2d 1366, 1380–81 (S.D.Fla.2013)(same).

7.    Camp's phone number and email addresses have been verified. A true and accurate copy of Meta's declaration is attached as **Plaintiff's 8**.

### III.    Defendants proposed Confidentiality Order is not workable.

#### a. Defendants do not understand the framework of the Confidentiality Order they wrote

The only matters that may be designed as confidential are:

(a) financial data of a Party, including but not limited to, tax returns, credit card statements, bank account statements, accounting statements or other financial statements and records, invoices, checks, payments; (b) personal identifying information, i.e., name, telephone number, mailing address, or email addresses regarding the Parties, any family member of the Parties or a disclosed witness or their family members; (c) HIPAA protected information; (d) personal identifying information, i.e., telephone number, mailing address, or email address regarding any employee(s) of any Party, including the contents of any

employees files held or created by any Party, and (e) any expert reports.

A true and correct copy of Plaintiff's proposed Confidentiality Order attached as **Plaintiff's 4** and Defendants' is attached as **Plaintiff's 5**.

Facially, the only matters that may be designated as Confidential are: financial, personal identifying, HIPAA protected information, and expert reports. This is extremely narrow (as intended). Paragraph 2 simply distinguishes between a designating and non-designating party. Defendants new proposed Confidentiality Order erroneously deletes Plaintiff's paragraph 3, which reaffirms that "[a] Designating Party may, subject to the provisions of paragraph 1 above and other terms of this Order, designate as "Confidential" any documents it in good faith and with good cause Confidential Information that falls into one of the enumerated categories in paragraph 1(a)-(ee)." Compare Plaintiff's 4 and 5. Paragraph 9, in Plaintiff's proposed Confidentiality Order, expressly prohibits Noshirvan's Confidential Information from being disclosed, disseminated, or shared with Camp or Luthmann because paragraph 13 in Plaintiff's proposed Confidentiality Order expressly provides that a designating party is not limited in the use of their own materials. See Ex. 4. Nothing prevents Defendants from sharing properly redacted documents with Camp or Luthmann. Lastly, both proposed Confidentiality Orders limit enforcement of the to the "final disposition of this litigation."

### b. Noshirvan's proposed provisions

In paragraph 1, Noshrivan requires the following language:

**"Joseph A. Camp ("Camp") and Richard A. Luthmann ("Luthmann') are expressly excluded from the definition of a Party employee and no Party may designate as Confidential, their information except that GPS may mark as confidential HIPAA protected information related to Luthman.**

The reasoning for this provision is twofold. First, due to the nature of this case, Camp's PII is necessary to establish that he is the end user behind social media, email, and phone accounts. Thus, every filing where Camp is discussed would likely need to be filed twice. Once redacted and once under seal. The same rationale applies to Luthmann's alter ego email accounts. As it relates to this case, such a requirement would create onerous burden on Noshirvan. Second, Defendants' proposed Confidentiality Order is not limited solely to pretrial discovery; it is enforceable until the final disposition is entered. This superimposes a heavy-handed burden on Noshirvan while simultaneously denying the general public its common-law right to access public judicial records. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)(distinguishing access of public documents for pretrial discovery and post discovery motion practice); *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992)(when a court attempts to deny access to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling government interest, and is narrowly tailored to that interest). Simply put, the Defendants have not made "a showing of extraordinary circumstances" to allow for the omission of this provision. As such, Defendants proposed Confidentiality Order is not narrowly tailored to protect a "compelling interest."

Instead, Defendants list a host of arguments. See Dkt. 244, p. 8. All those arguments fail. The provision is clear. Defendants protected information will be redacted prior to filing and Camp as a non-party has no legally recognized privacy right (previously acknowledged by the Court). Further, Camp has already self-disseminated his PII all over the entire internet. Any inquiry into Luthmann would go Noshirvan's damages, which are still accruing. And Luthmann is not recognized as Journalist in Florida. Noshirvan will not seek Luthmann's medical records from GPS.

### c. The Good Cause as it relates to Protective Orders require evidence

 GPS appears confused as to why Noshirvan would require the following provision in Paragraph 3:

> The term good cause as utilized herein requires a factual showing in the form of admissible testimony explaining the basis for the designation from a person with personal knowledge.

"A protective order should be entered only when the movant makes a particularized showing of 'good cause' and *specific demonstration of fact* by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality; generalities, conclusory statements and unsupported contentions do not suffice." *Schwanke v. JB Med. Mgmt. Sols., Inc.*, No. 5:16-CV-597-OC-30PRL, 2017 WL 3034039, at *6 (M.D. Fla. July 18, 2017) (quoting *E.E.O.C. v. v. DiMare Ruskin, Inc.*, No. 2:11-CV-158-FTM-99, 2012 WL 12067868, at *3 (M.D. Fla. Feb. 15, 2012) (citing *Gulf Oil Company v. Bernard*, 452 U.S. 89, 102 n. 16, (1981)); *Chicago Tribune Co.*, 263 F.3d at 1315 (11th

Cir. 2001)(good cause for a protective order is a factual matter that requires evidence).

Thus, Noshirvan's inclusion of the aforementioned provision in paragraph 3, is no more onerous than the actual standard applied by the Court. Additionally, and in light of this  Court's pronouncement in open court, Noshirvan omitted the provision in bold on page 9 of docket 244 that imposes liability on a party for a third party's dissemination of Confidential Information.

### d. Paragraph 4 on Plaintiff's proposed Confidentiality Order is absolutely necessary to prevent real life harm to Noshirvan's minor children

Paragraph 4 states:

 The Parties agree that personal identifying information, including names and social security numbers, of their minor children under 14 years of age, need not be produced or may be redacted prior to delivery of discovery documents. The Parties agree that their minor children should be protected  and that in some cases, the children should not be revictimized. It is the intent of this provision to keep minor children identity a secret from all other Partys to prevent revictimization.

In 2022, Noshirvan had to temporarily move his family out of their home as result of Defendants' and Camp's conduct. See Plf.'s 1. More recently, Noshirvan's sister-in-law received a 4-page letter containing quotes to Dr. Gordon's HIPAA protected medical report concerning Noshirvan and his wife. *Id.* Camp and Luthmann have both made or implied death threats to Noshirvan and Family. See Plf. 1 and 2. A recently as January 30, 2025, Camp again, doxed Noshirvan, his

family, and his landlord on Gab.com.[4] Camp also engaged in witness tampering and intimidation with information he received directly from the Defendants. See Plf.'s 2. *See also, Santana v. Telemundo Network Group LLC*, No. 6:20-CV-1157-WWB-LHP, 2022 WL 22873134, (M.D. Fla. Mar. 10, 2022), report and recommendation adopted, No. 6:20-CV-1157-WWB-LHP, 2022 WL 22873104 (M.D. Fla. May 17, 2022). Camp has also consistently emailed this court and disseminated Noshirvan and family's PII via email and social media. Protection of Noshirvan's minor children's PII is not only necessary, but imperative to prevent revictimization. Patrick Trainor ("Trainor") published a billboard advertisement with Noshirvan's face on it in or near Noshirvan's hometown. Noshirvan's kids saw the billboard. The whole town saw the billboard.

Defendants argument that section 1(b) protect family members of a party glosses over the fact that the proposed Confidential Protective Orders are only enforceable until a Final judgment is rendered. Thus, there is nothing prevent dissemination of Noshirvan's minor children's information once this case ends. Being a Plaintiff does not mean that Noshirvan has to subject his children to harm. Unlike Defendants' assertion, this is not a game of "gotcha." See Dkt. 244, p.11. More recently, on January 28, 2025, Camp personally appeared via Zoom at a court hearing. A true and correct copy of the January 28, 2025 hearing transcript is

---

[4] The redactions were made by the undersigned not Camp. See Plf.'s 1.

attached as **Plaintiff's 6**.  In that hearing, Camp confirmed communications with Trainor. Plt. 6, p. 94. Camp also confirmed that he had inside knowledge regarding Noshirvan's expert witness, Bard LaPorte. See Plt. 6.,  p. 96 (calling LaPorte a "lair."); *Cf.* Plt's 2 (testimony regarding witness intimidation). Camp's identity was self-confirmed when he turned on the video and gave everyone the middle finger (acknowledged by this Court). *Id.* at p. 97. Camp has also tried to interfere with Defendants' hatred towards Noshirvan will not cease just because this case concludes. This Court must protect Noshirvan's minor children's PII from Defendants.

> ### e.  Because neither protective order contains a mechanism to prevent disclosure by excepted third parties, section 10.ii, must limit "legal counsel" to legal counsel for the Parties in this proceeding

GPS's argument is confusing and meritless. See Dkt. 244, p. 12. Noshirvan limitation in 10.ii does not prevent legal counsel (who filed a notice of appearance), their assistants, staff, and litigation support service providers from "sharing information." *See id.*  Further, Defendants are free to share their own confidential information. See Exhibit 4, ¶14. What section 10.ii prevents is disclosure of Noshirvan's confidential information to counsel and law firms who have not made an appearance in this case. Without this provision, Defendants may simply disseminate Noshirvan's PII through backdoor channels without recourse.

Interestingly, Defendants argue that this provision implicates the 0340 Case. But Duane Morris is counsel for GPS in both cases, and neither proposed Confidentiality Order extends to the 0340 Case, which is currently stayed.[5]

## IV. Federal Rule of Civil Procedure 26(c) has limitations

### a. The U.S. Constitution Prohibit This Court From Compelling Noshirvan To Agree Defendants Proposed Confidentiality Agreement.

The United States Supreme Court has accepted the notion that liberty of contract is an enforceable constitutional right under the due process clause. In *Frisbie v. United States*, 157 U.S. 160 (1895), the Court, speaking through Justice David Brewer, offhandedly declared that "generally speaking, among the inalienable rights of the citizen is that of the liberty of contract." The freedom to contract "is indeed a constitutionally protected right." *City of Pompano Beach v. Beatty*, 222 So. 3d 598, 600 (Fla. 4th DCA 2017)(citing *Nw. Nat'l Life Ins. Co. v. Riggs*, 203 U.S. 243, 252–53, 27 S.Ct. 126, 51 L.Ed. 168 (1906)). And because of this constitutionally protected freedom, "contracts are voluntary undertakings, and contracting parties are free to bargain for—and specify—the terms and conditions of their agreement." *Beatty, 222 So. 3d 598.* It is not the province of the court to second-guess their wisdom or "substitute [its] judgment for that of the parties…."

---

[5] Discovery is closed in the 0340 Case. The Parties were briefing dispositive motions prior to this Court's "stay" of the proceeding in hopes the matter resolved. Defendants are not looking to resolve either case, and the Court's stay in the 0340 Case simply prevents Noshirvan from disposing of the summarily. The stay should be lifted as the reason for the stay is no longer valid or intended by the Parties.

*Id.* Furthermore, this Court's own Civil Action Order acknowledges that the "court cannot compel parties to enter into a confidentiality agreement." Dkt. 25, P. 5, Fn. 3.

While this Court could utilize Rule 26(c) to fashion an appropriate remedy, there is no viable mechanism that would allow the Court to adopt Defendants proposed Confidentiality Order verbatim and not impede upon constitutionally protected ground. In that same vein, the Court's authority as provided by Rule 26 is not without its limits. Fed. R. Civ. P. 26(c)(1)(G).

### b. Federal Rule of Civil Procedure 26(c) does not expressly provide authority for the Court to implement Defendants' proposed Confidentiality Order as written

Rule 26(c) permits a court upon motion of a party to make a protective order requiring "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed.R.Civ.P. 26(c)(G). The prerequisite is a showing of "good cause" made by the party seeking protection. *See id*. Federal courts have superimposed a balancing of interests approach for Rule 26's good cause requirement. *Farnsworth v. Procter & Gamble, Co.*, 758 F.2d 1545, 1547 (11th Cir.1985). This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential. *Id.* The party seeking a protective

order bears the burden of showing good cause for the order to issue. *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, Ltd., 529 F. Supp. 866, 890 (E.D. Pa. 1981).

In order to establish good cause, it must be shown that disclosure will work a clearly defined and serious injury, *United States v. Lever Bros. Co.*, 193 F.Supp. 254 (S.D.N.Y.1961), cert. denied, 371 U.S. 932, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962),43 and that the party resisting disclosure "will indeed be harmed by disclosure." *Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 409 (N.D.N.Y.1973); *Smart Communications Holding, Inc. v. Correct Sols., LLC*, 8:20-CV-1469-JLB-JSS, 2022 WL 1081564, at *2 (M.D. Fla. Apr. 11, 2022)(restating Rule26(c)'s standard).   In order to show good cause, the injury which allegedly will result from disclosure must be shown with specificity, and conclusory statements to this effect are insufficient. *United States v. Hooker Chem. & Plastics Corp.*, 90 F.R.D. 421 (W.D.N.Y.1981); *Cipollone v. Liggett Group, Inc.*, 113 F.R.D. 86, 90 (D.N.J. 1986)(Rule 26(c), as made plain by the Third Circuit, requires more than broad allegations that release will harm their overall standing for a showing of good cause).

Defendants' argument fails to substantiate a particularized and significant injury as required by Rule 26(c). Defendants also fail to support their claim with actual evidence.  Defendants have not specifically alleged and made a factual showing that harmful discovery materials were improperly disseminated. Unadorned allegations are insufficient. Defendants concerns stem from a different

case (0340 Case). Defendants only allege  that properly filed "pleadings, docket entries, orders, affidavits or depositions," which is subject to common-law right of access, *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987), is somehow improper. It is not. Defendants conclusory statements about the potential perceived harm caused by dissemination of publicly available information does not reach the threshold for "good cause" under the Rule 26. Defendants' showing simply does not establish that their substantial rights will be so tangibly prejudiced that injustice will result unless the discovery obtained in this litigation is limited to it. Defendants' proposed Confidentiality Order  does not equally protect Noshirvan in the same manner as it protects Defendants.

### c. A party may obtain a protective order only if it demonstrates with evidence that the basis for the protective order falls within one of the categories enumerated in Rule 26(c)

The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir.1985). Rule 26(c) provides that upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking a protective order has the burden to demonstrate good cause and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the need for a protective

order. *U.S. v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978); *Tillman v. C.R. Bard, Inc.*, 297 F.R.D. 660, 664 (M.D. Fla. 2014)(relying on declarations that accompany the motion); *Schwanke,* No. 5:16-CV-597-OC-30PRL, 2017 WL 3034039, at *6 (M.D. Fla. July 18, 2017)(requiring a specific factual demonstration by affidavit or testimony of a witness with personal knowledge, of the specific harm that would result from disclosure or loss of confidentiality); *E.E.O.C.,* No. 2:11-CV-158-FTM-99, 2012 WL 12067868, at *3 (M.D. Fla. Feb. 15, 2012)(same); *Gulf Oil Company*, 452 U.S. 89, 102 n. 16, (1981)(same); *Chicago Tribune Co.*, 263 F.3d 1304, 1315 (11th Cir. 2001)(same).

Rule 26 supplies the starting point for analyzing the merits of a proposed protective order, it does not end the inquiry. Defendants' lack of evidence ends that inquiry.

### d. Right To Public Access

The general public possesses a common-law right to access judicial records, and judicial records are presumed to be public documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also Chicago Tribune,* 263 F.3d at 1311. "Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *See Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). With respect to discovery material, "material filed with discovery motions is not subject to the common-law right of access, whereas

discovery material filed in connection with pretrial motions that require judicial resolution of the merits is subject to the common-law right...." *Chicago Tribune*, 263 F.3d at 1312.

"The common law right of access may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.' " *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (quoting *Chicago Tribune*, 263 F.3d at 1309). When determining whether good cause exists, a district court must first look to "the nature and character of the information in question." *Id.* (quoting *Chicago Tribune*, 263 F.3d at 1315) (internal quotation marks omitted). When balancing the public's common-law right to access judicial records "against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Id.* (citing *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). The Eleventh Circuit has ruled that a party's privacy or proprietary interest in information only

overcomes the interest of the public in accessing the information in certain but limited situations. *Id.* (citing *Nixon*, 435 U.S. at 598).

Here, Defendants failed to properly raise specific concerns and identify with actual facts what specific documents would cause harm to legitimate privacy interests. The degree and likelihood of injury to Defendants is nonexistent (at least as alleged in their motion). Simply claiming that being called a "child stalker" on social media does not meet the threshold standard. This is especially true because the statement is factually supported by a stipulation between the parties, which puts certain defendants in Noshirvan's hometown in May of 2022 when very specific acts were occurring. Dkt. 141. For example, around May 20-22, of 2022, pictures were taken of Noshirvan in front of his home (while caring for his child), and sent directly to him in real time. Jennifer Couture was in Mansfield, Pennsylvania when these events occurred. Defendants mainly rely on filings in another case, and social media posts of publicly available information made by a non-party as a basis to establish good cause. Defendants arguments miss the mark.

### e. Defendants' one-sided Proposed Confidentiality Order is not narrowly tailored to comply with Rule 26

Equity demands that this Court reject Defendants' proposed Confidentiality Order. Any confidentiality order issued by the Court must be limited to, and end with, pretrial discovery. *See In re Alexander Grant & Co. Litig.*, 820 F.2d at 355 (a narrowly tailored "order, if issued upon good cause and limited to pretrial civil

discovery, is not subjected to heightened scrutiny"). Unlike *In re Alexander Grant & Co. Litig.*, where the parties consented to the agreement, the terms were precisely drawn, and its duration was limited to the pretrial discovery. Defendants proposed Confidentiality Order contains none of those elements.

## V.    Conclusion

Accordingly, the Court should deny Defendants' Motion in its entirety, and adopt Noshirvan's Proposed Confidentiality Order or fashion an order preventing the dissemination of Noshirvan's minor children's PII,  and any other relief this Court deems just and proper.

Respectfully  submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Mr. Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 03, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:

Patrick Trainor, Esquire
**Law Office of Patrick Trainor, Esq., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for all Defendants*
*except Garramone Plastic Surgery,*
*Jennifer Couture, Dr. Ralph Garramone,*
*and OMG Realty, LLC*

Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
Anoosheh Shaikh, Esq.
Florida Bar No. 1039830
**DUANE MORRIS LLP**
201 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Tel: 561.962.2108
HWGurland@duanemorris.com
JJFannin@duanemorris.com
AShaikh@duanemorris.com
PNMendoza@duanemorris.com
JMagarin@duanemorris.com
Attorneys for Garramone Plastic Surgery

Aaron Alfano, Esq.
Brian P. Henry, Esq.
Rolfes Henry Co., L.P.A.
5415 87th Street East

Bradenton, FL 34211
T: (941) 684-0100
F: (941) 684-0109
E: aalfano@rolfeshenry.com
E: sburns@rolfeshenry.com
E: bhenry@rolfeshenry.com
E: kmcclintock@rolfeshenry.com
Attorneys for Defendants Jennifer Couture,
Ralph Garramone, MD, OMG Realty, LLC,
and Wraith, LLC

*/s/ Nicholas A. Chiappetta*
Nicholas A. Chiappetta