250128NOS23CV1218         Motion Hearing

```
1    UNITED STATES DISTRICT COURT
     MIDDLE DISTRICT OF FLORIDA
2    FORT MYERS DIVISION
     -----------------------------x
3    DANESH NOSHIRVAN,

4              Plaintiff,
          v.                              2:23-cv-1218-JES-KCD
5
     JENNIFER COUTURE, et al.
6
               Defendants.           Motion Hearing
7    -----------------------------x
                                     January 28, 2025
8                                    10:30 a.m.

9    Before:

10                    HON. KYLE C. DUDEK,

11                                   Magistrate Judge

12                 APPEARANCES (Via Zoom)

13   CHIAPPETTA TRIAL LAWYERS
          Attorneys for Plaintiff
14        2101 Vista Parkway, Suite 258
          West Palm Beach, FL 33411
15   BY:  NICHOLAS A. CHIAPPETTA

16   LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC
          Attorneys for Defendants
17        19 Union Avenue, Suite 201
          Rutherford, NJ 07070
18   BY:  PATRICK TRAINOR

19   DUANE MORRIS, LLP
          Attorneys for Defendant Garramone Plastic Surgery
20        201 S. Biscayne Boulevard, Suite 3400
          Miami, FL 33131
21   BY:  JULIAN JACKSON-FANNIN

22                Michael McDaniel, RMR, FCRR
                    Official Court Reporter
23                   2110 First Street
                   Fort Myers, Florida 33901
24            michael_mcdaniel@flmd.uscourts.gov
                       (239) 461-2064
25         Proceedings recorded by machine shorthand
        Transcript produced by computer-assisted transcription
```

 1              (Via Zoom video conference)

 2              THE COURT:  Good morning, counsel.

 3         To get us started on this continuation of our last

 4    hearing, I will have Ms. Ward call the case.  We can then have

 5    counsel enter their appearances, starting on the plaintiff's

 6    side.

 7              Ms. Ward?

 8              DEPUTY CLERK:  Calling case 2:23-cv-1218, Danesh

 9    Noshirvan v. Jennifer Couture, et al.

10              MR. CHIAPPETTA:  Nick Chiappetta on behalf of

11    plaintiff.

12              THE COURT:  Thank you, Mr. Chiappetta.

13              Who do we have for the defendants?

14              MR. TRAINOR:  Good morning, your Honor, Patrick

15    Trainor, pro se.

16              MR. JACKSON-FANNIN:  And Julian Jackson-Fannin, Duane

17    Morris, on behalf of Garramone Plastic Surgery, your Honor.

18              THE COURT:  Counsel, thank you for joining me this

19    morning.  As you know, we are here on a continuation of the last

20    hearing to address the outstanding motion at docket entry 199,

21    which is plaintiff Noshirvan's motion to compel against

22    defendant Patrick Trainor.

23         As I looked through the procedural history, I first

24    want to get an understanding of what responses are at issue,

25    because here is how I understand the timeline:

1              Mr. Trainor sent his first discovery responses back to

2     Mr. Noshirvan on May 16, and those are Exhibit B to the motion.

3     And then after a hearing on August 28, Mr. Trainor amended his

4     responses, which could be found at Exhibit C.

5              Noshirvan then filed a motion to compel claiming he

6     never received the records and seeking to overrule several of

7     the objections.  The Court held a hearing on that motion to

8     compel on October 15.

9              Mr. Trainor then agreed that he would send a jump

10    drive with documents by October 18th and a privilege log by the

11    25th.  Then the Court ordered him to do the same.

12             Then my understanding is on the 18th there was a

13    production of amended discovery responses Mr. Noshirvan received

14    that are at Exhibit E.

15             Mr. Chiappetta, is that an accurate description of the

16    procedural history, as you understand it?

17             MR. CHIAPPETTA:  With the exception of receiving any

18    physical documents.  Exhibit E is a second amended response

19    only.

20             THE COURT:  I know, that's my next fellow-up question.

21    You received amended responses to Exhibit E, but you did not

22    receive any documents or privilege log, is that correct?

23             MR. CHIAPPETTA:  That is correct.

24             THE COURT:  Okay.  And my understanding, as I read

25    through all of the discovery responses at Exhibit E though, I

1    don't see any that says that Mr. Trainor has responsive

2    documents to provide to you, is that correct?

3              MR. CHIAPPETTA:  As it relates to Exhibit E, I believe

4    that was part of what's at issue here is that Mr. Trainor

5    changed all his responses to none.

6              THE COURT:  Okay.  But Mr. Trainor has an obligation

7    to amend his discovery responses to the extent they're not

8    consistent with the information that he finds.  So what's the

9    issue with him amending them now to -- he withdrew all the

10   objections and now he's saying none.  So why is that in and of

11   itself objectionable while he has an obligation to supplement

12   them all the same?

13             MR. CHIAPPETTA:  So what we're finding here to be

14   issue is, first and foremost, Mr. Trainor already said that he

15   allegedly mailed a jump driving containing documents.  We agreed

16   on him remailing those upon his notice that I did not receive

17   them.  So he's already violated our parties' agreement that was

18   solicited by this Court record by not resubmitting those

19   documents, starting there.

20             Setting that aside, going back and now simply saying

21   that he has none and limiting it simply based on because he

22   believes that it's not within his possession, custody or control

23   as an individual as opposed to him being the sole owner of the

24   Law Firm of Patrick Trainor, or alternatively, the ADL, as the

25   sole trustee, those documents would still be within his

1    possession, custody and control.

2          So I believe this Court has mentioned previously that

3    the Court needed more discovery in terms of possession, custody

4    and control rather than in terms of entities.

5          So in accordance with Rule 1, the plaintiff has

6    streamline discovery and simply asked for a multitude of

7    documents directly from the individual who is solely responsible

8    and likely in possession, custody and control of those

9    documents.

10          And if I go through one by one, I can show where the

11    conflicts exist.

12          THE COURT:  We'll get there in a second.

13          Let me turn it over to you, Mr. Trainor, because I

14    read through the hearing transcript from the prior hearing.  You

15    did indicate there was a jump drive coming over with documents.

16    But as I understand the record now, you have amended your

17    responses to say that there are none.

18          So could you clarify for me the discrepancy?

19          MR. TRAINOR:  Yes, sir.  Firstly, we submitted the

20    thumb drive three times.  The first time was in May of 2016.

21    That was provided collectively for all defendants.  A second

22    time it was resubmitted.  It was received by Mr. Chiappetta's

23    office on July 2nd of 2024.  And then again, after our last

24    hearing, we resent it again.

25          Mr. Chiappetta has subsequently said that my document

1    production on that thumb drive was not sufficient.  He didn't

2    say he didn't receive it, he said it wasn't sufficient.

3          But previous to that, he told me that the second

4    attempt in July he did receive the documents, because we have

5    his signature -- his office's signature on receiving the

6    documents.  But then he told me:  Oh, yes, but the envelope had

7    a hole in it and the thumb drive fell out.  And that information

8    was related to me on September 13th, approximately one hour

9    before Mr. Chiappetta filed the present motion or the existing

10   motion that was decided that we're back on here afterwards.

11         So I really doubt that he never received those

12   documents, based upon his own complaint that they were

13   deficient, and also on the fact that I have his signature on a

14   receipt of the envelope saying they received it, which included

15   a second production of the thumb drive with additional documents

16   than what was sent -- provided on May 16 of 2024.

17         And on top of that, these are documents that

18   Mr. Chiappetta was demanding and waiting on, is it realistic to

19   believe he waited two months to bring that to my attention?

20   It's absurd.  I'm frankly speaking, your Honor.  And then also

21   that would be four months after it was received in May of 2024.

22         It's unbelievable.  I'm sorry, it's not believable.

23         THE COURT:  So Mr. Trainor, what I took out of what

24   you just said is that the thumb drive that you sent over to

25   Mr. Chiappetta, regardless of the number of times, contained

1    responsive documents for not only your production but other

2    defendants as well?

3              MR. TRAINOR:  That's correct, sir.

4              THE COURT:  Okay.  The thumb drive that you sent --

5              And you've indicated that you sent it three times,

6    correct?

7              MR. TRAINOR:  Correct, sir.

8              THE COURT:  -- did it have the same documents on it

9    each time?

10             MR. TRAINOR:  The second time had the same documents

11   as the first time plus an additional tranche of documents which

12   were labeled.  The third time was the same as the second.

13             THE COURT:  All right.  And so your changes to your

14   discovery responses from Exhibit C to Exhibit E, I noticed you

15   initially had a series of objections.  And then in the final

16   response, which, again, is at Exhibit E, you withdrew those

17   objections and answered none.

18             MR. TRAINOR:  That's correct, sir.

19             THE COURT:  Can you explain to me the rationale

20   between changing your responses from Exhibit C to Exhibit E?

21             MR. TRAINOR:  Sure.  Well, in between there was -- the

22   second amended complaint was filed.  That was filed on

23   September 23rd.  These were my responses dated October 17.

24             But then in addition to that, upon a further reading

25   of the complaints, I'm indicated as an individual, not an as

 1    individual -- or not as a member of the LLC, The Law Office of

 2    Patrick Trainor, not as a trustee or registered agent for the

 3    Anti-Doxing League.  It's me individually.  After further

 4    reading, my understanding is I, as an individual, I am not part

 5    and parcel with Patrick Trainor -- the Law Office of Patrick

 6    Trainor, Esquire, LLC.

 7            As I read it, it's really just a naked attempt to blur

 8    the formalities of corporate entities.  I'm not going to make an

 9    admission that seems like I'm being forced into compelling --

10    compel the production of things that don't belong to me as an

11    individual or I don't have it or I don't possess it as an

12    individual.

13            The Law Office of Patrick Trainor was named as a

14    defendant, as was Patrick Trainor as an individual.  That seems

15    to me like a naked attempt to blur those lines between the two

16    parties.

17            THE COURT:  All right.  So regardless of how you may

18    be named, whether it be in your individual capacity or as the

19    law firm, your discovery obligation under Rule 34 is to produce

20    what is in your possession, custody or control.

21            You agree with that, right, Mr. Trainor?

22            MR. TRAINOR:  I do.

23            THE COURT:  All right.  So even in your personal

24    capacity, you would agree you have possession, custody and

25    control over documents that may exist in your law office,

 1  correct?

 2           MR. TRAINOR:  No.

 3           THE COURT:  You're telling me you do not have

 4  possession, custody or control over documents that exist in your

 5  law office?

 6           MR. TRAINOR:  Well, how am I functioning, sir?  Am I

 7  functioning in my everyday life?  I'm not trying to be

 8  disrespectful.

 9           THE COURT:  I'm going to stop you there.  You're

10  functioning in the capacity of what Rule 34 requires.

11           So if I serve a discovery response upon you, even if

12  you don't have the document in your physical possession but you

13  have custody or control over it, meaning you can request it from

14  someone who has it, that's still technically within your

15  possession, custody or control.  So if you have access to

16  documents through your law office that are responsive to the

17  request that would still be in your possession, custody or

18  control, that would fall under Rule 34.

19           MR. TRAINOR:  I am disagreeing with that.  I

20  understand what the point is, though, but these were served to

21  me in my individual capacity.  It's a complete naked attempt to

22  just blur those two lines.

23           I understand what Rule 34 says, sir, but I am looking

24  at the reality of the document requests that are made to me.

25  And we can go through them individually, I'm happy to, because I

1    don't have documents that are being requested, but I am happy to

2    discuss them.

3              THE COURT:  Sure.  We will go through them

4    individually.  Rule 34 -- so it's a good example, because I know

5    you've served things on Noshirvan that you're requesting that he

6    produce from, for example, TikTok.  TikTok is just like, let's

7    say, your law office.  Noshirvan is not a part of TikTok.  He's

8    not a member of TikTok.  Yet he has an obligation to produce

9    materials because he can access them.

10             Why does the same not apply to you?

11             MR. TRAINOR:  Because that TikTok account belongs to

12   Danesh Noshirvan as the individual.  It does not belong to

13   Danesh Noshirvan, LLC.  So there's a distinction.

14             Now these are not addressed in any way referencing me

15   as a member of -- this is a separate defendant in this action,

16   by the way, not just --

17             THE COURT:  Let me stop you, Mr. Trainor.

18             These discovery responses are not asking you to admit

19   anything, it's just to produce documents.  So the fact that you

20   may produce them doesn't blur any lines, it just means that you

21   have possession, custody or control over something that's

22   responsive.

23             It's not that now all of the sudden because you

24   responded to these discovery requests with information from the

25   other defendant that you are now somehow blurring the lines

1  between the corporate entity and yourself.  That's not

2  discovery's function, and nothing is implied through that.  It's

3  just that you have an obligation to produce the documents.

4          So let me ask straightforward:  Have you responded to

5  all of the discovery requests in Exhibit E with your answers

6  consistent with Rule 34 by producing the documents in your

7  possession, custody or control?

8          MR. TRAINOR:  Sir, I disagree with that.  I believe

9  the possession is of a separate entity.

10         THE COURT:  That's not the question I asked.  I

11 asked --

12         MR. TRAINOR:  I answered -- my answer then, sir, is I

13 have.  As I'm understanding Rule 34, and as I look at it, while

14 there's two parties -- I'm not saying I'm disagreeing or not,

15 but there's a defendant that he can address certain requests to

16 and there's another defendant he can address certain requests

17 to.

18         THE COURT:  But he doesn't have to.  He does not have

19 to separate them out and send separate discovery requests to one

20 entity versus the other.  If you have possession, custody or

21 control, it's perfectly within his right under Rule 34 to send

22 the requests to you, and if you have the documents, you turn

23 them over.

24         So if you want to say that you've answered consistent

25 with Rule 34, what we can do is we'll go through all the numbers

1  and you can confirm that.

2          And then if Mr. Chiappetta has information to suggest

3  that your answers are untruthful, that you did not comply with

4  Rule 34, what we'll do is we'll set a hearing for it and we'll

5  decide if there are sanctions that are going to be imposed under

6  Rule 26.

7          MR. TRAINOR:  I believe I have given my responses

8  truthfully.  That's what I believe, sir.

9          THE COURT:  Okay.  All right.

10          MR. TRAINOR:  One last final thing, sir.  A privilege

11  log was served on Mr. Chiappetta on September 3rd.  So to the

12  fact that he loves to insinuate that we're not complying with

13  the rules, let's just be truthful and factual, it was served on

14  him on September 3rd.

15          THE COURT:  Well, regardless of what was served on

16  September 3rd, your latest discovery responses, which you've

17  amended, which are at Exhibit E, you've withdrew every

18  objection.  There is no objection for privilege anymore.

19          MR. TRAINOR:  Correct.  But just to counter what he

20  said, the factual -- counter it factually, that's what I wanted

21  to input.

22          THE COURT:  All right.  Mr. Chiappetta, you've heard

23  Mr. Trainor.  He now confirmed as a member of the bar that he

24  answered consistent with Rule 34.

25          So we will go through these, confirm that he has

1    answered them consistent with that.  And to the extent you

2    believe that's incorrect, Rule 26, I believe it's G, provides a

3    mechanism for you to bring that to the Court's attention.  But

4    until then, what we'll do is march through the discovery

5    requests that you have identified in your motion and we'll see

6    where we stand.

7              All right, Mr. Chiappetta?

8              MR. CHIAPPETTA:  Yes, your Honor.  But before we

9    begin, may I just make a brief comment and share a screen as

10   relates to the jump drive?

11             THE COURT:  You can go ahead.  I'm not going to admit

12   it as an exhibit because I obviously don't have it here, but

13   explain to me the relevance of it before I see it.

14             MR. CHIAPPETTA:  It's the letter dated May 16 that

15   says:  Enclosed here is a thumb drive.

16             But at the bottom, my office staff says:  Received on

17   July 15, 2024, no enclosure.  And it's initialed by my staff.

18             So to the extent that this is being brought up that

19   it's been sent three times, even so, Mr. Trainor has known that

20   we have not received it.  And even after our agreement, which

21   occurred well after July, still have not produced that jump

22   drive of documents.

23             I just want to make that very clear, your Honor.

24             THE COURT:  Okay.  I'm not here to determine what was

25   sent, when, what you received.

1          I've got discovery answers in front of me.  Right now

2     the job is to determine whether he has provided a sufficient

3     answer to them, and then to move on and compel if the answer is

4     insufficient.

5          Mr. Chiappetta, you said you did indicate that the

6     latest time you did receive the thumb drive, correct, the third

7     and final time?

8          MR. CHIAPPETTA:  No.  That's what I'm trying to make

9     clear.  I still have not received the thumb drive pursuant to

10    their prior agreement.

11         THE COURT:  Going back to you, Mr. Trainor, you

12    indicated that the thumb drive, in addition to the documents --

13    in addition to your discovery responses, had document responses

14    from other parties, is that correct?

15         MR. TRAINOR:  That's correct, sir.

16         THE COURT:  All right.  To avoid --

17         MR. TRAINOR:  As far as the July 15th is concerned, I

18    have the receipt of his office's signature in July of what he's

19    talking about.  So I don't know what they would write -- and why

20    would somebody wait -- who was waiting on bated breath for

21    documents on or about May 15, why would he not ever bring that

22    up until July 13 -- sorry, September 13, four months later?

23         It's not a real argument, as far as I'm concerned.

24         THE COURT:  Mr. Trainor, what we're going to do is:

25    To avoid this further issue, you're going to send a copy of the

 1  thumb drive the courthouse to my attention.  Can you get it out

 2  of your office by the end of the week?

 3          MR. TRAINOR:  Yes, sir.

 4          THE COURT:  When I receive the thumb drive, I will

 5  check the contents of the package to make sure the thumb drive

 6  arrived.  Mr. Chiappetta, I will then forward it on to you.  All

 7  right?

 8          I couldn't hear you, Mr. Chiappetta.

 9          MR. CHIAPPETTA:  Thank you, your Honor.

10          THE COURT:  All right.  Turning back to the substance

11  of the motion then, there are several discovery requests that

12  are in dispute.  I'm going to take each of them in order, as we

13  have done with the others.

14          So first up I have is document request number 1, which

15  says, quote:  Produce every item listed on your Rule 26 initial

16  disclosures served April 15, 2024.

17          Response:  Trainor responds to RFP number 1 by stating

18  there are no items listed in his initial disclosures.

19          All right.  Mr. Chiappetta, he's indicating there's

20  nothing on his initial disclosures.

21          MR. CHIAPPETTA:  Well, that is twofold.  As far as the

22  disclosures go, all defendants were grouped together, and he did

23  separate himself, his law office, and the ADL.

24          But setting that aside, there are also significant

25  accusations that relate to information related to the

1   unauthorized intrusion or hacking of telephone systems and

2   network drives for the Law Office of Patrick Trainor, and

3   there's a whole bunch of different information that he has

4   listed on here that we are seeking to inquire into.

5          And if Mr. Trainor has listed that type of information

6   on his initial disclosures, we believe that is absolutely

7   relevant, and we would like to see why they were placed there.

8          THE COURT:  All right.  Mr. Trainor, based upon your

9   responses, you are indicating you have not provided anything

10  under Rule 26 initial disclosures, correct?

11         MR. TRAINOR:  He's asking for items, as in things,

12  sir, not any sort of documentation.  An item is an object.  I

13  don't have any objects listed on there.  I have factual beliefs

14  that I have listed on there.  I don't know what he was looking

15  for in terms of an item.  Is it kind of a -- as it applies to

16  this, it's an unknown word, as far as I'm concerned.  I don't

17  know what an item is.  Is an item a suit jacket or is an item --

18  what is it?  It's not a document, as far as a document is

19  defined.

20         THE COURT:  Mr. Chiappetta?

21         MR. CHIAPPETTA:  "Item" refers to the bullet point

22  listing in each paragraph as stated per the entities and the

23  individual.  So if he stated it, we're asking for documents that

24  relate to the bullet point paragraph.

25         MR. TRAINOR:  That's not how the request is drafted,

 1   though.

 2          THE COURT:  So we're getting into semantics over the

 3   use of the word "item" here.

 4          Mr. Trainor, you're indicating that you don't --

 5   "item" is undefined, so you don't know how to answer this?

 6          MR. TRAINOR:  I don't have any items as -- in its

 7   common usage, I don't have any items listed in my initial

 8   disclosures, yes, sir.

 9          THE COURT:  Anything further from you, Mr. Chiappetta?

10          MR. CHIAPPETTA:  No, your Honor.

11          THE COURT:  I understood what it to mean.  It's to

12   produce every item which is listed separately on the Rule 26

13   disclosures.  So to the extent that "item" on the Rule 26

14   disclosure was a document, you would produce it.

15          But since there is, apparently, some confusion about

16   that, I am going to edit or modify the request to produce every

17   item, document -- sorry, put every item or document listed on

18   the Rule 26 disclosures served on April 15, 2024.

19          Mr. Trainor, how long do you need to respond to that?

20          MR. TRAINOR:  Thirty days, sir.

21          THE COURT:  All right.  Thirty days it is.  Motion to

22   compel is granted as to number 1.

23          MR. CHIAPPETTA:  Thank you, your Honor.

24          THE COURT:  Next request that is at issue in the

25   motion is number 2, which says, quote:  Produce any documents

1  and ESI in your possession, custody or control that contain any

2  form of communication between you, your employees, agents,

3  officers, directors, members, and Joseph A. Camp or any of his

4  aliases.

5           Response was, quote:  Trainor responds to the first

6  part of RFP number 2 by stating he has none.  Trainor further

7  responds to the second part of RFP number 2 by stating he has no

8  knowledge of any alleged aliases used by Joseph A. Camp.

9  Trainor further responds to RFP number 2 by stating that he is

10 an individual who does not have employees, agents, officers,

11 directors or members.

12          I'm going to sustain the objections to -- I'm going to

13 sustain those objections because you're right, there is no

14 indication of what the aliases are, and Mr. Trainor as an

15 individual does not have employees, agents, officers, directors

16 or members.

17          So that leaves documents or ESI in possession, custody

18 or control that contain any form of communication between

19 Mr. Trainor and Joseph A. Camp.

20          So as limited, Mr. Trainor, you're confirming that you

21 have produced all the documents and ESI in your possession,

22 custody or control consistent with number 2?

23          MR. TRAINOR:  That's correct, sir.  As an individual,

24 I do not have these documents because -- I don't have them here.

25 As your Honor noted, I do not have employees or agents or

1   officers.  Now if I'm having to answer this as the Law Office of

2   Patrick Trainor, there might be some.  But I see them as two

3   distinct entities, sir, as does the IRS.

4        THE COURT:  Mr. Trainor, I suggest -- it doesn't

5   matter how you see them, how you see yourself versus the law

6   office.  Rule 34 says you have to produce documents in your

7   possession, custody or control.  The case law from the Eleventh

8   Circuit makes very clear what possession, custody or control

9   means.  And so if you're saying that you answered it consistent

10  with those requirements, then that's where we stop.

11        So again, have you answered it consistent with what

12  Rule 34 requests?

13        MR. TRAINOR:  No, sir, because I read it totally

14  different, as I have stated.  If he's asking me for my law firm,

15  he's applying it to the LLC.  That's the difference here, sir.

16  That's where the confusion is created.

17        THE COURT:  It's not confusion, Mr. Trainor.  You're

18  the only one that's confused.  The rule is clear.  It says you

19  have to produce things in your possession, custody or control.

20  I upheld your objection to the extent that you don't have

21  employees, agents, officers, directors or members.  That's

22  clear.  You are an individual.  But you still have an obligation

23  as an individual to produce documents in your possession,

24  custody or control.

25        MR. TRAINOR:  I will have to do so, sir.  I will have

1   to retrieve those documents from the Law Office of Patrick

2   Trainor with their attending protections that apply to those

3   documents.

4           THE COURT:  All right.  So what you're saying is that

5   this response is incorrect in that you need to produce documents

6   that are in your possession, custody or control.

7           MR. TRAINOR:  As an individual, I have to produce the

8   documents that I can obtain from the Law Office of Patrick

9   Trainor.  That's correct, sir, you are right.  I will do that.

10          THE COURT:  How long, Mr. Trainor?

11          MR. TRAINOR:  Ten days.  Do you want to keep the same

12  30 days, sir, so we have that consistency?

13          THE COURT:  That's what we're going to do.

14          Number 2 is granted then.  Thirty days for production

15  of the document requests as it was limited by the objections.

16          Moving on then to request number 7:  Produce any

17  documents and ESI in your possession, custody or control that

18  contain communications between you, your employees, agents,

19  officers, directors, members, and Joseph A. Camp or any of his

20  aliases.

21          Trainor offers the same response as the last request

22  for production.

23          Mr. Chiappetta, how is this not the same for request

24  for production number 2?

25          MR. CHIAPPETTA:  I think incidentally it's

1  duplicative, and I withdraw it, your Honor.

2          THE COURT:  I will deny the motion to compel as to

3  number 7 as duplicative.

4          MR. TRAINOR:  Your Honor, may I make one comment, sir?

5          THE COURT:  Sure.

6          MR. TRAINOR:  If you recall from our hearing on

7  Friday, Mr. Chiappetta is to produce documents that show how we

8  make the determination between what has been sent by Mr. Camp

9  and what has or may have been sent by somebody masquerading or

10  impersonating Mr. Camp, and Mr. Chiappetta is to produce those

11  documents.

12          In light of that outlay, there may not be documents

13  that may or may not have been from Mr. Camp or someone

14  impersonating him.  So I need those documents from

15  Mr. Chiappetta before we can fully accurately answer whether I

16  have them from Mr. Camp.

17          THE COURT:  Okay.  Rule 34, again, requires you to

18  produce documents in your possession, custody or control.  It

19  also requires you to make a reasonable inquiry into the presence

20  of those documents.

21          So what you're saying is you may not be able to

22  distinguish between what is Joseph A. Camp and someone else?

23          MR. TRAINOR:  Correct, sir.

24          THE COURT:  All right.  Well, I would direct you to

25  what Rule 34 requires is that you make a reasonable inquiry to

1    the extent that you cannot determine it, and it may be or may

2    not be that you can produce it.  And it's a factual issue at

3    that point for the fact finder as to whether that is in fact

4    Joseph A. Camp or an impersonator.

5            MR. TRAINOR:  Okay.  I just wanted to put that out

6    there just so that I was not overlooking that.

7            THE COURT:  Moving on to number 9, which the next

8    document request in the motion, it says, quote:  Produce any

9    documents and ESI in your possession, custody or control that

10   contain communications between you, your employees, agents,

11   officers, directors, members and @fighting.crime.with.a.pen

12   a/k/a Tiffany Chhoum for the last four years.

13           Mr. Trainor responds by stating none, and also raises

14   the same objection as before, that he does not have employees,

15   agents, officers, directors or members.

16           I'm going to uphold the objection to the inclusion of

17   employees, agents, officers, directors or members because

18   Mr. Trainor as an individual does not have those.

19           But otherwise, Mr. Trainor, you indicated none.  Are

20   you changing your response now or is it still none?

21           MR. TRAINOR:  Sir, they were produced on our previous

22   thumb drive, because these were all the documents that were on

23   behalf of all defendants.  So the documents and whatever

24   communication we have with Ms. Chhoum and the documents she

25   shared with us or screenshots have already been produced to

1  Mr. Chiappetta.  And that was received, not only the May

2  production, but also the July production and the subsequent

3  September production.

4        So they have been produced.  We will reproduce them.

5  To the extent that Mr. Chiappetta said that he did not receive

6  that thumb drive, we will reproduce those, but those have been

7  produced.

8        THE COURT:  All right.  So are you withdrawing your

9  response, which was, at the start of this, none?

10       MR. TRAINOR:  Yeah, I will, sir, yeah.  That is, we

11  don't have any further documents, I should say.  But we will

12  withdrew that response, yes, sir.

13       THE COURT:  All right.  So I will grant the motion.  I

14  will give you 30 days.  You can either reproduce the

15  communications or just indicate to Mr. Chiappetta where they

16  were produced in the prior production.

17       Any questions, Mr. Trainor?

18       MR. TRAINOR:  No, sir.

19       THE COURT:  Anything on that one, Mr. Chiappetta?

20       MR. CHIAPPETTA:  There was no prior production.  I

21  never received any documents from Mr. Trainor's office.  That's

22  kind of the whole issue here, your Honor.

23       THE COURT:  Okay.  Well, the thumb drive is coming

24  here.

25       MR. CHIAPPETTA:  Understood.

1          THE COURT:  We'll make a copy of it and send it over

2     to you.

3          Okay.  Moving on then to request to produce number 10,

4     quote:  Produce any documents and ESI in your possession,

5     custody or control that contain communications between you, your

6     employees, agents, officers, directors, members and

7     @wonderlandnews a/k/a Cassandra D. Wilde for the last four

8     years.

9          Trainor responds to RFP number 10 by stating:  None.

10    He further objects that he is an individual and does not have

11    employees, agents, officers, directors and members.

12          I am going to sustain the objection as before, given

13    Mr. Trainor's individual capacity, and leave it to documents in

14    his possession, custody or control.

15          Mr. Trainor, you responded by:  None.  Are you

16    standing on that response or would you like to amend?

17          MR. TRAINOR:  Sir, these were produced on the thumb

18    drive as well that was previously served on Mr. Chiappetta.

19    These were signed for by his office on July 12.  These were

20    included.  We will amend to produce more on the thumb drive

21    provided to your Honor.

22          THE COURT:  So I am going to grant number 10.  You

23    have 30 days to amend this answer and provide the documents or

24    otherwise indicate where they are on the document production

25    that you've already assembled.

 1              Any questions about that, Mr. Trainor?

 2              MR. TRAINOR:  No, sir.

 3              THE COURT:  Number 12, quote:  Produce any documents

 4    and ESI in your possession, custody and control that contain

 5    communications between you, your employees, agents, officers,

 6    directors, members, and Chris Couture for the last four years.

 7              Mr. Chiappetta, can you explain to me who Chris

 8    Couture is?

 9              MR. CHIAPPETTA:  Chris Couture is Ms. Couture's, I

10    believe, ex-husband.

11              THE COURT:  How is that relevant?

12              MR. CHIAPPETTA:  There are communications from Chris

13    Couture that indicate that Joseph A. Camp also attacked him and

14    his family.  So we believe there's possible other communications

15    that exist between Mr. Trainor and Mr. Camp as it relates to

16    Mr. Couture.

17              THE COURT:  But I'm trying to understand:  How is that

18    relevant to the claims that you lodged here?  Because you're

19    claiming that your clients were harmed by Mr. Camp through a

20    series of conduct that I won't detail here, but Mr. Couture --

21    the reason I asked is this is the first time I have seen his

22    name referenced.

23              MR. CHIAPPETTA:  It's relevant to establish -- there's

24    a lot of interplay here where we don't know where -- there's

25    allegations being thrown around.  We don't know who Joseph A.

 1  Camp is or who's emailing who and this and that.

 2          Well, if we're establishing a pattern of conduct

 3  between similarly-situated defendants who have interactions with

 4  Joseph A. Camp and now all the sudden their extended family or

 5  ex-family are having these same interactions with Joseph A.

 6  Camp, it establishes a pattern for the type of harassment that

 7  my client has dealt with.  And that's what we're really looking

 8  into here.

 9          THE COURT:  Mr. Trainor?

10          MR. TRAINOR:  I don't have any, sir.

11          THE COURT:  All right.

12          MR. TRAINOR:  I never communicated with the guy in any

13  capacity.  I think I may have had one phone conversation with

14  him that was less than a minute long, but I have no

15  recollection of any -- I know searching, I looked, I never had

16  an email with him or text message or anything along those lines.

17  There's no document to produce that I would have for my

18  communication with him.

19          THE COURT:  All right.  So I am going to sustain your

20  objection --

21          MR. JOSEPH A. CAMP:  I would like to object to --

22          THE COURT:  Mr. Camp --

23          MR. JOSEPH A. CAMP:  Any communications between

24  myself, allegedly, and Mr. Patrick Trainor, if they even exist,

25  would be under my attorney-client privilege.  And I would like

1    to object to any communications produced, if they even exist.

2            THE COURT:  Mr. Camp, this document request has

3    nothing to do with you.  It doesn't include you.  So no, there

4    is no objection that you can raise to that.

5            MR. JOSEPH A. CAMP:  I would like retroact this

6    objection to the previous ones.  I was in a bad area where I

7    couldn't object at the time.  However, any communications that

8    would potentially exist between myself and an attorney would be,

9    in my opinion, attorney-client privilege.

10           THE COURT:  Mr. Camp, if they're your attorney then

11   you can raise those objections through your attorney, because

12   you have that attorney-client privilege, as you just indicated.

13           MR. JOSEPH A. CAMP:  If those documents exist --

14           THE COURT:  Mr. Camp, stop.  Stop.

15           MR. JOSEPH A. CAMP:  My name is being brought up in a

16   lot of documents all over this matter.  And quite honestly, it

17   is appalling, because I don't even exist in the United States.

18   I don't have any of these little tickets that are being alleged

19   by Nick Chiappetta.

20           And quite frankly, I am getting tired of my name being

21   smeared in a matter that I'm not a party to because I can't

22   afford or because I don't have the means to be able to jump in

23   this case and defend myself.  It's like a free-for-all

24   definition legally in the United States courts.  I got out of

25   the United States to avoid all of this nonsense with the justice

1   systems and the civil courts and all of this stuff because it's,

2   quite simply, something that I don't want to deal with in my

3   life.

4          So if there is communications anywhere between me and

5   an attorney, if they exist, I object to them being released

6   under attorney-client privileges.  Under any objection, it is --

7          THE COURT:  All right.  The Court is muting Mr. Camp

8   and his assertions in this hearing where I've asked him to stop

9   so we can continue on with the requests.

10         To the extent Mr. Camp would like to lodge an

11   attorney-client privilege, as he's indicated, he can do so

12   through his attorney that holds that privilege, to the extent

13   they have been requested to have these documents.  I am not

14   going to allow Mr. Camp to highjack this hearing and continue on

15   without being able to address the substance of what we're here

16   for.  I will unmute Mr. Camp at the conclusion of the hearing,

17   but for now we're going to move forward.

18         So going back to request number 12, before we were

19   interrupted, I am going to sustain the objections to the extent

20   Mr. Trainor is indicating he does not have employees, agents,

21   officers, directors or members.

22         Mr. Trainor, your response was that you had none, and

23   you've indicated that that is currently what you believe exists

24   as well.  So would you like to just stand on that "none"

25   response to number 12?

1          MR. TRAINOR:  Yes, your Honor, I don't have any.  No

2   search that I have performed has uncovered any communications or

3   documents with him.  I think I had one phone call with the man

4   and that was about it.

5          THE COURT:  Mr. Chiappetta, do you have any evidence

6   or anything to indicate that that answer is factually incorrect

7   at this time?

8          MR. CHIAPPETTA:  Well, it's confusing, because on

9   Exhibit C Mr. Trainor claimed work product privilege.

10         THE COURT:  He may have claimed work product privilege

11  at the time, but he could have reviewed it and found they didn't

12  exist.  What I'm asking for is:  Do you have you any evidence

13  that I can look at right now that indicate there are in fact

14  documents or ESI that evidence communications between

15  Mr. Trainor and Chris Couture?

16         MR. CHIAPPETTA:  Not at this time, your Honor.

17         THE COURT:  Okay.  So what we'll do then is I will

18  deny the motion to compel as to number 12.  Mr. Trainor asserts

19  the response that he's already made, which is:  None.  I don't

20  have any evidence to indicate that that is incorrect at this

21  time.

22         So moving on to number 15, quote:  Produce any

23  documents and ESI in your possession, custody and control that

24  contain communications between you, your employees, agents,

25  officers, directors, members and the Anti-Doxing League, Inc.

1   for the last two years.

2          Trainor responds to RFP number 15 by stating:  None.

3   He further raises the same objection that we have already

4   discussed, which I am going to sustain and strike from the

5   request that include employees, agents, officers, directors and

6   members.

7          Mr. Chiappetta, I want to ask you a relevance

8   question.  You're asking for all communications with the

9   Anti-Doxing League, Incorporated without any subject matter

10  restrictions.  Why should I allow such a broad request?

11         MR. CHIAPPETTA:  Well, the reason we were seeking all

12  communications is because we believe that the Anti-Doxing League

13  was essentially utilized to facilitate my client's harassment,

14  and that's really where this stems from.  And as far as we're

15  aware, it's only a limited number of people who would be a part

16  of the Anti-Doxing League.

17         THE COURT:  So I guess my point is if Mr. Trainor had

18  communications unrelated to your client with the Anti-Doxing

19  League, why should those be included in the discovery?  Why

20  shouldn't there be some limit to the discussions being the

21  subject matter with your client of the claims here?

22         MR. CHIAPPETTA:  I do agree that it is slightly more

23  broad than it needs to be.  I would ask that the Court amend it

24  to simply say matters relating to the second amended complaint.

25         THE COURT:  Let me turn to you, Mr. Trainor, because

1    this may be moot anyways, because you indicated in your initial

2    response that there are none.  Is that still your position now?

3            MR. TRAINOR:  Yes, sir, your Honor.

4            THE COURT:  All right.

5            MR. TRAINOR:  Mr. Chiappetta also never, in the

6    complaint, doesn't allege the manner in which we, quote,

7    facilitate his client's -- the Anti-Doxing League facilitated

8    his client's harassment.  They're just a name on paper, as far

9    as the complaint is concerned.

10           THE COURT:  I understand that, but you're indicating

11   that you have none.

12           MR. TRAINOR:  There are none.

13           THE COURT:  The scope of the request is irrelevant.

14           Okay.  Mr. Chiappetta, do you have any evidence for

15   the Court to consider concerning if that answer now of "none" is

16   not factually accurate?

17           MR. CHIAPPETTA:  Not at this time, your Honor.

18           THE COURT:  Okay.  So I'm going to deny the motion to

19   compel with regard to number 15.  Mr. Trainor has answered,

20   provided the complete response to number 15 with:  None.

21           Moving on to November 17, quote:  Produce all

22   documents and ESI in your possession, custody or control that

23   contain communications between you, your employees, agents,

24   officers, directors, members and @ghostsawl027 for the last two

25   years.

1          Trainor responds by noting that this request is

2    misnumbered, and in any event, he states that he has none.  He

3    further objects to the inclusion of the term employees, agents,

4    directors or members.

5          As with a the other requests, I'm going to sustain the

6    objection as to employees, agents, officers, directors, members

7    because Mr. Trainor does not have those in his individual

8    capacity.

9          Mr. Trainor, given that limitation, do you continue to

10   stand by your answer that you have none of these responsive

11   documents?

12         MR. TRAINOR:  I do not, sir.  I also don't know who or

13   what ghostsaw1027 is.  So to the extent that it's John Smith or

14   somebody like that, I have no knowledge of that.  So I don't

15   know who ghostsaw is.  I have none.  None with ghostsaw and none

16   with any other -- no knowledge of who may control that, so none

17   for that either.

18         THE COURT:  Well, the request is simply for

19   communications with this -- I guess I will call it a screen

20   name, for lack of a better terminology, of ghostsawl027, and you

21   indicated you have none.

22         MR. TRAINOR:  No, sir.

23         THE COURT:  All right.  Mr. Chiappetta, he provided a

24   complete response to the request.  Do you have any information

25   to suggest that his response of "none" is factually inaccurate

1    at this time?

2            MR. CHIAPPETTA:  Your Honor, I'm not showing that that

3    number 15 was actually raised in my motion.  Because there was

4    some -- two paragraphs what were duplicated numbering wise, 15

5    and 16 on page 6 of the initial request.  I believe we skip over

6    that, and we would go to paragraph 17 as it relates to my

7    motion.

8            THE COURT:  But that's the response -- that's the

9    request that I have for number 17.

10           Give me one second to get to your exhibit.

11           All right.  Turning then to number 17, my apologies on

12   that, number 17 as its listed here is, quote:  Produce all

13   non-privileged documents and ESI in your possession, custody or

14   control that contain communications between you, your employees,

15   agents, officers, directors, members and @John the Catman for

16   the last two years.

17           The response from Mr. Trainor is:  None.  And he

18   further objects to the use of the term employees, agents,

19   officers, directors or members.

20           As before, I'm going sustain the objection to the use

21   of those terms, since Mr. Trainor as an individual does not have

22   any of those entities.  But otherwise, Mr. Trainor, do you stand

23   by your response of "none" to communications with @ John the

24   Catman?

25           MR. TRAINOR:  Yes, sir.

 1           THE COURT:  Okay.  Mr. Chiappetta, Mr. Trainor has

 2   provided a complete response.  Do you have any information to

 3   suggest that that response is inaccurate at this time?

 4           MR. CHIAPPETTA:  No, your Honor.  Our main objection

 5   or our issue was it is really that work product was previously

 6   claimed, which is indicative of withholding documents.

 7           THE COURT:  Okay.  He's now withdrawn the objection

 8   and says there is none.  So that will have to be taken up at

 9   another day if you believe that's an improper designation.

10   Under Rule 26, I will leave it to you to file that motion at a

11   later time, if you believe so.

12           Moving on then to number 19, which is the next request

13   I have in dispute, number 19 says, quote:  Produce all documents

14   and ESI in your possession, custody or control that contain

15   communications between you, your employees, agents, officers,

16   directors, members and The Murder Media for the last two years.

17           Mr. Chiappetta, first of all, can you please explain

18   to me the relevance of all communications between Mr. Trainor

19   and this entity The Murder Media?

20           MR. CHIAPPETTA:  Yes.  I believe on page 8 of my

21   motion I actually have pictures where Mr. Trainor appeared

22   either as an individual or on behalf of the ADL on this podcast.

23   And there's allegations that relate to the complaint that go to

24   how Mr. Trainor and Mr. Camp had met, on what type of

25   underground social media networks.  So that's really where this

1   inquiry goes into it.

2          THE COURT:  So explain that to me again.  Because I

3   understand he may have gone on this podcast, but how does The

4   Murder Media and the communications that Mr. Trainor had with

5   them go to the issues alleged in your complaint?

6          MR. CHIAPPETTA:  Well, specifically the content on

7   those actual -- on that actual podcast would be relevant to

8   several issues in my complaint.

9          THE COURT:  Explain to me how.  Is your client

10  discussed on the podcast?

11         MR. CHIAPPETTA:  Not specifically in that particular

12  podcast, but there is a lot of -- there are a lot of details

13  that are discussed in that particular podcast that go to the

14  same type of treatment that my client had suffered from.  And we

15  are really looking to obtain the additional information as to

16  what occurred in relationship to that particular podcast and

17  communications via Telegram, because we also believe that money

18  has been funneled through like PayPals and through Telegram and

19  so forth as well.

20         THE COURT:  Okay.  But to the extent that that may be

21  the case, if he's paid to appear by The Murder Media to provide

22  his appearance on a podcast, again, how is that relevant?

23         Are you alleging that there was something said about

24  your client on this podcast that then goes towards damages?

25         MR. CHIAPPETTA:  Well, I do believe that there was a

1    lot contained in that, but as it relates to the complaint, there

2    is a significant portion of the complaint that actually has

3    footnotes related to this entire podcast and is explained in

4    detail in the paragraphs.

5              I'm trying to pull it up as we speak.

6              So I would say starting around paragraph I and from

7    paragraph numbers 82 through 90 it addressed that, but with

8    relationship to marketing and underground media outlets.  And in

9    footnote 12 it has all these links that interlay here.  So as it

10   relates to my complaint, we do believe that this is highly

11   relevant as it relates to the Anti-Doxing League to marketing in

12   this underground in connection to Joseph A. Camp and also

13   multiple other issues, your Honor.

14             THE COURT:  Mr. Trainor, let me hear from you.  I see

15   that you indicated your response was:  None.  I'm going to

16   uphold your objection to the request to the extent it seeks

17   information from employees, agents, officers, directors or

18   members, because, as I have stated, you do not have those.  But

19   given your response of "none," do you stand by that answer?

20             MR. TRAINOR:  Yes, sir.  Nothing on that -- I wasn't

21   paid to be on the podcast.  I didn't pay to be on that podcast.

22   There was a phone call asking me to be on there to discuss a

23   specific matter unrelated to this case.  It has zero ties to

24   this case.  Mr. Camp was not discussed on that podcast.  None of

25   the parties were discussed on that podcast.  It was a one off,

1    all done by telephone call.  No documents related to that

2    whatsoever.  It's total:  Throw it against the wall and see what

3    sticks.  There's nothing to it.

4              THE COURT:  So he's standing by the "none" response

5    and indicating that that podcast was -- his involvement with it

6    was by telephone.  Mr. Chiappetta, do you have anything that

7    would indicate that that response is otherwise inaccurate?

8              MR. CHIAPPETTA:  On page 8 of my motion I have

9    pictures showing video of Mr. Trainor in the middle of the

10   podcast.

11             THE COURT:  I understand, but to the extent that --

12   you have a copy of the podcast, do you not?

13             MR. CHIAPPETTA:  Not in its entirety.  And I would

14   consider that the podcast itself be a communication.  So to the

15   extent that the podcast itself is in Mr. Trainor's possession,

16   custody or control, we would be requesting that.

17             THE COURT:  That could be easily cleared up right now.

18             Do you have a copy of it, Mr. Trainor?

19             MR. TRAINOR:  No, I don't.  Other than what

20   Mr. Chiappetta produced, I don't have a copy of it.

21             THE COURT:  All right.  So other than what is

22   available.

23             Okay.  Mr. Chiappetta, it looks like there's nothing

24   here for me to order for him to produce.  He is saying there's

25   none.  You may have a copy of the podcast.  He said that was

 1  coordinated by telephone.  Do you have any information to

 2  indicate that that is inaccurate at this time?

 3          MR. CHIAPPETTA:  As it relates to underlying

 4  communications, separate communication from the podcast, no,

 5  your Honor, all we have are the images that we have posted here.

 6          THE COURT:  So you indicated that he was on the

 7  podcast.

 8          MR. CHIAPPETTA:  That is correct.

 9          THE COURT:  Mr. Trainor, just for purposes of the

10  record, you don't produce that podcast, do you?

11          MR. TRAINOR:  No.  Like I said, it was a one off

12  related to another case I had unrelated to this matter.  They

13  asked me to just be on it.  I was on there, all arranged by

14  telephone, and that was the extent of it.  There was no emails,

15  nothing that I have otherwise.  I don't even have a copy of the

16  actual podcast.  Mr. Chiappetta produced that, and that's the

17  first and only time I have a copy of it.

18          THE COURT:  All right.  So I am going to deny the

19  motion to compel given the information that's been relayed.

20  Mr. Trainor's response of "none" now stands.

21          Moving on to request number 21, which is, quote:

22  Produce all documents and ESI in your possession, custody or

23  control that contain communications between you, your employees,

24  agents, officers, directors, members and Full Haus, for the last

25  two years.

1              Mr. Trainor responds by stating:  None.  He also

2       objects to the use of the term employees, agents, officers,

3       directors or members.

4              First, I'm going to sustain the latter part of the

5       objection and strike from the request the reference to

6       employees, agents, officers, directors or members, because

7       Mr. Trainor as an individual does not possess those.

8              Mr. Trainor, do you stand by your statement that there

9       are no documents responsive to your request number 21?

10             MR. TRAINOR:  Correct, sir.

11             THE COURT:  Mr. Chiappetta, can you explain to me the

12      relevance of this?  Because this is the first time I've seen

13      reference to this entity called Full Haus.

14             MR. CHIAPPETTA:  Well, in paragraph 90 it's referenced

15      in the second amended complaint, and there's also a footnote

16      that goes along with it as well, I believe footnote 13.

17             But setting that aside --

18             THE COURT:  I get that you may put a factual

19      allegation in the complaint that Mr. Trainor's associated with

20      these individuals, but just because it's in the complaint, it

21      still needs to be relevant to your claim.  You can't just throw

22      a bunch of factual allegations in there and say that now this is

23      relevant to my ultimate claim.

24             MR. CHIAPPETTA:  I'm getting there, your Honor.

25             THE COURT:  Go ahead.

1          MR. CHIAPPETTA:  So episode 130, Support the ADL,

2   which stands for the Anti-Doxing League, was aired on May 27,

3   2022.  So this is right around the same time everything -- as it

4   relates to the complaint is breaking loose with my client.

5   Joseph Camp texts my client in early May, somewhere between

6   May 6 and May 9, and then the May 20th weekend, then there's the

7   visit by Pennsylvania by Couture, and then this podcast goes on.

8   And in this podcast you have Trainor expressly stating that in

9   order to intimidate individuals, he's going to slap their face

10  on billboards.  So this goes directly to my client's claim that

11  Mr. Trainor or the ADL put up a billboard with his face on it in

12  his neighborhood.

13          THE COURT:  Okay.  All right.  Now I understand the

14  relevance.

15          Turning back, Mr. Trainor, it does -- based upon the

16  evidence that Mr. Chiappetta has, it indicates that you were on

17  a podcast again for this entity Full Haus.

18          MR. TRAINOR:  Sir, I referred this -- I was only on

19  one podcast, to the best of my recollection, and that would be

20  the same one.  And I believe it's Murder the Media, not The

21  Murder Media, for number 19.

22          So my recollection is it's the same people.  There was

23  one episode on the podcast.  It was not at all discussing

24  Mr. Chiappetta's client.  What we were discussing were people

25  that engage in doxing.  So to the extent that Mr. Chiappetta's

1    client is a doxer, that's whom we were discussing.  But we were

2    discussing -- it was one podcast, and these were just general

3    statements of things that could be done to prevent people from

4    being victims of cancel culture.  That's what that was.

5              THE COURT:  Okay.  But do you have a copy of the

6    podcast that you appeared on?

7              MR. TRAINOR:  Only what Mr. Chiappetta produced, but I

8    believe it's the same one as Murder the Media, no distinction.

9              THE COURT:  Are you aware of any communications you

10   had with the producers or the hosts of that podcast regarding

11   your appearance?

12             MR. TRAINOR:  Just telephonically.  No documents were

13   produced.

14             THE COURT:  All right.  So you stand by the response,

15   none?

16             MR. TRAINOR:  Yes, sir.

17             THE COURT:  All right.  Mr. Chiappetta, do you have

18   any information to suggest that the response of "none" is

19   inaccurate outside of the actual copy of the podcast, which

20   Mr. Trainor says he does not have?

21             MR. CHIAPPETTA:  I do not, your Honor.

22             THE COURT:  Okay.  So I'm going to deny the motion to

23   compel for number 21.

24             Moving on to number 23, quote:  Produce all documents

25   and ESI in your possession, custody or control that contain

1  communications between you, your employees, agents, officers,

2  directors, members and, quote, supremacists, Proud Boys, and

3  Nazi sympathizers for the last two years.

4          Trainor responds to number 23 by stating:  None.  He

5  further raises an objection to the term employees, agents,

6  officers, directors or members.

7          For the same reasons I previously stated, I'm going to

8  uphold the objection to the use of the term employees, agents,

9  officers, directors or members and strike that from the request.

10         Given that limitation, Mr. Trainor, do you stand by

11 the response that there are no responsive documents?

12         MR. TRAINOR:  I do, sir.

13         THE COURT:  Mr. Chiappetta, can you please explain to

14 me the relevance of this request?  Other than the general nature

15 of -- the salacious nature of you claiming Mr. Trainor is

16 associated with white supremacists, how is that germane to the

17 actual claims?

18         MR. CHIAPPETTA:  So back in May of '22, my client was

19 subject to a slew of text messages that contained a ton of hate

20 speech, racial hate speech by Joseph A. Camp, and we believe

21 that they have met on these underground networks.

22         So what we're looking for here -- and both Murder the

23 Media and Full Haus both fall within these categories.  I know

24 Mr. Trainor said he does not have additional communications with

25 those two entities, but we also have Telegram documents that

1  show that Mr. Trainor's associated with the Proud Boys MDC.  So

2  what we're trying to do is we're trying to isolate the specific

3  location where Mr. Trainor met Mr. Camp.

4          THE COURT:  All right.  Do you have any information to

5  determine his statement that there are no responsive documents

6  to this as inaccurate or incorrect at this time?

7          MR. CHIAPPETTA:  I would state that just simply on

8  page 27 of the second amended complaint there's a post from

9  Telegram showing MDC supporting the Anti-Doxing League.

10         THE COURT:  Okay.  But that's not what that -- your

11 request asked for communications between Mr. Trainor and

12 several, what I will call nebulous categories of people,

13 supremacists, Proud Boys, and Nazi sympathizers.  So how does

14 that statement in the complaint indicate to me Mr. Trainor's

15 response of "none" is incorrect?

16         MR. CHIAPPETTA:  In paragraph 90 where it says "for

17 example," there's four images.  The fourth image all the way to

18 the right shows that the MDC is now promoting the Anti-Doxing

19 League.  Our view is that MDC would not just naturally promote

20 something without some underlying correspondence or some form of

21 communication in advance of just randomly promoting the ADL.  It

22 just doesn't make sense.

23         THE COURT:  Okay.  Outside of your intuition, is there

24 anything to suggest that communication came from Mr. Trainor, as

25 opposed to some other source?

1      MR. CHIAPPETTA:  As far as I'm aware, Mr. Trainor is

2   the only source to the ADL.  As far as the paperwork that I

3   have, he is the sole trustee, the sole individual who turned it

4   into a 501(c)(4), and there is really no one else it could come

5   from.

6      THE COURT:  All right.  I'm going to deny the motion

7   to compel to number 23.  He's provided a response of "none."  He

8   stands by that response.  The intuition that you have from the

9   complaint is not enough at this time for the Court to determine

10  that that's an inaccurate representation, so I am going to deny

11  request number 23.

12      Mr. Chiappetta, to the extent you think you have

13  concrete evidence to suggest that that is a misrepresentation,

14  you can file the appropriate motion under Rule 26.

15      Moving on then to number 24, which is the next

16  discovery request in dispute, it is, quote:  Produce all

17  documents and ESI in your possession, custody or control that

18  contain communications between you, your employees, agents,

19  officers, directors, members and Rikki Cornelisse for the last

20  two years.

21      Trainor responds to number 24 by stating:  None.  He

22  further objects to the use of the terms employees, agents,

23  officers, directors or members.

24      As before, I'm going to sustain Mr. Trainor's

25  objections to the use of the terms employees, agents, officers,

1  directors or members, given his individual capacity.

2          And given that, Mr. Trainor, do you stand by your

3  response of "none"?

4          MR. TRAINOR:  Sir, these were previously produced with

5  the thumb drive that will be reproduced for your Honor within 30

6  days.  But we produced what we already had, and there were like

7  three text messages that were produced on the thumb drive.

8          THE COURT:  So you want to change this response?

9          MR. TRAINOR:  Yes, sir.  May I also point out that

10  last evening Mr. Chiappetta produced a series of documents

11  related to Mr. Cornelisse, and among those documents were the

12  text messages that I previously produced.

13          THE COURT:  Okay.

14          MR. CHIAPPETTA:  That's not true.  It's true that I

15  produced additional documents as it relates to Cornelisse.  It

16  is not true that I received them from you, Mr. Trainor.

17          THE COURT:  All right.  I will grant the request to

18  number 24.  Mr. Trainor, you have 30 days to amend this answer

19  and either produce the responsive documents or identify where

20  they are in any production that is going to be included on the

21  thumb drive that you are sending to the Court.

22          Any questions, Mr. Trainor?

23          MR. TRAINOR:  No, sir.

24          THE COURT:  Moving on to request number 25, quote:

25  Produce every recorded phone call discussing plaintiff for the

1    last two years.

2             Trainor responds to number 25 by stating:  None.  He

3    further raises an objection to the use of the terms employees,

4    agents, officers, directors or members.

5             I am going to overrule that objection because those

6    items are not contained in the request, which, as I indicated,

7    just says produce every recorded phone call discussing plaintiff

8    for the last two years.

9             Mr. Trainor, do you stand on your response that there

10   are no responsive phone call recordings to this request?

11            MR. TRAINOR:  That's correct, sir.

12            THE COURT:  Okay.  Mr. Chiappetta, do you have any

13   information to suggest that that response is inaccurate?

14            MR. CHIAPPETTA:  Yes.  In the documents I produced the

15   other day as it relates to Mr. Cornelisse, and also just with

16   discussions with Mr. Cornelisse, I can tell the Court that

17   Mr. Cornelisse firmly believes that Mr. Trainor does record

18   every phone call, and has expressly stated so.

19            So that's what we're looking for as it relates to

20   phone recordings.  We're looking for those communications

21   directly with Mr. Cornelisse.

22            THE COURT:  That's not what you asked for.  You asked

23   for every recorded phone call discussing plaintiff for the last

24   two years.

25            So what you're telling me is Mr. Cornelisse tells you

1   that he believes that Mr. Trainor is recording phone calls, so

2   that's the information you have to suggest that this answer of

3   "none" is untruthful?

4           MR. CHIAPPETTA:  Well, I do believe that Mr. Trainor

5   has stated prior to today that he does record incoming phone

6   calls.

7           THE COURT:  All right.  There's not enough information

8   before me at this time to upend the veracity of the statement.

9           Mr. Chiappetta, if you want to file the appropriate

10  motion under Rule 26 indicating that response is deficient, you

11  can do so with that appropriate evidence, but what I have in

12  front of me at this time is not sufficient to find that

13  Mr. Trainor is being untruthful in his response of "none".

14          MR. TRAINOR:  Sir, may I address something about

15  Mr. Cornelisse?

16          THE COURT:  You may, Mr. Trainor.

17          MR. TRAINOR:  Mr. Cornelisse is somebody that the

18  plaintiff, Mr. Noshirvan, has described as a pedophile and a

19  child molester whom he encouraged his own followers to call the

20  police on Mr. Cornelisse.

21          Mr. Noshirvan -- during a deposition with

22  Mr. Noshirvan, Mr. Noshirvan stated that in exchange for, quote,

23  information about Mr. Trainor, that Mr. Noshirvan went ahead and

24  deleted videos that he had made about Mr. Cornelisse wherein he

25  referred to Mr. Cornelisse as a pedophile.

1          Secondly, Mr. Cornelisse, for some reason, decided to

2    threaten me on a routine -- through a series of phone calls with

3    threats of bar complaints, et cetera, for totally nonsensical

4    reasons.  And Mr. Cornelisse is currently serving -- is three

5    months into a five-year prison sentence who was seeking to -- I

6    don't know what he was seeking to do, but he was trying to, I

7    guess, get me to pay him money for nonsense.  I wish -- I'm glad

8    to bring him on as a witness at any time.

9          THE COURT:  Thank you for that additional information.

10   It's unnecessary at this time, but to the extent it becomes

11   relevant at any later point in time, you can assert it as

12   needed, Mr. Trainor.

13          As I mentioned, I'm denying the motion to compel for

14   document request number 25.

15          Moving on then to document request number 26, which

16   is, quote:  Produce all non-privileged documents and ESI in your

17   possession, custody and control that contain any communications

18   between you, your employees, agents, officers, directors,

19   members, and Jennifer Maree Couture that mention, discuss or

20   relate to any allegations in the first amended complaint for the

21   last three years.

22          All right.  Mr. Trainor responded to request number 26

23   by stating:  None.  He further objected to producing by stating

24   that he is an individual who does not have employees, agents,

25   officers, directors or members.

 1              Okay.  So first of all, Mr. Chiappetta, you requested

 2     non-privileged documents.

 3              Now my understanding, Mr. Trainor, you can confirm

 4     this, but at one point in time you represented Ms. Couture in

 5     either this case or the related 340 action, is that correct?

 6              MR. TRAINOR:  That's correct, sir.

 7              THE COURT:  Okay.  So Mr. Chiappetta, you're looking

 8     for all non-privileged communications between him and

 9     Ms. Couture.

10              MR. CHIAPPETTA:  That is correct, your Honor.  But

11     since no privilege log has been produced to date, despite

12     multiple requests and Mr. Trainor changing the majority of his

13     responses to "none," I will argue that any privilege will be

14     waived and we should be entitled to those communications.

15              THE COURT:  All right.  First thing I'm going to do is

16     I'm going to sustain Mr. Trainor's objections to the use of the

17     terms employees, agents, officers, directors or members, as he

18     does not have them in his individual capacity.

19              That being the case, Mr. Trainor, do you stand by your

20     response that there are no responsive documents to number 26?

21              MR. TRAINOR:  Sir, we produced a privilege log to

22     Mr. Chiappetta on September 3rd.

23              Non-privileged documents -- I don't know that I would

24     have -- there are no non-privileged documents between myself and

25     somebody who would be an attorney -- sorry, who would be a

```
 1    client.  All of our conversations are of a privileged nature.

 2              So does he want to know every -- what would be

 3    non-privileged for these purposes?

 4              THE COURT:  Hold on.  I think I agree with you.  Let

 5    me back up a little bit.

 6              So Mr. Trainor, I'm sure you're well aware that not

 7    every communication that you have with a client is privileged.

 8    For example, if you scheduled that you're going to have lunch,

 9    the mere email between you and Ms. Couture scheduling the lunch

10    would not be privileged.  But I do agree with you that because

11    Mr. Chiappetta has linked this to the allegations in the

12    complaint, that doesn't likely mean that all of the

13    communications that are responsive with Ms. Couture are likely

14    privileged.

15              Okay.  So that being the case, Mr. Trainor, do you

16    stand by your response that there are none, or would you like to

17    amend this to identify what you've excluded in the privilege

18    log?

19              MR. TRAINOR:  Sir, I don't understand.  Ms. Couture

20    and I, as you know, live 1200 miles apart, so we don't have

21    emails such as "Let's have lunch," due to distance.  All our

22    emails are related to either the subject matter of the cases or

23    they're on point for the complaint as well.

24              THE COURT:  That very well may be.  I don't doubt

25    that, given your location and the subject matter of your
```

1  intention.  But nonetheless, you are co-defendants in this case

2  and you're entitled to assert a privilege, so I think you are

3  very well entitled to do so.  But my question then is:  Are you

4  going to stand by the response of "none," or would you like to

5  raise that there are responsive documents but they're privileged

6  and they will be identified in the privilege log?

7            MR. TRAINOR:  To the best of my knowledge, there are

8  none, but in 30 days when we produce our thumb drive, we will

9  assert another privilege log for whatever we feel will be

10  privileged.  But to the best of my knowledge, there are no

11  non-privileged documents that have not been produced.  But we

12  will amend our answer, to the extent that -- within 30-days on a

13  thumb drive we will include that privilege log for whatever

14  would be covered by this request.

15            THE COURT:  All right.  Mr. Chiappetta, I'm not going

16  to overrule the privilege that is technically held by

17  Ms. Couture and not Mr. Trainor, so I'm not going to penalize

18  her given any conduct of Mr. Trainor in this case.  I am going

19  to allow him to assert the privilege in 30 days with the

20  privilege log.

21            So I am granting the motion to compel with regard to

22  number 26, 30 days to amend this answer, provide the privilege

23  log, and identify any non-privileged documents that are

24  responsive to this request as modified by the Court.

25            Any questions about that, Mr. Trainor?

 1          MR. TRAINOR:  No, sir.

 2          THE COURT:  Mr. Chiappetta, anything that you would

 3   like to add?

 4          MR. CHIAPPETTA:  Just a clarification, your Honor.

 5   With regards to allowing Mr. Trainor to reraise privileges, if

 6   that only relates to paragraph 26?

 7          THE COURT:  I'm addressing the document request that

 8   you have asserted in front of me at this time.  I don't believe

 9   any of the other document requests where I granted the motion to

10   compel would constitute matters that would have a privilege

11   objection.  So can you refer me to what you're indicating?

12          MR. CHIAPPETTA:  The reason I'm asking is because

13   Mr. Trainor has asserted multiple times that a privilege log was

14   received on September 3rd.  I can show the Court right now that

15   email chain where it doesn't exist.  The closest it gets is:  A

16   privilege log is coming shortly.

17          And to the extent that Mr. Trainor is going to try to

18   create a privilege log for discovery that was served back in

19   April of '24, I would argue that absent this Court's specific

20   carve out for specific paragraphs, it would be inappropriate.

21          THE COURT:  I'll address that at the time when you get

22   the privilege log.  You're indicating to me you never got one,

23   correct?

24          MR. CHIAPPETTA:  That's correct.

25          THE COURT:  And you're indicating that you never got

1    the thumb drives that Mr. Trainor said he sent to your office,

2    is that correct?

3            MR. CHIAPPETTA:  That's correct.

4            THE COURT:  So I'm not sure why the privilege was

5    asserted at this time, and I will address it at a later time, if

6    necessary.  I can tell you as a general matter, Mr. Chiappetta,

7    the Court is very hesitant to overrule -- or constitute a waiver

8    of any privilege that Mr. Trainor may have otherwise had outside

9    of the clear evidence of discovery abuses.  But we can address

10   that at a later time.  At this juncture, you don't have the

11   thumb drive, you don't know what was asserted when, so we can

12   address it at that time.

13           Any questions, Mr. Chiappetta?

14           MR. CHIAPPETTA:  No, your Honor.

15           THE COURT:  Moving on to number 28, quote:  Produce

16   any documents and ESI in your possession, custody or control

17   between you, your employees, agents, officers, directors,

18   members, and anyone regarding Joseph A. Camp for the last five

19   years.

20           Trainor responds to number 28 by stating:  None.  He

21   further objects to the use of the terms employees, agents,

22   officers, directors or members.

23           As before, I'm going to sustain the objection to the

24   terms employees, agents, officers, directors or members because

25   Mr. Trainor as an individual does not have any of those, and

1    limit the request to documents in his possession, custody or

2    control.

3            That being said, Mr. Trainor, you have responded:

4    None.  Do you stand by that response, or would you like 30 days

5    to produce any documents that may fall under this category?

6            MR. TRAINOR:  Well, if somebody called me out of the

7    blue and said:  Do you know a person named this?  Who would be

8    anyone?  The broadness of that is a little difficult to sort of

9    narrow down.  Who is anyone?  There's no relevance to the

10   request or to a mention of his name.  That seems to be

11   exceedingly broad and burdensome to have to try to track down

12   for five years.  I don't even know that I know the person five

13   years.  I never met him personally.  So five years is an

14   exceedingly long period of time, given that the earliest the

15   complaint arrives is January of 2022.

16           THE COURT:  Okay.  So a few things there.  First, I

17   know it does reference "anyone," but it is limited in subject

18   matter, meaning they only want communications -- I'm sorry, they

19   only want documents and ESI that touch upon Joseph A. Camp, not

20   anything.

21           Second, they have limited it to five years.  You've

22   indicated, Mr. Trainor, that Mr. Camp has only entered the

23   picture at some point well after that period in time.  So that

24   should, in fact, ease the burden on you to produce responsive

25   documents, is that correct?

1      MR. TRAINOR:  It should, sir, yeah.

2          THE COURT:  Okay.  Obviously, as you know, Rule 34

3   requires you to make a reasonably diligent search for materials

4   that would be responsive to this.  Do you know if you looked for

5   documents?

6          MR. TRAINOR:  We have, sir.  And I will -- within 30

7   days, if there's any non-privileged documents that mention

8   Mr. Camp's name, because his name has been brought up so

9   frequently in these actions without being a party, that a lot of

10   those communications may have relevance to the action.

11          So I will do so, and if there is a privilege log that

12   will be needed, it will be produced with that in 30 days.

13          THE COURT:  All right.  Mr. Chiappetta?

14          MR. CHIAPPETTA:  Nothing further to add.

15          THE COURT:  All right.  I will grant, with regard to

16   number 28, direct Mr. Trainor to amend this answer within 30

17   days to identify the documents and either produce them or

18   identify where they are on the thumb drive that is coming to the

19   courthouse, and also to raise any privilege objections he may

20   have to any responsive documents.

21          Moving on then to number 31, quote:  Produce any

22   documents and ESI in your possession, custody or control that

23   show any payments for advertisements depicting Danesh Noshirvan.

24   This RFP includes fliers, billboards, TV advertisements,

25   websites, social media accounts, and any other publications.

1              Trainor responds to number 31 by stating:  None.  He

2    further objects to the use of the terms employees, agents,

3    officers, directors or members.  I'm going to strike that final

4    objection because the document request number 31 does not have

5    those terms.

6              And Mr. Trainor, given that, do you stand by your

7    response to request number 31 that there are none?

8              MR. TRAINOR:  I never purchased an advertisement

9    depicting Danesh Noshirvan.

10             THE COURT:  All right.  The request is, quote:

11   Produce any documents and ESI in your possession, custody or

12   control showing payments for advertisements depicting Danesh

13   Noshirvan.

14             MR. TRAINOR:  I've never purchased an advertisement.

15             THE COURT:  It's a little broader than that because

16   it's not necessarily saying that you purchased it, it's

17   documents in your possession, custody or control that show

18   payments, whether they be from you or someone else, for

19   advertisements depicting Noshirvan.  Is your response that you

20   still have none?

21             MR. TRAINOR:  Yeah, I don't have any payments.  I

22   never, either for someone or on my own behalf, purchased an

23   advertisement depicting Danesh Noshirvan.

24             THE COURT:  Okay.  So your answer is none.

25             MR. TRAINOR:  That's correct.

1          THE COURT:  Mr. Chiappetta, do you have any

2    information to indicate that that response from Mr. Trainor is

3    untruthful or inaccurate?

4          MR. CHIAPPETTA:  Yes, your Honor.  May I share a

5    screen?

6          THE COURT:  Well, you can describe to me what you're

7    going to share, because I can't admit it because we're not in

8    court at this time.

9          MR. CHIAPPETTA:  Document 68, it's multiple

10   defendants' answer to the first amended complaint.  On page 21,

11   paragraph 131:  Trainor admits, as a proponent of and in

12   preparation for the commencement of the civil action known as

13   *Couture v. Noshirvan*, then the case number is 0340-SPC-KCD, that

14   it rented one billboard located in a college town and published

15   a public notification that warned the public of the prevalence

16   of egregious violent societal hazards known as doxing that is

17   carried out on social media platforms, as alleged in paragraph

18   131, written by Mr. Trainor.

19         THE COURT:  Okay.  Mr. Trainor, can you fill me in?

20         MR. TRAINOR:  Yes, sir.  It's not an advertisement.

21   An advertisement is for commercial purposes.  I'm not trying to

22   use semantics or words here, but it was specifically not an

23   advertisement.  So there is a distinction.  There are

24   distinctions here.  A billboard for a public service

25   announcement, there was no commercial purposes intended with our

1    billboard.

2              THE COURT:  Let me ask:  Did the billboard depict

3    Danesh Noshirvan?

4              MR. TRAINOR:  It looked like him, yes.

5              THE COURT:  So you're going to indicate to me that

6    that's not an advertisement?

7              MR. TRAINOR:  It wasn't an advertisement, sir,

8    soliciting business.  So in that sense, the answer is none.

9    There wasn't an advertisement.

10             THE COURT:  An advertisement, as defined by the Oxford

11   dictionary, is a notice or announcement in a public medium

12   promoting a product, service or event or publicizing a job.

13             So you were -- an announcement in a public medium, you

14   would agree that the billboard satisfies that component, right?

15             MR. TRAINOR:  Correct.

16             THE COURT:  And you were promoting what?

17             MR. TRAINOR:  I wasn't promoting anything.

18             THE COURT:  Weren't you promoting awareness for an

19   issue?

20             MR. TRAINOR:  We made notice of an issue that already

21   has a great deal awareness, that's correct, sir.

22             THE COURT:  I find that that constitutes -- given the

23   definition here that I just relayed, along with your response to

24   the complaint, that that constitutes an advertisement as it's

25   been requested.  Now you can dispute with the fact finder

1    whether that constitutes an advertisement or whatever it was,

2    but regardless, I think that document request number 31

3    encapsulates what you have admitted to doing in that response to

4    the amended complaint.

5         So I'm going to grant document request number 31 and

6    direct you to produce any documents and ESI in your possession,

7    custody or control that show any payments for advertisements

8    depicting Danesh Noshirvan, which is to include what was just

9    referenced in your response to the amended complaint.

10        Which paragraph is it, Mr. Chiappetta?

11        MR. CHIAPPETTA:  131, your Honor.

12        THE COURT:  131.  30 days, Mr. Trainor?

13        MR. TRAINOR:  Yes, sir.

14        THE COURT:  I would also advise you to take a look

15   back and see if there's any other advertisements under that

16   definition of a notice or announcement in a public medium

17   promoting a product, service or event or publicizing a job

18   vacancy, and see if anything else fits within that definition.

19        All right.  Moving on then to number 32, quote:

20   Produce any documents and ESI in your possession, custody or

21   control that shows Jennifer Maree Couture was a victim of a,

22   quote, sextortion, or, quote, blackmail, by Danesh Noshirvan.

23        The response was -- Trainor responds to request number

24   32 by stating:  None.  He further objects by stating he is an

25   individual who does not have employees, agents, officers,

1   directors or members.  I am striking the latter objection

2   because those terms are not used in the request.

3            Mr. Chiappetta, could you please enlighten me on the

4   relevance of this request?

5            MR. CHIAPPETTA:  Yes.  It goes to some of my client's

6   defamation claims, and they're directly stated in the complaint.

7   There are multiple pictures showing that there were publications

8   where Ms. Couture had claimed that she was a victim of

9   sextortion and being blackmailed by my client.  And to the

10  extent that those statements are false, they would fall under my

11  client's defamation claim.

12           THE COURT:  So what you're indicating to me is part of

13  your defamation claim is that Ms. Couture said that she was a

14  victim of sextortion or blackmail by Danesh Noshirvan.

15           MR. CHIAPPETTA:  Yes.  So we're contending it's not

16  true.

17           THE COURT:  All right.  Mr. Trainor, you've responded:

18  None.  Do you intend to stand on that response?

19           MR. TRAINOR:  I don't have any documents related with

20  that.  That was never a claim that I made or anything, so I

21  don't know anything about that.

22           THE COURT:  All right.  Mr. Chiappetta, do you have

23  any information to suggest that Mr. Trainor's response of none,

24  which is otherwise complete, is factually inaccurate in any way?

25           MR. CHIAPPETTA:  Not at this time, your Honor.

 1          THE COURT:  All right.  So am going to deny number 32,

 2    and Mr. Trainor is standing on his response of none.

 3          Next up is number 35, which is, quote:  Produce any

 4    documents and ESI in your possession, custody or control that

 5    you intend to utilize to support your affirmative defenses.

 6          Response, quote:  Trainor objects to request for

 7    production number 35 on the grounds it does not define the

 8    documents it seeks.

 9          All right.  Mr. Trainor, can you explain to me that

10    objection?  Because as I see it, he's asking for the documents

11    that you intend to utilize to support your affirmative defenses.

12    So it seems rather straightforward to me.

13          MR. TRAINOR:  Well, we have already produced some of

14    those already, sir.  So to the extent he wants additional

15    documents than what we've already produced and what we will

16    produce in 30 days, I don't understand exactly what additional

17    stuff that he's requiring of me.

18          THE COURT:  He wants you to produce them in response

19    to number 35 so he can see what documents you intend to utilize

20    to support those affirmative defenses so he can be prepared for

21    trial, like anything else.

22          MR. TRAINOR:  Do I have to list all the documents that

23    we produced?  I can produce a list of that.  And if that's what

24    I'm required to do, that would be better served as an

25    interrogatory.

1        THE COURT:  He's not asking for that.  He's not asking

2   for all the documents that may support an affirmative defense or

3   go towards an affirmative defense.  He wants you to identify the

4   ones you intend to utilize, so the ones that you intend to use

5   in a further proceeding to support those defenses.  So it's not

6   every document that you produced or document that touches upon

7   it, but you have an obligation to identify what evidence you do

8   intend to use, and this is a document request to that effect.

9        MR. TRAINOR:  It will be done so, sir, but we are

10  still ongoing with the discovery, so that real determination has

11  not been made at this point, what our trial documents are going

12  to be.

13       I believe this would also require me to create a list

14  of the documents that we are going to use at trial, which,

15  again, is better served as an interrogatory.  But as far as that

16  is concerned, I think this is a little premature to make this

17  request.

18       THE COURT:  He doesn't need a list, you just to hand

19  them over.  You don't need to identify what affirmative defense

20  they go towards.  So all he needs is the documents.  And if this

21  is responsive to 35, then it's incumbent upon him to put the

22  pieces together.

23       I understand that you may not at this juncture know

24  what documents you intend to utilize.  If that's the case, then

25  you answer accordingly.  And just like everything else, you have

1    an obligation to supplement that as that information becomes

2    available.

3           So if you are aware of documents you intend to utilize

4    to support your further defenses, then you can produce them in

5    response to number 35.  If you have none, then you can submit

6    none at this time, and you must supplement it once that decision

7    is made ultimately.

8           So 30 days would be sufficient to amend this answer

9    and produce those documents that you intend to utilize to

10   support your affirmative defenses?

11          MR. TRAINOR:  Yes, sir.

12          THE COURT:  All right.  Anything further,

13   Mr. Chiappetta?

14          MR. CHIAPPETTA:  No, your Honor.

15          THE COURT:  Turning to document request number 43,

16   quote:  Produce any documents and ESI in your possession,

17   custody or control that relates to or is mentioned in the

18   allegation of Noshirvan's first amended complaint.

19          Response is:  Trainor objects to RFP number 43 by

20   stating:  None.

21          All right.  I think there may have been a

22   typographical error in that response, Mr. Trainor.  Are you

23   objecting or are you stating that there are none?

24          MR. TRAINOR:  Sir, we've already produced the

25   documents, which we'll reproduce them in 30 days, but this is an

1    overly broad request.  Really, any document?  That seems to me

2    to be overly broad and extremely burdensome for us to have to

3    search any document, which we have already done, but to produce

4    any document in these confines is very challenging.  And also

5    the first amended complaint is no longer operative at this point

6    when these responses were served.

7              THE COURT:  All right.  Mr. Chiappetta, let me hear

8    from you, because I do have concerns about the breadth of the

9    request.

10             MR. CHIAPPETTA:  Well, the second amended complaint

11   encompasses the entire first amended complaint, so there's no

12   change there.  But as it relates to the first amended complaint,

13   it is sufficiently narrow in the sense that I'm asking for any

14   items that relate to my allegations.  And so it is tailored

15   specifically to my client's claim.  It's not overly broad.

16             THE COURT:  Let me stop you there.  You're saying

17   relates to or is mentioned in the allegations in the first

18   amended complaint.  So what about new stories that have been

19   published post hoc about the allegations in your complaint?

20   They relate to or mention them, do they not?

21             MR. CHIAPPETTA:  Yes, but that would be somewhat

22   relevant as it relates to the case.

23             THE COURT:  You don't have a relevance -- there's no

24   relevance cabin -- sorry, relevance restriction to this.  You

25   ask for any documents that relates to or is mentioned in the

1  allegations of the first amended complaint.  So you've cast a

2  rather wide net there.

3          MR. CHIAPPETTA:  I mean, your Honor, it's no wider

4  than the net Mr. Trainor casted on Friday seeking all videos

5  from my client.  That is way wider than just simply asking for

6  the allegations as alleged in the first amended complaint.

7          THE COURT:  That's not wider because it's limited to

8  videos that your client created, where this has no limitation as

9  to the author of the document.  And it also is -- Mr. Trainor's

10 request is relevant to the issue of the damages that you're

11 seeking.

12         Here's what I'm going to do with number 43:  I think

13 it's facially overbroad.  I don't think it can be responded to

14 in any discernible fashion.  And to the extent there are

15 responsive documents that would be relevant, I don't find it

16 proportional.  So I am going to deny the request to number 43.

17         Anything further, Mr. Chiappetta?

18         MR. CHIAPPETTA:  No, your Honor.

19         THE COURT:  Anything further from you, Mr. Trainor?

20         MR. TRAINOR:  No, sir.

21         THE COURT:  Moving on to number 44, quote:  Produce

22 any non-privileged documents and ESI in your possession, custody

23 or control that mentions *D'ambly v. Exoo*, a case from New

24 Jersey.

25         And the response is -- give me one second to get

1   there.  The response is -- Mr. Trainor responds to RFP number 44

2   by stating:  None.

3           Mr. Chiappetta, can you enlighten me on the relevance

4   of this District of New Jersey case that's from 2021?

5           MR. CHIAPPETTA:  The only relevance is that we have

6   information and documents that -- or not really documents, but

7   information that relates to -- that lead us to believe that

8   Joseph A. Camp has been contacting the court and interfering

9   with that case the same way he has been interfering with this

10  case.  And we are seeking those documents to tie this all

11  together.

12          THE COURT:  Tie what together?  The basis of your

13  claim isn't that Camp is interfering with the court.  The basis

14  of your claim is that Camp and the others have conspired to harm

15  him by swatting him, billboards, all those other allegations.

16  So what's happening in that District of New Jersey case, how

17  does that relate to here?

18          MR. CHIAPPETTA:  The case itself is not what is at

19  issue.  It, again, relates to the conspiracy.  It goes to the

20  timeframe that Mr. Trainor met Mr. Camp.  It goes to the

21  coordinated effort.  It goes into Mr. Cornelisse and how -- the

22  conversation Mr. Camp had with Mr. Cornelisse as it relates to

23  finding the plaintiff.  And it's all alleged in this first and

24  second amended complaint.

25          THE COURT:  All right.  Mr. Trainor, what's your

1  involvement with this *D'ambly v. Exoo* case?

2         MR. TRAINOR:  This is a labor discrimination case.  I

3  represent the plaintiff.  It's an ongoing litigation.  So I

4  don't know what it has to do with this case.  It doesn't have

5  anything to do with any of the other parties.  It's really

6  confounding that he would want me to produce documents from an

7  unrelated case within a completely different district with

8  different parties and different factual allegations.

9         I don't understand how this could have any sort of

10 relevance or be required to be produced when it's ongoing

11 litigation.  I'm in the middle of it.  Trial date was just set

12 two days ago.  So I don't understand how and what would be

13 non-privileged that be relevant to this case or even

14 proportional to have to produce when it has no bearing on the

15 case, other than just saying a bunch of words:  Oh, the parties

16 this, we think and we hope and we wish.  That's really what it

17 comes down to.

18         THE COURT:  Mr. Chiappetta, let me ask:  Is Joseph

19 Camp somehow involved in that District of New Jersey case?

20         MR. CHIAPPETTA:  From the information I have, my

21 understanding is that Mr. Camp has interfered and attacked

22 attorneys, like he has Mr. Robeson (ph), and also has contacted

23 the court, like he has here.

24         So it shows a direct connection between Mr. Camp and

25 Mr. Trainor stemming prior to the institution of this case or

1    even the 340 case.  And it's absolutely relevant to show those

2    ties as it relates to the conspiracy there.

3            THE COURT:  All right.  I'm not going to grant the

4    motion to compel given the breadth of the request.  It's

5    everything that mentions the lawsuit.  I understand there may be

6    some kernels of relevance that maybe are kicking around in that

7    New Jersey case, but I think what you are going to have to do is

8    take some depositions and get more targeted discovery rather

9    then me have him produce -- Mr. Trainor is a lawyer on the case.

10   He would to produce his entire file, every communication he's

11   ever had.  How is that proportional?

12           MR. CHIAPPETTA:  I did try to limit it to

13   non-privileged documents.

14           THE COURT:  But he still has to go through them all,

15   create a privilege log, log them in.  Whereas, what you're

16   saying, if I understand it correctly, Mr. Trainor's involved in

17   this case.  Joseph Camp has now interjected himself and he's

18   conducting himself as in this case, and that shows some

19   relationship between Mr. Trainor and Mr. Camp and there's a

20   concerted type of action that is occurring there as well as

21   here.  It's to link them all together, correct?

22           MR. CHIAPPETTA:  Correct.

23           THE COURT:  All right.  I get the relevance, but I

24   don't find the request proportional, given Mr. Trainor's

25   function as an attorney of record in the New Jersey case.  That

1  is not proportional, as I see it, given the relevance.

2          So I am going to deny it.  The issue, to the extent it

3  bears any fruit, I think you're going to have to do some more

4  targeted discovery.

5          Okay.  Anything further on number 44, Mr. Chiappetta?

6          MR. CHIAPPETTA:  No, your Honor.

7          THE COURT:  Anything further from you, Mr. Trainor?

8          MR. TRAINOR:  No, sir.

9          THE COURT:  Turning next then to number 45, quote:

10 Produce any documents and ESI in your possession, custody or

11 control that relates to or mentions @victimsofdanesh or

12 @victimsofthatdaneshguy from May 2022 through date current.

13         Trainor responds to the first part of number 45 by

14 stating:  None for @victimsofdanesh.

15         Trainor responds to the second part of number 45 by

16 stating:  None for @victimsofthatdaneshguy.

17         All right.  Mr. Trainor, is your position still that

18 you have no responsive documents to this request?

19         MR. TRAINOR:  That's correct, sir.

20         THE COURT:  Mr. Chiappetta, do you have anything to

21 indicate that that information is inaccurate -- sorry, that

22 response is inaccurate in any way?

23         MR. CHIAPPETTA:  Not as it relates to the second

24 amended response, your Honor.

25         THE COURT:  All right.  So I'm going to deny the

1    motion to compel number 45.

2            Moving on to number 46, quote:  Produce any documents

3    and ESI in your possession, custody or control that mentions the

4    attorneys who showed up for the March 15, 2024 hearing before

5    Magistrate Kyle C. Dudek.

6            Response:  Trainor responds to number 46 by stating

7    that he has no knowledge of persons named in RFP number 46.

8            Mr. Chiappetta, can you fill me in on what's the

9    relevance here?

10           MR. CHIAPPETTA:  The relevance here is, as it relates

11   to the ADL and what occurred with my client, it is my

12   understanding -- and it has also been shown in the May 18 video

13   expressly stated by Mr. Camp -- that there was a total of five

14   attorneys participating in this whole scheme that we're calling

15   this conspiracy here to essentially attack my client.

16           And so what we are looking at, what we were trying to

17   adduce from this particular request is to figure out who those

18   attorneys were who appeared, because we have never seen them

19   before.  They just randomly showed up.  They seemed to know

20   Mr. Trainor.  And to the extent that it relates to the ADL and

21   they are a part of it, we would like to know that information.

22   But we're simply limiting our request here to essentially who

23   they are.

24           THE COURT:  Well, no, you didn't.  That's not what you

25   did.  You said, "that mentions the attorneys."  So if this is an

 1  attorney that Mr. Trainor knows, every email between Mr. Trainor

 2  and that attorney would fall under this request, correct,

 3  because it mentions that lawyer who showed up?

 4          MR. CHIAPPETTA:  That would be correct.

 5          THE COURT:  All right.  I'm going to deny number 46 as

 6  facially overbroad and not proportional.

 7          Anything further on your end, Mr. Trainor?

 8          MR. TRAINOR:  No, sir.

 9          THE COURT:  Okay.  Moving on then to number 48, quote:

10  Produce any documents and ESI in your possession, custody or

11  control that shows that you, Ralph Garramone, MD or Jennifer

12  Maree Couture know Joseph A. Camp.

13          The response to that was, quote:  Trainor responds to

14  RFP number 48 by stating none.

15          Mr. Trainor, do you stand by your response that there

16  are no documents that shows Mr. Garramone, Ms. Couture or

17  yourself know Joseph A. Camp?

18          MR. TRAINOR:  Well, sir, we quibble with the word

19  "know."  There might be emails where Joseph A. Camp's name is

20  mentioned, somebody did something, to that effect, but none that

21  would say that we know him or I know him in a relationship or

22  that kind of way.  So how does he expect -- what would be a

23  document that shows that I know somebody?

24          THE COURT:  I think you identified it yourself.  If

25  you've got an email exchange where you mentioned Mr. Camp's

1    name, wouldn't that be an indication that you know him, know of

2    him?

3              MR. TRAINOR:  Know of him, maybe not know him in the

4    way that it's worded here, as in not knowing him as having a

5    relationship, in that respect.  But to show all three, that's

6    kind of a difficult thing to answer.  So if I have emails

7    mentioning someone's name, as your Honor would know, that

8    doesn't necessarily mean we know that person or I know of --

9    knowing of someone is not knowing him or her.

10             THE COURT:  All right.  Mr. Chiappetta, let me hear

11   from you.  I do agree with what Mr. Trainor says.  It's a little

12   difficult to conceptually grasp how he is going to go through

13   his documents and then filter out what shows that he or

14   Garramone or Couture know Joseph A. Camp.

15             MR. CHIAPPETTA:  Well, as far as I'm aware, the term

16   "know" is just be aware of through observation, inquiry or

17   information.  So if we're using that -- or here,

18   Merriam-Webster, to perceive directly, to have an understanding,

19   to be acquainted with, familiar.  Under those definitions, I

20   would argue that any email correspondence to or from Mr. Camp

21   and discussions about Mr. Camp show that they know of Mr. Camp

22   as it relates to the term.

23             THE COURT:  I get that.  That easily falls into the

24   bucket.  But then there's maybe communications or ESI in the

25   gray area that doesn't necessarily -- how is Mr. Trainor

1    supposed to identify:  Does this indicate that I know Joseph A.

2    Camp?  Let's say that it mentions something that Joseph A. Camp

3    has done related to the case but doesn't otherwise indicate any

4    affiliation with him, does that still fall under the rubric of

5    evidence that they know him?

6              MR. CHIAPPETTA:  Well, I understand the Court's

7    concern with the term "know," but I believe that the term is

8    extremely broad, and I do believe that there are significant

9    communications between them that would support "know," and to

10   the extent that --

11             THE COURT:  Okay.  So why isn't --

12             MR. CHIAPPETTA:  -- Mr. Camp, it would fall within

13   that as well.

14             THE COURT:  If you're trying to establish the

15   connection between them as members of the conspiracy, isn't the

16   communications that you say that exist that are directly between

17   them sufficient to establish that fact?

18             MR. CHIAPPETTA:  Possibly.  But there may be

19   discussions with third parties about Mr. Camp that I don't

20   necessarily have, and they wouldn't fall under a communication

21   with Mr. Camp.  In which case --

22             THE COURT:  They could be communications about

23   Mr. Camp which you could request, which I think is an objective

24   requirement.  But here you've got:  It shows that they know him.

25             I think the request is too nebulous, and given its

1  breadth, I am going to deny it.  I think if you wanted to say:

2  Give me communications that you've had about Joseph A. Camp,

3  that would establish the knowledge requirement without having

4  the additional component of Mr. Trainor trying to identify what

5  else might indicate his knowledge.  And I think you've got at

6  that covered elsewhere.

7          So I'm denying the request, the motion to compel as to

8  number 48.  I don't think, given the nebulous nature of what its

9  seeking, Mr. Camp's involvement here, I don't think it's

10 proportional for Mr. Trainor to have to answer that request.  So

11 I will deny number 48.

12         Anything further, Mr. Chiappetta?

13         MR. CHIAPPETTA:  No, your Honor.

14         THE COURT:  Anything further, Mr. Trainor?

15         MR. TRAINOR:  No, sir.

16         THE COURT:  Moving on to number 56, quote:  Produce

17 any documents and ESI in your possession, custody or control

18 that you, your employees, agents, officers, directors, members,

19 contend show that the following statements were truthful:

20 Noshirvan (1) is a child groomer, (2) sexual predator, (3)

21 pedophile, cyberbully, stalker, sextortionist, blackmailer, and

22 that he rapes his own children -- I'm sorry, rapes his own

23 child, and caused a 14-year-old to commit suicide.

24         Trainor responds by stating that he has no responsive

25 documents.  He further objects to the use of the terms

1  employees, agents, officers, directors or members.

2         I am going to uphold the objection to the use of those

3  latter terms because, as I indicated before, Mr. Trainor does

4  not encompass those types of entities as an individual, and

5  limit number 56 to Mr. Trainor individually.

6         With that being said, Mr. Trainor, do you stand by

7  your response that you have no documents responsive to number

8  56?

9         MR. TRAINOR:  I do not, sir.  I stand by my response.

10 But irrespective of the factual contention that has to be made

11 there, we don't have any responsive documents.

12        THE COURT:  So it's none.

13        All right.  Mr. Chiappetta, do you have any

14 information to suggest that the response of "none" is inaccurate

15 or untruthful in any way?

16        MR. CHIAPPETTA:  No, not as it relates to the third

17 amended response, your Honor.

18        THE COURT:  Okay.  Turning then to request number 61,

19 quote:  Produce any documents and ESI in your possession,

20 custody or control that link Joseph A. Camp to Patrick Trainor,

21 the Anti-Doxing League, or the Law Office of Patrick Trainor,

22 Esquire, LLC.

23        Response:  Trainor responds to number 61 by stating

24 this request is not directed towards him.  Trainor further

25 responds to request number 61 by stating there are none.

1          I'm going to strike the first objection because I do

2     think that it is directed towards Mr. Trainor.  It's got his

3     name listed in it.  But otherwise, Mr. Trainor, your statement

4     is that you have no responsive documents to number 61.

5          MR. TRAINOR:  That's correct, sir.  This is similar to

6     our previous number 45.  We were asked to show that I know

7     somebody.  Here, these are documents that link four entities and

8     persons.  I don't know exactly how -- what would be the link

9     between all those four persons.  The best of my knowledge,

10    they've never -- I don't have any emails with all four of those

11    persons on them, and don't know what would be sufficient to show

12    there's a link between them.  And a link for what?  Is it a link

13    to have tea on Tuesday or is it a link to do something nefarious

14    as Mr. -- what's the link there?  I don't understand that

15    request.

16          THE COURT:  Mr. Chiappetta?

17          MR. CHIAPPETTA:  Well, the rule is similar in the

18    sense -- I would hope, and argue narrower in the sense that

19    there is some form of contact.  So I guess "communication" would

20    be a better word.  But for all intents and purposes, what we're

21    trying -- what we're really looking for here, and I think I even

22    had mentioned it prior, is that there are definite

23    communications.  What we're looking for in the sense of a link

24    is really more along the lines of essentially that they are --

25    that Camp is communicating with Mr. Trainor, the ADL, and the

1   Law Office of Patrick Trainor.

2           THE COURT:  All right.  I think that request is --

3   that information is better sought through a more directed

4   request.  But be that as it may, Mr. Trainor responded that he

5   has none.  Nothing you indicated to me suggests that that's not

6   an accurate representation at this time, so I'm going to go

7   ahead and deny the motion to compel request number 61.

8           Mr. Chiappetta, if you have any information at a later

9   time to suggest that that's an inaccurate representation, you

10  can file the motion under Rule 26.

11          MR. CHIAPPETTA:  Okay.

12          THE COURT:  Number 62.

13          Mr. Chiappetta, I'm sorry, I cut you off.

14          MR. CHIAPPETTA:  No, I was just going to raise the

15  issue that there is an amended privilege log that has been filed

16  on the docket that do show communication between Mr. Trainor --

17  where both Mr. Camp and Mr. Trainor are participants on the same

18  email chain, as it relates to establishing that link.

19          THE COURT:  All right.  Go ahead and file the

20  appropriate motion under Rule 26 and I'll address it at that

21  time.

22          MR. CHIAPPETTA:  Okay.

23          THE COURT:  Moving on to number 62, quote:  Produce a

24  compete copy of every bar complaint filed against you for the

25  last five years.  This RFP includes your response thereto and

 1   disposition documents.

 2           Mr. Chiappetta, how on earth is this relevant?

 3           MR. CHIAPPETTA:  It's relevant to what are likely

 4   going to be defenses.  Mr. Trainor has constantly alleged that

 5   my client has filed a bar complaint against him, and --

 6           THE COURT:  But how is that a defense to the claims

 7   that you've brought?

 8           MR. CHIAPPETTA:  Well, to the extent that it's not

 9   necessarily going to be raised as a defense, I would argue that

10   he is going to try to argue some form of unclean hands or

11   something like that.  But to the extent that he's not arguing

12   that, then I would argue that it will likely go to impeachment,

13   because he is likely going to try to assassinate my client's

14   character by saying that my client did all these bad things,

15   including filing bar complaints.  And if they were actually

16   filed, I just want to see a copy to substantiate the claim.

17   That's all I'm asking for.

18           THE COURT:  But you didn't ask for complaints that

19   your client filed against him.  You asked for every bar

20   complaint for the last five years.  Did you not?

21           MR. CHIAPPETTA:  That is correct.

22           THE COURT:  All right.  Denied.  I think it's

23   disproportionate, given what you're indicating is the relevance,

24   that Mr. Trainor is going to argue that your client filed bar

25   complaints against him.  I struggle to understand the relevance

 1   of even that.  Be that as it may, this request number 62 is

 2   vastly disproportionate to the use of that material.

 3        So if you want to ask for copies of bar complaints

 4   that your client has filed against him to see what's out there,

 5   you can do so.  But every bar complaint, I'm not going to compel

 6   Mr. Trainor to answer that.

 7        So number 62 is denied.

 8        MR. TRAINOR:  May I respond to that, sir?

 9        THE COURT:  Go ahead, Mr. Trainor.

10        MR. TRAINOR:  There's only been one bar complaint ever

11   filed against me, and that was by Mr. Noshirvan.  On August 27,

12   2023, immediately after I denied his third request to seek

13   extension to file an answer in the 340 action, he immediately

14   turned around and filed a bar complaint against me, which was

15   promptly rejected due to the pending action against him.  There

16   are no other bar complaints filed against me other than

17   Mr. Noshirvan.

18        THE COURT:  If you want to answer number 62 to

19   avoid --

20        MR. TRAINOR:  He produced -- Mr. Chiappetta produced

21   documents where Mr. Noshirvan is sharing a copy of the denial of

22   the bar complaint with Mr. McGibney.  So he already has it.  I

23   don't have it.  When they file a bar complaint against you, you

24   don't get a copy of the bar complaint unless it goes on to

25   further litigation.  When they get dismissed, as that one was

1   offhand, they don't provide that for you.

2          THE COURT:  All right.  So you've got none anyways.

3          MR. TRAINOR:  Correct.

4          THE COURT:  Mr. Chiappetta?

5          MR. CHIAPPETTA:  Well, arguably it would be -- usually

6   they're provided to the attorney to respond to it, in which case

7   it would still be within his possession, custody and control to

8   request it.  And given that Mr. Trainor had filed a limited --

9   stated that there's only been one filed, then the overbreadth

10  and the proportionality have all gone away, because there's

11  allegedly only one document, which would make it directly

12  responsive to my request.  In which case, we ask the Court to

13  reconsider its prior ruling as it relates to that one document

14  Mr. Trainor has now discussed.

15         THE COURT:  Denied.

16         MR. TRAINOR:  There's nothing to apply to.  Did you

17  understand what I said?  They dismissed it out of hand because

18  your client had a pending action against him.  That's why.

19         THE COURT:  All right.  That's enough.  Number 62 is

20  denied.

21         Mr. Chiappetta, if you want, you can file an

22  appropriately limited request, or you can just ask the bar for a

23  copy of it.  Send them a subpoena.

24         Number 63, quote:  Produce a complete copy of your

25  server since you falsely alleged that plaintiff hacked your

 1   server rather than admit you work with Joseph A. Camp.

 2                Response:  Trainor objects to RFP number 63 because he

 3   never made that statement.

 4                Mr. Chiappetta, do you want a complete copy of

 5   Mr. Trainor's server?

 6                MR. CHIAPPETTA:  We would like to have it forensically

 7   tested.  Because in Mr. Trainor's initial disclosures, he

 8   alleges information related to the unauthorized electronic

 9   intrusion hacking of email server and network drives -- drivers,

10   I assume, not drives -- belonging to Patrick Trainor,

11   information related to the unauthorized electronic intrusion of

12   telephone systems and network drives belonging to his law

13   office.  And the list goes on and on and on.  So to the extent

14   that he's raised this in his initial disclosures, it has now

15   become directly relevant to this case and what Mr. Trainor is

16   now going to be arguing.

17                THE COURT:  What do you mean he raised it in his

18   disclosures?  Say that to me again.  The Rule 26 disclosures

19   have you produce documents.  It's not a chance for you to just

20   insert interrogatories.  So what is actually in the Rule 26

21   disclosure?

22                MR. CHIAPPETTA:  May I share a screen?  I will show

23   you.

24                THE COURT:  You can go ahead and share that screen.

25                MR. CHIAPPETTA:  It's not turned on, your Honor.

1      THE COURT:  All right.  Mr. Trainor, can you explain

2  to me what this reference is to someone hacking your server?

3      MR. TRAINOR:  Well, sir, we received an alert that

4  there was some strange action on my servers.  And Mr. McGibney

5  was inserting himself in this action.  He's an admitted computer

6  hacker.  And on multiple communications that have been produced

7  by Mr. Noshirvan, Mr. McGibney makes mention of his hacking

8  abilities and persons that he's hacked.  So that's on the

9  record.

10      So in defense of that, combined with the notice that

11  we received -- and to produce a complete copy of my server is

12  completely disproportionate to the allegations.  We have an

13  ongoing search, and if we find that, we will share that at the

14  time.  But based on what the statements are in documents that

15  Mr. Noshirvan has produced, we have great cause for concern.

16      THE COURT:  But I guess I'm struggling to understand

17  how that issue goes to the underlying facts of this case, to the

18  extent it's even been inserted.

19      MR. TRAINOR:  Well, sir, because the allegations are

20  really the conduct of what Mr. Noshirvan does.  I don't even

21  have a social media account of my own, but he's alleging I'm

22  using social media to interact with him.  I don't do that.  I

23  don't have that.  I don't do that.

24      So I have a plaintiff in this case who is

25  commiserating with a known stalker on his Instagram private

1    messages and they're discussing accessing other accounts.  It's

2    a great deal of concern for us.  And I can reference the

3    communications where those comments were made about hacking and

4    accessing and sharing tools that are used to hack into computer

5    systems.

6            THE COURT:  You intend to interject this idea that

7    Mr. Noshirvan and Mr. McGibney hacked your server?

8            MR. TRAINOR:  It's protective, sir.  It's a protective

9    measure.  We don't intend to raise it as a defense, but we

10   believe, based upon a notice that was given to us from our

11   security system, there was an issue there.  Simultaneously,

12   Mr. McGibney and Mr. Noshirvan are discussing hacking tools and

13   how they hacked into Mr. Camp's stuff, the Yandex account.

14           THE COURT:  If that is all true, how would that

15   pertain to defenses that you intend to raise in this case?

16           MR. TRAINOR:  Because there's a lot of emails going

17   around that are being alleged to be sent by certain persons, and

18   if those emails were hacked -- if our emails were hacked, we're

19   concerned about things being sent as if from us.

20           THE COURT:  Are there any of those emails presently

21   being circulated in this case that you believe were hacked and

22   not sent by you?

23           MR. TRAINOR:  None that I have seen yet, sir, but the

24   search is ongoing.

25           THE COURT:  All right.  Listen, I would agree that

1  searching your -- providing a copy of your server is rather

2  overbroad, but if you're going to interject this issue and claim

3  that McGibney along with Noshirvan have hacked into your server,

4  then what else am I supposed to do than give him some access to

5  it if you're going to be making those allegations?

6          MR. TRAINOR:  It's not an allegation in the complaint,

7  sir.  We believe it happened and we'll produce it if it happens.

8          THE COURT:  Well, it is an issue because you put it in

9  your Rule 26 disclosures.

10         MR. TRAINOR:  We'll address it.  You want to give him

11 my server?  My entire server?  That's a little overbroad, don't

12 you agree?

13         THE COURT:  Mr. Trainor --

14         MR. TRAINOR:  Millions of hard drive layers there,

15 sir.

16         THE COURT:  Mr. Trainor, I don't want to give it to

17 him.  But what I'm trying to say is this issue, which I can't

18 understand its relevance, has been injected into the case by

19 your Rule 26 disclosures.

20         MR. TRAINOR:  Well, there are a series of ex parte

21 emails that float around that have made allegations about me

22 that I was not aware of at certain times in the realtime when

23 they were made.  Those emails have done nothing -- were not done

24 on my behest, but somehow they have been foisted upon me as if I

25 were the one demanding that they be sent.  So I don't know how

1    they play into our cause for concern, I should put it that way.

2              THE COURT:  Mr. Chiappetta?

3              MR. CHIAPPETTA:  Your Honor, because of Mr. Trainor's

4    injection of this line of inquiry, my client would be severely

5    prejudiced if my client cannot have a forensic expert examine

6    this particular server in order to determine whether or not

7    these statements are false or not.  And given the allegations

8    made in the injection for the case, we have no other mechanism

9    to prevent the extreme prejudice.

10             MR. TRAINOR:  Sir, may I make one final statement,

11   your Honor?

12             THE COURT:  Go ahead, Mr. Trainor.

13             MR. TRAINOR:  Your Honor recalls I presently have a

14   Rule 11 motion filed via Mr. Chiappetta due to allegations how I

15   was allegedly the one who conspired with Mr. Camp to threaten

16   and harass a legal process server.  That was an utterly false

17   statement.  Those are statements that gave us great concern for

18   there being the presence of some intrusion into our system, that

19   there was these false allegations that I was entering a criminal

20   conspiracy to harass a processor server, which never occurred,

21   by the way.  Those are where we have a great deal of concern for

22   things getting accessed into our phone and computer systems.

23             THE COURT:  I don't see the relevance of much of any

24   of that at this time.  I'm not going to order disclosure of the

25   server.

1          Mr. Chiappetta, I think maybe the appropriate thing to

2     do is file a motion in limine regarding that material, as

3     opposed to trying to access Mr. Trainor's server.  It's just not

4     proportional at this time.  If you can present evidence,

5     something that they intend to introduce against your client that

6     shows that he's been hacking into their servers, then I will

7     reconsider it.  But at this time, all I see are some

8     allegations, which I don't understand how they relate to the

9     complaint lodged in the Rule 26 disclosure.

10          So at this time, I will deny it.  You can revisit the

11     issue if you have some more concrete evidence that you intend to

12     introduce.

13          MR. CHIAPPETTA:  Your Honor, our old request was

14     simply to disprove all of these salacious allegations.  It's

15     beyond overboard at this point.

16          THE COURT:  I get it.  I understand that those

17     allegations are being made.  I don't understand the relevance

18     being made yet and how they would factor into getting in front

19     of the fact finder ultimately.  So if there is some further

20     concrete evidence as to how that is going to be presented, I

21     will let you reassert your request to look at the server, but at

22     this time, I'm not going to allow it.  All right?

23          MR. CHIAPPETTA:  Thank you, your Honor.

24          THE COURT:  Number 64, quote:  Produce a complete copy

25     of your phone logs for the past three years.

1          Response:  Trainor responds by stating none.

2          Mr. Chiappetta, you're looking for Mr. Trainor's phone

3   logs for presumably every phone that he has control over?

4          MR. CHIAPPETTA:  The way it's written, it just asks

5   for his phone logs, so asks for a singular phone.  If you want

6   me to break it down even further, we're really only looking for

7   his main line, obviously the one that was posted on the

8   billboard.

9          But setting that aside --

10          THE COURT:  Okay.  So you're saying there's a number

11   that was posted on the billboard?

12          MR. CHIAPPETTA:  Correct.  It goes directly to

13   Mr. Trainor's law office.

14          THE COURT:  Okay.  What would the phone logs indicate

15   that you would need?

16          MR. CHIAPPETTA:  All it would show is phone numbers

17   that have called in.  One way or the other, we would have to

18   essentially flesh all that out to figure out the extent of what

19   is occurring.  We're looking for potential links.  Which I

20   understand that this is an open hearing, so I don't necessarily

21   want to disclose all those particular links, but there is

22   information in there.  We have numbers that we want to look for.

23          THE COURT:  So you want the entire phone log.  But

24   wouldn't it be more appropriate, if you believe that there's

25   certain numbers that establish a link between Mr. Trainor and

1  maybe some other member of the conspiracy, to ask him to produce

2  copies of phone logs which will disclose whether those calls

3  took place?

4          MR. CHIAPPETTA:  I actually think it's easier as it's

5  requested, because all he has to do is simply go to his phone

6  carrier and request a complete copy of his logs and get a file

7  that will simply be created and sent to him, as opposed to

8  having the carrier separate each independent phone call.

9          THE COURT:  Mr. Trainor, let me hear from you.  You

10  stated that you have none.  Do you stand by that statement?

11          MR. TRAINOR:  Well, because it's really undefined and

12  it's overly broad by saying phone logs, I don't know.  They're

13  saying several phones there, number one.  So it seems not

14  proportional to what he's really requesting.

15          Number two, it seems like he's asking me to download

16  my data similar to our request for his download of TikTok data.

17          So he wants the phone logs for the number that's on

18  the billboard, is that what he's requesting?

19          THE COURT:  That's what he's requesting, yes.

20          MR. TRAINOR:  That number is not in his request.  I

21  don't know what my phone carrier has available.  We would have

22  to go back through that and look.  I don't know if it has for

23  three years.  That seems sort of an arbitrary date.  Why three

24  years?  That's something also I would like to know.  And I don't

25  know, what number is he looking for in there?  Give us one of

1  the numbers.

2       THE COURT:  Mr. Chiappetta, can you illuminate me as

3  to why you requested the three-year look back window?

4       MR. CHIAPPETTA:  When this request was originally

5  sent, it was April of '24, which would essentially have put it

6  in April of '21, which would have been significantly limited in

7  time.  It's only a few months before the January 26, 2022 event

8  occurred.  And the case that actually is in play out here

9  occurred in May of '22, so we're not going that far back, in

10  that sense.  What we're simply looking for is a specific window

11  of time.

12       And I mean, if this Court was to go back from today,

13  January 28, 2025, and go back three years, that would be

14  January 28 of 2022, which would put it directly right after the

15  occurrence of the Dunkin' Donuts parking lot issue, which is

16  also stated in the second amended complaint.  So it is severely

17  limited in scope -- or timeframe, I really should say.

18       THE COURT:  Mr. Trainor, going back to you.  So the

19  billboard that we discussed earlier that was put up that

20  contained Mr. Noshirvan's likeness also had the number on it to

21  your law office?

22       MR. TRAINOR:  Correct.

23       THE COURT:  Okay.  And what did it direct the reader

24  of the billboard to do with that number?

25       MR. TRAINOR:  Call us and explain the harm that you

1  suffered.

2            THE COURT:  Okay.

3            MR. TRAINOR:  Sir, I don't know how far back my phone

4  logs go, sir, but to the extent they want the phone log, I will

5  give them -- I will redact -- for the number that's on the

6  billboard, I will give it to him.  I will redact certain numbers

7  if they're privileged and have no relation to this case.

8            THE COURT:  What privilege do you have with a phone

9  number?

10           MR. TRAINOR:  Maybe none.  I don't know, maybe none,

11 but I will be happy to share the number that's on the billboard.

12           THE COURT:  Okay.  So you'll --

13           MR. TRAINOR:  Limited to that number on the billboard,

14 of course, yes, sir.

15           THE COURT:  You'll inquire about getting phone logs

16 that, again, don't reveal any contents of communications, just

17 the numbers that called that line for the three years prior.

18           MR. TRAINOR:  Prior to today?  April 2021 doesn't make

19 any sense because I didn't know who Danesh Noshirvan was in

20 2021.

21           THE COURT:  I think it's more appropriate to do it

22 three years from today, is that not correct?

23           MR. TRAINOR:  That's fine by me.

24           THE COURT:  With the Dunkin' Donuts incident.  Right,

25 Mr. Chiappetta?

1      MR. CHIAPPETTA:  I mean I prefer to go back to April

2  of '21, but if your Honor is not going to allow it --

3      THE COURT:  Wait.  Going back to April of '21 is

4  before the events even occurred with Ms. Couture and

5  Mr. Noshirvan, is it not?

6      MR. CHIAPPETTA:  That would be correct.  But the

7  complaint goes further and alleges people communicating prior to

8  the events that occurred on January 26 of '22.

9      THE COURT:  With who?

10      MR. CHIAPPETTA:  We have alleged that there is

11  communication, for example, with Rikki Cornelisse or Mr. Camp,

12  and those phone logs would identify those individuals' phone

13  numbers.

14      THE COURT:  Okay.  But you just indicated to me that

15  you wanted the phone logs for that one number that was included

16  on the billboard because you wanted to know who called the

17  billboard afterwards.  But now you're saying that you also want

18  it to establish to see if Joseph Camp contacted Mr. Trainor at

19  any point in time?

20      MR. CHIAPPETTA:  Yes.  It cuts both ways.  Yes, I want

21  to see as it relates to the billboard, but I also want to see

22  who called.  Now I'm okay if the Court wants to limit it to

23  January 28 of '22.  I would prefer it to go back a few months

24  earlier, but in either event --

25      THE COURT:  I'm not doing that.  I will go back to

1    three years.  I will limit it to the number on the billboard.

2         Mr. Trainor, you'll just have to request from your

3    phone provider what logs they can provide you for that

4    three-year period.

5         MR. TRAINOR:  I don't know if they go back three

6    years, sir, but I will produce whatever I can, whatever is

7    available.

8         THE COURT:  So it's granted under those restrictions

9    that we just discussed, 30 days.

10        MR. CHIAPPETTA:  Thank you, your Honor.

11        THE COURT:  All right.  According to my records, that

12   is every specific discovery request that was discussed in your

13   motion, Mr. Chiappetta.  Is there any that the Court has missed?

14        MR. CHIAPPETTA:  I believe there's one, simply because

15   Mr. Trainor didn't respond to it, number 67.

16        THE COURT:  Give me one second.  Number 67, your

17   motion, page 14.  I see it now.  My apologies.

18        MR. TRAINOR:  Sir, as I received the request, there

19   was no number 67.  There were two misnumbered requests, numbers

20   15 and 16 were repeated twice.  So there were two number 15s,

21   two number 16s, no number 67.

22        THE COURT:  I see it, but it's not in your response.

23        MR. CHIAPPETTA:  Exhibit A does actually have a number

24   67 and also includes the duplication at paragraphs 15 and 16.

25        THE COURT:  What may have happened, since it's on the

1  last page, it may have been omitted.

2          Mr. Trainor, are you indicating that it wasn't there

3  or you were not aware of it?

4          MR. TRAINOR:  I was not aware of it, sir.

5          THE COURT:  All right.  Thirty days to answer it and

6  provide an objection or respond.

7          Any others, Mr. Chiappetta?

8          MR. CHIAPPETTA:  Nothing at this time, your Honor.

9          THE COURT:  Any other specific requests that were

10 raised that were not addressed, according to your records,

11 Mr. Trainor?

12         MR. TRAINOR:  None that I'm aware of, sir.

13         THE COURT:  Okay.  Then the last issue is the request

14 for fees.  Noshirvan seeks attorneys' fees and costs associated

15 with bringing the motion to compel and sanctions for defense

16 failure to produce the subject documents.  Because the motion to

17 compel was granted in part and denied in part, it is left to the

18 Court's discretions whether to award fees under Rule

19 37(a)(5)(C).

20         Given the Court has essentially granted in part and

21 denied this in part, and some requests were obviously improper

22 or insufficient, I will deny the request for sanctions

23 consistent with *Wyndham Vacation Ownership*, citation:  2019

24 Westlaw 5394057.

25         According to my records, that's everything that we

1   needed to get through.

2          Mr. Chiappetta, anything further for the record before

3   we conclude?

4          MR. CHIAPPETTA:  No, your Honor.

5          THE COURT:  Mr. Trainor?

6          MR. TRAINOR:  No, sir.

7          THE COURT:  One last item.  Ms. Ward, you can go ahead

8   and unmute Mr. Camp.  For the reasons indicated, we muted him

9   earlier.  He can make whatever statement he would like on the

10  record before we end this hearing.

11         MR. JOSEPH A. CAMP:  Hello, this is Joseph.  Can you

12  hear me?

13         THE COURT:  We can hear you.

14         MR. JOSEPH A. CAMP:  Okay.  So first and foremost, if

15  indeed there are communications, and I'm not entirely sure that

16  there are, between myself and anybody, particularly with

17  Mr. Trainor, I would consider those communications to be

18  attorney-client privilege.  Since I'm not a party to this case,

19  I am continuing to assert that privilege if those communications

20  exist.

21         Secondly, I am not a party to this communication,

22  however, 371 times my name has come up in this hearing, which is

23  beyond the hope of reality in this situation.  And I am asking

24  that Nick Chiappetta please stop deceiving me legally on the

25  record because he is just shotgunning accusations.

1        Third, my email, my social media, I shut all of that

2   off the day I left the United States.  I shut everything off.  I

3   have one account for email, and I don't think anybody really

4   knows that account.

5        I am tired of the false accusations from Nick of

6   criminal conduct, of civil conduct, of whatever crazy unicorn

7   that he's chasing and smearing my name.  The absurdity of this

8   matter -- he has attempted to subpoena Facebook, for example, or

9   Drop Box, and he subpoenas these communication providers.  They

10  provide him communications that show that nothing on my part was

11  communicated or done, and yet he just pivots to another amended

12  complaint, another complaint, another complaint, and changes the

13  entire narrative because he didn't get the right narrative from

14  his first ten subpoenas to service providers.

15       Do I use Yandex?  Yes.  And so does 25 million other

16  people in this world.  The mere fact that I have a Yandex

17  account does not associate me with all of this conduct that he's

18  alleging.

19       I only see the communications about me when they're

20  filed on the Court record because I don't have these

21  communications.  So when Chiappetta files some forged fact or

22  illegal or whatever communication, the first I ever see of these

23  communications is when they get on some public record somewhere,

24  because I can't even access PACER from the location where I'm

25  at.

1          Mr. Chiappetta's expert witness, this Brad LaPorte

2   dude, he's making accusations that I threatened him, except for

3   this guy is a complete liar.  I wasn't in Belize during the

4   period of time that his expertise says that I was in Belize.  I

5   was in Mexico or Guatemala, I don't even remember.

6          I was in the United States at the time of the conduct

7   that he alleges, but I have no remedy and no recourse because:

8   One, I can't afford counsel; two, I'm not in the United States;

9   three, I'm trying to live my life peacefully with my wife, who

10  is, by the way, African-American, actually Belizean American.

11  And every previous relationship I have ever had in an intimate

12  matter has been with African-American or minority individuals.

13  To call me a supremacist is beyond the pale.  And I am three

14  years into this defamation against me, and it is now causing me

15  emotional robotic pain that I am getting really tired of.

16          THE COURT:  All right.  Mr. Camp, I'm injecting now.

17          To the extent you want to raise an objection to the

18  communications, you can file an appropriate motion or have your

19  attorney.  Otherwise --

20          MR. JOSEPH A. CAMP:  I don't live in the U.S.  I don't

21  have the money to afford an attorney --

22          THE COURT:  Otherwise at this time, I will adjourn the

23  proceedings.

24          MR. JOSEPH A. CAMP:  I would expect the Court --

25          THE COURT:  Ms. Ward --

 1                MR. JOSEPH A. CAMP:  -- would respect the rights of

 2    individuals.  I don't have money.  I'm not in the United States.

 3    I don't have the ability --

 4                THE COURT:  Can you mute him again, Ms. Ward?

 5                Thank you.

 6                Mr. Chiappetta?

 7                MR. CHIAPPETTA:  I would just say, since the Court

 8    allowed Mr. Camp to speak, if we could just have him turn on his

 9    camera to confirm that it is actually Mr. Camp and not some

10    voice over.

11                THE COURT:  I'm not doing anything of the sort.

12    Mr. Camp can raise whatever issues he wanted concerning the

13    content of this hearing today, just as if he is a member of the

14    public here, which we probably would have tossed him out of the

15    courtroom by now, but he wanted to raise an objection about

16    attorney-client privilege.  Given what I'm unaware of, the

17    relationship between all the parties, I thought that appropriate

18    to allow him to do that, but he has since gone off on tangents.

19                We are going to conclude this hearing.

20                So Mr. Camp, to reflect in the record, is now on the

21    camera giving the middle finger.

22                So at this time, we're going to go ahead and conclude

23    these proceedings.  Counsel, I thank you for your time.  If

24    anything else, please file an appropriate motion and we will

25    address it in due time.  Otherwise, we are adjourned.

250128NOS23CV1218

1          MR. CHIAPPETTA:  Thank you, your Honor.

2          THE COURT:  Have a good day.

3          MR. TRAINOR:  Thank you, your Honor.

4          (Adjourned)

1                    **C E R T I F I C A T I O N**

2

3         I, Michael McDaniel, United States Official Court Reporter,

4    Registered Merit Reporter, and Federal Certified Realtime

5    Reporter, was authorized to and did attend the foregoing

6    proceedings and stenographically recorded the same.  The

7    transcript contained within this volume is a true and accurate

8    transcription of those proceedings, which has been produced from

9    stenographically-generated notes and transcribed with the

10   assistance of computer-aided transcription.

11

12

13                            *Michael McDaniel*

14                      Michael McDaniel, RMR, FCRR
                         Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25