UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANESH NOSHIRVAN, AN INDIVIDUAL;

    Plaintiff,

v.

JENNIFER COUTURE, *et al.*,

    Defendants,

_____/

Case No. 2:23-cv-1218-JES-KCD

## ORDER

Before the Court is Defendants' Renewed Joint Motion for Entry of a Protective Order. (Doc. 244.)[1] Plaintiff Danesh Noshirvan does not dispute that a protective order is appropriate. (Doc. 245.) Rather, he takes issue with Defendants' omission of several terms that he believes are necessary to protect his confidential information from two antagonists—Joseph Camp and Richard Luthmann (more on them below). Both parties filed sample protective orders (Doc. 244-1, Doc 245-14), and having reviewed the same, the Court will enter Defendants' version with a few slight modifications.

### I. Background

Noshirvan is a Tik-Tok personality whose "niche is cancel culture." *Couture v. Noshirvan*, No. 2:23-CV-340-SPC-KCD, 2023 WL 8280955, at *1

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

(M.D. Fla. Nov. 30, 2023). In 2020, he posted an unflattering video of Defendant Jennifer Couture. It went viral, and the backlash was swift. Couture received harassing phone calls, voicemails, and online messages. Noshirvan's followers also found and contacted her family, her children's schools, and her employer. *Id.*

Noshirvan claims that Couture and her husband, Defendant Ralph Garramone, responded by placing negative flyers in Noshirvan's hometown that referred to him as a "predator" (Doc. 138 ¶ 112); building and publishing a negative website called "www.thatdaneshguy.com" (*id.* ¶ 134); spreading false statements that he is, among other things, a "stalker," "child groomer," and "pedophile" (*id.* ¶ 143); sending him pictures of his children at their home (*id.*); making claims of child abuse to Child Protective Services (*id.* ¶ 168); and employing at least two unnamed parties—Camp and Luthmann—to further harass him (Doc. 245 at 3-5). According to Noshirvan, he is the target of a conspiracy "to injure, harm, and destroy [him.]" (Doc. 1 ¶ 1.)

Defendants (who are all part of the alleged conspiracy) now petition the Court to enter a protective order that limits the disclosure of certain materials obtained during discovery. (Doc. 244.) This relief is appropriate, they argue, to curb "social media postings and public dissemination of case materials by all parties." (*Id.* at 2.)

2

As mentioned, Noshirvan agrees that a protective order is necessary. (*See* Doc. 425 at 7.) But he claims that Defendants' proposed protective order "does not equally protect [him] in the same manner as it protects Defendants." (*Id* at 16.)

## II. Discussion

"In order to preserve the confidentiality of sensitive materials, a district court may regulate access to the information by issuing a protective order pursuant to Rule 26(c)." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987). Protective orders generally "allow the parties to make full disclosure in discovery without fear of public access to sensitive information and without the expense and delay of protracted disputes over every item of sensitive information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, to secure the just, speedy, and inexpensive determination of every action." *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990).

The party seeking a confidentiality or protective order bears the burden of showing good cause. This requires a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Ekokotu v. Fed. Exp. Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011). The Eleventh Circuit has "identified four factors for ascertaining the existence of good cause[,] which include: [1] the severity and the likelihood of the perceived harm; [2] the

3

precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order." *In re Alexander Grant & Co. Litig.*, 820 F.2d at 356. Ultimately, when assessing good cause, courts must balance the interests of the parties and consider the likelihood and severity of the perceived harm.

The Court agrees that a protective order (of some kind) is appropriate. The underlying allegations center around the public dissemination of private information. Records from this case have already been made available online. Discovery will include sensitive information, such as financial records. A protective order will thus prevent future harm that could result from continued public disclosure of such documents.

The Court rejected Defendants' prior request for a protective order because it had no discernable limits. (Doc. 158.) That concern has been obviated. Both proposed protective orders are narrowly tailored to cover only "financial data," "personal identifying information," "HIPAA protected information," and "expert reports." And based on the history of this dispute, which includes harmful social media posts, the Court "find[s] that good cause warrants the entry of the order with respect to each category of documents or information sought." *Lockheed Martin Corp. v. Boeing Co.*, No. 6:03CV796 ORL28KRS, 2005 WL 5278461, at *2 (M.D. Fla. Jan. 26, 2005).

4

Turning to what's in dispute, Noshirvan wants to include a provision that excludes Defendants from shielding information about Camp and Luthmann:

> Joseph A. Camp ("Camp") and Richard A. Luthmann ("Luthmann') are expressly excluded from the definition of a Party employee and no Party may designate as Confidential, their information except that GPS may mark as confidential HIPAA protected information related to Luthman.

(Doc. 245 at 8.) Noshirvan claims that forcing him to redact such information and file it under seal is "onerous" and imposes a "heavy-handed burden." (*Id.*) The Court is not convinced. From a practical standpoint, the reference to "their information" is ambiguous. And on the merits, the Court sees no discernable reason to exclude Camp and Luthmann when all other third-party witnesses are covered. Noshirvan's history with these individuals is not reason enough to allow publication of their personal information given the Court's concerns discussed above. Importantly, the protective order will not limit Noshirvan's access to information about Camp or Luthmann; it will only shield the information from public disclosure.

Next, Noshirvan proposes a sentence defining good cause:

> The term good cause as utilized herein requires a factual showing in the form of admissible testimony explaining the basis for the designation from a person with personal knowledge.

(Doc. 245 at 9.) The Court can discern what constitutes good cause in this context if needed. Further cluttering the protective order with this superfluous language is unnecessary.

Turning to Paragraph 4, Noshirvan wants to insert the following:

> The Parties agree that personal identifying information, including names and social security numbers, of their minor children under 14 years of age, need not be produced or may be redacted prior to delivery of discovery documents. The Parties agree that their minor children should be protected and that in some cases, the children should not be revictimized. It is the intent of this provision to keep minor children identity a secret from all other Partys to prevent revictimization

(Doc. 245 at 10.) Noshirvan has made allegations that include his children. Thus, the Court declines to enter a blanket-gag order on discovery that may tangentially contain their personal information. Noshirvan can seek relief from the Court should he identify specific documents (or information) that he believes should not be disclosed. The rest of the clause is unnecessary because personal identifying information is protected elsewhere in the protective order.

Noshirvan does note that the protective order is only enforceable until a final judgment, and "thus, there is nothing prevent[ing] dissemination of [his] minor children's information once this case ends." (Doc. 245 at 11.) The Court agrees that could cause a problem. The final protective order will include a provision directing each party to either return or destroy confidential

6

information. This approach is preferable because it curbs future use while also allowing discovery to proceed unhindered.

Noshirvan also wants to limit the disclosure of confidential information to "Legal counsel *in this proceeding*." (Doc. 245 at 12-13.) This restriction is impractical to the extent it prohibits the parties from sharing necessary information with counsel in related litigation involving the parties. In any event, the Court declines to hamper the parties' rights to secure advice from outside counsel should it be needed.

Finally, Noshirvan proposes a clause that would prohibit Defendants from sharing confidential information with Camp or Luthmann:

> Confidential Information must not be disclosed, disseminated, or shared with Camp or Luthmann regardless of whether they may fit into one of the enumerated categories listed in section 8. i.-viii.

(Doc. 245 at 13.) This limitation is also impractical. Camp and Luthmann are potential witnesses. Thus, they may give testimony at a deposition or trial, which will necessitate the disclosure of confidential information to them. The protective order already restricts the universe of people who can access the confidential information that is shared in this case. In the Court's view, nothing more is needed.

It is thus **ORDERED**:

Defendants' Renewed Joint Motion for Entry of a Protective Order. (Doc. 244.) is **GRANTED** under the terms set forth above. The Court will separately enter the approved protective order. The parties are directed to exchange any past-due discovery within fourteen days of this order.

**ENTERED** in Fort Myers, Florida on February 7, 2025.

Kyle C. Dudek
United States Magistrate Judge