IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANESH NOSHIRVAN
an individual,

                                    CASE NO:
                                      2:23-cv-01218-JES-NPM

       Plaintiff,

vs.

JENNIFER COUTURE, Et'al,

       Defendant(s).
_____/

**PLAINTIFF, DANESH NOSHIRVAN'S MOTION TO EXTEND EXPERT
WITNESS DISCLOSURE DEADLINE, AND MOTION FOR SANCTIONS
FOR BAD FAITH LITIGATION TACTICS**

Pursuant to Federal Rule of Civil Procedure 16 and the Court's inherent

authority, plaintiff, Danesh Noshirvan ("**Noshirvan**"), files this Motion for

Protective Order,  Motion To Extend Expert Witness Disclosure Deadline, and

Motion For Sanctions For Bad Faith Litigation Tactics defendants, Jennifer Couture

("**Couture**"), Ralph Garramone M.D ("**Garramone**"), Ralph Garramone M.D. P.A.

D/B/A Garramone Plastic Surgery ("**GPS**"), Central Park of Southwest Florida,

LLC ("**Central Park**"),  Wraith, LLC ("**Wraith**"), Sullivan Street Investments, LLC

("**Sullivan St. Invest**."), Hairpin Turn, LLC ("**Hairpin**"), Omg Realty, LLC

("**OMG Realty**"), R G Weight Management, LLC ("**R G Weight**"), 5681 Division

LLC ("**5681 Div**."), Garramone Marketing, Inc. ("**Garramone Marketing**"), Legacy Of Marie Garramone, LLC ("**Legacy**"), Central Park South, LLC ("**CPS**"), Brantlee, LLC ("**Brantlee**"), The Law Office of Patrick Trainor, Esq., LLC d/b/a The Law Office of Patrick Trainor ("**Trainor Law Firm**"), Patrick Trainor ("**Trainor**"), Anti-Doxing League Inc. ("**ADL**") collectively ("**Defendants**"), and in support states:

## I.    Introduction

Garramone, Couture, GPS, and Trainor,[1] collectively through Defendants have sentiently set in motion an unconscionable scheme calculated to interfere with judicial system's ability impartially to adjudicate matter by attempting to improperly influence the trier and unfairly hamper the presentation of Noshirvan's claims and defenses. See 2:23-cv-0340 ("0340 Case Dkt. 199, Ex. A). Naturally, Joseph A. Camp's ("**Camp**") improper *ex parte* communications bashing Danesh Noshirvan ("**Noshirvan**") and the undersigned  extended well beyond December 26, 2023, the date this case (2:23-cv-1218 hereinafter "1218 Case") was filed and were directed at the 1218 Case. See, e.g., 0340 Case Dkt. 199-1, pgs. 20, 25-9, 66-8. Beyond simple libelous emails intended to taint the Court's view of Noshirvan and his counsel, Camp on behalf of GPS, Garramone, Couture and Trainor, proactively engaged conduct to ensure that no lawyer would represent

---

[1] See Docket 169, P. 7-11 (explaining the three main co-conspirator's roles in conjunction with their entities).

Noshirvan. See 0340 Case, Dkts. 31, 34 ¶¶2-3, and 36; Dkt. 199-1, p. 11, 31-3, 131-6, and 146. In the 1218 Case, Camp was caught red-handed threatening and intimidating expert witness Brad LaPorte ("**LaPorte**"). See 1218 Case, Dkt. 228-2.[2] Alexander Vays ("**Vays**") had previously agreed to testify as to Camp's involvement concerning Trainor and communication to Trainor, McGibney's demand letter sent to Trainor, and Camp's harassment and intimidation of We Serve NJ, LLC employees. See Dkt. 228-1. However, in similar fashion, Camp threatened Vays and Vays simply stopped communicating with the undersigned. *Id.*

Camp is a convicted felon hacker and open-source operator who is known as for-hire serial internet harasser, extorter, troll, and misinformation specialist. Put simply, Camp is paid to terrorize and intimidate his targets. Defendants have direct ties to Camp. See Dkts. 168-1, 169-1, 170-1, 181-5, 228-2 and 245. GPS through Garramone paid Camp from May 05, 2022 through July of 2022. Garramone continued to pay through at least September of 2022 utilizing personal or other entity defendant accounts. As of December of 2022, GPS, Couture and Garramone had direct knowledge Camp's intentional instigation of Noshirvan. GPS, Central Park, Garramone, and Couture were aware of Camp's sorted history and internet

---

[2] LaPorte testified that Camp threatened his family and that Camp's communications were either direct or implied threats to scare or intimidate him into not testifying at deposition in violation of the following: §18 U.S.C. 1512(a)(2), §18 U.S.C. 2261A, §18 U.S.C. 119, 18 U.S.C. 875, §914.22, Fla. Stat., §836.05, Fla. Stat., §784.048, Fla. Stat., §817.568, Fla. Stat., and §836.11, Fla. Stat.

capabilities when they hired him and provided him with a place to live. Camp lived on Central Park property from April of 2022 through July of 2022. Trainor by his own admission was in direct communications with Camp from January 04, 2023 through August 29, 2023; even though emails exist showing email communications between Camp and Trainor as early as June 24, 2022 and as late as February 07, 2024. Camp had cause to act on Defendants' behalf. And he did so here — to their peril. Defendants received a direct benefit from Camp's intimidation, harassment, and cyberstalking of witnesses and lawyers.

Additionally, Trainor has consistently falsely asserted (in multiple court documents) that: James McGibney ("**McGibney**") gained unauthorized access to Camp's social media and emails accounts, impersonated Camp, and has allegedly manipulated or fabricated documents that would not exist but for the alleged "hack." See, e.g., Dkt. 99-1, p. 2. Trainor has continued this theme in multiple motions without ever providing any admissible evidence to even support an inference of credibility. Recently, this Court published Camp's *ex parte* emails to the Court. See 0340 Case, Dkt. 199-1. These emails facially contradict Trainor's frivolous assertions, which are not supported by record evidence.[3]   Trainor's

---

[3] Camp is known to utilize the following email addresses: CampJosephA@Gmail.com, JosephaCamp@Yandex.com, Noshirvan@yandex.com, Daneshfiles@yandex.com, and joey@joeycamp2020.com . See Dkt. 139, ¶64. GPS and Garramone have communications with Daneshfiles@yandex.com, and joey@joeycamp2020.com. See Dkt. 181-3.

assertions strain credulity, are patently false, and are not supported by record evidence.

More recently, Defendants provided confidential court documents, i.e., expert witness reports, which have not been filed with the Court (or docketed) to Camp and Richard A. Luthmann ("Luthmann"). Both Camp and Luthmann utilized those  expert witness reports for improper purposes including witness intimidation and harassment. Defendants directly benefited from Camp's and Luthmann's improper conduct. Noshirvan and his family were also harassed. See Dkt. 228-9. For good measure, Luthmann, a friend of Garramone and Couture,[4] has needlessly injected himself into this litigation and filed a couple frivolous motions to detract from the underlying proceeding. See Dkts. 219-20, and 228-9. It is absolutely obvious that after Camp's conduct became well known, Garramone and Couture engaged Luthmann to disseminate false and misleading information on his personal digital bulletin boards. See Dkt. 228.

Put simply, Defendants engaged, employed, or otherwise conspired, with convicted felons and Trainor to participate in what only could be described as utterly despicable behavior, which was intended to defile  the temple of justice by improperly influencing trier and unfairly hampering presentation of Noshirvan's

---

[4] See Dkt. 229-2 p.4; https://luthmann.substack.com/p/tough-guy-journalist-gets-tougher. Additionally, on March 8th, 2025, an independent with named within Noshirvan's Initial Disclosures, personally observed Luthmann and Couture at Cantina Laredo, confirmed the connection and lawsuit discussions.

claims through witness and lawyer intimidation. Defendants authorization and participation in such vile behavior cannot be countenanced.

## II.    Factual Background

1. GPS through Garramone paid Camp from May 05, 2022 through July of 2022. A true and correct composite exhibit will be filed under seal as **Exhibit A.** Garramone continued to pay Camp through at least through February 16, 2023, utilizing his personal or other entity defendant accounts. *Id.* As of December of 2022, GPS, Couture and Garramone had direct knowledge Camp's intentional instigation of Noshirvan. *Id.* GPS, Central Park, Garramone, and Couture were aware of Camp's sorted history and internet capabilities when they hired him and provided him with a place to live. *Id.* Camp lived on Central Park property from April of 2022 through July of 2022. *Id.* All Defendants except for Trainor and Trainor entities considered Camp <u>family</u>. *Id.* Defendants hired a private investigator to prepare a report about Noshirvan. *Id.* That Report was provided to a convicted felon — Camp to be utilized for the matters described in the Second Amended Complaint.

2. Trainor by his own admission was in direct communications with Camp from January 04, 2023 through <u>December 17, 2024 (</u>See Ex. A.1. TRA353 for 12.17.24 email); even though emails exist showing email communications between Camp and Trainor as early as <u>June 24, 2022</u> and as late as <u>December 17, 2024</u>. A

true and Correct copy of Trainor's Amended Privilege Log will be filed under seal as **Exhibit B**.

    3.  In 2:23-cv-0340 (the "**0340 Case**"), on July 21, 2023, attorney Robson Powers ("**Powers**") notified the Court that he "has been harass[ed] … by a third-party …" 0340 Case, Dkt. 34. "[A]most disturbing, [the Powers] family who are not a part of this lawsuit" have been harassed. *Id.* Powers characterizes the third-party's tactics as "vile," and explains that these "communications include a photograph of counsel's family, counsel's children, counsel's personal home address, and disparaging comments about family members intended as personal attacks of significant nature." These communications were intended to intimidate counsel and force counsel's withdrawal from Noshirvan's defense. *Id.*

    4.  While Powers did not identify the responsible "third-party," during investigation, Noshirvan was able to trace back and identify Camp as the source of Powers harassment.[5] A copy of Noshirvan's Declaration is attached as **Exhibit C**. Documents exist showing that certain email and social accounts owned and controlled by Camp contain repulsive statements regarding Powers then fiancé. Camp's "law fare" actions of attempting to have Noshirvan defaulted by

---

[5] Camp freely posted his harassment and intimidation of Powers on his joeycamp2020 Instagram account, which was later deleted and now shows Trainor's rhetoric. The reopened account contains an "I Pwnd Joey" logo. The cover up is obvious and in contradiction of Meta's business records. See Ex. A and F.

harassing his former lawyer is repugnant — and defiles the very premise of the justice system. See 0340 Case, Dkt. 199-1.

5.   What is more disturbing is that Trainor and Camp were in direct communications from May 25, 2023 through August 29, 2023 — the timeframe in which Camp attacked and intimidated Powers. See Ex. B, p. 4.

6.   On September 14, 2023, the day the undersigned filed a notice of appearance in the 0340 Case, Camp immediately contacted the undersigned office and began a campaign of online and telephonic harassment in an effort to have the undersigned withdraw as counsel for Noshirvan. Camp's efforts included filing 6-frivolous bar complaints, sending nearly a hundred email to this Court including one email where Camp impersonated James McGibney ("**McGibney**"). See 0340 Case, Dkt. 199-1, generally and p. 89 specifically for impersonation email. Compare with p. 127-9.

7.   The undersigned's office obtained legal counsel in response to Camp's wrongful use of "lawfare" to succeed by illegal means. The counsel retained by the undersigned's office was attacked by Camp. When Camp's use of "law fare" to intimidate or hinder his targets by wrongful means failed, he turned to intimidation, threats, and extortion.

8.   On February 06, 2024, Camp communicated with We Serve NJ,

LLC and We Serve Law, LLC (collectively "WeServe") by telephone and email. Those communications started as intimidation tactics to execute a sworn statement and negotiate the removal of McGibney's Instagram post containing Trainor's image. When that objective failed, Camp threatened, harassed, intimidated, and attempted extortion of WeServe employees to prevent them from testifying. 1218 Case, Dkt 217. A copy of Finella Hesin's Declaration is attached as **Exhibit D.** A copy of Alexander Vays' Declaration is attached as **Exhibit E.**

9.  In striking similar fashion, on December 16, 2024, Camp threatened Brad LaPorte ("**LaPorte**") and his relatives in an attempt to scare or intimidate LaPorte into not testifying the next day at deposition. See Dkts. 228-2 and 245-5.

10. Camp has been conclusively tied to  the following emails: josephacamp@yandex.com,  campjosepha@gmail.com,  joey@joeycamp2020.com, daneshfiles@yandex.com and noshirvan@yandex.com. A true and correct copy of Meta's Declaration and business records are attached as **Exhibit F.** Camp has also been tied to the domain www.daneshfiles.com. See Ex. C.  And Camp has ties with the Defendants. A true and correct copy of Jennifer Holliday's Declaration is attached **Exhibit G.** A true and correct copy of Second GPS's Privilege Log will be filed under seal as  **Exhibit H**.

11. On November 27, 2024, the undersigned emailed Duane Morris,

LLP, Rolfes Henry Co., LPA, and the Trainor Law Firm, Noshirvan's expert witness disclosures as required by law. A true and correct copy of that communication is attached as **Exhibit I**. Notably, only attorneys and their staff were included in the correspondence. *Id.* That correspondence was the only communication, dissemination, or conveyance of information, made by the undersigned that disclosed Dr. Robert Gordon ("**Dr. Gordon**") and LaPorte's expert witness reports. A copy of Nicholas Chiappetta's declaration is attached **Exhibit J.** Noshirvan was not provided with a copy of the expert reports. *Id.* Shortly after the required discovery disclosure was made, Dr. Gordon's and LaPorte's reports made it into the hands of Camp and Luthmann. Put simply, either Defendants or their counsel, gave those confidential expert reports to Camp and Luthmann.

12. Upon receipt of the expert reports, Camp harassed and intimidated LaPorte to the point LaPorte withdrew from this case. See Dkts. 228 and 245. Luthmann, on the other hand, began publishing libelous statements on his digital bulletin boards about LaPorte and Dr. Gordon. See Dkt. 228. On January 08, 2025, Noshirvan's received a physical package containing a 4-page typed letter discussing Dr. Gordon's medical diagnosis for Noshirvan and his wife among other things. That letter also contained false rhetoric about Coach Torres.

Luthmann also commented that Noshirvan fits "the profile for <u>a family murder suicide.</u>" See Dkt. 228-9.

13. Camp has a propensity for witness harassment, cyberstalking, threatening, extortion, and intimidation, and has done so in this cases, which is likely volitive the following: §18 U.S.C. 1512(a)(2), §18 U.S.C. 2261A, §18 U.S.C. 119, 18 U.S.C. 875, §914.22, Fla. Stat., §836.05, Fla. Stat., §784.048, Fla. Stat., §817.568, Fla. Stat., and §836.11, Fla. Stat. Luthmann has a propensity for utilizing fake social media to impersonate others to publish misinformation about his perceived enemies.

14. On December 17, 2024, this Court entered an Order granting Garramone's Plastic Surgery's Motion for Extension of Time to Disclose Expert Report. See Dkt. 211. In doing so, this Court reduced Noshirvan's rebuttal time from 30 days to 14 days — for no apparent reason. Compare Dkt 64 with 211. That reduction in time prejudiced Noshirvan and hindered his ability to prepare a proper rebuttal.

15. Noshirvan's expert witness, Brad LaPorte, withdrew as an expert witness because of Camp's ongoing intimidation. Laporte's withdrawal left Noshirvan without an expert, which further exacerbated Noshirvan's hindered ability to prepare a proper rebuttal. On March 12, 2025, Noshirvan was able to

retain another expert. As such, Noshirvan seeks to extend expert disclosures including rebuttal and the discovery deadline for good cause under Rule 16.

16. Noshirvan was diligent in his search for a new expert after LaPorte withdrew and attempted compliance with the CMSO. However, most approached experts were hesitant or did not want to endure Camp's harassment, threats, and intimidation. This motion was made as soon as reasonably possible.

## Memorandum of Law

### III.    Rule 16 extension for CMSO

Under Rule 16(b)(4), "a schedule may be modified only for good cause and with the judge's consent." Under this standard, the party requesting the extension demonstrates "good cause" only if, despite its diligence, the party cannot meet the deadline. See Fed. R. Civ. P. 16, 1983 Advisory Committee Notes (Emph. added); *S. Grouts & Mortars, Inc., v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) (citing *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)).

Here, Noshrivan complied with CMSO and timely disclosed his experts. But for Camp's (a known colloborator with Defendants) harassment, intimidation, and threats, Noshirvan would have two experts to appear at trial. However, because of Camp's actions, Noshirvan does not. Since's LaPorte's withdrawal, Noshirvan had difficulty finding an expert who was willing to endure Camp's style of harassment and intimidation. However,  Noshirvan found and retained an

expert on March 12, 2025, who is not afraid of Camp's antics. Accordingly, Noshirvan requests that this Court modify the CMSO to allow Noshirvan time to prepare a proper rebuttal and expert report or alternatively, default Defendants for their bad faith complicitness in providing LaPorte's PII and report to Camp and Luthmann. There is no other alternative that would alleviate the prejudice to Noshirvan, which was caused directly by Defendants intentional dissesmination of unfiled classified expert information and reports to Camp and Luthmann.

## IV. Bad faith Sanctions

### a. Inherent authority

The United States Supreme Court has held that in addition to the sanctions provisions in the Federal Rules of Civil Procedure and federal statutes, federal courts possess the inherent power to sanction parties and attorneys who conduct litigation in bad faith or who perpetrate fraud on the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). A court's inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43, 111 S.Ct. at 2132 (citing *Link v. Wabash R.R.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962)). This power "must be exercised with restraint and discretion" and used "to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45, 111 S.Ct. at

2132–33. A court may exercise this power "to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, –– ––, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013) (citing *Chambers*, 501 U.S. at 45–46, 111 S.Ct. at 2133–34). The dual purpose of this power is to vindicate judicial authority without resorting to a contempt of court sanction and to make the prevailing party whole. *See Chambers*, 501 U.S. at 46, 111 S.Ct. at 2133.

The Eleventh Circuit has explained that "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Allapattah Servs., Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1373 (S.D.Fla.2005) (striking defendant's affirmative defenses pursuant to the court's inherent powers) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir.2001). "Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Allapattah*, 372 F.Supp.2d at 1373 (citing *Chambers*, 501 U.S. at 46, 111 S.Ct. 2123; *Malautea v. Suzuki Motor Co. Ltd.*, 987 F.2d 1536, 1545–46 (11th Cir.1993) (affirming district court's award of default judgment for violation of discovery orders, award of attorney's fees and costs, and additional fines under the court's inherent powers);

*Qantum Communications Corp. v. Star Broad., Inc.,* 473 F. Supp. 2d 1249, 1270 (S.D. Fla. 2007)(finding by clear and convincing evidence that Defendants engaged in a pattern of abusive misconduct warranting default, and attorneys fees and costs). In assessing whether an award is proper under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *See Rothenberg v. Security Management Co.*, Inc., 736 F.2d 1470, 1472 (11th Cir.1984).

Sanctions authorized under the court's inherent powers include the striking of frivolous pleadings or defenses, disciplining lawyers, punishing for contempt, assessment of attorney's fees, and outright default or striking defenses. E.g., *Chambers,* 501 U.S. at 43–45, 111 S.Ct. 2123; *Martin v. Automobili Lamborghini Exclusive*, Inc., 307 F.3d 1332 (11th Cir.2002) (dismissing with prejudice); *Malautea*, 987 F.2d 1536 (1993) (striking answers and entering default judgment); *State Exchange Bank v. Hartline*, 693 F.2d 1350, 1352 (11th Cir.1982) (striking pleadings); *Telectron v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D.Fla.1987) (Marcus, J.) (entering default judgment against defendant); *see also Pelletier v. Zweifel*, 987 F.2d 716, 718 (11th Cir.1993) (entering Rule 11 sanctions for parties' frivolous violation of mandate rule).

Under Federal Law, to obtain a conviction for witness tampering in violation of 18 U.S.C. § 1512(b)(2)(A) & (b)(3), it must be proven that the person (1)

knowingly corruptly persuaded the witness (2) with the intent to induce the

witness to "withhold testimony," from an official proceeding. 18 U.S.C. § 1512.

Substantially the same elements must be established to  prove witness tampering

under Florida law. See § 914.22, Fla. Stat. In most cases, witness tampering is

established by the testimony of an individual who has actually been threatened,

intimidated, or bribed by an accused. *Gill v. State*, 622 So. 2d 92, 94 (Fla. 2d DCA

1993).

In *Quiroz v. Superior Building Maintenance, Inc.*, Case No. 06–21594–CIV, 2008

WL 3540599, *1 (S.D.Fla. Aug. 12, 2008), for example, in support of the Defendant's

Motion to Dismiss for Witness Tampering, the Defendant submitted the affidavit

of a co-worker of Plaintiff Quiroz who swore that Mr. Quiroz had contacted him,

asked him to testify on his behalf, and offered to pay the co-worker and his wife

$1,000.00 for favorable testimony. *See Quiroz v. Superior Bldg.*, et al., Case No. 06–

21594–CIV (S.D.Fla.2006) (DE # 37–1). Thus, the Court found that sufficient

evidence was submitted to conclude that a party had attempted to tamper with a

witness. *Accord Smart v. City of Miami Beach, Florida*, 933 F.Supp.2d 1366, 1380–81

(S.D.Fla.2013) (finding sufficient evidence of attempted witness tampering where

record established that plaintiff firefighter had mother make telephone calls to

witness to instruct witness to testify untruthfully that their conversations only

related to training and rather than plaintiff's attempt to influence other witnesses).[6]

Here, Laporte's unrebutted Declaration clearly establishes the elements of witness intimidation. And, Trainor's Amended Privilege Log along with Jennifer Holiday's Declaration clearly indicate that Camp and Defendants are working on concert.

Noshirvan request that the Court take judicial notice of docket 199 and 199-1 in the 0340 Case, which is attached here as **Exhibit L.** Exhibits A, A.l., and L when reviewed in conjunction with the attached declarations should sufficently establish ongoing ties between Camp and Defendants. See also, Dkt. 261-1, pgs. 21-2, 26:12-18, 26:21-5, 27-8, and 94-9.

Furthermore, Garramone and Couture are in violation of 5 court discovery orders. See Dkt. 258. Trainor and GPS have improperly refused to answer interrogatories or produce documents on the ground that certain words and phrases were not defined. Trainor and GPS have intentionally resisted discovery orders by improperly refusing to answer general questions, choosing instead to limit the question to a narrower field. A true and Correct Copy of Trainor's and GPS's Interrogatory answers are attached as **Exhibit K**.

---

[6] Courts apply the preponderance of evidence standard to the allegations of witness tampering so far as the Plaintiffs seek non-dispositive sanctions for the alleged violations and apply the more exacting clear and convincing standard to the request for dispositive sanctions.

Eriely similar, *Malautea v. Suzuki Motor Co., Ltd.*, The Eleventh Circuit found that Judge Edenfield found that "the defendants improperly refused to answer interrogatories on the ground that certain words and phrases were not defined." They resisted discovery orders by improperly refusing to answer general questions. The defendants' delay in producing documents, after two court orders requiring production, hampered the plaintiff's attorneys' efforts to prepare their case. The delay "denied the Plaintiff's counsel time for a meaningful review. Finally, Judge Edenfield found that the prime example of the defendants' resistance to discovery was their deliberate cover up of damaging evidence. Needles to say, but the Eleventh Circuit affirmed the court ordered default on liability under Rule 37(b)(2)(c), and sanctions pursuant to 28 U.S.C. 1927, Rule 26(g), and the Court's inherent authority. The Eleventh Circuit  felt compelled to, and remarked on disturbing regularity with which discovery abuses occur in our courts today.  987 F.2d 1536, 1540 (11th Cir. 1993).

Lying under oath should not be condoned and "[p]arties who offer evasive interrogatory answers and deposition testimony [that] omit[ ] relevant information invite sanctions." *Gonzalez v. Bus. Representation Int'l, Inc.*, 248 F.R.D. 644, 646 (S.D. Fla. 2008) (citations omitted); *see also Bassett v. Wal-Mart Stores E.*, LP, No. 18-CV-61984, 2019 WL 4691824, at *2 (S.D. Fla. July 10, 2019) (citing to *ABF*

*Freight Sys., Inc. v. N.L.R.B*, 510 U.S. 317, 326 (1994) (Kennedy, J., concurring))
("Lying under oath is an 'affront to the law itself.' ").

### b. Fraud upon the Court

Bad faith can be found when a party commits a fraud on the court, or where
a party "delays or disrupts the litigation, or hampers the enforcement of a court
order." Barash v. Kates, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006). Proving a fraud
on the court requires "clear and convincing evidence[ ] [of] an unconscionable plan
designed to improperly influence the court in its decision." *Johnson v. L. Offs. of
Marshall C. Watson, PA*, 348 F. App'x 447, 448 (11th Cir. 2009); *Aoude v. Mobil Oil
Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (a fraud on the court occurs when "a party
has sentiently set in motion some unconscionable scheme calculated to interfere
with the judicial system's ability impartially to adjudicate a matter"); see also
*Barronette v. Target Corp.*, No. 17-CV-60127, 2018 WL 2187685, at *1 (S.D. Fla. Apr.
19, 2018) (same). Such a finding is reserved for "the most egregious misconduct,
such as bribery of a judge or members of a jury, or the fabrication of evidence by
a party[.]" *Vargas v. Peltz*, 901 F.Supp. 1572, 1579 (S.D. Fla. 1995) (dismissing suit
as sanction for fraud upon the court where plaintiff fabricated evidence); see also
*Patterson v. Lew*, 265 F. App'x 767, 768 (11th Cir. 2008) (noting that only the most
egregious conduct constitutes fraud on the court). In determining whether
sanctions should be awarded under the bad faith standard, "the inquiry will focus

primarily on the conduct and motive of a party, rather than on the validity of the case*." Rothenberg v. Sec. Mgmt. Co., Inc*., 736 F.2d 1470, 1472 (11th Cir.1984).

Moreover, all attorneys, as "officers of the court," owe duties of complete candor and primary loyalty to the court before which they practice. *Malautea*, 987 F.2d at 1546. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. *Id.* This concept is as old as common law jurisprudence itself. *Id.*

However, Trainor has consistently asserted (in multiple documents) without any evidence that McGibney gain unauthorized access to Camp's social media and emails accounts, impersonated Camp, and has manipulated or fabricated documents that would not exist but for the alleged "hack." See, e.g., Dkt. 99-1, p. 2. To be clear, to date Trainor has not provided one scintilla of proof to support his outlandish assertions because those assertions are based on figments of Trainor's imagination. This Court published Camp's *ex parte* emails to the Court. See 0340 Case, Dkt. 199-1. Those emails facially contradict Trainor's frivolous assertions. As this Court aptly pointed out, that "non-party Joseph Camp" continually emailed the Court with negative allegations "target[ing] Noshirvan or his counsel." See Dkt. 199. Those emails sent by Camp were intended by Camp to prejudice the Court, even if the Court did not review the emails. Camp's to this Court occurred from September 15, 2023 through Novmeber 01,

2024. Notably, not one of Camp's emails to this Court in a year long time span

casted a negative light on Trainor or any other defendant in the 12 18 Case. *See Id.*

Trainor also listed Camp on his Amended Privilege Log. Yet, Trainor claims that

he does not know he was communicating with Camp. As recently as March 06,

2025, Trainor asserted, without specificity, that certain undisclosed accounts of

Camp's were hacked or "pwnd."[7] See Dkts. 264, p. 6; 99-1,¶ 1.

False Statement committed in the course of legal proceedings constitutes a fraud

on the court. *See Allen v. Chicago Transit Auth.*, 317 F.3d 696, 703 (7th Cir.2003). A

false statement can be evidence of bad faith, if, for instance, there is other evidence

in the record indicating that the statement was made for a harassing or frivolous

purpose. *Barash v. Kates*, 585 F. Supp. 2d 1347, 1366 (S.D. Fla. 2006)

Unfortunately,  Trainor allowed the objectives his clients to override his

duties as officers of the court. In short, Trainor  sold out to his clients. The Eleventh

Circuit acknowledged that "[w]e must return to the original principle that, as

officers of the court, attorneys are servants of the law rather than servants of the

---

[7] "www.I have been pwned.com" is a website that only allows users to check and see if their email accounts were unintentionally exposed to the public. The website does not confirm, deny, or state whether an email account exposed to the public was ever taken over or controlled by anyone other than the owner of the account. The website does not check social media accounts for potential  exposure to the public. Notably, the website does not indicate what email account information was exposed to the public. The website does not state whether the account information leaked was limited to name, mailing address, SSN, email address and phone. Whether passwords were included in the data exposed to public is not published on "www.I have been pwned.com."

highest bidder. We must rediscover the old values of our profession. The integrity of our justice system depends on it." *Malautea*, 987 F.2d at 1546.

Here, Trainor has consistently fabricated and manufactured false statements as if they were evidence. Trainor fashioned a "story" predicated upon non-existent evidence and contrary record evidence. Compare Dkt. 202 with 217.  The record evidence in this case is expressly and directly contrary to Trainor's represenations to this Court. The record herein contains ample evidence from which the Court can infer that Trainor knew his claims were factually unsupported and used a factually deficient argument into a vehicle to harass  McGibney, prejudice Noshirvan, and taint this Court's perspective of Noshirvan and McGibney.

WHEREFORE, Noshirvan respectfully requests that the Court grant this Motion and default the Defendants on liability only or enter an order extending the CMSO deadline by 60-days for Noshirvan's expert report, by 30-days for Noshirvan's expert rebuttal, award monetary sanctions, allow Noshirvan to supplement this motion with a fee and cost affidavit, and any other relief this Court deems just and proper.

## Local Rule 3.01(g) Certification

The undersigned certifies that on January 17, 2024, he met and conferred, via Zoom Teams, with Julian Jackson-Fanin, Patrick Trainor, and Aaron Alfano, for 48 minutes. The conferral was adjourned. The undersigned further certifies that

on January 23, 2024, the previously adjourned conferral was completed. The

undersigned met with Julian Jackson-Fanin, Patrick Trainor, and Aaron Alfano,

via Microsoft Teams. An additional meet and confer occurred on February 13, 2025

via Microsoft Teams with all counsel mentioned herein. All Defendants oppose

this motion.

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Mr. Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:     (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## CERTIFICATE OF SERVICE

   I hereby certify that on March 13, 2025, I electronically filed the foregoing
with the Clerk of Court by using the CM/ECF system, which will send notice of
electronic filing to the following:

Patrick Trainor, Esquire
**Law Office of Patrick Trainor, Esq., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
Telephone: (201) 777-3327
Facsimile: (201) 896-7815
pt@ptesq.com
*Attorney for all Defendants*
*except Garramone Plastic Surgery,*
*Jennifer Couture, Dr. Ralph Garramone,*
*and OMG Realty, LLC*

Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
Anoosheh Shaikh, Esq.
Florida Bar No. 1039830
**DUANE MORRIS LLP**
201 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Tel: 561.962.2108
HWGurland@duanemorris.com
JJFannin@duanemorris.com
AShaikh@duanemorris.com
PNMendoza@duanemorris.com
JMagarin@duanemorris.com
Attorneys for Garramone Plastic Surgery

Aaron Alfano, Esq.
Florida Bar No. 0083909
Brian P. Henry, Esq.
Florida Bar No. 0089069
Rolfes Henry Co., L.P.A.
5415 87th Street East
Bradenton, FL 34211
T: (941) 684-0100
F: (941) 684-0109
E: aalfano@rolfeshenry.com
E: sburns@rolfeshenry.com
E: bhenry@rolfeshenry.com
E: kmcclintock@rolfeshenry.com
Attorneys for Defendants
Jennifer Couture, Ralph Garramone, MD,
OMG Realty, LLC, and Wraith, LLC

_/s/ Nicholas A. Chiappetta_
Nicholas A. Chiappetta