UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:23-CV-01218-JES-KCD

DANESH NOSHIRVAN,
an individual,

    Plaintiff,

v.

JENNIFER COUTURE, et al.

    Defendants.
_____/

## RALPH GARRAMONE, M.D., P.A. d/b/a GARRAMONE PLASTIC SURGERY'S EMERGENCY MOTION FOR SANCTIONS

Pursuant to 28 U.S.C. § 1927 and this Court's inherent power to administer its docket, ensure a fair and just trial, and impose sanctions for vexatious litigation conduct, Defendant Ralph Garramone, M.D., P.A. d/b/a Garramone Plastic Surgery ("***GPS***") moves for immediate sanctions against Plaintiff, Danesh Noshirvan ("***Plaintiff***") and his counsel Nicholas Chiappetta ("***Mr. Chiappetta***"), arising from an escalating pattern of defamatory, false, unethical, harassing, and prejudicial communications directed at GPS's counsel, Julian Jackson-Fannin ("***Mr. Jackson-Fannin***") through Plaintiff's social media platforms.

Plaintiff's public attacks are not only improper, they are inciting threats of violence against Mr. Jackson-Fannin and are <u>dangerous</u>. They are calculated to intimidate GPS, Mr. Jackson-Fannin, and other counsel representing GPS, as well as

other Defendants and their counsel (who may be Plaintiff's next targets). This outrageous campaign is designed to improperly influence this proceeding through extrajudicial means, and incite targeted harassment of GPS's counsel by Plaintiff's massive online following, which harassment has now occurred and continues to metastasize. As detailed below, this misconduct has crossed the line from zealous advocacy into deliberate, extrajudicial intimidation. As a result of Plaintiff's false and defamatory social media postings, his zealous fan-base have begun a barrage of harassment and even physical threats of violence directed towards Mr. Jackson-Fannin that impedes the fairness of these proceedings and the safety of GPS's counsel and others in this case. At least one threatening voicemail has now been left targeting employees of Duane Morris and their relatives.

Depositions in this case are ongoing, including the in-person deposition of Plaintiff, which is set for Friday, April 25th in Florida. For the reasons explained below, GPS respectfully requests that the Court grant the following relief on an emergency basis by **Thursday, April 24, 2025**:

1. Order Plaintiff to appear in person for a hearing on this Motion to answer for his conduct;

2. Direct Plaintiff to immediately remove all social media posts targeting Mr. Jackson-Fannin and prohibit further public commentary that could prejudice this litigation or endanger its participants, including other counsel for GPS as well as other attorneys in this case;

3. Compel Plaintiff to issue a formal, public retraction and to request his followers to cease all harassment and threats directed at Mr. Jackson-Fannin;

4. Formally reprimand Mr. Chiappetta and issue an order directing him to control his client's conduct, as required by Rule 4-8.4(d) of the Florida Rules of Professional Conduct;

5. Award GPS all attorneys' fees and costs incurred in connection with preparing and filing this Motion;

6. Order that any violation of the Court's order would result in dismissal of Plaintiff's case; and

7. Any additional relief that the Court believes is just and proper to address the issues raised herein.

## ARGUMENT AND CITATION TO AUTHORITIES

This Court is well aware of Plaintiff's *modus operandi*. "'Noshirvan is a TikTok creator' whose niche is cancel culture." [D.E. 306 at p. 1 (citing *Couture v. Noshirvan*, No. 2:23-CV-340-SPC-KCD, 2023 WL 8280955, at *1 (M.D. Fla. Nov. 30 2023)]. With approximately 2.5 million followers between TikTok and Instagram, and a widely read Substack account, Plaintiff routinely weaponizes his platform to publicly "doxx" individuals – "that is, he provides the person's name, contact information, employer, and other personal information." *Id.* Plaintiff's pattern of targeted online harassment lies at the heart of this litigation.

During the past few days, Plaintiff has turned his attention to a new target: GPS's counsel, Mr. Jackson-Fannin. Mr. Jackson-Fannin is a partner at Duane Morris LLP, the President-Elect of the Wilkie D. Ferguson, Jr. Bar Association, and a Board Member of Legal Services of Greater Miami, Inc.

What began as a legal dispute has now escalated into a dangerous campaign of intimidation and public harassment, aimed at undermining the fairness of these

proceedings and threatening the safety and reputation of counsel for GPS. Enough is enough. Court intervention is crucial.

On Tuesday, April 15, 2025, GPS's counsel deposed Mrs. Hannah Noshirvan, Plaintiff's wife. Mrs. Noshirvan was identified as a witness in Plaintiff's Second Amended Initial Disclosures, served September 26, 2024. The deposition was conducted remotely via Zoom. What began as a routine deposition quickly took a sharp turn due to Plaintiff's intervening, aggressive behavior over a line of questioning with which he disagreed. Despite being in attendance and defending Mrs. Noshirvan, Mr. Chiappetta did not stop Plaintiff's improper, profanity laden outburst directed at Mr. Jackson-Fannin. The deposition ultimately concluded after Mr. Jackson-Fannin and other defense counsel concluded questioning Mrs. Noshirvan.

The next day, Plaintiff embarked on a campaign of online defamation and harassment targeting Mr. Jackson-Fannin, which he continued on the following day. Through Substack and other social media posts, Plaintiff has spread false, inflammatory, and defamatory claims intended to intimidate and retaliate against opposing counsel for his representation of GPS. Further, counsel for Plaintiff, Mr. Chiappetta, has stood by and finds nothing wrong with his client's behavior. *See* e-mail exchanged attached hereto as **Exhibit A**.

While GPS and its attorneys are reluctant to further publicize Plaintiff's defamatory content by posting these materials to the Court's public record, they respectfully direct the Court to Docket Entries 329, 330, 331, which detail and attach some of Plaintiff's content that is the subject of this motion. However, these filings

4

only scratch the surface. GPS and its attorneys can provide the Court additional examples through an in-camera inspection.

Plaintiff has made patently offensive, false, and defamatory statements, accusing Mr. Jackson-Fannin of being, among other things, a "low-class racist," "misogynist," "pig," "Lawyer of Child Stalker," falsely claiming he said "black people look like monsters," and that people in Ft. Myers, Florida should not hire him as a lawyer. Plaintiff has also falsely accused Mr. Jackson-Fannin of sexual harassment and of introducing "revenge porn" into court proceedings – claims that are not only baseless but are reckless and deeply damaging.

Plaintiff has also taken active steps to inflict professional harm by including or tagging Mr. Jackson-Fannin's personal and professional affiliates in his online publications to spread the same lies. The result has been an onslaught of targeted harassment toward Mr. Jackson-Fannin and his professional affiliates from Plaintiff's army of followers, ranging from attacks on Mr. Jackson-Fannin's law firm's social media accounts, to threatening phone calls to Mr. Jackson-Fannin's office, and calls for disciplinary action with the Florida Bar. These efforts have escalated into violent threats, with followers posting messages like: "sounds like street justice time," "you are invited to end this piece of trash," "get him," and "find him and his wife make the score even but make sure she suffers cause [sic] of him and let it be known too." This is not mere online noise, it is targeted threats of violence and intimidation, provoked and sustained by Plaintiff's actions.

Plaintiff has engaged in targeted intimidation and his counsel, Mr. Chiappetta, has done nothing to stop it; or worse Mr. Chiappetta appears to be encouraging Plaintiff's actions. For example, Plaintiff's Substack thread was originally deleted and later reposted with the following comment from Plaintiff: "My lawyer says I can restore it now". GPS believes that the only way to put a stop to this outrageous and reprehensible conduct is for the Court to impose appropriate sanctions.

## I. Legal Standard

Courts in the Eleventh Circuit have recognized and utilized "the inherent power to police those appearing before them." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). "A court's inherent power extends to a full range of litigation abuses," not just those that occur in court." *Pullen v. Brown*, 2020 WL 6203528, at *3 (M.D. Fla. Oct. 22, 2010) (quoting *Chambers*, 501 U.S. at 44, 46). Accordingly, a court may sanction a ***party*** who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* The purpose of the court's inherent power is to "vindicate judicial authority without resorting to a contempt of court sanction and to make the prevailing party whole." *Purchasing Power, LLC*, 851 F.3d at 1223 (citing *Chambers*, 501 U.S. at 46). Moreover, under its inherent authority, a court may "fashion an appropriate sanction for conduct [that] abuses the judicial process," such as assessing attorneys' fees. *See Pullen*, 2020 WL 6203528, at *3 (citing *Chambers*, 501 U.S. at 44). This inherent power includes sanctioning parties who harass and intimidate opposing counsel. *Id.* at *4.

## II. Plaintiff's Social Media Posts Are Defamatory

Under Florida law, "[d]efamation has the following five elements: (1) publication; (2) falsity; (3) actor must act . . . negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). A statement is defamatory if it "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes [a party] to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Id.* at 1108-09. The above-referenced social media posts by Plaintiff contain materially false statements regarding Mr. Jackson-Fannin which are defamatory *per se*.

While Plaintiff may be under the misguided belief that he is insulated from his defamatory statements regarding Mr. Jackson-Fannin because he made such statements under the guise of providing "case updates" to his followers, Florida's litigation privilege does not shield him.

Pursuant to Florida's litigation privilege, "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). This privilege, however, is not without limits. Florida courts only apply the litigation privilege where the defamatory statements were made either in front of a judicial officer or in pleadings and documents filed with a court or quasi-judicial body. *Warrington v. Patel*, 2024 WL

775437, at *3 (M.D. Fla. Feb. 26, 2024) (citation omitted). The absolute privilege applies in these formalized judicial settings because "the presence of safeguards facilitates and promotes an unimpeded speaking environment while protecting an individual from false or malicious statements." *Id.* (citation omitted); *Grippa v. Rubin*, 2023 WL 11994893, at *4 (N.D. Fla. May 1, 2023).

Conversely, statements made outside the formalized judicial setting are not entitled to absolute immunity. Statements that bear "a relation to or [a]re connected with" an underlying lawsuit are entitled to qualified immunity. *DelMonico v. Traynor*, 116 So. 3d 1205, 1220 (Fla. 2013) (holding that attorney's alleged defamatory statements made during "ex-parte, out-of-court questioning" of potential, nonparty witnesses in the course of investigating the plaintiff's underlying lawsuit were entitled to the presumption of qualitied immunity), *abrogated on other grounds*, *Askew v. Fla. Dep't of Child. & Fams.*, 385 So. 3d 1034 (Fla. 2024). To overcome qualified privilege, the allegedly defamed individual must "establish by a preponderance of the evidence that the defamatory statements were false and uttered with common law express malice— *i.e.*, that the defendant's primary motive in making the statements was the intent to injure the reputation of the plaintiff." *Id.* (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)).

Where, as here, defamatory statements were not made in a judicial proceeding, were not made as a step in a judicial process, or were not made to a participant connected to the proceeding such as a witness, they do not enjoy immunity under Florida's litigation privilege. Such statements include those published on a party's

social media profile(s) or website, or those made to the newspapers or during press conferences. *See, e.g.*, *Young v. Kopchak*, 368 So. 3d 1001, 1005 (Fla. 4th DCA 2023) (holding that litigant's defamatory Facebook post was not afforded immunity under the litigation privilege because while the litigant's "motives might be tangentially related to the business litigation, [the litigant's] comment did not serve any direct purpose pertaining to the litigation itself."); *Ball v. D'Lites Enterprises, Inc.*, 65 So. 3d 637, 638 (Fla. 4th DCA 2011) ("We hold that statements made on a party's website are not protected by the litigation privilege."); *PayRange, Inc. v. KioSoft Techs., LLC*, 2023 WL 4363887, at *10 (S.D. Fla. June 8, 2023) ("Website publications, like the media statement here, are not considered to be made in connection with a judicial proceeding."); *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 2024 WL 2332167, at *3 (M.D. Fla. Mar. 13, 2024) (holding that "extraneous commentary" that defendant made in its press release was not afforded litigation privilege).

In short, Plaintiff's social media posts related to Mr. Jackson-Fannin are defamatory *per se*, and Plaintiff is using this tortious conduct to incite his army of on-line followers to harass and threaten Mr. Jackson-Fannin in an obvious attempt to influence the conduct and outcome of this litigation by improper means.

### III. Plaintiff's Bad Faith Actions Require Sanctions

Plaintiff's conduct clearly exhibits a complete disregard for the sanctity and integrity of this Court, these proceedings, and demonstrates a fundamental lack of awareness of right versus wrong. Plaintiff, driven by nothing more than contempt for the Court, the participants, and the proceedings, seemingly ignores the damage his

words can cause. The defamatory posts, motivated by bad faith, serves as the basis for the imposition of sanctions under the Court's inherent authority. *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2010) ("A sanctions motion under . . . a court's inherent powers . . . requires a showing that the party acted in bad faith."). As is relevant here, a party can demonstrate bad faith by delaying or disrupting the litigation. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

"District courts have exercised their inherent powers to sanction parties who have employed bad faith litigation tactics, including harassment and intimidation of opposing parties [or] their counsel." *See Pullen*, 2020 WL 6203528, at *4; *see e.g., Carroll v. Jaques*, 926 F. Supp. 1282 (E.D. Tex. 1996) (imposing a fine against the defendant for his abusive behavior toward opposing counsel at his deposition, including making verbal attacks, using profanities, and threatening physical violence); *Porton v. SP One, Ltd.*, 2015 U.S. Dist. LEXIS 48256 (M.D. Fla. March 19, 2015), *report and recommendation adopted*, 2015 U.S. Distr. LEXIS 48259 (recommending dismissal with prejudice where the plaintiff threatened and intimidated the defendants and their employees, demonstrating the plaintiff filed lawsuit only to harass, not to indicate his rights); *Fodor v. E. Shipbuilding Grp.*, 2013 WL 12174826 (N.D. Fla. Dec. 19, 2013) (admonishing plaintiff for threatening defense counsel with criminal charges "to gain leverage in [the] litigation," and imposing a fine of $250 for each subsequent threat).

Plaintiff's repeated defamatory and harassing social media posts targeting Mr. Jackson-Fannin are obvious evidence of bad faith. In *Pullen*, the plaintiff attempted to extort defense counsel, threatening physical harm to others, including defense

counsel's mother. *Pullen*, 2020 WL 6203528, at *4. There, the plaintiff further engaged in inappropriate tactics, admitting that he was pursuing the litigation as a means of coercion. *Id.* The plaintiff did not express remorse or regret for his conduct, nor concede that his behavior was inappropriate. *Id.* Ultimately, the court found that the plaintiff acted vexatiously and with bad faith, and imposed sanctions. *Id.* at 5.

In *Thomas v. Tenneco Packaging, Co.*, 293 F.3d 1306, 1325-26 (11th Cir. 2002), the Eleventh Circuit ruled that the district court had not abused its discretion in invoking its inherent authority to sanction an attorney for the attorney's bad faith conduct towards his opposing counsel. The attorney filed a number of documents that included "rude, demeaning remarks about opposing counsel's physical attributes and demeanor[,] . . . attacks upon the fitness of opposing counsel as a member of the bar, and . . . statements that can only be construed as thinly veiled physical threats." *Id.* at 1321. Moreover, the documents were "strewn with generalizations and conclusory comments that paint[ed] opposing counsel as a racist bigot and thus impugn[ed] his character." *Id.* The Eleventh Circuit affirmed the district court's finding that the attorney filed the documents in bad faith, "for the purpose of deliberately provoking unnecessary personal animosity and conflict between opposing counsel. . . ." *Id.*

Courts outside of the Eleventh Circuit have reached similar conclusions. For example, in *Greene v. Independent Pilots Association*, 2018 WL 9651540, at *2 (6th Cir. Oct. 4, 2018), the Sixth Circuit affirmed the district court's imposition of sanctions, with plaintiff's "inappropriate and threatening emails" to defendant and its counsel as basis to invoke its inherent authority. Similarly, Plaintiff's conduct is unmistakably

aimed at harassing and targeting not only GPS, but also its counsel Mr. Jackson-Fannin. This campaign to harm, intimidate, and harass Mr. Jackson-Fannin must stop, as it is a calculated attempt by Plaintiff to adversely impact the conduct and outcome of litigation by tortious means.

Harassing and targeting opposing counsel with defamatory statements is behavior the Court cannot, and should not, tolerate. This conduct is even more egregious given Plaintiff's use of social media to spread falsehoods to his online audience of hundreds of thousands of followers, inciting verbal attacks on defense counsel, which has now resulted in threats of physical violence. Plaintiff's awareness of the reach of his words only amplifies the bad faith behind his actions. Yet, despite understanding the power of his platform, Plaintiff chose to act in a manner that was intentionally disruptive and harmful. The Court must impose sanctions to deter such misconduct, protect the integrity of the litigation process, and uphold respect to the court of law and its officers.

Finally, Mr. Chiappetta was, and remains, well aware of the issues in this motion but, in his view, Plaintiff's defamation and harassment is permissible and appropriate behavior. It is not. Florida Rule of Professional Conduct 4-8.4(d) "prohibits an attorney from engaging in conduct with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage or humiliate other lawyers on any basis." *The Fla. Bar v. Norkin*, 132 So. 3d 77, 84 (Fla. 2013). Indeed, courts routinely emphasize the significance of

professionalism and civility as an advocate. *Id.* Mr. Chiappetta failed to do so in what appears to be encouragement of Plaintiff's posts.

## **CONCLUSION**

Based on the forgoing, GPS respectfully requests the Court issue an order by April 24, 2025 as follows:

1. Granting GPS's Emergency Motion for Sanctions:

2. Ordering Plaintiff to appear in person for a hearing on this Motion to answer for his conduct;

3. Directing Plaintiff to immediately remove all social media posts targeting and defaming Mr. Jackson-Fannin and prohibiting further public commentary that could prejudice this litigation or endanger Mr. Jackson-Fannin other counsel for GPS, and other participants in this case;

4. Compelling Plaintiff to issue a formal, public retraction and request his followers to cease all harassment and threats directed at Mr. Jackson-Fannin;

5. Formally reprimanding Mr. Chiappetta and issue an order directing him to control his client's conduct, as required by the Rule 4-8.4(d) of the Florida Rules of Professional Conduct;

6. Awarding GPS all attorneys' fees and costs incurred in connection with preparing and filing this Motion;

7. Ordering that any violation of the Court's order would result in dismissal of Plaintiff's case with prejudice;

8. And granting such other and further relief as the Court deems just and proper.

## LOCAL RULE 3.01(G) CERTIFICATION

I HEREBY CERTIFY that, on April 16, 2025, counsel for GPS conferred with Plaintiff's counsel via e-mail regarding the issues raised herein. Plaintiff's counsel finds nothing inappropriate about his client's actions and will not take any steps to stop the attacks.

Respectfully submitted this 21st day of April, 2025.

/s/ *Harvey W. Gurland, Jr.*
Harvey W. Gurland, Jr., Esq.
Florida Bar No. 284033
Julian A. Jackson-Fannin, Esq.
Florida Bar No. 93220
DUANE MORRIS LLP
201 South Biscayne Boulevard
Suite 3400
Miami, FL 33131
Tel: 305.960.2200
HWGurland@duanemorris.com
JJFannin@duanemorris.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of April, 2025, a true and correct copy of the foregoing was served via electronic mail upon all counsel of record.

/s/ *Harvey W. Gurland, Jr.*
Harvey W. Gurland, Jr.