IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO. 2:23-cv-1218-JES-NPM

DANESH NOSHIRVAN,

Plaintiff,

vs.

JENNIFER COUTURE, Et'al,

Defendants.
_____/

## DECLARATION OF OF JAMES MCGIBNEY

BEFORE ME, the undersigned authority, appeared, James McGibney, being first duly sworn and declares under penalty of perjury the following:

1. My name is James McGibney. I am fifty-one (51) years old, and I am competent to make this declaration.

2. I am a resident of the State of Texas and am *sui juris*.

3. I hold a master's degree in criminal justice from Boston University. I earned my cybersecurity certification from Harvard University, and I earned my doctorate in education - learning technologies - from Pepperdine.

4. I am a United States Marine Corp. veteran who served tours of duty with Third Surveillance Reconnaissance Intelligence Group and Marine Security Guard Battalion. I was awarded the Navy Achievement Medal while serving as the Operations Chief - MSGBN.

5. I am the founder and CEO of Bullyville.com. I am also a docuseries and entertainment producer.

6. In April of 2012, I purchased controversial revenge porn site "Is Anyone Up" from Hunter Moore. Upon acquisition of "Is Anyone Up", I immediately shutdown the website and redirected all the traffic to "Bullyville.com." The full story may be viewed within the Netflix's docuseries "The Most Hated Man on the Internet" and the VICE docuseries "Taking Down the Revenge Porn King."

7. Bullyville is a website that publishes personal bullying experience stories and aims to help bullying survivors heal. Bullyville.com is a safe space on the internet for people who have been cyber harassed, stalked, or bullied. Bullyville successfully shut down three of the largest revenge porn sites on the web and has been successful with the removal of thousands of revenge porn images off the web.[1] And does so for free.

8. Through my work with Bullyville.com, I have helped thousands of victims reclaim their digital privacy. Those victims trusted and confided in me during their darkest hours.

9. Additionally, I have frequently appeared on the Dr. Phil television show to discuss and counsel members of his audience who were victims of revenge porn, cyberstalking, or harassment. I have also appeared as a cybersecurity expert.

10. After acquiring the website Is Anyone Up, my family and I were digitally attacked, cyberstalked, harassed, and defamed by Joseph A. Camp ("**Camp**"). As a result, I was forced to obtain a permanent restraining order against Camp for myself, my wife, and our 3 children. My son was 3 weeks old at the time. A true and correct copy of the restraining order is attached as **Exhibit A**.

11. Camp also cyberstalked and harassed my former attorney, Jay Leiderman, who was also forced to obtain a restraining order.

12. In 2014, Camp digitally attacked and made bomb threats towards a good friend of mine - Judge Kristen Claire Olson who lived in Lee County, Florida (now deceased). I helped Judge Kristen Claire Olson, and her minor son, obtain a restraining order against Mr. Camp. Please

---

[1] https://bullyville.com

see Lee County, Florida, Case No. 14-030666DR C – Kirsten Claire Olson vs. Joseph A. Camp.

13. On or about September 07, 2022, I became aware that Danesh Noshirvan ("**Noshirvan**") was Camp's current victim. See, e.g., D.E. 26, 2:23-cv-01218-JES-NPM. After reviewing several social media posts from verified gab.com account: gab.com/joeycamp2020, I learned that Camp's cyberstalking, harassment and defamation of Noshirvan was nearly identical to what my family and I psychologically endured at the hands of Camp almost a decade earlier, and it continues to this day.

14. On September 07, 2022, I reached out to Noshirvan for the first time to share my experience in dealing with Camp. Prior to September 07, 2022, I did not know Mr. Noshirvan, nor had we ever communicated.

15. On January 15, 2024, I became aware that Patrick Trainor ("**Trainor**") inaccurately stated or misrepresented statements to the court in 2:23-cv-0340. On the same day, in response, I sent Trainor an email and, shortly thereafter, had Trainor served with a formal letter advising him of the inaccuracies in his statements to the Court. A true and correct copy of my email is attached as **Exhibit B**. In that email, I requested that Trainor retract his misrepresentations. Trainor responded by personally attacking me with false statements and by making a veiled threat to destroy my reputation.

16. On February 05, 2024, I posted to Bullyville's Instagram account: (1) photograph of Patrick Trainor, (2) Anabela Pinto's affidavit verifying delivery of the Letter to Trainor, (3) the January 15, 2024 letter, and (4) an excerpt from Trainor's filing. A true and correct copy of Bullyville's Instagram Post dated February 05, 2024 is attached as **Exhibit C**. I am aware that Mr. Trainor has made an issue over the formatting of the letter that I served him on Bullyville's letterhead, which, according to Mr. Trainor, is different than what was posted on Instagram, **Exhibit C**. The verbiage of the letter that was served upon Mr. Trainor is identical to the verbiage of the email that was sent from james@bullyville.com to pt@ptesq.com on January 15, 2024, **Exhibit B**.

17. On February 06, 2024, presumably after viewing Bullyville's Instagram account, Camp contacted WeServeNJ, LLC. According to WeServeNJ, LLC employee, Finella Hesin, Camp continuously screamed at her while falsely claiming that WeServeNJ, LLC committed fraud. A true and correct copy of Finalla Hesin's declaration is attached as **Exhibit D**. Ms. Hesin confirmed that Camp was extremely aggressive and kept yelling and name calling her to the point where she had to forcefully hangup the phone. See Ex. D. And when she did, she broke down in tears. Ex. D.

18. Alexander Vays is an attorney currently licensed in New York and New Jersey, which means that he is subjected to ethical and candor requirements before a tribunal. In Alexander Vays declaration, Vays confirmed that Camp accused WeServeNJ, LLC's process server and company of fraud. A true and Correct copy of Alexander Vays Declaration is attached as **Exhibit E**. As a result of Camp's manipulation, Vays "under pressure from threats made against WeServeNJ, LLC and the process server" (i.e., duress) sent Camp correspondence related to the courier service, which included my private personal identifying information.

19. On February 08, 2024, I executed a sworn declaration to be submitted within Case Number 2:23-cv-0340. In my previous declaration, I outlined an incident that occurred on February 6, 2024. Specifically, in paragraph 22 of my previous declaration I stated:

> Lastly, I would like to bring to the court's attention an incident that occurred on February 06, 2024. Upon discovering that I served Mr. Trainor with a letter ..., Mr. Camp immediately began to harass the process server.

20. To be clear, my statement regarding Camp's harassment of a process server on February 06, 2024, is a factually accurate statement, which can be independently verified by reviewing Finella Hesin's and Alexander Vays' declarations. At no point did I ever claim that Trainor had knowledge on February 06, 2024 of Camp's harassment directed towards WeServeNJ, LLC that occurred on February 06, 2024. Nor have I ever claimed that "Trainor conspired" with "Camp to harass a process server." See Dkt. 202. However, by February 09, 2024, Trainor

had knowledge of Camp's threats, harassment, and intimidation, of WeServeNJ, LLC because Camp forwarded Trainor the email string of correspondence between Camp and WeServeNJ, LLC.

21. In retaliation for submitting my prior declaration, Trainor filed a Rule 11 motion for sanctions by making claims of statements that do not exist in my prior declaration. Trainor's claims are not true. Trainor also sued me in New Jersey Federal Court alleging that he was defamed by my previous declaration. See 2:24-cv-08873. However, Trainor's case was dismissed for failing to state a cause of action.

22. It has also come to my attention that Trainor has taken one comment out-of-context from a discussion I had with Noshirvan to inaccurately claim that "I hacked Camp's social media and email accounts." To clear the air, I have never hacked into, nor have I obtained any form of access into any of Camp's social media or email accounts. Trainor could, and should, have deposed me to confirm that I never attempted to, nor have I ever gained access to any of Camp's social media or email accounts.

23. Trainor's statements accusing me of hacking Camp's social media and email accounts are simply incorrect. However, Trainor chose not to investigate and learn the truth. Instead, Trainor continuously perpetuated inaccurate claims to deflect from the facts alleged in Noshirvan's Second Amended Complaint. Any allegation that I hacked Camp's and/or Trainor's social media and email accounts - whether it is made by Trainor, Camp, or anyone else - is categorically false. No such thing ever happened.

24. Trainor has also made inaccurate vague claims that "I hacked Trainor." To be clear, I have never hacked into, nor have I obtained any form of access to any of Trainor's work or personal accounts, nor his Servers.

25. In his Rule 11 motion, Trainor cites a slew of cases I have been involved in, apparently in an effort to cast me in as negative a light as possible. Those cases are: *James McGibney and Via View, Inc., v. Thomas Retzlaff, Neal Rauhauser, et al.*, 67th District Court of Tarrant County, Texas Case No.: 067-270669-14, at 1-2, (Jul. 21, 2016) (rev'd to *McGibney v. Retzlaff*, 548 S.W. 3d 816 (Tex. App. Fort Worth, Apr. 19, 2018)) (see *Neal Rauhauser v. James McGibney and Viaview, Inc.*, Tex.

App. Fort Worth, No. 02-24-00090-CV, Aug. 30, 2024, pending on remand to determine attorney's fees to be awarded against McGibney); *See also James McGibney and Viaview, Inc. v. Thomas Retzlaff, et al.*, Civil Case No.: 5:14-cv-01059-BLF, (N.D. Cal. Sep. 21, 2014).

26. In December 2015, I was ordered to pay a $1 million Anti-SLAPP court sanction and $300,000 in attorney's fees to Neal Rauhauser for "filing a series of baseless lawsuits against him." The decision was believed to be the largest Anti-SLAPP sanction in United States History.

27. The ruling was temporarily reversed when the presiding judge granted my request for a new trial in February 2016 but reinstated in favor of Rauhauser on 14 April 2016 with the SLAPP sanction against me reduced from $1 million to $150,000. The judge ruled that I had filed the suits to willfully and maliciously injure Rauhauser and to deter him from exercising his constitutional right to criticize me.

28. I appealed and on April 19, 2018, a three-judge panel in the Texas 2nd District Court of Appeals ruled in my favor, vacating the monetary and non-monetary sanctions findings, and reversing and remanding the amount of attorney's fees awarded in ruling that the trial court had abused its discretion. The appeals court further reversed the finding of "willfully and maliciously", noting that Rauhauser's attorney had engaged in a "troublesome pattern of heavy front-end loading of legal work" in his affidavit which attempted to justify the attorney's fees sought.

29. On September 28, 2018, the Supreme Court of Texas denied Rauhauser's request for review of 2nd District Court of Appeals' April 2018 decision. On November 20, 2018, the appellate mandate issued with an additional order that Rauhauser "shall pay all of the costs of this appeal." After years of inaction and delays, the hearing to determine attorney's fees ordered by the appellate court was set to occur on November 16, 2023, but neither Rauhauser nor his attorney were present at the scheduled time, so the trial court dismissed the case for "want of prosecution."

30. In February 2024, Rauhauser appealed the dismissal and ultimately the trial court reinstated the case when his attorney demonstrated that he had technical issues. The attorney's fee hearing was scheduled for

November 19, 2024 for the third and final time. Rauhauser failed to appear despite an order by the trial judge to do so. The judge found "[b]ecause Defendant has failed to admit testimonial or documentary evidence regarding the reasonableness of the attorney's fees requested in this case, this Court is within its discretion to award an amount that it sees fit..." and awarded Rauhauser $2,500 contingent upon him paying me (McGibney) the $2303 in appellate fees Rauhauser still owed me (McGibney) from 2018. This meant that what was once a judgment for $1,000,000 in sanctions and $300,000 in legal fees effectively ended up being $197. Rauhauser appealed but failed to pay the required fees and on March 27, 2025, the appellate court dismissed the case, finally bringing to a close litigation that had stretched into its 11th year. I made a gargantuan mistake by filing that lawsuit but learned an invaluable lesson. Don't ever sue a vexatious litigant because even if you win, you lose.

I certify and declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. §1746, that the forgoing is true and correct. Executed on May 16, 2025, at Round Rock, Texas.

_____
James McGibney