# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

## CASE NO.:  2:23-cv-01218-JES-NPM

DANESH NOSHIRVAN,

     Plaintiff,

v.

JENNIFER COUTURE, *et al.*,

     Defendants.

_____/

## <u>DEFENDANTS JENNIFER COUTURE, RALPH GARRAMONE, M.D., AND OMG REALTY, LLC'S, MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II, III, IV, AND IX OF THIRD AMENDED COMPLAINT</u>

Defendants Jennifer Couture, Dr. Ralph Garramone, M.D., and OMG Realty, LLC, move for summary judgment and show that:

## I.    INTRODUCTION

Plaintiff Danesh Noshirvan ("Noshirvan") alleges that Defendants Jennifer Couture ("Couture"), Dr. Ralph Garramone, M.D. ("Garramone"), and OMG Realty, LLC ("OMG"), along with the other named co-defendants, conspired with a non-party, Joseph Camp ("Camp") to: (1) tortiously interfere with Plaintiff's business relationship with his former attorney (Count II); (2) defame Plaintiff (Count III); and (3) intentionally inflict emotional distress upon Plaintiff (Count IV). In addition, Noshirvan alleges that Defendant Jennifer Couture defamed him. However, the

evidence shows that neither Jennifer Couture, Dr. Ralph Garramone, M.D, nor OMG Realty, LLC, is liable for any of Noshirvan's claims and that Couture, Garramone, and OMG are entitled to judgment as a matter of law.

First and foremost, Noshirvan has not and cannot establish that Couture, Garramone, or OMG agreed with or participated in furtherance of any conspiracy with Camp or anyone else to interfere with Noshirvan's business relationships, defame Noshirvan, or intentionally cause Noshirvan emotional distress. The undisputed evidence shows precisely the opposite: at no time did Couture, Garramone, or OMG agree with Camp or anyone else to commit any tortious act against Noshirvan. Contrary to Noshirvan's allegations, the evidence shows that Camp *volunteered* to remove harmful information from the internet—*nothing more*. This is necessarily fatal to Noshirvan's conspiracy theory.

Second, Couture, Garramone, and OMG are entitled to summary judgment on Noshirvan's tortious interference claims. Noshirvan cannot show any agreement between Couture, Garramone, or OMG and Camp or others to tortiously injure him. Noshirvan has not and cannot establish that Couture, Garramone, or OMG had any knowledge of or interfered with his business relationship with his former attorney, Robson Powers ("Powers") or Powers' law firm. There is no evidence that the Defendants attempted to interfere with or cause Powers or his law firm to withdraw from representing Noshirvan. There is no evidence that Noshirvan suffered any

prejudice by hiring his current counsel, Nicholas Chiappetta ("Chiappetta"). Consequently, Noshirvan cannot satisfy the prima facie case for tortious interference with a business relationship and Couture, Garramone, and OMG are entitled to judgement as a matter of law.

Third, there is no evidence that Couture, Garramone, or OMG or anyone authorized to act on their behalf published any of the defamatory statements alleged in the TAC. Noshirvan is unable to adduce any evidence demonstrating Defendants' authorization of or participation in publishing any defamatory statements about Noshirvan or his family online. Hence, Defendants are entitled to judgment as a matter of law on Noshirvan's claim for defamation regardless of Noshirvan's supposed conspiracy-based theory of liability.

Fourth, Couture, Garramone, and OMG are entitled to summary judgment on Noshirvan's intentional infliction of emotional distress claim because Noshirvan has no evidence to show that Couture, Garramone, or OMG, or anyone working on their behalf knowingly or intentionally sought to cause Noshirvan emotional distress.[1]

Accordingly, for all of the reasons discussed herein, Defendants Jennifer Couture, Dr. Ralph Garramone, M.D., and OMG Realty, LLC, are entitled to summary judgment pursuant to Rule 56 on all of Noshirvan's claims.

---

[1] Further, as set forth in Defendants' Daubert motion, [D.E. 520] Noshirvan's ███████ "diagnosis" is based upon an unreliable methodology and, therefore, is inadmissible to support any claim that Noshirvan suffered any actionable form of emotional distress.

## II.    STATEMENT OF MATERIAL FACTS

1.    Noshirvan is an online social media "mega-influencer." Noshirvan has approximately 2.5 million followers across his social media accounts, including but not limited to Instagram, Facebook, TikTok, and Substack. *See* Noshirvan depo. (4/25/25) [D.E. 421] 21:15-22:6; 49:4-22; 115:20-116:6.

2.    Jennifer Couture ("Couture") is the office manager/operations manager of Defendant Ralph Garramone, M.D., P.A., d/b/a Garramone Plastic Surgery ("GPS"). Jennifer Couture and Dr. Ralph Garramone, M.D., married on November 11, 2024. *See* Couture deposition [D.E. 468] 13:5–9; 13:11–14:13.

3.    Dr. Ralph Garramone, M.D. ("Dr. Garramone"), is the managing member of OMG Realty, LLC ("OMG") and an officer and director of GPS. *See* Garramone deposition [D.E. 479] 12:19–13:8; 18:13–15.

4.    OMG Realty, LLC, is a Florida limited liability company which owns the building where GPS is located at 12998 S. Cleveland Avenue in Fort Myers, Florida. *See* Garramone declaration, Exhibit B hereto.

5.    On May 22, 2023, Couture and GPS filed suit against Noshirvan and other parties in the 340 Case. [D.E. 448, ¶ 197].

6.    Couture contacted Camp via Instagram message. *See* Couture deposition [D.E. 468] 227:8–17. Camp offered to review the negative information posted about Couture, Garramone, and GPS on the internet to determine whether he

4

could help with removing the negative information. *Id.*, 392:22–400:20. Camp did not ask for any money. *Id.*, 400:20–23. Camp determined that he could help and was successful in removing a substantial amount of negative information from the internet. *Id.*, 401:7–18.

7.     After Camp successfully removed negative information from the internet, Camp did not request payment. Couture volunteered to give Camp money in gratitude for his assistance. *Id.*, 402:24–404:14.

8.     Camp was never an employee of any business owned by Couture or Garramone. *Id.*, 410:2–7.

9.     Couture never had any agreement with Camp outside of simply removing the harmful statements that were on the internet regarding her, Dr. Garramone, and their business. *Id.*, 414:4–7.

10.     Noshirvan alleges that Couture with Dr. Garramone's knowledge and permission allowed Camp to live at 6535 Winkler Road, Ft. Myers, Florida 33919 (the "Winkler Property"). The Winkler Property is owned by Central Park of Southwest Florida, LLC. *See* Third Amended Complaint [D.E. 434] at ¶119; Couture depo. [D.E. 476] 418:8-13; Garramone depo. [D.E. 479] 194:3–7; 265:14–17.

11.     Camp did not reside at the Winkler Property, but rather was on the premises intermittently. Camp never lived at, moved into, or established the Winkler

property as his residence. *See* Couture depo. [D.E. 468] 405:23–407:21, 418:2–13; Garramone depo. [D.E. 479] 190:11-12.

12.    Neither Couture, Garramone, nor OMG ever had any agreement with Camp to defame Noshirvan, to publish any statement about Noshirvan being a child predator, to make reports to Child Protective Services or law enforcement, or to mass email defamatory statements about Noshirvan or members of his family. *See* Couture depo. [D.E. 468] 410:16–411:4; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

13.    Couture, Garramone, and OMG did not agree to or have any knowledge of Camp's publication of social media posts containing defamatory statements labeling Noshirvan a pedophile, sexual predator, child rapist, revenge pornographer, cyberbully, child killer, child groomer, or directing racial or homophobic slurs at Noshirvan or have any agreement with Camp to publish a website containing any such statements or depictions of Noshirvan. *See* Couture depo. [D.E. 468] 411:5–15; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

14.    Couture, Garramone, and OMG did not agree with Camp to publish statements that Noshirvan and his wife are "swingers," that Noshirvan "rapes his own child," "caused a 14-year-old to commit suicide," "caused another minor to attempt suicide," or "was involved in racketeering, money laundering, extortion,

sextortion, and blackmail." *See* Couture depo. [D.E. 468] 411:23–412:14; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

15.    Couture, Garramone, and OMG did not monitor and had no way to monitor Camp's social media postings, emails, or text messages. *See* Couture depo. [D.E. 468] 407:25–408:7. Couture, Garramone, and OMG were not aware that Camp allegedly sent hundreds of threatening text messages to Noshirvan until the filing of this lawsuit. *Id.*, 414:16–19; *see also* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

16.    Couture, Garramone, and OMG did not have an agreement with Camp to interfere with Noshirvan's business relationships or inflict emotional distress on Noshirvan or his family. *See* Couture depo. [D.E. 468] 413:2–8; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

17.    Neither Couture, Garramone, or OMG ever attempted to have Noshirvan or his family "swatted" and did not have an agreement with Camp to have Noshirvan or his family "swatted." *See* Couture depo. [D.E. 468] 413:23–414:3; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

18.    Neither Couture, Garramone, OMG, nor anyone working on their behalf stalked Noshirvan's children or had any agreement with Camp to stalk Noshirvan's children. *See* Couture depo. [D.E. 468] 414:10-15; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

19.    Neither Couture nor anyone working on Defendants' behalf had any agreement with Camp to go through Noshirvan's trash or hack Noshirvan's digital accounts and Wi-Fi. *Id*., 416:2–8; 416:16–417:3; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

20.    Neither Couture, Garramone, OMG, nor anyone acting on their behalf had any knowledge of the alleged threatening text messages Camp sent to Noshirvan prior to it being brought to the attention of Defendants after the instant lawsuit was filed. *Id*., 414:16-19; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto..

21.    Neither Couture, Garramone, OMG, nor anyone working on their behalf paid any individual to "target" Noshirvan. *Id*. at 417:16–417:24; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

22.    The extent of the relationship between Couture, Garramone, and/or OMG and Camp was simply that Camp volunteered to remove harmful statements on the internet about Couture, Garramone, and GPS. *Id*. at 414:4-7; Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto..

23.    Significantly, Noshirvan testified that he did not know when any purported conspiracy involving GPS and others was formed, the agreement amongst the purported co-conspirators, or how each purported co-conspirator joined the supposed conspiracy. *See* Noshirvan depo. (4/25/25) [D.E. 421] 109:18–110:4.

24.    Patrick Trainor initially represented Couture and GPS in the 340 Case and in the instant litigation. D.E. 69; *see also* 340 Case, D.E. 180 and 181.

25.    Defendants Couture, Garramone, and OMG had no independent knowledge as to Noshirvan's business relationship with Powers other than Powers appearing as counsel for Noshirvan in the 340 Case. *See* 340 Case, D.E. 21.

26.    Beyond Powers' appearance as counsel for Noshirvan in the 340 Case, Trainor conferred with Powers on Noshirvan's motion for extension of time to respond to the complaint and on his motion to withdraw as counsel for Noshirvan, as noted on the Court's docket in the 340 Case. *See* 340 Case, D.E. 29, 34, 35.

27.    Other than the communication their counsel had with Powers related to the motions filed in the 340 Case, Defendants Couture, Garramone, and OMG did not have any contact with Powers or otherwise authorize anyone to contact Powers or his law firm. *See* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

28.    Defendants Couture, Garramone, and OMG had and have no knowledge whatsoever of any efforts to interfere with Noshirvan's business relationship or opportunities with Powers. *See* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

29.    Trainor as counsel for Couture and GPS in the 340 Case filed a response to Powers' motion to withdraw from representing Noshirvan [340 Case, D.E. 35].[2]

30.    There is no evidence to suggest Noshirvan suffered any financial loss as a result of the alleged interference with his relationship with Powers. When asked how much money he paid Powers, Noshirvan testified he could not recall, which is not evidence of a financial loss. *See* Noshirvan depo (6/26/25) [D.E. 504] 22:1–22:2.

31.    After Powers withdrew, Noshirvan hired his current lawyer, Chiappetta, who agreed to take Noshirvan's case on a partial contingent fee basis. *See* Noshirvan depo (4/25/25) [D.E. 421] 326:21–23. Similarly, Noshirvan has no recollection as to how much money he has paid Chiappetta for his services. *See* Noshirvan depo (6/26/25) [D.E. 504] 21:24-21:25.

32.    Further, there is no evidence that Noshirvan suffered any prejudice by hiring Chiappetta to represent him in this case or in the 340 Case.

33.    Couture, Garramone, and OMG were unaware of Camp's alleged tortious conduct. Neither Couture, Garramone, or OMG monitored Camp's social media or received emails or text messages Camp allegedly sent to Noshirvan. *See* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

---

[2] Couture and GPS opposed Powers' motion only "to the extent that it may result in the loss of potential evidence" and requested only that Powers and his firm be ordered to "preserve all abusive and threatening communications that they received" and that copies of those communications be turned over to counsel for Couture and GPS.

34.     Neither Couture, Garramone, nor OMG had any knowledge regarding Camp's publications of defamatory statements on social media. *See* Couture depo. [D.E. 468] 411:5–12; *see also* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

35.     Couture, Garramone and OMG did not review Camp's social media posts and were unaware of any text messages purportedly sent by Camp to Noshirvan. *See* Couture depo. [D.E. 468] 106:1-9; *see also* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

36.     Neither Couture, Garramone, nor OMG ever reported Noshirvan to Child Protective Services or any other government agency for child abuse. *See* Noshirvan depo. (6/26/25) [D.E. 504] 154:24–155:23.

37.     At his deposition, Noshirvan first refused to answer whether he has received medical treatment for his alleged emotional distress. *See* Noshirvan depo. (4/25/25) [D.E. 421] 168:7–17.

38.     Noshirvan later admitted that he has not seen any mental health professionals since 2022 other than his expert in this case [3] and has not been prescribed any medications to address any mental conditions or emotional distress since 2022. *See* Noshirvan depo. (6/26/25) [D.E. 504] 167:19–168:2; 168:7–25.

---

[3] Defendants have moved to exclude the testimony of Plaintiff's expert, Dr. Robert Gordon, pursuant to *Daubert*. [D.E. 520.]

39.    Couture, Garramone, and OMG did not pay any entity or individual or have anyone act on their behalf to publish or disseminate defamatory statements about Noshirvan. *See* Couture and Garramone declarations, Exhibit A and B, hereto.

40.    Neither Couture, Garramone, or OMG ever owned any website or caused any website to be built about Noshirvan, specifically the website domain at www.thatdaneshguy.com. *See* Couture depo. [D.E. 468] 415:16–20; *see also* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

41.    Defendant Trainor admitted he purchased billboards, Pennysaver ads, and TV commercials. *See* Trainor depo. [D.E. 478] 38:13–38:14; 40:16–40:23.

42.    Noshirvan *admits* that the statements published on the flyers, billboards, ads, and commercials, such as "doxxing is violent" and "doxxing can be violent" are true statements. *See* Noshirvan depo. (4/25/25) [D.E. 421] 31:9–13].

43.    Camp removed defamatory and harmful statements about Couture, Garramone, and GPS from the internet voluntarily and without any agreement for compensation. Any and all payments made or caused to be made to Camp were gratuitous. *See* Couture and Garramone declarations, Exhibit A and B, hereto.

44.    Couture, Garramone, and OMG had no knowledge regarding the details or manner in which Camp removed harmful information and did not exercise and control over the details or manner in which Camp removed the harmful information. *See* Couture and Garramone declarations, Exhibit A and B, hereto.

45.    The removal of harmful information from the internet is distinct from and outside of the scope of IT vendors who serve the medical profession. In the Fort Myers area, this work is usually done by a specialist without supervision. This work requires specialist skills apart from those of IT vendors who serve the medical profession. *See* Couture and Garramone declarations, Exhibit A and B, hereto.

46.    Removal of harmful information from the internet is not part of my regular business or the regular business of Couture, Garramone, OMG, or GPS. *See* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

47.    At the time Camp volunteered to remove the harmful information, neither Couture, Garramone, or OMG believed they were creating any sort of master and servant relationship. *See* Couture declaration, Exhibit A, hereto; Garramone declaration, Exhibit B, hereto.

## III.    MEMORANDUM OF LAW

### A.    APPLICABLE LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant is entitled to judgment as a matter of law." *Id*. In reviewing a motion for summary judgment, the Court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve

all reasonable doubts about the facts in favor of the non-movant. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013). Notably, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter," but only "to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In opposing a motion for summary judgment, the non-moving party must go beyond the pleadings and demonstrate specific facts through affidavits, depositions, answers to interrogatories, and admissions that show a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence is insufficient to support the opposing party's position; there must be sufficient evidence for a reasonable [fact finder] to find in their favor. *Anderson*, 477 U.S. at 252 (1986); *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## B. DEFENDANTS ARE ENTITLED TO JUDGMENT AS MATTER OF LAW ON NOSHIRVAN'S CLAIMS FOR CIVIL CONSPIRACY (COUNTS II, III, AND IV)

Under Florida law, "[t]he essentials of a complaint for civil conspiracy are: (a) a conspiracy between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Daley v. Bono*, 420 F. Supp. 3d 1247, 1256 (M.D. Fla. 2019) (quoting

*Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cty.*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993)). Put another way, "[a]n action for civil conspiracy ordinarily requires proof of an agreement between two or more people to achieve an illegal objective, an overt act in furtherance of that illegal objective, and resulting injury to the plaintiff." *Bivens Garden Office Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 912 (11th Cir. 1998).

Noshirvan has not and cannot come forward with any evidence that Defendants Couture, Garramone, or OMG and Camp (or anyone else) were acting in concert such that Noshirvan can maintain this conspiracy theory of liability. Not only does Noshirvan have absolutely no evidence to support his assertion, but the uncontroverted deposition testimony of Couture and Garramone directly refutes Noshirvan's claims. Neither Couture, Garramone, nor OMG had an agreement with Camp for Camp to harass, sexually cyber-harass, cyberstalk, deplatform, defame, inflict emotional distress, interfere with Noshirvan's personal and/or business relationships, or to "swat" or stalk Noshirvan. *See* Statement of Facts (S.O.F.), above, ¶¶ 12–23.

Any agreement Defendants had with Camp, including payments made, was limited to Camp's assistance with "reputation management", which is undisputed. *See* S.O.F., ¶ 22; *see also* D.E. 454 at 15. Further, at no time were Couture, Garramone, or OMG aware of Camp's alleged tortious conduct toward Noshirvan.

Neither Couture, Garramone, or OMG monitored Camp's social media, emails, or texts. *See* S.O.F. ¶¶ 15, 20. There is simply no record evidence demonstrating or even suggesting an agreement between these Defendants and Camp (or others) to engage in any tortious or unlawful conduct against Noshirvan whatsoever. On this basis alone, Noshirvan's claims fail, and Defendants are entitled to judgment as a matter of law on Counts II, III, and IV.

### C. DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON NOSHIRVAN'S TORTIOUS INTERFERENCE CLAIM (COUNT II)

To succeed on a tortious interference with a business relationship claim, Noshirvan must prove: "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Bridge Fin., Inc. v. J. Fischer & Assocs., Inc.*, 310 So. 3d 45, 49 (Fla. 4th DCA 2020). Summary judgment should be granted where a claim is filed and there is no evidence to support the allegations and thus no genuine issues of material fact exist.

Here, Noshirvan's tortious interference claim suggests that Defendants, through Camp, knew of Noshirvan's business relationship with Powers and harassed Powers to the point of Powers withdrew from representing Noshirvan in the 340 Case, leaving him without counsel. Defendants are entitled to summary judgment on

this claim for a number of reasons. First, Noshirvan must plead and prove that Defendants manifested a specific intent to interfere with the business relationship. *Martin Petroleum Corp. v. Amerada Hess Corp.*, 769 So. 2d 1105, 1107 (Fla. 4th DCA 2000) (holding that the defendant will not be liable for tortious interference unless there is actual evidence establishing the defendant intended to procure a breach of the contract). Here, there is no evidence or issue of material fact as to whether Defendants caused or intended to cause any breach of Noshirvan's business relationships. Noshirvan has not identified a single intentional and unjustified act of interference by Defendants, or authorized by Defendants, which induced or otherwise caused Powers to terminate his business relationship with Noshirvan. Rather, the evidence shows that Defendants did not have any independent knowledge of Noshirvan's relationship with Powers and did not have any contact with Powers outside of the communications Couture's counsel had with Powers related to the motions Powers filed on Noshirvan's behalf prior to withdrawing from the 340 Case. *See* S.O.F. ¶¶ 25–27. As for Camp, neither Couture, Garramone, or OMG directed Camp to interfere with Noshirvan's relationship with Powers, nor did Couture, Garramone or OMG have any knowledge of Camp's actions directed at Powers. *See* S.O.F. ¶¶ 28–29.

Second, the record evidence clearly demonstrates that Noshirvan did not suffer damages as a result of the purported breach of the relationship. When asked

how much money he paid to Powers, Noshirvan testified that he could not recall, which is not evidence of a financial loss. *Id.* at ¶ 30. Thereafter, Noshirvan engaged Chiappetta as counsel. *Id.* at ¶ 31. When asked how much money he paid to Chiappetta, Noshirvan similarly testified that he could not recall, which is not evidence of a financial loss. *Id.* As such, Noshirvan has not shown and cannot show that he suffered any damage directly resulting from any interference with his business relationship with Powers or that he has suffered any prejudice by retaining Chiappetta to represent him in this case or in the 340 Case.

Accordingly, absent an agreement to tortiously interfere, knowledge of the business relationship, any actual interference, and any damages to Noshirvan, Defendants Couture, Garramone, and OMG are entitled to judgment as a material of law on Noshirvan's claim of civil conspiracy to tortiously interfere.

### D.  DEFENDANTS ARE ENTITLED TO JUDGMENT AS MATTER OF LAW ON NOSHIRVAN'S CLAIMS FOR CIVIL CONSPIRACY TO DEFAME (COUNT III) AND DEFAMATION (COUNT IX)

"To state a claim of defamation, the plaintiff must allege that (1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (internal quotation and citation omitted). "Defamation is *per se* where it imputes to another a felony offense or "conduct, characteristics, or a condition incompatible with the proper exercise of his

lawful business, trade, profession, or office." *Grayson v. No Labels, Inc.*, 2022 U.S.

Dist. LEXIS 76712 *3 (M.D. Fla. Apr. 21, 2022) (internal quotation and citation

omitted). "True statements, statements that are not readily capable of being proven

false, and statements of pure opinion are protected from defamation actions…."

*Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). Here, Noshirvan cannot

satisfy the elements of a claim for defamation by Couture, Garramone, or GPS.

As a threshold matter, Noshirvan bears the burden of proving that every

allegedly defamatory statement described in Counts III and IX is false. *See, e.g.,*

*Turner*, 879 F.3d at 1267. He cannot do so. On the contrary, Noshirvan admits that

statements such as "doxxing can be violent" [D.E. 434 at ¶ 215], as printed on flyers

and a billboard, are true statements. *See* S.O.F. ¶ 42.

### E.    DEFENDANTS ARE ENTITLED TO JUDGMENT AS MATTER OF LAW ON NOSHIRVAN'S CLAIMS FOR CIVIL CONSPIRACY TO INTENTIONALLY INFLICT EMOTIONAL DISTRESS ("IIED") (COUNT IV).

To succeed on an IIED claim, Noshirvan must show: "1) deliberate or reckless

infliction of mental suffering by defendant; 2) by outrageous conduct; 3) which

conduct of the defendant must have caused the suffering; and 4) the suffering must

have been severe." *See GEICO Cas. Co. v. Beauford*, 2007 U.S. Dist. LEXIS 10535,

at *12–13 (M.D. Fla. Feb. 15, 2007), *aff'd sub nom. Geico Cas. Co. v. Arce*, 333 F.

App'x. 396 (11th Cir. 2009) (citation omitted). When adjudicating IIED claims,

Florida courts have determined that "only those situations where 'recitation of the

facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"' satisfy the standard required to establish a claim of intentional infliction of emotional distress." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015) (internal quotation omitted).

First, Noshirvan cannot show that the conduct of Couture, Garramone, or OMG, or anyone's conduct on their behalf, was intentionally done to cause Noshirvan distress. To the extent Noshirvan was distressed, it was not because of the Defendants. This is especially true given that neither Defendants nor anyone acting on their behalf directed any tortious conduct towards Noshirvan. *See* S.O.F. ¶¶ 12–21. Moreover, Defendants were not aware of nor did Defendants control or encourage Camp's actions toward Noshirvan. *Id*. Therefore, any action taken by Camp is not a basis to bring an IIED claim against Couture, Garramone, or OMG. *Johnson v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 111260 *4 (M.D. Fla. June 22, 2006) ("Florida courts have long been loathe to impose liability based on a defendant's failure to control the conduct of a third party.").

Second, Noshirvan is unable to prove that the alleged tortious conduct was outrageous and beyond all bounds of decency. "This is an objective determination; the subjective response of the sufferer does not control." *See Incardone v. Royal Caribbean Cruises*, 2020 U.S. Dist. LEXIS 10000 *14 (S.D. Fla. Jan. 18, 2020). As such, "[t]here are only a very limited set of cases in which courts [have] recognized

conduct as sufficiently egregious to support a claim of intentional infliction of emotional distress." *Bakar v. Bryant*, 2013 U.S. Dist. LEXIS 144972 *5–6 (S.D. Fla. Oct. 7, 2013) (quoting *Saadi v. Maroun*, 2008 U.S. Dist. LEXIS 116658 *11 (M.D. Fla. Sept. 9, 2008)). Threats are insufficient to state a claim for IIED unless the threats are explicit and extreme. *Saadi* at *11–12. Similarly, "mere insults and indignities do not support a claim for the tort of intentional infliction of emotional distress." *Koutsouradis v. Delta Airlines, Inc.*, 427 F.3d 1139, 1344-45 (11th Cir. 2005). "Indeed, even allegations of 'reprehensible, objectionable, and offensive' conduct have been rejected to state a claim for intentional infliction of emotional distress." *Bakar* at *6 (quoting *Williams v. Worldwide Flight Servs., Inc.*, 877 So. 2d 869, 870 (Fla. 3d DCA 2004)).

Here, Noshirvan alleges that Defendants, through Camp, acted in an extreme and outrageous manner through a campaign of harassing email and text messages. Certainly, if the Eleventh Circuit has found that "even tortious or criminal intent, or intent to inflict emotional distress, standing alone, is not enough" to satisfy this prong (*Moore*, 806 F.3d at 1053), then Camp's alleged tortious conduct cannot satisfy this threshold requirement.

Finally, Noshirvan must demonstrate that he suffered emotional distress. When considering the sufficiency of Noshirvan's allegations regarding his purported suffering, "the law intervenes only where the distress inflicted is so severe that no

reasonable man could be expected to endure it." *Frias*, 823 F. Supp. 2d at 1289
(quoting the Restatement (Second) of Torts § 46 (1965)). According to Noshirvan,
Camp's alleged tortious conduct caused Noshirvan emotional distress, mental
anguish, reputational harm, loss of income, future revenue, and other damages. Even
assuming that Camp's alleged conduct caused the aforementioned symptoms,
Noshirvan cannot show that his allegations satisfy the required showing of "severe"
distress or mental suffering. *See Negron v. Citimortgage Inc.*, 2016 U.S. Dist. LEXIS
200595 *32–33 (S.D. Fla. Oct. 19, 2016). To the contrary, Noshirvan testified that
he has not been examined by a mental health professional since 2022 and that he is
not taking any medication—prescription or over-the-counter—to treat any mental
health problems.[4] *See* S.O.F. ¶¶ 37–38.

## F. CAMP WAS NOT AN AGENT OR EMPLOYEE OF COUTURE, GARRAMONE, OR OMG.

Plaintiff alleges in Count IX that Camp was an agent or employee of Couture.
[D.E. 434, ¶¶ 271–284.] Substantially all of the Plaintiff's allegations supporting this
claim have been directly refuted by record evidence, and Plaintiff has not and cannot
present any evidence supporting this claim.

---

[4] In addition, Noshirvan's purported diagnosis of █████████ is based on unreliable and
inadmissible testimony, as set forth in Defendants' Daubert motion [D.E. 520]. Accordingly,
Noshirvan cannot satisfy the standard required for an IIED claim and judgment should be entered
in favor of Defendants on Count IV.

In determining whether an employment or agency relationship exists, the Florida Supreme Court has long used the standard set forth in the Restatement (Second) of Agency. *See Carlson v. FedEx Ground Package Sys.*, 787 F.3d 1313, 1318–1319 (11th Cir. 2015)(citations omitted). The Restatement provides that an employee is "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Id.*, citing Restatement (Second) of Agency § 220(1) (1958).The Restatement provides a list of 10 non-exclusive factors that courts should consider in determining whether someone is an employee or agent:

> (a) the extent of control which, by the parties' agreement, the employer exercises over the details of the work; (b) whether or not the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skills required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is part of the regular business of the employer; (i) whether or not the parties believe that they are creating the relation of master and servant; and (j) whether the principal is or is not a business.

*Id.*, citing *Cantor v. Cochran*, 184 So. 2d 173, 174-75 (Fla. 1966) and Restatement (Second) of Agency § 220(2).

Here, substantially all of these factors weigh against a finding that Camp was an employee or agent of Couture, Garramone, or OMG. Neither Couture,

Garramone, nor OMG exercised any control over the details or manner in which Camp removed negative information about them from the internet or even had any knowledge concerning the details or manner in which Camp removed negative information about them from the internet. This work required specialized skills. Camp engaged in the removal of harmful information for a limited period of time and there was no agreement between Couture, Garramone, or OMG to pay Camp any sum certain (or any amount at all) for removing harmful content; all payments made or caused to be made to Camp were gratuitous in nature. Camp's removal of harmful content was not part of the regular business of Couture, Garramone, or OMG. There is no evidence which suggests that the parties believed they were creating a relationship of master and servant. As to Couture and Garramone, they are individuals and not businesses; although OMG is a limited liability company, it merely owns real property and is not an active business. *See* S.O.F. ¶¶ 43–47.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Couture, Garramone, and OMG and against Noshirvan on all of Noshirvan's claims.

Date: October 15, 2025                    Respectfully submitted,

By:    /s/   *Aaron Alfano*
Aaron Alfano, Esq.
(Florida Bar No. 0083909)
Brian P. Henry, Esq.

(Florida Bar No. 0089069)
Rolfes Henry Co., L.P.A.
5415 87th Street East
Bradenton, FL  34211
T:  (941) 684-0100
F:  (941) 684-0109
E:  aalfano@rolfeshenry.com
E:  sburns@rolfeshenry.com
E:  bhenry@rolfeshenry.com
E:  kmcclintock@rolfeshenry.com

*Attorneys for Defendants Jennifer Couture, Ralph Garramone, MD and OMG Realty, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served October 15, 2025, on all counsel or parties of record via the Court's Electronic Filing System, Electronic Mail, or via regular mail:

Nicholas A. Chiappetta, Esq.
Chiappetta Trial Lawyers
2101 Vista Parkway, Ste. 258
West Palm Beach, FL  33411
nick@chiappettalegal.com
*Attorney for Plaintiff*

Harvey W. Gurland, Jr., Esq.
Julian A. Jackson-Fannin, Esq.
Duane Morris, LLP
201 South Biscayne Blvd., Ste. 3400
Miami, FL  33131
hwgurland@duanemorris.com
jjfannin@duanemorris.com
pnjemdoza@duanemorris.com

jmagarin@duanemorris.com
*Attorneys for Garramone Plastic Surgery*

Patrick Trainor, Esq.
Law Office of Patrick Trainor, Esq., LLC
19 Union Avenue, Suite 201
Rutherford, NJ  07070
pt@ptesq.com
*Attorney for all Defendants Except Garramone Plastic Surgery, Jennifer Couture, Dr. Ralph Garramone, OMG Realty, LLC, and Wraith, LLC*

*/s/ Aaron Alfano*
Aaron Alfano (Fla Bar No.: 83909)