**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

DANESH NOSHIRVAN
an individual,

Plaintiff,

vs.

JENNIFER COUTURE, Et, al,

Defendant(s),
_______________________________/
RALPH GARRAMONE, M.D., PA
D/B/A GARRAMONE PLASTIC
SURGERY, JENNIFER COUTURE,
PATRICK TRAINOR,

Counter-Plaintiffs,

v.

DANESH NOSHIRVAN
an individual,

Counter-Defendant.
_______________________________/

CASE NO:
2:23-cv-01218-JES-KCD

Judge: Hon. John E. Steele

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE**
**<u>IRRELEVENT, PREJUDICIAL, AND INFLAMMATORY STATEMENTS</u>**
**(as to all Defendants)**

Danesh Noshirvan ("**Noshirvan**"), respectfully moves this Court for an Order in limine precluding all defendants, counter-plaintiffs, third-party claimants, their counsel, and witnesses from making any reference—whether in testimony, exhibits, or argument—to a series of irrelevant, highly prejudicial, and inflammatory statements about Plaintiff.

## I. INTRODUCTION

This case must be decided on the facts and claims properly at issue, not on personal attacks or appeals to prejudice. Yet the record reflects a troubling pattern of derogatory and inflammatory remarks directed at Noshirvan by Defendants and Counter-Plaintiffs. Defendants (and those aligned with them) have variously branded Noshirvan with incendiary labels such as an *"Iranian anchor baby"*, a *"digital jihadist"* supposedly loyal to hostile foreign actors, and even an agent or operative of the Chinese Communist Party. They have accused him of using "AI-driven bots" online to harass people and amplify his campaigns and mailing a white powdery substance. They portray him as someone who *"hates" or targets white people*. These statements made in pleadings, counterclaims, depositions, trial exhibit proffers and online posts are irrelevant to any claim or defense in this case and serve only to ignite prejudice and sidetrack the proceedings into collateral matters.

This motion seeks to preclude any reference to such prejudicial characterizations at trial. Allowing the jury to hear phrases like "Iranian anchor baby" or "jihad terrorist" in connection with Noshirvan would inject matters of race,

national origin, religion, and unrelated matters into the trial, inflaming passions or bias that have no place in the fact-finding process. The Federal Rules of Evidence flatly prohibit irrelevant evidence and grant this Court broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. Fed. R. Civ. P. 403.

Here, the incendiary statements at issue have no legitimate probative value—they do not make any fact of consequence more or less likely—and their sole effect would be to prejudice the jury against Noshirvan (or distract the jury with sideshow issues). Courts have recognized that appeals to ethnic, racial, or religious bias (for example, using terms like "anchor baby" in reference to a party's immigrant background) serve only to stoke jurors' prejudices and undermine a fair trial. Such tactics must be firmly excluded to safeguard the impartial administration of justice.

In short, Plaintiff asks the Court to draw a clear line before trial: all parties, counsel, and witnesses shall refrain from any mention of these inflammatory labels or similar accusations. The trial should focus on the evidence and merits of Noshirvan's claims and Defendants' defenses—not on offensive characterizations calculated to incite suspicion, xenophobia, erotophobia, or anger. This relief will ensure the jury is not exposed to irrelevant slurs that could trigger emotional or biased reactions, consciously or subconsciously, and thereby obstruct a fair, reasoned determination of the issues.

## II. FACTUAL BACKGROUND

Noshirvan is pursuing claims against Defendants for civil conspiracy, defamation, and intentional infliction of emotional distress, alleging that Defendants conspired to harass and defame him in retaliation for his online activities. In response and in the course of contentious litigation, certain Defendants, Counter-Plaintiffs, and associated third-parties, have resorted to personal attacks and scandalous allegations against Noshirvan that have no bearing on the actual claims. The record contains multiple examples:

a. Defendants have fixated on Noshirvan's Iranian heritage in a derogatory manner. For example, an online article co-authored by a representative of Defendants refers to Mr. Noshirvan as a *"self-proclaimed 'Iranian Anchor Baby'"* who supposedly operated with impunity. This offensive term "anchor baby" – a slur for a U.S.-born child of immigrants – was used purely to invoke anti-immigrant sentiment. Nothing about Plaintiff's national origin is at issue in this lawsuit, yet the epithet appears designed to taint him in the eyes of those who might harbor bias. Indeed, references to someone as an "anchor baby" have been cited as examples of appeals to anti-immigrant prejudice. There is no legitimate reason for such language to surface here other than to provoke prejudice.

b. Defendants and their agents have painted Noshirvan as a religious or ideological extremist. One Defendant-aligned commentator labeled him a *"jihadist"* with alleged *"connections (and possibly allegiance) to the Islamic Republic of Iran"* – effectively branding him a terrorist sympathizer. In the same vein, communications in this case have mockingly dubbed Noshirvan "Jihadi Joe," explicitly invoking the imagery of jihadist terrorism. These accusations not only lack any factual basis in the actual claims, but they blatantly attempt to link Noshirvan to terrorism and violence, an association guaranteed to arouse fear or hostility.

c. Equally egregious, defendants, Patrick Trainor ("**Trainor**") and his law firm have injected into their pleadings the allegation that Noshirvan predominantly targets "White women, mothers, and grandmothers," whom he purportedly calls *"entitled white mother**ckers."* By highlighting the alleged use of vulgar phrases like "White Hate" and "white people", Defendants insinuate that Noshirvan "hates white people" or harbors racial animus against Caucasians. There is no claim or defense that turns on the race of any person in this case; this rhetoric serves only to prejudice a likely majority-white jury against an Iranian man by portraying him as anti-white. It is as inflammatory as it is irrelevant.

d. In a further attempt to malign Noshirvan's character, Defendants have propagated a conspiracy theory that Noshirvan is acting as an agent of communist China. In public postings and letters apparently coordinated with Defendants, it has been asserted that Noshirvan is *"acting as an agent of the Chinese Communist Party (CCP)"* and *"carrying out subversion operations"* against the United States. The suggestion is that Noshirvan's social media activism is part of some hostile foreign influence campaign. Not a shred of this fantastical allegation pertains to the elements of Noshirvan's tort claims or any defense; it is a classic smear campaign. In effect, Defendants seek to tar and feather Noshirvan with the label "enemy of America" – a deeply prejudicial claim sure to inflame patriotic or anti-communist fervor – despite it having zero evidence and no relevance to the narrow questions the jury must decide.

e. Defendants have also signaled an intent to portray Noshirvan as engaging in deceptive, illegal, or unethical online tactics unrelated to the issues at bar. For instance, Defendants accuse him of employing *"AI-powered bots"* or fake accounts to amplify alleged harassment campaigns. In one court filing, they allege that "much of" the threatening or harassing online activity attributed to Noshirvan's followers was actually carried out by automated bot accounts, which they claim are "tools Noshirvan often uses" to bolster his influence. The "bots" accusation appears calculated to paint Noshirvan as

manipulative or lacking genuine support, thereby undermining his character. It would invite the jury to embark on a tangential inquiry into social media analytics and could confuse or mislead the jury into thinking the case is about whether Noshirvan runs an improper "bot" network, when it is not.

f. Defendants and third-party associates have falsely blamed Noshirvan for a High School Football Coach's suicide. Statement concerning Aaron de la Torre are irrelevant to any material issue in the present litigation, which does not involve claims or defenses related to Mr. de la Torre. Any such statement would be highly prejudicial. Allegations of moral culpability for a third-party suicide, unconnected to the facts to be tried, and amounts to improper character evidence and guilt-by-association. Its only conceivable purpose is to inflame the jury and tarnish Noshirvan's character with emotionally charged, speculative blame. Accordingly, the Court should preclude any reference—direct or indirect—regarding Mr. de la Torre.

g. Any inflammatory or prejudicial statements or comment brought up in court filings or motion practice, (other than a pleading), should be excluded as the statement would be subject to absolute immunity under litigation privilege. Further, those statements would only serve as a basis to inject impermissible character evidence before the trier of fact. Defense counsel

has made clear that they do not understand the narrow scope in which character evidence may be used.

h. Any statement, suggestion, or comment, expressing or implying any collusion with counsel should be excluded as there is zero evidence to support the assertion. Further, those statements would only serve as a basis to inflame or confuse the jury of the actual issues in this case.

i. Any statement, suggestion, or comment, expressing or implying any political stance. For example, antifa, Trump Hater, hates Trump, fascist, immigration issues or stances on immigration, ICE, Police shootings.

j. Any statement, suggestion, or comment, expressing or implying any conspiracy between Noshirvan, James McGibney, or the undersigned. Those statements would only serve as a basis to inflame or confuse the jury of the actual issues in this case.

k. Any statement, suggestion, or comment, expressing or implying negative sentiment regarding James McGibney's posts, publications, comments, or statements including James McGibney's Instagram account. Those statements would only serve as a basis to inflame or confuse the jury of the actual issues in this case.

l. Any statement, suggestion, or comment, expressing or implying negative or false reporting to authorities (i.e., FBI, U.S. Marshall, State Bar(s),

Florida Department of Health) that is not contained within the Third Amended Complaint or any Counterclaim – depending upon this Court's ruling as to the Counterclaims viability.

m. Any statement, suggestion, or comment, expressing or implying that Noshirvan "doxed the Supremes", "doxed the Supreme court justices", or just plain doxes people is inherently prejudicial and should be excluded. Further, those statements would only serve as a basis to inject impermissible character evidence before the trier of fact.

n. Any statement, suggestion, or comment, expressing or implying that Noshirvan is a "hacker", involved in "hacking", or that actually hacked anyone is unfounded. There is zero evidence that Noshirvan even knows how to hack an electronic device. Further, those statements would only serve as a basis to inject impermissible, inflammatory, and prejudicial statements before the trier of fact.

Counter-plaintiff also attempt to rehash extinguished claims. See Dkt. 448, ¶¶2-6, 18-40. However, most of the pled background was subject to dismissal with prejudice in 2:23-cv-0340. Allowing Counter-plaintiffs to reassert previously dismissed allegations or allegations still pending in the 2:23-cv-0340 case would be highly prejudicial as it would essentially allow for a possible double recover. The statements contained therein are highly

prejudicial and Counter-plaintiffs' produced zero evidence in discovery to support the speculative allegations stated in the Counter-claim.

These and similar remarks have surfaced in motions, in deposition questioning and testimony, in Defendants' trial exhibit lists, and in extrajudicial publications or social media exhibits associated with Defendants. For example, in their Amended Answer and Counterclaims, Defendants Garramone and Couture describe. Noshirvan as *"an online digital terrorist or vigilante"* who has *"harassed and terrorized"* them. Likewise, Defendant Trainor's pleadings dwell on Plaintiff's ethnicity and purported hatred of "White" people. During the deposition of defendant Jennifer Couture, Plaintiff's counsel was met with hostile commentary echoing these themes (e.g., suggestions that Noshirvan's criticisms of Defendants were part of a broader extremist agenda). Defendants' Trial Exhibit Lists further indicate an intent to introduce social media posts and other evidence highlighting these inflammatory accusations – for instance, exhibits labeled as involving "White Hate", "white people", "assassination Luigi Mangione", "doxing the Supremes", and "hacking", narratives, which correspond to the notion that Noshirvan is a menace with extremist motives.

In sum, the record shows a concerted effort by Defendants to stray from the merits and instead attack Noshirvan's identity and character with inflammatory labels — arguably they will attempt to do the same to taint the jury. These attacks

invoke themes of ethnic bias, religious/ideological bias, political bias, and general bad character ("harasser who uses bots," "hacker", "hates white people"). None of these scurrilous allegations relates to the actual elements of Noshirvan's defamation and tort claims or Defendants' now waived defenses. Permitting such statements or implications at trial would serve only to prejudice the jury, waste time on peripheral issues, and confuse jurors about what they are here to decide. Accordingly, Plaintiff seeks a pretrial ruling to exclude all such references.

## III. Legal Standard

Rule 26(a) of the Federal Rules of Civil Procedure specifically requires parties, without awaiting a discovery request, to provide initial disclosures to the other parties. These initial disclosures must be supplemented or corrected "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Rule 26 also places upon each party a continuing duty to supplement their Rule 26(a) disclosures in a timely manner throughout the discovery process. See Fed. R. Civ. P. 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or isharmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) provides for a self-executing sanction (one that does not require a court order) . . . ." *Williams v. Ala. Dep't of Indus. Relations*, 684 F. App'x 888, 895 (11th Cir. 2017). "Thus, the sanction for failure to comply with Rule 26(a) is the automatic and

mandatory exclusion from trial of the omitted evidence, unless non-disclosure was justified or harmless." See *Abousharkh v. Jenkins Nissan, Inc.*, 2021 WL 4442705 (M.D. Fla. Sept. 28, 2001) ("[T]he sanction for failure to comply with Rule 26(a) is the automatic and mandatory exclusion from trial of the omitted evidence, unless non-disclosure was justified or harmless.").

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Reyes v. Aqua Life Corp.*, No. 10-23548-civ, 2012 WL 12892213, at *1 (S.D. Fla. July 9, 2012).

Federal Rule of Evidence 402 provides that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. Rule 401 defines "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401.ك Rule 403 provides that evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Civ. P. 403

## IV. The Court Must Exclude The Irrelevant Prejudicial Statements

### A. The Challenged Statements Are Irrelevant to Any Issue to Be Decided (FRE 401–402)

In this case, Noshirvan asserts that any references to his national origin, race, or unsubstantiated extremist affiliations (e.g., calling him an *"Iranian anchor baby"* or *"jihadist"*) have no legitimate bearing on the claims or defenses. The jury will be tasked with determining whether Defendants engaged in defamation, harassment, or other tortious acts against Noshirvan, and what damages, if any, resulted. Plaintiff's ethnicity beyond being targeted for hates crimes is not a fact in issue. Nor is Plaintiff's religion or political ideology on trial. Whether or not Noshirvan is Iranian (and he is an American citizen of Iranian descent) has no tendency to prove or disprove any element of defamation, IIED, or conspiracy. Likewise, inflammatory labels such as "terrorist" or "communist agent" are wholly untethered from the elements of the torts at issue – unless Defendants absurdly contended truth as a defense to a defamation claim that Plaintiff is a terrorist (which they have not credibly done). In reality, these pejoratives are insults and personal aspersions, not factual evidence pertinent to the case.

Similarly, accusations that Plaintiff "hates white people" or habitually uses "bots" do not relate to any fact the jury must decide. This litigation is not about Plaintiff's personal beliefs or his social media follower composition. Defendants might argue they raised these points to attack Plaintiff's credibility or motives, but even that stretch fails under Rule 401. For instance, whether Plaintiff allegedly dislikes white people does not make it more or less likely that Defendants defamed

him or that his reputation was harmed. It is simply a collateral attack on character, which is not a material issue here. The Court should see these statements for what they are: gratuitous and prejudicial distractions. Courts routinely exclude such collateral matters that would sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case. Here, the tangents are not even factual disputes—Plaintiff vehemently denies being a terrorist, a foreign operative, or a racist, but there is no need for any "mini-trial" on those points because they are not elements of any claim or defense.

Notably, to the extent Defendants included some of these assertions in their pleadings or counterclaims, those allegations themselves are subject to being stricken as "immaterial, impertinent, or scandalous" under Fed. R. Civ. P. 12(f). The presence of scandalous assertions in a pleading does not transform them into admissible evidence at trial. The Court acts well within its discretion to exclude such matter from the jury's hearing so that the trial can focus on genuine issues in controversy.

In sum, none of the derogatory statements listed in this motion meets the low bar of Rule 401 relevance. On that basis alone, the Court should preclude all references to these statements or their substance, pursuant to Rule 402/403.

**B. The Statements Must Be Excluded Under Rule 403 Because Their Probative Value (If Any) Is Substantially Outweighed by the Danger of Unfair Prejudice, Confusion, and Misleading the Jury**

Even assuming *arguendo* that any of the challenged statements had some minimal relevance, they should still be excluded under Rule 403. Rule 403 permits

the exclusion of relevant evidence when its probative value is "substantially outweighed" by dangers such as unfair prejudice, confusion of the issues, or misleading the jury, among others. Here, the balance is not even close – each of the inflammatory statements at issue carries an enormous risk of unfair prejudice and little to no probative worth.

"Unfair prejudice" in the Rule 403 context means an *"undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one."* The statements Defendants have made about Noshirvan are practically a textbook example of this concept. Terms like "terrorist," "jihadist," "Communist Party operative," or insinuations that Plaintiff is anti-white, are highly charged labels that carry strong negative connotations. They are not neutral facts; they are epithets calculated to arouse an emotional or visceral reaction in the listener. If a juror hears such descriptors applied to a party, there is a serious risk the juror will develop hostility or bias against that party independent of the evidence. For instance, calling Noshirvan a "jihad terrorist" or aligning him with the CCP effectively invites the jury to view him as an enemy or a dangerous person, possibly tapping into broader public fears about terrorism or foreign interference. This could easily lead a juror to decide issues – consciously or unconsciously – on an improper basis, such as disliking Plaintiff's perceived ethnicity or politics, rather than on evidence of Defendants'

liability or Plaintiff's damages. Such prejudice is exactly what Rule 403 aims to prevent.

It is difficult to conceive of a more prejudicial set of accusations than to brand a civil plaintiff in front of a jury as a religious extremist, a foreign agent, and a racist. Introduction of these themes would effectively poison the well. Once those inflammatory seeds are planted in jurors' minds, no amount of limiting instructions can guarantee the jurors won't be influenced by them. The Court's best course is to exclude them altogether. Numerous courts have recognized the uniquely prejudicial nature of evidence or remarks that appeal to racial, ethnic, or religious bias. *Marshall v. State*, 854 So. 2d 1235, 1237 (Fla. 2003)(when appeals to racial bias are made openly among the jurors, they constitute overt acts of misconduct); *Wallace v. State*, 768 So. 2d 1247, 1250 (Fla. 1st DCA 2000)(Florida courts have consistently recognized that it is improper to interject a racial or ethnic reference that is not relevant to an issue in the case). Even in criminal trials – where relevance thresholds can be more expansive – courts have cautioned against pejorative epithets. For example, courts have disapproved of prosecutors referring to a Middle Eastern defendant as "Muslim terrorist" or making references to "anchor babies" and other ethnic tropes, because they "appeal to the potential racial prejudices of the jury", offering no legitimate proof of guilt. Injecting prejudicial buzzwords would derail any chance of an impartial verdict.

Admission of these inflammatory statements would also risk confusing the issues and misleading the jury, which Rule 403 equally guards against. The trial in this matter should be focused on whether Defendants made certain false statements about Plaintiff and engaged in harassment, and on the damages caused. If references to "CCP influence operations" or "jihad" are allowed, the jury could be misled into thinking there is an underlying issue of national security or terrorism to resolve, which there is not. The jury might improperly speculate about Plaintiff's background or associations, rather than concentrating on Defendants' conduct. In effect, the trial could devolve into a series of on completely collateral questions. This is precisely the sort of scenario Rule 403 seeks to avoid, where the trial's focus is lost and the jury is distracted by irrelevant sideshows.

Allowing such evidence would also send a misleading signal of legitimacy: jurors might assume that if the Court permits discussion of Plaintiff being an "Iranian anchor baby", "terrorist," or "white hater" it must have some legal relevance or factual basis. That assumption would be false, and thus the jury would be led astray. The only fair course is to exclude the material, so there is no risk of juror misinterpretation or confusion about what needs to decided.

On the other hand, the probative value of these statements is virtually nil. Defendants cannot credibly argue that calling Plaintiff derogatory names has any probative worth regarding the issues in dispute. At best, they might claim that some

statements were part of the context or animus for why Defendants acted as they did. But even if that were a theory, the specific inflammatory labels are unnecessary and excessive to establish it. Defendants can explain their version of events or motives without resorting to these toxic characterizations or highly charged descriptors. Any marginal relevance of Defendants' state of mind can be achieved through far less prejudicial language. In other words, there are alternative, non-prejudicial ways for Defendants to present any relevant evidence, which further tilts the Rule 403 balance in favor of exclusion. The law does not allow a party to use a cannon where a candle would do, so to speak, especially when the cannon blast would wreak unfair prejudice.

Although styled as "factual" claims, the statements at issue essentially amount to improper character evidence and character assassination. Defendants are attempting to portray Plaintiff as a person of bad character (e.g. disloyal, extremist, or hateful) presumably to suggest he is not deserving of relief or to bias the jury against him. This contravenes the spirit of Rule 404(a), which generally forbids using character traits to prove conduct, and certainly bars using propensity or bad character as a reason to diminish a party's claim. While Rule 404(b) technically addresses other-acts evidence, the broad principle remains: a trial should not be a referendum on a party's general character or identity, especially using inflammatory allegations unrelated to the specific causes of action. The Court should therefore

exercise its discretion to prevent what is effectively back-door character evidence that serves no permissible purpose.

In weighing the Rule 403 factors, courts have consistently emphasized that when evidence has *"scant probative force"* but poses a significant risk of causing the jury to decide on an emotional or improper basis, it must be excluded. See *Frizzle v. State*, 982 So. 2d 1292, 1293 (Fla. 4th DCA 2008). Here, each of the challenged statements is exactly that – scant probative value, massive prejudicial effect. Whether considered individually or in the aggregate, the balance under Rule 403 strongly favors exclusion. No reasonable fact-finder should hear these labels in a trial that is supposed to be about whether Defendants defamed or harassed Plaintiff. The injection of racism, terrorism, and xenophobia into this case would do nothing but inflame and distract.

Finally, it bears noting that excluding these statements will not hinder Defendants from presenting a full defense on the merits. They remain free to dispute the claims with relevant evidence, to challenge Plaintiff's credibility through proper means, and to present any admissible proof that might mitigate or justify their actions. What they cannot do – and should not be allowed to do – is to resort to scandalous epithets or innuendo in hopes of biasing the jury. The Federal Rules of Evidence and basic principles of fairness do not permit it. A pretrial ruling is

necessary and appropriate to prohibit mention of these inadmissible matters, rather than waiting to object in front of the jury and risk the bell being rung.

## V. CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Plaintiff Danesh Noshirvan respectfully requests that this Court grant his Motion in Limine and enter an Order prohibiting Defendants, Counter-Plaintiffs, their counsel, and all witnesses from introducing, referencing, or suggesting any of the inflammatory and irrelevant characterizations described herein.

Specifically, the Court should preclude any mention—whether in testimony, argument, exhibits, pleadings, or otherwise—that Plaintiff is an "Iranian anchor baby," a "jihadist," "terrorist," "digital terrorist," "CCP operative," foreign agent, "hacker," or that he uses "bots" or fake accounts to manipulate online activity; that he "hates white people"; that he "doxed" Supreme Court Justices; that he caused or contributed to any third-party suicide; or any other similarly prejudicial and unsupported accusation. Such statements are irrelevant to the claims and defenses to be tried and serve no purpose other than to inflame bias, confuse the issues, and improperly influence the jury.

The Court should further order that:

1. Counsel shall not directly or indirectly reference these matters in opening statements, witness examinations, or closing arguments, nor elicit testimony that injects these prohibited themes into trial.

2. Counsel must instruct their clients and witnesses, prior to testimony, that these subjects are excluded and may not be referenced.

3. Any exhibit containing prohibited language or insinuations must be appropriately redacted before being shown to the jury. If redaction is not feasible, the exhibit should be excluded.

**LOCAL RULE 3.01(g) CERTIFICATION**

The undersigned certifies that he conferred with counsel for all Defendants in person on January 29, 2026, and the relief requested by Noshirvan in this Motion is opposed.

DATED: February 17, 2026.

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
Florida Bar No: 1006407
**Chiappetta Trial Lawyers**
*Attorneys for Noshirvan*
2101 Vista Parkway, Suite 258
West Palm Beach, FL 33411
Direct: (561) 768-4500
Fax: (561) 768-4600
Service@chiappettalegal.com
nick@chiappettalegal.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following: all counsel of record.

*/s/Nicholas A. Chiappetta*
Nicholas A. Chiappetta