UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANESH    NOSHIRVAN,    an
individual,

       Plaintiff,

v.                    Case No: 2:23-cv-01218-JES-DNF

JENNIFER    COUTURE,    an
individual; RALPH GARRAMONE
M.D., an individual; RALPH
GARRAMONE M.D. P.A. d/b/a
GARRAMONE PLASTIC SURGERY;
CENTRAL PARK OF SOUTHWEST
FLORIDA, LLC; OMG REALTY,
LLC; THE LAW OFFICE OF
PATRICK TRAINOR ESQ, LLC
d/b/a THE LAW OFFICE OF
PATRICK TRAINOR;  PATRICK
TRAINOR, an individual; and
ANTI-DOXING LEAGUE INC.,

       Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on review of two motions filed by Plaintiff Danesh Noshirvan ("Noshirvan") to dismiss counterclaims to his Third Amended Complaint. Noshirvan filed an Amended Motion to Dismiss Patrick Trainor's Frivolous Counterclaim (Doc. #461) on August 19, 2025, to which Defendant Patrick Trainor ("Trainor") filed a Response in Opposition (Doc. #485) on September 2, 2025. Noshirvan also filed a Motion to Dismiss Jennifer Couture's, Ralph Garramone M.D. P.A. d/b/a Garramone Plastic

Surgery's, and Ralph Garramone's Counterclaim (Doc. #493) on September 11, 2025. Defendants Jennifer Couture ("Couture"), Garramone Plastic Surgery ("GPS"), and Ralph Garramone ("Garramone") filed their Response in Opposition (Doc. #526) on October 1, 2025.

## I.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010)(stating the same). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate

factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011)(citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012)(citations omitted). Thus, the Court engages in a two-step approach: "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

As the Court has previously stated (Doc. #119, pp. 3-4), these same pleading rules apply to counterclaims.

**II.**

The Court first addresses the motion to dismiss the Counterclaim filed by Couture, Garramone, and GPS. (Doc. #448, pp. 37-71.) This Counterclaim alleges six defamation claims against Noshirvan, two each by Couture, Garramone, and GPS. Each counterclaimant alleges one claim of Defamation Per Se and one claim of Defamation Per Quod.

### A.    Factual Allegations of Counterclaim

Noshirvan is a cyberstalker and digital provocateur who built his online persona on targeting, defaming, and destroying the lives of private individuals.  (Doc. #448, ¶ 19.)  Across his various social media accounts, Noshirvan utilizes isolated incidents to invent or distort narratives for his millions of followers for his own personal gain and profit.  (Id. ¶¶ 19-20.)  Such posts result in online harassment, doxxing, threats, and professional ruin. (Id.)

One of Noshirvan's targets was Couture, who on January 26, 2022, was involved in an incident in a Dunkin Donuts parking lot. (Id. ¶ 27.)  Noshirvan published a clipped and edited version of the incident—stripping it of context—and repeatedly aired it to his audience.  (Id. ¶ 28.)  In these posts, Noshirvan utilized inflammatory language to provoke outrage, ridicule, and hatred towards Couture.  (Id.)  Such outrage resulted in a coordinated attack by Noshirvan's followers.  (Id. ¶ 29.)  Couture received hundreds of abusive and threatening text messages, and a constant stream of harassing phone calls and voicemails.  (Id.)  Couture attempted to delete abusive comments, blocked phone numbers, and eventually deleted all of her social media accounts.  (Id. ¶ 30.)

Noshirvan contacted Couture to warn her that "the fun ha[d]n't even started yet," and that the worst was yet to come from his 1.3

million followers.  (Id. ¶ 31.)  Noshirvan continued to publish
and republish the video multiple times a day for months,
encouraging his followers to share the video, mock Couture, and
find her online.  (Id. ¶ 32.)  Later, Noshirvan published Couture's
full name, employer, and home city before pushing for Couture to
be prosecuted for the "Dunkin Donuts incident."  (Id. ¶¶ 32-33)

Once Couture was charged, Noshirvan utilized those records
and presented them as breaking news.  (Id. ¶ 33.)  Noshirvan
suggested that Couture was dangerous, unstable, and a criminal.
(Id.)  Noshirvan realized that since this story gained such
traction, he could continue to frame Couture as a villain to drive
more revenue and merchandise sales.  (Id. ¶ 34.)

Two days after Noshirvan started his campaign against
Couture, Noshirvan turned his sights to Garramone and GPS.  (Id.
¶ 37.)  Noshirvan encouraged his followers to act against Garramone
and GPS since neither took immediate action to terminate Couture's
employment.  (Id. ¶ 38.)  The followers began flooding social media
posts as well as GPS's voicemail system with false claims about
Garramone's capabilities as a plastic surgeon and stature in the
community.  The statements by Noshirvan resulted in reputational
harm to the Counterclaimants.  (Id. ¶ 49.)

The Counterclaim specifically identifies numerous allegedly
false and defamatory statements made by Noshirvan in January and

February 2025.  (Id. ¶¶ 41-45.)  GPS alleges claims of defamation
per se in Count I and defamation per quod in Count II; Couture
alleges claims of defamation per se in Count III and defamation
per quod in Count IV; and Garramone alleges claims of defamation
per se in Count V and defamation per quod in Count VI.
Counterclaimants implicitly assert that Florida substantive law
applies to all their defamation claims, and Noshirvan does not
dispute that position in his motion, citing only Florida
substantive law.  (Doc. #493, pp. 11-15.)

**B.    Grounds for Motion to Dismiss**

Noshirvan raises a variety of arguments in his motion to
dismiss, which the Court discusses separately.

**(1)    Regardless of Whether Couture, Garramone, and GPS
Are Limited Public Figures, The Counterclaim
Sufficiently Pleads Actual Malice**

Noshirvan begins his arguments by asserting that
Counterclaimants are limited public figures. (Doc. #493, pp. 11-
13.)  Counterclaimants argue they are not limited public figures.
(Doc. #526, pp. 10-11.)

At the pleading stage, the significance to being a limited
public figure is that such a plaintiff must plead that the
defamatory statement was made with actual malice.  Turner v. Wells,
879 F.3d 1254, 1273 (11th Cir. 2018).  To plead actual malice,
plaintiff

must allege facts sufficient to give rise to a reasonable
inference that the false statement was made with
knowledge that it was false or with reckless disregard
of whether it was false or not. This is a subjective
test, focusing on whether the defendant actually
entertained serious doubts as to the veracity of the
published account, or was highly aware that the account
was probably false.

Id. (internal citations and punctuation omitted). Noshirvan
argues that the Counterclaim does not plausibly allege actual
malice. (Doc. #493, p. 14.)  The Court need not determine at this
stage of the proceedings whether any of the counterclaimants are
limited public figures because the Counterclaim has sufficiently
alleged actual malice even if Plaintiffs are not limited public
figures.

While Federal Rule of Civil Procedure Rule 9(b) states that
"[m]alice, intent, knowledge, and other conditions of a person's
mind may be alleged generally," the U.S. Supreme Court has held
that malice and other degrees of intent are subject to its
plausibility pleading standard.  Iqbal, 556 U.S. at 687.  Thus,
the Eleventh Circuit has held "that the plausibility pleading
standard applies to the actual malice standard in defamation
proceedings." Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th
Cir. 2016).

Each count of the Counterclaim specifically states that
"[e]ach of these false statements were published with actual

malice, i.e., with knowledge of its falsity or with reckless
disregard as to the truth." (Doc. #448, ¶¶ 60, 75, 89, 104, 118,
133.) Additionally, the Counterclaim alleges numerous specific
facts about Noshirvan's activities and statements which allow a
reasonable inference that he actually entertained serious doubts
as to the veracity of his published statements or was highly aware
that the statement was probably false. While Noshirvan views the
actual facts differently, the facts set forth in the Counterclaim
are sufficient to plausibly allege actual malice.

### (2) The Counterclaim Sufficiently Pleads Compliance With The Condition Precedent

Noshirvan argues that the Counterclaim fails to sufficiently
plead a required condition precedent. Specifically, Noshirvan
argues that Florida Statutes Section 770.01 required Plaintiffs to
give "defendant" five days' notice before initiating a civil
defamation action. See Fla. Stat. § 770.01 (2025). Noshirvan
argues that he was not given this statutory notice because
Plaintiffs' letter-notice was sent to his attorney in the two
pending Fort Myers federal cases, who did not represent him in any
capacity outside the scope of the two federal cases. (Doc. #493,
pp. 14-16.)

The Counterclaim alleges that all condition precedents to the
filing of the Counterclaim "have been performed, have occurred, or

have otherwise been waived." (Doc. #448, ¶ 17.)  Additionally,
the Counterclaim specifically addresses service of the Section
770.01 letter-notice.  (Id. at ¶ 52.)  Such statements are
sufficient to satisfy the pleading requirement for a condition
precedent.  Myers v. Cent. Fla. Invs., Inc., 592 F.3d 1201, 1224
(11th Cir. 2010).  See Fed. R. Civ. P. 9(c)("In pleading conditions
precedent, it suffices to allege generally that all conditions
precedents have occurred or been performed.")  While Noshirvan
asserts that the Counterclaim failed to attach a document which
supports these allegations (Doc. #493, p. 15), the letter is
attached as an exhibit (Doc. #448-1).  Additionally, the Court
must accept the factual allegations in the Counterclaim as true at
this stage of the proceedings.  Therefore, the Counterclaims
sufficiently plead compliance with the notice requirement required
under Florida Statutes Section 770.01 (2025).

    **(3)  None of The Affirmative Defenses Warrant Dismissal**

Noshirvan next raises a series of arguments asserting various
affirmative defenses to the defamation claims.  Under Florida law,
"[a]n affirmative defense is a defense which admits the cause of
action, but avoids liability, in whole or in part, by alleging an
excuse, justification, or other matter negating or limiting
liability."  St. Paul Mercury Ins. Co. v. Coucher, 837 So. 2d 483,
487 (Fla. 5th DCA 2002).  Stated a little differently, an

affirmative defense is one that, "if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence." Grippa v. Rubin, 133 F.4th 1186, 1196 (11th Cir. 2025)(quoting Wright v. Southland Corp., 187 F.3d 1287, 1303 (11th Cir. 1999)).

A plaintiff, however, is not required to negate an affirmative defense in the complaint. Wainberg v. Mellichamp, 93 F.4th 1221, 1224 (11th Cir. 2024)(citing La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation and internal quotation marks omitted), *abrogated on other grounds by* Twombly, 550 U.S. 544)). Nonetheless, a complaint must be dismissed if its factual allegations, on their face, establish an affirmative defense that bars recovery. Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022); Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). Thus, the rule is that "[a] complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint." Isaiah v. JPMorgan Chase Bank, 960 F.3d 1296, 1304 (11th Cir. 2020).

The Court addresses Noshirvan's defenses in turn.

### (a)   Florida Statutes Section 770.06

Noshirvan argues that Florida Statutes Section 770.06 bars GPS and Couture from bringing an action for damages for any utterance previously disposed of in <u>Couture v. Noshirvan</u>, No. 2:23-cv-340-SPC-KCD.  Noshirvan asserts the utterance is deemed to have accrued at the time it was first published or uttered, and therefore is time-barred and barred by Florida Statutes Section 770.06.  (Doc. #493, p. 17.)

Florida Statute Section 770.06 states that a

> judgment in any jurisdiction for or against the plaintiff upon the substantive merits of any action for damages founded upon a single publication or exhibition or utterance as described in s. 770.05 shall bar any other action for damages by the same plaintiff against the same defendant founded upon the same publication or exhibition or utterance.

Fla. Stat. § 770.06 (2025).  The statute referred to provides:

> No person shall have more than one choice of venue for damages for libel or slander, invasion of privacy, or any other tort founded upon any single publication, exhibition, or utterance, such as any one edition of a newspaper, book, or magazine, any one presentation to an audience, any one broadcast over radio or television, or any one exhibition of a motion picture. Recovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions.

Fla. Stat. § 770.05 (2025).

But nothing on the face of the Counterclaim establishes such a defense.  Noshirvan points to <u>Couture v. Noshirvan</u>, No. 2:23-cv-340-SPC-KCD, to show that such claims are barred.  But even if

these court records can be considered with a motion to dismiss, they establish that orders from that case do not deal with any defamation claim or the current defamatory statements. See Couture v. Noshirvan, No. 2:23-cv-340-SPC-KCD, 2023 WL 8280955 (dismissing Couture's cyberstalking claim with prejudice and civil conspiracy claim without prejudice, as well as dismissing GPS's civil conspiracy claim without prejudice); Couture v. Noshirvan, No. 2:23-cv-340-SPC-KCD, 2024 WL 1530723 (dismissing Couture's civil conspiracy claim with prejudice and GPS's civil conspiracy claim). There is no underlying judgment to bar the current action under Florida Statutes Section 770.06, and the case is currently set for trial during the September 2026 trial term.

**(b)  Res Judicata Due to Prior Action**

Noshirvan also asserts that res judicata bars the Counterclaim based on orders in Couture v. Noshirvan, No. 2:23-cv-340-SPC-KCD.  (Doc. #493, p. 17.)

"Res judicata is an affirmative defense under Federal Rule of Civil Procedure 8[(c)(1)]." TVPX ARS, Inc. v. Genworth Life & Annuity Ins. Co., 959 F.3d 1318, 1328 n.6 (11th Cir. 2020). Res judicata requires a party to establish that a valid prior decision: (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action. Id. at 1325. Res judicata

will bar claims that "were or could have been litigated in a prior action between the same parties." Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 892 (11th Cir. 2013).

Nothing on the face of the Counterclaim establishes such a defense. Additionally, this argument fails because the prior case involved Noshirvan's actions from January 2022 through December 2024, and the conduct alleged in the Counterclaim occurred after those events. Further, the only relevant orders in the prior case do not relate to a defamation claim. See Couture v. Noshirvan, No. 2:23-cv-340-SPC-KCD, 2023 WL 8280955 (dismissing Couture's cyberstalking claim with prejudice and civil conspiracy claim without prejudice, as well as dismissing GPS's civil conspiracy claim without prejudice); Couture v. Noshirvan, No. 2:23-cv-340-SPC-KCD, 2024 WL 1530723 (dismissing Couture and GPS's civil conspiracy claims with prejudice). Accordingly, res judicata does not bar this action.

### (c)  Three Privileges Asserted

Noshirvan next argues that the allegedly defamatory statements set forth in the Counterclaim are protected by three privileges. (Doc. #493, pp. 17-19.) The Court addresses each in turn.

### (1)  Substantial Truth Doctrine

Noshirvan asserts that the substantial truth doctrine requires dismissal of the defamation counterclaims because the statements are substantially true, taken out of context, mere opinion, commentary, or rhetorical hyperbole which are not false or actionable.  (Doc. #493, p. 17.)

A statement cannot be defamatory "if the 'gist' or the 'sting' of the statement is true."  Smith v. Cuban Am Nat'l Found., 731 So. 2d 702, 706 (Fla. 3d DCA 1999)(collecting cases).  A communication may be "substantially true if its substance or gist conveys essentially the same meaning that the truth would have conveyed."  Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1107 (Fla. 2008)(quotation marks and emphasis omitted).

The truth of a statement is generally asserted as an affirmative defense and is not considered at the motion-to-dismiss stage.  Michel, 816 F.3d at 706-07; Scott v. Busch, 907 So. 2d 662, 666-67 (Fla. 5th DCA 2005).  Because falsity is an element of defamation, however, a plaintiff fails to state a claim if the allegedly defamatory statement, read against the allegations of the complaint, remains "substantially true." Marshall v. Amerisys, Inc., 943 So. 2d 276, 279-80 (Fla. 3d DCA 2006);  see also Veritas v. Cable News Network, 121 F.4th 1267, 1276 n.15 (11th Cir. 2024)(finding that a court may consider substantial truth as an

absolute defense at the motion-to-dismiss stage because state law (there New York) requires plaintiff to identify how defendant's statement was false to survive a motion to dismiss).

In this instant case, taking the allegations of the Counterclaims as true, the statements by Noshirvan are capable of defamatory meaning since they accuse the counterclaimants of committing various crimes, engaging in affairs, being Nazis and/or white supremacists, and engaging in a civil conspiracy. (Doc. #448, ¶¶ 41-45.) See Blake v. Giustibelli, 182 So. 3d 881, 884 (Fla. 4th DCA 2016)(explaining how statements may be defamation per se); Adams v. News-Journal Corp., 84 So. 2d 549, 551 (Fla. 1955)(same). The substantial truth doctrine does not warrant dismissal of the Counterclaim.

### (2) Litigation Privilege

Noshirvan asserts that all the statements he is alleged to have made are protected by both the absolute and qualified Florida litigation privileges because the statements were commentary on pending litigation. (Doc. #493, pp. 17-18.)

Florida law recognizes both a qualified and an absolute litigation privilege. "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement . . . so long as the act has some relation to the proceeding." Levin,

Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire
Ins. Co., 639 So. 2d 606, 608 (Fla. 1994).  This privilege provides
an immunity from suit, not just a defense to liability.  Levin,
639 So. 2d at 608.  The absolute litigation privilege applies only
when the statement was made during a judicial proceeding and only
if the statement was related to those proceedings, or in documents
filed with a court or quasi-judicial body.  Grippa, 133 F.4th at
1197.  Florida courts have only recognized the privilege in
settings that are closely related to courtroom proceedings,
including depositions, witness interviews, discovery, settlement
discussions, and the like.  Id. (collecting cases.)

     Florida law also recognizes a qualified litigation privilege
for "ex-parte, out-of-court statements" that are related to the
underlying lawsuit and were made without express malice.
DelMonico, 116 So. 3d at 1208, 1218-19; Grippa, 133 F.4th at 1198.

     Both litigation privileges are affirmative defenses.  Am.
Nat. Title & Escrow of Fla., Inc. v. Guarantee Title & Tr. Co.,
810 So. 2d 996, 998 (Fla. 4th DCA 2002); Glickman v. Potamkin, 454
So. 2d 612, 613 (Fla. 3d DCA 1984).  As stated earlier, an
affirmative defense may be considered in resolving a motion to
dismiss when "the complaint affirmatively and clearly shows the
conclusive applicability of the defense to bar the action." Reisman

v. Gen. Motors Corp., 845 F.2d 289, 291 (11th Cir. 1988)(citation omitted.)

Although the defamatory statements referenced Noshirvan's ongoing judicial proceedings, none were made within the scope of the litigation privilege. Because Noshirvan's allegedly defamatory statements were made outside the judicial setting, the absolute litigation privilege does not apply. There is no allegation that the statements were made in a judicial proceeding or setting, or as a step in the judicial process. Instead, the statements were all posted on social media. LatAm Invs., LLC v. Holland & Knight, LLP, 88 So. 3d 240, 242-43 (Fla. 3d DCA 2011); Arko Plumbing Corp v. Rudd, 230 So. 3d 520, 524-25 (Fla. 3d DCA 2017). As such, the absolute litigation privilege does not allow dismissal of the Counterclaim.

Additionally, the qualified litigation privilege protecting "ex-parte, out-of-court statements" related to the underlying lawsuit and made without express malice is not demonstrated by the allegations in the Counterclaim. Therefore, this privilege also does not justify dismissal at this stage of the proceedings.

### (3) Good Faith Privilege

Noshirvan also raises the privilege of good faith as a bar to the Counterclaims. Noshirvan argues that he had a legally recognized interest in publicly stating and reporting the

concerted efforts of the counterclaimants to stalk, harass, and harm his family.  (Doc. #493, pp. 18-19.)

Florida recognizes a qualified privilege of good faith for certain statements.

> A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation.

Nodar v. Galbreath, 462 So. 2d 803, 809 (Fla. 1984)(citations omitted). "Good faith is the bedrock of a claim of qualified privilege. Courts consider whether a defamatory statement was made in good faith under a totality of the circumstances test." Harris v. Plapp, 386 So. 3d 185, 189 (Fla. 1st DCA 2022).  As alleged in the Counterclaims, none of Noshirvan's statements fall within this principle.

The Counterclaims allege that all the statements were either made on Noshirvan's TikTok account, YouTube account, Instagram account, and Substack account.  Taking these allegations as true, no good-faith privilege applies as there is no corresponding interest or duty in the listener or reader of these statements. Therefore, the good-faith privilege cannot be considered under the instant motion to dismiss.

## (d)  Single Publication Rule

Noshirvan argues that some of the allegations "are republications of the same statements to various other platforms" and other statements "are variations of previously uttered statements."  As such, Noshirvan argues they are barred by Florida's single publication rule.  (Doc. #493, pp. 20-21.)

As a Florida appellate court has recently summarized:

> Under the "multiple publication rule," "each communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises." Musto v. Bell S. Telecomms. Corp., 748 So. 2d 296, 297 (Fla. 4th DCA 1999) (citation omitted). "An exception to this rule is the 'single publication rule,' which is applied where the same communication is heard at the same time by two or more persons. The 'single publication rule' treats the communication to the entire group as one publication giving rise to only one cause of action ...." Id. (citation omitted); see also § 770.07, Fla. Stat. (2022) (stating that a cause of action for damages founded upon a single publication accrues at the time of the first publication). "[T]he rationale underlying the single publication rule [is] avoiding a vast multiplicity of lawsuits that would result from defamatory statements contained in a mass publication such as a newspaper or magazine ...." Musto, 748 So. 2d at 298.
> "In Florida, a single publication gives rise to a single cause of action." Callaway Land & Cattle Co. v. Banyon Lakes C. Corp., 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (citation omitted). "The various injuries resulting from it are merely items of damage arising from the same wrong." Id. (citation omitted). Under the single publication rule, courts "treat[ ] a single edition of a newspaper or book as a single publication." Swedberg v. Goldfinger's S., Inc., 338 So. 3d 332, 335 (Fla. 3d DCA 2022). The single publication rule does not apply where the "second publication was not the

continued dissemination of a single edition of a book, newspaper, or online article." Id. at 336. "[T]he application of the single publication rule turns on the question of whether a separate and distinct decision was made to republish the material. Any modification of the material might shed light on whether a separate decision to republish was made, but the absence of modification does not mechanically place a publication within the single publication rule." Id. at 337.

Doe v. Finkelman, No. 4D2024-1978, 2025 WL 3466498, at *4-5 (Fla. 4th DCA Dec. 3, 2025). The allegations in the Counterclaim are governed by the multiple publication rule. On the face of the Counterclaim the single publication rule does not prevent the Counterclaimants from asserting the publications in January and February 2025 are defamatory.

Noshirvan next argues that some statements are simply variations of previously uttered statements back in 2022 and 2023. (Doc. #493, p. 21.) Such variations, Noshirvan believes, should be viewed as the continued dissemination of a single publication. The law summarized above says otherwise, and the cases Noshirvan cites do not support such a position. Instead, they support the position that a plaintiff cannot bring separate causes of actions— e.g., intentional infliction of emotional distress, interference with business, etc.—when such claim arises from the *same* publication as the defamation claim. Fridovich v. Fridovich, 598 So. 2d 65, 70 (Fla. 1992)(finding that the successful invocation of a defamation privilege will preclude a cause of action for

*intentional infliction of emotional distress* if the sole basis for such action was the defamatory publication); <u>Brown v. Suncoast Beverage Sales, LLP</u>, 2010 WL 555675, at *3 (denying a motion to dismiss after finding that the intentional infliction of emotional distress claim was not solely based on the underlying defamation claim).  The statements alleged by Counterclaimants are separate statements in different contexts than the prior statements in 2022 and 2023.  Therefore, the single publication rule does not bar the present action.

### (e)  Florida's Statute of Limitations

Florida provides a two-year statute of limitations for claims of libel and slander.  See Fla. Stat. § 95.11(5)(h)(2025).  The statute of limitations begins at the time of publication, not when the plaintiff discovers the alleged defamatory material.  <u>Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan</u>, 629 So. 2d 113, 114 (Fla. 1993).  An action for the new publications would not be barred by the Florida statute of limitations because such publications occurred in January and February 2025, (Doc. #448, ¶¶ 41-45), and the Counterclaim was filed on August 4, 2025, well within the statute of limitations.  Fla. Stat. § 95.11(5)(h)(2025).

**(4)   The Counterclaim Does State Defamation Claims**

The elements of defamation are: (1) publication; (2) falsity;
(3) the statement was made with knowledge or reckless disregard as
to the falsity on a matter concerning a public official, or at
least negligently on a matter concerning a private person; (4)
actual damages; and (5) the statement is defamatory.  Jews for
Jesus, Inc., 997 So. 2d at 1106.  Noshirvan argues that the
Counterclaims fail to plausibly state any cause of action because
the claims: (1) are not actionable as defamation because the
statements were true, opinion, and commentary; (2) fail to show
the statements were false and defamatory; (3) fail to plead special
damages; (4) fail to plead damages; and (5) fail to plead reckless
disregard for the truth.  (Doc. #493, p. 21-23.)

**(a)   Truth, Opinion, and Commentary**

Noshirvan correctly asserts that true statements are
protected by the First Amendment, as are pure opinion and
commentary.  Noshirvan argues that the quoted statements in the
Counterclaims are verifiably true through the record evidence in
the case or as set forth in the publication.  Noshirvan further
argues that the Counterclaim does not identify any "per se"
statements and the quoted statements are not actionable.  As a
result, Noshirvan argues, the claims are not plausible.  (Doc.
#493, pp. 22-23.)

In determining whether a defamatory statement constitutes
defamation per se, the courts look to "four corners" of the
publication and construe it as the "common mind would naturally
understand it." Barry Coll. v. Hull, 353 So. 2d 575, 578 (Fla. 3d
DCA 1997); McCormick v. Miami Herald Publ'g Co., 139 So. 2d 197,
200 (Fla. 2d DCA 1962). A statement is defamatory per se, if—when
considered without innuendo—it (1) charges that a person has
committed a crime; (2) charges a person with having an infectious
disease; (3) tends to subject one to hatred, distrust, ridicule,
contempt, or disgrace; or (4) tends to injure one in his trade or
profession. See Blake, 182 So. 3d at 884; Adams, 84 So. 2d at
551. Here, the allegedly defamatory statements accuse
Counterclaimants of engaging in criminal behavior, being child-
stalkers, engaging in sexually illicit acts, and being Nazis, white
supremacists and extremely violent people who are going to prison
for their conduct. (Doc. #448, ¶¶ 41-45.) All the statements
potentially qualify as defamation.

### (b)  Lack of Specificity or Verifiable Falsity

Noshirvan argues that the Counterclaim fails to plead with
specificity virtually all of the elements of defamation because,
he asserts, the statements are true. (Doc. #493, p. 23.) Looking
to the four corners of the Counterclaim—as this Court must do—the
statements pled are capable of being proven false. As noted, the

statements accuse Counterclaimants of engaging in criminal behavior, being child-stalkers, engaging in sexually illicit acts, and being Nazis, white supremacists and extremely violent people who are going to prison for their conduct. (Doc. #448, ¶¶ 41-45.) Such statements are clearly capable of being disproven and the Counterclaimants have explicitly plead that such statements were false and that Noshirvan knew of such falsity. (Id. ¶¶ 41-46, 60, 75, 89, 104, 118, 113.) As such, the Counterclaims have plausibly alleged falsity.

The Counterclaims also have pled sufficient facts to plausibly allege that such statements constitute defamation per quod. The Counterclaim contains alleged defamatory statements that assert: (1) the Counterclaimants associate with violent goons; (2) Couture is "raw dogging" a Sheriff to avoid punishment for violating her probation; (3) Counterclaimants engaged in nasty and illegal litigation tactics; and (4) Counterclaimants have close relationships with pedophiles, white supremacists, and terrorists. (Doc. #448, ¶¶ 41-46.) Statements like "raw dogging" utilize innuendo to accuse an individual of engaging in sexual impropriety. Further, alleging that the Counterclaimants associate with criminals, pedophiles, and terrorists can be understood as attaching such conduct to the Counterclaimants. As

-24-

such, they have plausibly plead that the alleged statements are defamation per quod.

### (c)   Special Damages For Per Quod Counts

Noshirvan argues that the three per quod defamation counts fail to plead special damages, i.e., liquidated or realized out-of-pocket losses. (Doc. #493, p. 24-25.) Counterclaimants have sufficiently plead actual and special damages and have incorporated the specific statements made for such damages. (Doc. #448, pp. 57, 59, 62, 64, 67, 70-71; id. ¶¶ 67-68, 81, 96-97, 110, 125-126, 139.) Therefore, this argument is rejected.

### (5)   This Pleading Is Not A Shotgun Pleading

Noshirvan argues that the Counterclaim is a shotgun pleading because: (1) it "is replete with conclusory, vague, and immaterial facts not obviously connect to any particular cause of action," and (2) it "fails [to] identify which allegedly false statements apply to which counter-plaintiff." (Doc. #493, pp. 23-24.) According to Noshirvan, "it is virtually impossible to know which allegations are intended to support which counterclaimants' claims for relief." (Id.) This Court does not agree.

The Eleventh Circuit has identified four rough categories of shotgun pleadings. Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015). Looking to the Counterclaim, it is clear that it is not a shotgun pleading. The Counterclaims

provide verbatim statements of Noshirvan under a heading titled "The Actionable Defamatory Statements." (Doc. #448, ¶¶ 41-45.) Such statements may contain plural pronouns, however, those were the words used by Noshirvan himself. (Id.) Even if the Court were to assume that such pronouns made it virtually impossible to identify which statement was being attached to each claim, the Counterclaims incorporate each statement into their various counts. (Doc. #448, ¶¶ 53,68, 82, 97, 111, and 126.) Thus, such pleading sufficiently puts Noshirvan on notice of his alleged misconduct to adequately respond.

Plaintiff/Counter Defendant, Danesh Noshirvan's Motion to Dismiss Jennifer Couture's, Ralph Garramone M.D. P.A. d/b/a Garramone Plastic Surgery's, and Ralph Garramone's Counterclaim (Doc. #448) is DENIED.

### III.

Trainor's Counterclaims against Noshirvan consist of two claims: (1) Defamation Per Se and (2) Civil Conspiracy to Defame. (Doc. #446, pp. 79-98.) Noshirvan seeks to dismiss both claims. (Doc. #461.)

### A.   Factual Allegations of Trainor's Counterclaim

Noshirvan manages numerous social media accounts with the username "@thatdaneshguy." (Doc. #446, p. 81.) Noshirvan utilizes these various accounts to "cyberstalk, harass, and dox

unsuspecting persons" and regularly enlists help from his social media followers for "a high-pressure campaign against the person's employer, professional association, family, and friends to cause that person's job loss, professional licensure sanctions, and social ostracization." (Id.)  In fact, Noshirvan has done this to hundreds of people, including Trainor.  (Id. at p. 81 n.5.)

On a variety of dates, Noshirvan published statements to his Instagram account accusing Trainor of committing crimes and acts of moral turpitude.  (Id.)  For example, on May 2, 2025, Noshirvan stated that Trainor was a "Nazi, Neo-Nazi, Nazi sympathizer, White supremacist, or pedophile."  (Id. at p.81-82.)

Noshirvan repeatedly made statements and enlisted his confederates' statements to attempt to have Trainor arrested. Noshirvan did this by filing "fictitious complaints" against Trainor with the Pennsylvania State Police and the Federal Bureau of Investigation ("FBI").  (Id. at p. 82.)  In these complaints, Noshirvan accused Trainor of paying a third party to harass and threaten Noshirvan.  (Id.)

Noshirvan's own statements show that he authorized his confederates to republish Noshirvan's statements.  (Id.)  One of Noshirvan's confederates—James McGibney—published various statements on February 8, 2024; February 18, 2024; June 28, 2024; June 29, 2024; July 1, 2024; July 6, 2024; August 12, 2024; August

27, 2024; August 31, 2024; September 2, 2024; September 7, 2024;
September 8, 2024; September 15, 2024; September 20, 2024; and
more.   (Id. at p. 83.)   Noshirvan's second confederate—an
unidentified individual who manages the X (formerly Twitter)
account "@credibleintel"—made posts on similar dates. (Id. at p.
84.)   The confederates and Noshirvan frequently tag or cross-
reference each other's statements and have utilized "Sock Puppet"
accounts like @joeyscramps2020 to republish their statements.
(Id.)

### B. Grounds for Motion to Dismiss

Noshirvan raises a number of arguments similar to those he
asserts in his other motion to dismiss.   Unlike that motion,
however, Noshirvan also (sometimes) asserts that Florida law does
not apply to the claims.   The Court discusses that issue first.

### (1) Florida's Borrowing Statute Applies to the Counterclaims

Noshirvan argues that Trainor's defamation claims arose in a
state other than Florida, and the defamation claims are barred by
the statute of limitations of those states.   Florida's borrowing
statute provides that "[w]hen the cause of action arose in another
state or territory of the United States, . . ., and its laws forbid
the maintenance of the action because of lapse of time, no action
shall be maintained in this state."   Fla. Stat. § 95.10 (2025).

The statute is designed "to discourage 'forum shopping' and the filing of lawsuits in Florida that have already been barred in the jurisdiction where the cause of action arose."[1] Celotex Corp. v. Meehan, 523 So. 2d 141, 143 (Fla. 1998).  The Court applies Section 95.10 in a federal case based on diversity jurisdiction.  Middleton v. The Hollywood Reporter LLC, 137 F.4th 1287, 1295 (11th Cir. 2025).

To determine where a cause of action arose and what statute of limitations applies, "Florida courts apply the 'most significant relationship' test set out in § 145 of the Restatement (Second) of Conflict of Laws.'" Middleton, 137 F.4th at 1295 (quoting Bates v. Cook, Inc., 509 So. 2d 1112, 1114 (Fla. 1987)). But before applying the most significant relationship test in a defamation case, certain specific presumptions must be considered.

> [T]he general presumption in a defamation case is that "the local law of the state where the publication occurs determines the rights and liabilities of the parties, except as stated in § 150, unless, with respect to the particular issue, some other state has a more significant relationship ... , in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws § 149 (Am. L. Inst. 1971). But in a multistate defamation action where the allegedly defamatory statements have been published in more than one state, the presumption is that "the state

---

[1] Florida also applies this test in resolving general conflict-of-laws questions.  See Michel, 816 F.3d at 694; Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007).

of most significant relationship will usually be the state where the person was domiciled at the time, if the matter complained of was published in that state." Id. at § 150. This presumption does not apply when "one of the other states has a more significant relationship to the occurrence and the parties." Id. at § 150 cmt. e.

Middleton, 137 F.4th at 1296.

The "contacts" to be considered in determining the most significant relationship include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered.  Id. 137 F.4th at 1295 (citations omitted.)  "These contacts are to be evaluated according to their relative importance with respect to the particular issue," which requires a court to "examine the facts and circumstances presented in each particular case." Id. 137 F.4th at 1295.

Applying these principles, the Court Concludes that Trainor's defamation actions arose in New Jersey.

### (a) Presumption of Choice of Law in Defamation Cases

In this case, the presumption is New Jersey law applies. While Noshirvan posted on social media while domiciled in Pennsylvania, the posts were available in New Jersey—the domicile of Trainor.  Further, Trainor is licensed and practices law

primarily in New Jersey—suggesting that his greatest injury would occur in New Jersey. Accordingly, the defamation actions arose in New Jersey unless another state has the most significant relationship. <u>See</u> Restatement (Second) Conflict of Laws § 150 cmt. e (1971). (Doc. #446, pp. 80-82.)

### (b) Where the Injury Occurred

Trainor was domiciled in New Jersey at all times mentioned in his Counterclaims. (Doc. #446, p. 80.) The defamatory statements at issue were published on social media sites and to "the Pennsylvania State Police, the FBI, and the New Jersey Office of Attorney Ethics." (Doc. #446, p. 82-83.) While Trainor does not specifically state where he has been damaged, any identifiable injury would have likely occurred in New Jersey—where Trainor resides and practices law—or Pennsylvania—where Noshirvan filed a police report. <u>See</u> <u>Nix v. ESPN, Inc.</u>, 772 Fed. Appx. 807, 810 (11th Cir. 2019)(when a party generally alleges injuries in two states and specific injuries in one state, the first factor would slightly favor the state where specific injuries were alleged). However, the greater weight of the injuries are likely felt in New Jersey since that is where Trainor primarily practices law and is more well known. As such, this factor weighs in favor of New Jersey as the location where the cause of action arose.

### (c)   Location of Conduct Causing Injury

While Noshirvan's various social media posts were potentially accessible and viewable in all states, the decision to publish the defamatory statements was made in Pennsylvania. As such, this factor somewhat favors Pennsylvania.  See <u>Nix</u>, 772 Fed. Appx. at 810-11 (holding that while an article is accessible anywhere, decision to publish the information first made in another state which weighs somewhat in favor of that state's law applying).

### (d)   Domicile, Residence, or Citizenship of the Parties

Trainor was domiciled in New Jersey at all relevant times. (Doc. #446, p. 80.)  Noshirvan, however, was a domicile of Pennsylvania. (Doc. #446, p.80.)  Thus, this factor is ultimately neutral.  See <u>Frey</u>, 829 Fed. Appx. at 436 (stating where each party was a resident of a different state, the third factor was "a tie at best"); <u>Nix</u>, 772 Fed. Appx. at 811 (stating where each party is a resident of different locations the third factor was neutral).

### (e)   Where the Relationship Between the Parties is Centered

The relationship of the parties neither weighs for or against any one state.  This is because neither party appears to allege any relationship outside of this current lawsuit and its underlying conduct.  See <u>Nix</u>, 772 Fed. Appx. at 811 (stating that where the

parties lack any relationship outside the pending lawsuit, it
weighs neutrally amongst the parties).

### (f)  Remaining Factors from Section 6

The Court may also consider the seven factors in Section 6 of
the Restatement (Second) of Conflict of Laws.  See Nix, 772 Fed.
Appx. at 811.  Here the factors are neutral between New Jersey and
Pennsylvania as both states interests would be served as it
pertains to their respective statute of limitations.  Further,
both New Jersey and Pennsylvania have an interest in the
application of their laws given their residents are involved in
the dispute, and the justified expectations of both parties would
likely apply the law of their own state as they both would model
their behavior pursuant to the laws of their home state.  As such,
these factors are neutral given the competing interests.  Id.

Considering the totality of the factors above, New Jersey has
the most significant relationship with the claim; thus, this Court
will apply New Jersey state law.

### (2)  New Jersey's Statute of Limitations Has Expired

Since the defamation claims arose in New Jersey, New Jersey
law applies.  New Jersey's statute of limitation for defamation is
one year.  See N.J. Stat. Ann. § 2A:14-3 (2025).  In both Florida
and New Jersey, the cause of action for defamation accrues on the
date of publication.  See Wagner, Nugent, Johnson, Roth, Romano

Erikson & Kupfer, P.A. v. Flanagan, 629 So. 2d 113, 115 (Fla. 1993); N.J. Stat. Ann. § 2A:14-3 (2025); Churchill v. New Jersey, 876 A.2d 311, 316 (N.J. Super. Ct. App. Div. 2005).

In this case, the earliest cause of action for defamation would have accrued on July 1, 2024, the date when the first post was made. (Doc. #446, p. 88.) Defendant, however, did not bring his counter claims until July 30, 2025 (Doc. #446). Under New Jersey's one year statute of limitations, Trainor's defamation claims are barred as to statements made prior to July 30, 2024. Florida's borrowing statute therefore bars this action as it relates to the alleged statements made prior to July 30, 2024. Accordingly, the only remaining allegations that remain in Trainor's Counterclaims are various postings on August 12, 2024; August 27, 2024; August 31, 2024; September 2, 2024; September 7, 2024; September 8, 2024; September 15, 2024; September 20, 2024; and May 2, 2025. (Doc. # 446, ¶35 e-h.)

### C. Noshirvan's Remaining Arguments Are Denied

Noshirvan's remaining arguments in his motion to dismiss are: (1) Trainor is a limited public figure and thereby required to plead actual malice; (2) Trainor failed to comply with Florida's condition precedent before bringing a defamation suit; (3) Noshirvan's statements are privileged; (4) Noshirvan only republished the statements of others and thereby cannot be liable

for defamation; (5) the prior action in New Jersy abates the current proceeding; (6) this Court is not the proper venue;  (7) the single publication rule prevents Trainor from bringing a defamation action; (8) Noshirvan's statements are truth, opinion, or commentary; (9) Trainor's allegations lack specificity and verifiably false statements; (10) Trainor's counterclaim is a shotgun pleading; and (11) civil conspiracy fails since there can be no underlying defamation suit.  (Doc. # 461.)  Given this Court's finding that New Jersey law applies, and that Noshirvan and Trainor only cite to cases interpreting Florida law, the remaining arguments presented by Noshirvan are not supported and are therefore denied.

For the reasons set forth in this order, the motion to dismiss Defendant Patrick Trainor's Counterclaims will be granted in part and denied in part.

Accordingly, it is now

**ORDERED:**

(1)  Plaintiff/Counter Defendant, Danesh Noshirvan's Motion to Dismiss (Doc. #493) Jennifer Couture's, Ralph Garramone M.D. P.A. d/b/a Garramone Plastic Surgery's, and Ralph Garramone's Counterclaim (Doc. #448) is **DENIED.**

(2)  Plaintiff's Motion to Dismiss (Doc. #461) is **GRANTED IN PART AND DENIED IN PART**. Defendant's counterclaims are dismissed without prejudice as outlined below:

(a)  Count I is dismissed without prejudice as it relates to the statements made prior to July 30, 2024.

(b)  Count II is dismissed without prejudice as it relates to the statements made prior to July 30, 2024.

**DONE AND ORDERED** at Fort Myers, Florida, this __24th__ day of February 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record