# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

DANESH NOSHIRVAN
an individual,

Plaintiff

vs.

JENNIFER COUTURE, et al,

Defendants.

_____/

RALPH GARRAMONE, M.D., P.A.
d/b/a GARRAMONE PLASTIC
SURGERY,JENNIFER COUTURE,
an individual, RALPH GARRAMONE,
M.D., an individual,

Counter-Plaintiffs,

v.

DANESH NOSHIRVAN,

Counter-Defendant.

_____/

CASE NO:   2:23-cv-01218-JES-DNF
District Judge: Hon. John E. Steele
Magistrate Judge Douglas N. Frazier

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## NON-PARTY RICHARD A. LUTHMANN, JR.'S
## MOTION TO INTERVENE AND FOR PROTECTIVE RELIEF

Plaintiff opposes Non-Party Richard A. Luthmann, Jr.'s Motion to Intervene

and for Protective Relief ("**Motion**"). The Motion should be denied because it

seeks extraordinary pretrial relief unsupported by the Federal Rules, overstates

Page **1** of **17**

the scope of any reporter's privilege, and asks the Court to prejudge evidentiary and witness-management issues that can be addressed in the ordinary course at trial.

## I.     INTRODUCTION

Movant asks this Court to do far more than protect a non-party from undue burden. He asks the Court to strike him from the witness list altogether, or alternatively reorder Plaintiff's proof, require a pretrial deposition in lieu of live testimony, broadly restrict the subject matter of examination, foreclose inquiry into matters he unilaterally labels privileged or private, and issue an advance ruling neutralizing his prior invocation of the Fifth Amendment.

That relief is unwarranted. The Motion rests on the premise that Movant has no relevant testimony beyond ministerial authentication, but Movant's own filings show otherwise. In his declaration, Movant details his reporting on Plaintiff, his contacts with persons connected to the case, his prior assertion and later rescission of Fifth Amendment protection, his claimed reasons for doing so, and his stated willingness to testify subject to limits he proposes. These are not abstract press-access concerns; they are case-specific factual assertions that Plaintiff is entitled to test through ordinary examination at trial.

## II.   THE MOTION TO INTERVENE SHOULD BE DENIED

A non-party seeking to intervene under Rule 24 must demonstrate that the disposition of the action may, as a practical matter, impair or impede its ability to protect a legally protectable interest, and that existing parties do not adequately represent that interest. *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). The rule does not permit a non-party to intervene merely to seek advisory rulings on hypothetical lines of inquiry or to control the course of another party's trial presentation.

Intervention is not needed to protect Movant's interests here. Any legitimate objection based on privilege, relevance, scope, or privacy can be raised in response to specific questions if and when they arise at trial. The Motion instead seeks advisory rulings on hypothetical lines of inquiry and trial administration before any concrete dispute has crystallized—which is precisely the type of relief Rule 24 does not contemplate. *See also Owners Ins. Co. v. Parsons*, 610 F. App'x 895, 898 (11th Cir. 2015) (affirming dismissal where plaintiff sought "a hypothetical advisory opinion").

Movant's requested relief confirms that point. He does not merely seek protection from an identified subpoena burden. He asks the Court to dictate the order of proof, preclude live testimony unless he is called first, and constrain examination in advance based on his own unilateral description of what is and is

not relevant. That is not the limited function of intervention by a non-party witness. Courts have consistently held that permissive intervention under Rule 24(b) requires more than a desire to obtain favorable pretrial rulings. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (intervention appropriate only where proposed intervenor has legally protectable interest in the subject of the pending action); *see Howard v. McLucas*, 782 F.2d 956, 959 (11th Cir. 1986) (using standing cases to determine that intervenors with only generalized grievance could not intervene).

Moreover, Movant's assertion that he is being listed solely to exclude him from the courtroom is speculative. His motion offers argument, not proof, that Plaintiff's purpose is tactical suppression of press coverage. Where a listed witness has publicly inserted himself into the controversy, claims personal knowledge about relevant events, and previously asserted constitutional privilege in connection with the matter, the decision to call that witness is not facially improper.

### III.    MOVANT HAS NOT SHOWN HE LACKS RELEVANT, NON-CUMULATIVE TESTIMONY

A central premise of the Motion is that Movant can only authenticate publications and that everything else is public-record material obtainable elsewhere. But his own declaration undermines that claim.

Movant states that he closely followed and reported on Plaintiff and related events for more than two years, attended hearings, spoke with sources close to the litigation, was personally served with process after a hearing, invoked the Fifth Amendment because of what he says were safety and prosecution concerns, later rescinded that invocation after consulting with others, and communicated directly with counsel about the conditions under which he would testify. Those assertions place at issue his personal perceptions, prior positions, and credibility. They also show that his testimony is not limited to bare authentication. Beyond Movant's own testimony, it is no secret that Movant is actively in communications with several Defendants, as well as with Courtney Kotzian, Frank Parlato, and Joseph A. Camp—individuals whose coordination with Defendants is directly at issue in this case.

It is well established that a party may call a witness who has personal knowledge of facts relevant to the claims or defenses in the case, and that relevance is broadly construed. *Fed. R. Evid.* 401, 402. A witness's personal involvement in events surrounding the litigation—including his communications with parties, attendance at proceedings, and prior constitutional assertions—goes directly to his firsthand knowledge and credibility, both of which are appropriate subjects of examination. Indeed, Movant's voluntary, ongoing coordination with named

Defendants and their associates independently establishes that he possesses facts

not obtainable elsewhere and not subject to categorical privilege protection.

Movant likewise states that if asked certain categories of questions, he

would invoke reporter's privilege, object on relevance grounds, or decline to

identify sources absent compulsion. That admission alone demonstrates why

preemptively striking him is improper: it is impossible to conclude on this record

that all relevant testimony is unavailable from him or that all anticipated questions

fall within protected categories.

At minimum, Plaintiff is entitled to examine Movant regarding:

(1) authorship, publication, and dissemination of writings and media he

identifies;

(2) his communications with parties or persons connected to the

controversy, to the extent not privileged, including Defendants, Kotzian,

Parlato, and Camp;

(3) the basis for factual assertions he has voluntarily put into the record,

including his admission of private-party retainer;

(4) the timing, scope, and reasons for his prior Fifth Amendment invocation

and later withdrawal; and

(5) any facts bearing on bias, motive, credibility, or coordination relevant to

the issues for which he is called.

None of that requires the Court to compel disclosure of protected source material. It only requires denial of Movant's request to avoid live examination altogether.

## IV.   REPORTER'S PRIVILEGE DOES NOT JUSTIFY THE RELIEF REQUESTED

### A.   Federal Standard: Qualified Privilege Only

Movant overreads reporter's privilege. The Eleventh Circuit has recognized only a *qualified* First Amendment privilege for journalists, not an absolute one. *Price v. Time, Inc.*, 416 F.3d 1327, 1336, 1339 (11th Cir. 2005); *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725 (5th Cir. 1980), *modified on reh'g*, 628 F.2d 932 (5th Cir. 1980) (binding Eleventh Circuit precedent). Even accepting that qualified protections may apply to confidential source information or unpublished newsgathering material, the privilege is not a blanket exemption from testifying.

To overcome the qualified privilege in a civil case, a party must establish that the information is (1) highly relevant, (2) necessary to the proper presentation of the case, and (3) unavailable from other sources. *United States v. Caporale*, 806 F.2d 1487 (11th Cir. 1986). Critically, this standard governs only whether *specific questions* seeking privileged material can be compelled—it is not the standard for determining whether a witness may be called to testify at all. Movant conflates these two distinct questions. Courts assess reporter's privilege question by question, in context, not through categorical pretrial orders foreclosing entire

Page **7** of **17**

subject areas. *Gonzales v. NBC*, 194 F.3d 29, 33 (2d Cir. 1999) (privilege analysis applies to specific questions; non-confidential materials may be compelled upon showing of likely relevance and non-availability from alternate sources).

### B.      Florida Statutory Privilege: Movant Does Not Qualify

Florida's journalist privilege, codified at Fla. Stat. § 90.5015, is available only to a "*professional journalist*" — defined as "a person regularly engaged in collecting, photographing, recording, writing, editing, reporting, or publishing news, *for gain or livelihood, who obtained the information sought while working as a salaried employee of, or independent contractor for, a newspaper, news journal, news agency, press association, wire service, radio or television station, network, or news magazine.*" § 90.5015(1)(b), Fla. Stat. (emphasis added). The statute expressly provides: "Book authors and others who are not professional journalists, as defined in this paragraph, are not included in the provisions of this section." *Id.*

Movant fails to meet this definition on multiple independent grounds.

First, Movant is not a salaried employee or independent contractor of a qualifying media outlet. Florida courts have consistently held that the statutory privilege applies to journalists employed or contracted by traditional media organizations. *Techtronic Indus. Co. v. Bonilla*, No. 8:23-cv-01734, 2024 WL 361247, at *1 (M.D. Fla. Jan. 31, 2024) ("Florida Courts have historically held that the journalist privilege applies to journalists employed or hired by traditional media

outlets"); *Cable News Network Inc. v. Black*, 308 So. 3d 997, 999 (Fla. Dist. Ct. App. 2020) (CNN held journalist privilege where it was actual media outlet); *TheStreet.com, Inc. v. Carroll*, 20 So. 3d 947, 949 (Fla. Dist. Ct. App. 2009) (privilege granted to financial news organization TheStreet). Movant is not affiliated with any such organization. He has failed in his filings to identify a traditional media outlet as his employer. *See* Dkt. 220, p. 1-40. Self-employment and personal social media accounts are not contemplated by the statute. *See* Digital Media Law Project, *Florida Protections for Sources and Source Material* (noting the statutory language makes coverage of online-only, non-traditional journalists "doubtful").

Second, and independently fatal, even if Movant were a qualifying journalist, the privilege would not cover information gathered on behalf of a private party retainer. The statute expressly limits the privilege to information obtained "within the normal scope of employment." § 90.5015(2), Fla. Stat. (emphasis added). As set forth below, Movant has publicly admitted he was retained by a private party specifically to "investigate, newsgather, and publish" about this litigation. Activity conducted pursuant to a private litigation retainer is not news-gathering within the normal scope of employment at a media organization—it is advocacy work on behalf of a paying client. The privilege does not extend to it.

### C.   The Private-Party Retainer Admission Is Independently Disqualifying

Movant has affirmatively confirmed that he was retained by a private party to investigate and publish false information about Plaintiff. This public admission, reproduced below, is directly relevant to the scope of any claimed privilege and to Movant's credibility, motive, and bias:



This admission is significant for three reasons. First, work performed pursuant to a private litigation retainer is categorically outside the "normal scope of employment" at a press organization required by § 90.5015(2). Second, it demonstrates that Movant's activities were not independent journalistic inquiry but rather coordinated advocacy on behalf of parties who are adverse to Plaintiff — directly bearing on bias, motive, and the reliability of any claimed "privileged" purpose. Third, it confirms that the information Movant possesses about his

retainer arrangement, his principal's identity, and the scope of that engagement is squarely within the category of testimony Plaintiff is entitled to explore at trial.

Because Movant seeks a categorical protective order before any actual disputed question has been asked, the Motion is premature and overbroad. *See Fed. R. Civ. P.* 26(c) (protective order requires showing of "good cause" based on "particular" identified need, not hypothetical harm). A facially overbroad protective order covering entire subject-matter categories fails the good cause standard. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001).

## V.      RULE 615 DOES NOT SUPPORT STRIKING A PROPERLY LISTED WITNESS

Movant's Rule 615 argument is insufficient. Rule 615 exists to prevent witnesses from tailoring their testimony by hearing the testimony of other witnesses—its purpose is to protect the *integrity of testimony*, not to immunize a witness from being listed. *See Holder v. United States*, 150 U.S. 91, 92 (1893) (sequestration protects testimonial integrity and aids detection of "testimony that is less than candid"); *Fed. R. Evid.* 615 Advisory Committee Note (rule's "efficacy" lies in "discouraging and exposing fabrication, inaccuracy, and collusion").

Movant contends Plaintiff listed him only to exclude him from the courtroom and impair his ability to report on trial. But Rule 615's ordinary operation does not become improper merely because a witness also claims to be a

journalist. The fact that Movant may have reporting interests does not exempt him from the ordinary operation of sequestration when he is also a properly listed trial witness. *Fed. R. Evid.* 615(a) (at request of a party, the court **must** order witnesses excluded). Notably, the only recognized exceptions to mandatory sequestration are (1) a party who is a natural person, (2) a designated entity representative, (3) a person essential to presentation of a party's case, and (4) a person authorized by statute to be present. Movant falls into none of these categories. *Fed. R. Evid.* 615(a)(1)–(4).

If Plaintiff has a good-faith basis to call Movant as a witness—and the record supports one—then the incidental consequence that he may be subject to sequestration is not grounds to strike him. If discrete sequencing issues arise, the Court can address them through ordinary witness management without granting intervention or the sweeping prophylactic relief Movant demands.

Movant's requested alternatives—forcing Plaintiff to call him first or to proceed by pretrial video deposition—would improperly shift control of Plaintiff's presentation of evidence to a non-party witness. The Federal Rules do not entitle a witness to dictate the order or mode of proof. Plaintiff has the right to present its case in the order it chooses, and a non-party witness may not override that right by invoking Rule 615 as a sword rather than a shield.

## VI.   MOVANT'S PRIOR FIFTH AMENDMENT INVOCATION REMAINS FAIR GROUND FOR EXAMINATION AND DOES NOT WARRANT AN ADVISORY RULING

Movant asks the Court to "acknowledge" that he will not invoke the Fifth Amendment and that any prior invocation has been withdrawn. But his own declaration confirms that he previously invoked the privilege in this matter and only later rescinded it after developments he says changed his assessment.

The circumstances of Movant's prior invocation and later withdrawal are directly relevant to his credibility and the scope of his present testimony. Courts have long recognized that a witness's prior invocation of the Fifth Amendment, and the reasons for its subsequent withdrawal, bear on credibility and the voluntariness of testimony. *See Brown v. United States*, 356 U.S. 148, 154–55 (1958) (prior positions on self-incrimination bear on credibility and are subject to cross-examination where witness has since chosen to testify); *Klein v. Harris*, 667 F.2d 274, 287 (2d Cir. 1981) (waiver of Fifth Amendment privilege may be inferred from prior statements on the subject matter of the case). A witness who previously invoked the privilege and later withdrew that invocation cannot prospectively insulate the history of that invocation from cross-examination simply by representing that he now intends to testify.

The Court need not and should not enter an advisory ruling sanitizing that history before examination occurs. Advisory opinions are not a proper function of

the federal courts, and Movant's request is the functional equivalent of asking the Court to declare that a particular line of cross-examination is impermissible before any question has been asked. If Movant testifies, the Court can address specific privilege issues as they arise. If he does not intend to invoke the privilege, then no prospective relief is needed.

To the extent Movant now represents that he will not invoke the Fifth Amendment, Plaintiff is entitled to test that representation at trial through examination of the circumstances surrounding his prior invocation and withdrawal. A blanket advance ruling foreclosing that examination would deprive Plaintiff of a legitimate basis for impeachment.

## VII.   THE REQUESTED MEDICAL/PRIVACY PROTECTIVE ORDER IS PREMATURE AND OVERBROAD

Movant also asks for a protective order barring inquiry into medical information. But he identifies no concrete discovery request, no specific examination question, and no developed record showing that Plaintiff intends to pursue private medical material. A party seeking a protective order under Rule 26(c) must show "good cause"—and good cause must be established with specificity, not mere speculation about what might be asked. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304,

1313 (11th Cir. 2001) (good cause requires specific factual showing, not conclusory assertions).

Courts do not issue broad protective orders against hypothetical questioning where ordinary relevance objections and targeted rulings are available. *See Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996) (categorical confidentiality designations without case-specific justification are facially overbroad). To the extent any genuinely private matter arises at trial, the Court can address it in context. That possibility does not justify the sweeping preclusion order Movant seeks now.

## VIII.  CONCLUSION

Movant has not shown entitlement to intervention or to any of the extraordinary remedies requested. His filings show potential relevance, not irrelevance; potential factual disputes, not categorical privilege; and ordinary evidentiary issues, not the need for advisory pretrial rulings.

The Eleventh Circuit's qualified reporter's privilege—as articulated in *Price* and *Miller*—addresses specific questions about confidential sources, not a witness's blanket immunity from trial testimony. Under Florida's statutory scheme, Movant is not a "professional journalist" as defined by Fla. Stat. § 90.5015(1)(b), and his admitted private-party retainer places his news-gathering activities outside the "normal scope of employment" protected by § 90.5015(2)—

on two independent grounds, the Florida privilege does not apply. Movant's prior

Fifth Amendment invocation and withdrawal remain fair grounds for credibility

examination under *Brown.* His Rule 615 argument fails because sequestration is

the mandatory consequence of being listed as a witness, and Movant qualifies for

none of the rule's four exceptions. His medical privacy order request fails for want

of the specific good cause showing required by Rule 26(c). The Court should deny

the Motion in full.

Therefore, Plaintiff respectfully requests that the Court deny Non-Party

Richard A. Luthmann, Jr.'s Motion to Intervene and for Protective Relief in its

entirety.

DATED: March 16, 2026.

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
Florida Bar No: 1006407
**Chiappetta Trial Lawyers**
*Attorneys for Noshirvan*
2101 Vista Parkway, Suite 258
West Palm Beach, FL 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
Service@chiappettalegal.com
nick@chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following:  all counsel of record.


*/s/Nicholas A. Chiappetta*
Nicholas A. Chiappetta