UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANESH    NOSHIRVAN,    an
individual,

      Plaintiff,

v.                                        Case No:  2:23-cv-01218-JES-DNF

JENNIFER    COUTURE,    an
individual; RALPH GARRAMONE
M.D., an individual; RALPH
GARRAMONE  M.D.  P.A.  d/b/a
GARRAMONE  PLASTIC  SURGERY;
CENTRAL  PARK  OF  SOUTHWEST
FLORIDA,  LLC;  OMG  REALTY,
LLC;  THE  LAW  OFFICE  OF
PATRICK  TRAINOR  ESQ,  LLC
d/b/a  THE  LAW  OFFICE  OF
PATRICK   TRAINOR;   PATRICK
TRAINOR, an individual; and
ANTI-DOXING LEAGUE INC.,

      Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on four motions in limine relating to the testimony of Chris "Silver" Smith:

- Garramone Plastic Surgery's ("GPS") Motion to Exclude Testimony of Chris "Silver" Smith (Doc. #510) was filed on September 30, 2025.[1]  Danesh Noshirvan ("Noshirvan")

---

[1] This motion was redacted.  After the Court granted GPS permission to file under seal, the party refiled the motion unredacted. (Doc. #553.)  Accordingly, the Court will deny this motion as moot.

filed his Response in Opposition (Doc. #535) on October 13, 2025.

- Jennifer Couture, Ralph Garramone, and OMG Realty, LLC's Motion to Exclude Testimony of Chris "Silver" Smith (Doc. #521) was filed on September 30, 2025.[2]  Noshirvan filed his Response in Opposition (Doc. #535) on October 13, 2025.

- GPS's Motion to Exclude Testimony of Chris "Silver" Smith (Doc. #553) was filed on October 27, 2025. Noshirvan filed no substantive response to this filing; however, the Court reads Noshirvan's previous response (Doc. #535) alongside this motion since it is the unredacted version of GPS's motion.

- The Law Office of Patrick Trainor, Esq., LLC, Patrick Trainor, Central Park of Southwest Florida, LLC, and Anti-Doxing League, Inc.'s Motion to Exclude Testimony of Chris "Silver" Smith (Doc. #555) was filed on October 27, 2025.  Noshirvan filed no substantive response to this filing.

The motions are resolved as set forth below.

---

[2] The unredacted version of the motion was filed as Document Number 528-1.

**I.**

Noshirvan retained Chris "Silver" Smith ("Smith") to review the report created by Jason McDonald ("McDonald") and create his own report. In creating his report, dated June 4, 2025, Smith reviewed the following materials:[3]

- Second Amended Complaint (Doc. #139);

- Report of Jason McDonald with Exhibits;

- Joseph Camp's ("Camp") Gab Profile;

- Various Dictionaries;

- Various Online Articles;

- "The evidentiary hearing that occurred on May 19 [and May] 20, 2025" in this case;

- Camp's Facebook Profile;

- Various TikTok Accounts;

- An Instagram Account: "@victimsofdanesh";

- An X (formerly "Twitter") Account: "@DaneshVictims."

(Doc. #508-8, pp. 63-65.)

Smith completed an "Online Reputation Audit" utilizing the above materials. This audit isolates negative statements to assess their reach. For example, Smith highlights a single post from

---

[3] The full list can be found in Smith's report, however, for brevity the Court listed the relevant materials and made categories for other materials. (Doc. #508-8, pp. 63-65.)

-3-

Camp's Gab account.  (Id. at pp. 31-32.)  Smith found Camp's post reached approximately 294,825 (or more) people by reviewing the cumulative following of all accounts that reposted it.  (Id. at p. 32.)  Next, Smith utilized "the industry competitive research tool, SEMRush," to conclude that Camp's Gab post—as well as other posts Camp made—appeared in users' Google search results concerning Noshirvan.  (Id. at pp. 34-36.)  Smith repeated this approach in reviewing other social media accounts listed above.  (Id. at pp. 43-47.)  After reviewing all the accounts, Smith found that rather than the 48,900 views attributed by McDonald, the posts received 403,384 impressions/views/exposures.  (Id. at pp. 47-48.)

Ultimately, Smith reached a variety of conclusions.  First, Smith found McDonald's methodology was "nonsensical and [] intentionally seeks to mislead the court by downplaying reputational harm," because "it equates the principal party posting about the matter as being the same as the cited parties posting about the matter."  (Id. at p. 8.)  Second, Smith concluded that the evidence "strongly shows that the Defendants are responsible for the negative and damaging campaign" against Noshirvan and that the statements "could very readily be assumed to be libelous per se."[4]  (Id. at p. 9.)  Finally, Smith concluded

---

[4] Smith also concluded that punitive damages are recommended "because of the intentional[ity] and severity of the damaging reputation attack [] against Noshirvan."  (Doc. #508-8, p. 10.)

that when reviewing all the negative posts "attributable to the Defendants" there was "403,384 impressions."  (Id. at p. 10.) Smith, however, notes there was likely more exposure than just those impressions given some negative content was distributed via a billboard, flyers, and Pennysaver printed ads.  (Id.)

To remove the damage done, Smith recommended a corrective advertising campaign to generate "403,384 impressions monthly for three years."  (Id.)  However, since it takes more positive posts to counteract a negative post, the number of impressions would need to be multiplied by eleven, thereby requiring a total of 159,740,064 impressions.  (Id.)  Using the average "cost per thousand" or "CPM" for social media of $5.40, this campaign would cost $862,596.  (Id.)

## II.

Defendants seek to exclude the opinions of Plaintiff's expert, Chris "Silver" Smith, arguing that he is unreliable and will not assist the trier of fact.  The Court incorporates the standard set out in its recent Opinion and Order (Doc. #633, pp. 4-7).

The first requirement is that the expert is qualified to testify on the subject matter.  After reviewing Defendants' motions, none present argument challenging Smith's qualifications. (Doc. #528-1, p. 7; Doc. #553, p. 6; Doc. #555, p. 6.)  The Court

will therefore proceed to the other requirements and deem the first element met for the purposes of the instant motion.

## A.    Reliability of Methodology

Defendants argue that Smith's methodology is unreliable because he failed to rely on sufficient facts to support his conclusion.  (Doc. #528-1, p. 7; Doc. #553, p. 6; Doc. #555, p. 6.)  Specifically, Defendants argue Smith relies "entirely on allegations from the Second Amended Complaint, which . . . is not competent evidence. . .."  (Doc. #528-1, p. 7; Doc. #553, pp. 6-7; Doc. #555, p. 7.)  By relying entirely on the Second Amended Complaint, any testimony will only "convey[] information provided to the expert by an interested party without independent verification," rendering it unreliable.  (Doc. #528-1, p. 9; Doc. #553, p. 8; Doc. #555, p. 8.)

Noshirvan responds that Smith collected his own data and utilized a standard methodology, and argues that the root of Defendants' challenges concern interpretation of data.  (Doc. #535, pp. 6-11.)  This argument concerns weight rather than admissibility.

While Defendants are correct that Smith does rely on the Second Amended Complaint in his report, Defendants are incorrect that he relies solely on the allegations from the Second Amended Complaint in reaching his conclusion.  Simply reviewing the report, it is clear that Smith obtained analytics—even if as simple as the

number of views associated with posts—from various social media platforms (e.g., Gab, Instagram, and TikTok).  (Doc. #508-8, pp. 30-48, 63-65.)  Further, Smith reviewed SEMRush analytics to determine search results associated with Google's search engine. (Id. at pp. 34-42.)  The analytics obtained by reviewing the posts provided Smith with his conclusion that the alleged defamatory statements had a total of 403,384 impressions.[5]  (Id. at p. 48.) As such, the Court cannot say Smith relied upon insufficient data where he relies on more than the Second Amended Complaint and conducted his own "Online Reputation Audit."

Additionally, although Smith admits there is no clear research regarding the multiplication number he asserts is likely needed to counteract the allegedly defamatory statements, this line of inquiry goes to the weight to be given, not admissibility. (Id. at pp. 49-50.)  Such quarrels about Smith's conclusions are not reasons for excluding his testimony, but are properly resolved by the jury.

### B.    Helpfulness

The third prong of the Daubert inquiry asks, "whether that reasoning or methodology properly can be applied to the facts in issue."  Daubert, 509 U.S. at 593.  Commonly referred to as the

---

[5] Smith reached this conclusion by conducting an "Online Reputation Audit" that examines how negative content ranks in search results, how social media algorithms amplify posts, and how posts are shared or perceived by the audience.

"helpfulness" inquiry, expert testimony can properly be applied and is helpful if it relates to any issue in the case and if it concerns matters that are beyond the understanding of an average lay person.  See Prosper v. Martin, 989 F.3d 1242. 1249 (11th Cir. 2021).

In this case, Smith's testimony can be applied to the facts in issue.  While it is disputed whether the publications are defamatory, if a jury were to find such publications defamatory Smith's testimony assists the jury to understand the reach of those statements—a key issue relating to damages.  Further, how search engines rank results, how algorithms of social media websites amplify certain posts over others, and how Search Engine Optimization can be utilized to prioritize negative posting are beyond the common knowledge of an average lay person.

**C.    Some of Smith's Opinions Are Not Admissible**

The Court, however, notes that there are various aspects of Smith's report that deserve particular attention.  This is because some "conclusions" reached by Smith are either legal conclusions or invade the province of the jury.  For example, "all of these statements could very readily be assumed to be libelous per se," "[t]he evidence strongly shows that the Defendants are responsible for the negative and damaging campaign brought against Noshirvan," "it is incontrovertible that the Defendants are responsible for creating the content and that it was indeed negative as well as

-8-

damaging," and "[p]unitive damages are also recommended because of the intentional and severity of the damaging reputation attack campaign conducted against Noshirvan." (Doc. #508-8, ¶¶ 16-18, 23.) The Court will not permit Smith to testify to any of these conclusions. Commodores Ent. Corp. v. McClary, 879 F.3d 1114, 1128-29 (11th Cir. 2018). An expert is only permitted to testify as to their expertise—in this case the reach of various posts on social media and the needed social media campaign to remedy the negative posts. See Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir. 1990)(prohibiting witnesses from offering legal conclusions or to testify about the legal implications of conduct). The Court will of course entertain objections to specific questions during trial.

With this exception, the Court finds that Smith satisfied all three prongs of Daubert, and the Court finds no undue prejudice from the anticipated testimony. The weight given the testimony is a matter for the jury.

Accordingly, it is now

**ORDERED:**

(1) GPS's Motion to Exclude Testimony of Chris "Silver" Smith (Doc. #510) is **DENIED as moot.**

(2) Jennifer Couture, Ralph Garramone, and OMG Realty, LLC's Motion to Exclude Testimony of Chris "Silver" Smith (Doc. #521) is **GRANTED IN PART AND DENIED IN PART.**

-9-

(3)  GPS's Motion to Exclude Testimony of Chris "Silver" Smith (Doc. #553) is **GRANTED IN PART AND DENIED IN PART.**

(4)  The Law Office of Patrick Trainor, Esq., Patrick Trainor, Central Park of Southwest Florida, LLC, and Anti-Doxing League, Inc.'s Motion to Exclude Testimony of Chris "Silver" Smith (Doc. #555) is **GRANTED IN PART AND DENIED IN PART.**

(5)  Smith is not allowed to testify whether:

a. The statements are libelous per se;

b. The evidence strongly shows that the Defendants are responsible for the alleged campaign;

c. The evidence is incontrovertible that the Defendants are responsible for the alleged defamatory content;

d. Punitive damages are appropriate;

e. Noshirvan was deplatformed due to the alleged defamatory campaign by Defendants; or

f. The alleged campaign was intentional or with willful malice.

**DONE AND ORDERED** at Fort Myers, Florida, this ___18th___ day of March 2026.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record