**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

DANESH NOSHIRVAN
an individual,

Plaintiff

vs.

JENNIFER COUTURE, et al,

Defendants.

_____/

RALPH GARRAMONE, M.D., P.A.
d/b/a GARRAMONE PLASTIC
SURGERY,JENNIFER COUTURE,
an individual, RALPH GARRAMONE,
M.D., an individual,

Counter-Plaintiffs,

v.

DANESH NOSHIRVAN,

Counter-Defendant.

_____/

CASE NO:   2:23-cv-01218-JES-DNF
District Judge: Hon. John E. Steele
Magistrate Judge Kevin R. Huguelet

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF/COUNTERCLAIM-**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON TRAINOR'S[1]**
**REMAINING COUNTERCLAIMS**

---

[1] Patrick Trainor is the only counter-plaintiff identified on Docket 446, p. 80, ¶1.

## I.    Preliminary Statement

Plaintiff/Counterclaim-Defendant Danesh Noshirvan ("*Noshirvan*") moves for summary judgment under Fed. R. Civ. P. 56 on Defendant/Counterclaim-Plaintiff Patrick Trainor's ("**Trainor**") remaining speech-based counterclaims. Those claims fail for six independent reasons: (1) statements published before July 30, 2024 are time-barred; (2) statements attributed to James McGibney ("**McGibney**") are not actionable against Noshirvan; (3) Trainor produced no admissible evidence of any element of his claims; (4) Trainor refused to produce the agency complaints central to his theory and those documents are excluded under Rule 37(c)(1); (5) communications to law-enforcement and disciplinary authorities are qualifiedly privileged; and (6) Trainor, a limited-purpose public figure as to this controversy, cannot prove actual malice by clear and convincing evidence.

The evidentiary failure is not a gap that argument can bridge. Trainor's own discovery responses, deposition testimony, and the sworn Declaration of James McGibney—filed as D.E. 390-1—collectively establish that McGibney acted independently of Noshirvan when he contacted Trainor on January 15, 2024; that Trainor's defamation suit against McGibney's very same theory was once dismissed for failure to state a claim (and currently pending on jurisdictional issues); that Joseph A. Camp ("**Camp**")—ran the campaign of harassment against WeServeNJ's process server; and that a California court issued a permanent restraining order

against Camp protecting McGibney and his family from precisely the same conduct Trainor now attempts to attribute to Noshirvan. Meanwhile, Trainor's RFP Responses produced no authenticated publications, no conspiracy evidence, no McGibney communications, no agency complaints, and no damages evidence. Trainor's own deposition shows he coordinated with the very @joeyscramps2020 account he claims conspired against him. Discovery is closed. Judgment is required.

## II.    Statement Of Undisputed Material Facts ("SUMF")

1.    Trainor filed his Amended Answer and Counterclaim on July 30, 2025. Dkt. 446.

2.    Trainor's defamation theory rests on eight alleged statements identified in paragraph 35(a)–(h). Dkt. 446, ¶ 35(a)–(h).

3.    The counterclaim alleges that Noshirvan "continually publishes statements to Instagram" asserting that Trainor arranged for a third party to threaten his former attorney to force counsel's withdrawal, citing McGibney's declaration as support. Dkt. 446, ¶¶ 21–22.

4.    The counterclaim alleges that McGibney emailed Trainor on January 15, 2024 accusing him of fraud upon the court, and that this email and accompanying letter were attached as exhibits to McGibney's declaration filed in this action. Dkt. 446, ¶¶ 25–26, 31.

5.    The paragraph 35(a)–(d) statements were published before July 30, 2024 and are time barred by New Jersey's Statute of Limitations. Dkt. 446, ¶ 35(a)–(d).

6.    The paragraph 35(e)–(h) statements are allegedly McGibney's statements, not statements authored by Noshirvan. Dkt. 446,¶ 35(e)–(h).

7.    The "Bullyville" screenshot Fig. 2, is dated September 2022. Dkt. 446, at p. 83. The "Bullyville" screenshot Fig. 1, dated April 2023, does not identify Trainor as their subject. Dkt. 446 at p. 83. The other screenshot bears no publication date and states "*Sounds like Patrick Trainor,*" a rhetorical comparison. Dkt. 446 p. 82.

8.    McGibney is the founder and CEO of Bullyville.com, a U.S. Marine Corps veteran, and a cybersecurity professional. He has appeared as a cybersecurity expert on the Dr. Phil television show and has helped thousands of victims of cyberstalking, harassment, and revenge porn through Bullyville. Dkt. 390-1.

9.    Camp cyberstalked, harassed, and defamed McGibney's family for years beginning in 2012, forcing McGibney, his wife, and his three children to obtain a permanent restraining order from the Superior Court of California. Dkts. 390-1; 390-2. Camp also cyberstalked McGibney's attorney and, in 2014, made bomb threats against a Lee County, Florida judge. Dkt. 390-1, ¶¶ 11–12. Camp's history of targeted harassment of McGibney's associates is thus a matter of court record.

10.    McGibney first became aware of Noshirvan on September 7, 2022, when he observed that Camp was targeting Noshirvan using the same tactics Camp had used against McGibney's family nearly a decade earlier. Prior to September 7, 2022, McGibney did not know Noshirvan. Dkt. 390-1. Their relationship thus began

because of Camp's conduct—not because Noshirvan recruited McGibney into any campaign against Trainor.

11. On January 15, 2024, McGibney independently learned that Trainor had "inaccurately stated or misrepresented statements to the court" in Case 2:23-cv-0340. Acting on his own initiative, McGibney emailed Trainor and had him personally served with a formal letter demanding retraction. Dkts. 390-1; 390-3. In that email, McGibney stated to Trainor directly: "Noshirvan has never uploaded any of his videos to [Bullyville] or [Bullyville's Instagram account], nor is he an administrator for any of those entities. Furthermore, none of his videos have ever appeared on [Bullyville's websites]. Bullyville only reposts videos that are already in the public domain." Dkt. 390-3. Trainor responded not with a retraction but by "personally attacking [McGibney] with false statements and by making a veiled threat to destroy [his] reputation." Dkt. 390-1.

12. On February 5, 2024, McGibney posted on Bullyville's Instagram account: (1) a photograph of Trainor, (2) Anabela Pinto's affidavit verifying delivery of the letter to Trainor, (3) the January 15, 2024 letter, and (4) an excerpt from Trainor's filing. See Dkts. 390-1; 390-4.

13. On February 6, 2024—the day after McGibney's Instagram post—Camp contacted WeServeNJ, LLC, the process-serving company. Camp screamed at WeServeNJ employee Finella Hesin, falsely accused the company of fraud, refused to identify himself, called her names, and reduced her to tears during a six-minute

call. Dkt. 390-1; Hesin Aff., Dkt. 390-5. WeServeNJ attorney Alexander Vays, an attorney licensed in New York and New Jersey, confirmed that Camp accused the process server of fraud and that, "under pressure from threats made against WeServeNJ, LLC and the process server," Vays sent Camp correspondence containing McGibney's private personal identifying information, which Camp then published to gab.com. Dkt. 390-1, ¶ 18; Vays Aff., Dkt. 390-6.

14.    McGibney expressly confirmed under oath that he "never claimed that Trainor conspired with Camp to harass a process server" and that his statement about Camp's harassment was "a factually accurate statement, which can be independently verified by reviewing Finella Hesin's and Alexander Vays' declarations." Dkt. 390-1, ¶ 20.

15.    In retaliation for his declaration, Trainor sued McGibney in New Jersey federal court  alleging that McGibney's declaration defamed him. See Case No. 2:24-cv-08873, (D.N.J.) That portion of the case was once dismissed for failing to state a cause of action. Dkt.  390-1, ¶ 21. Trainor's defamation theory against McGibney for the same conduct and the same statements he now seeks to attribute to Noshirvan was thus rejected by a federal court.

16.    Full Haus Episode 130, titled "Support the ADL*," was published on May 27, 2022, and publicly identified "Attorney Patrick Trainor" as a guest to discuss *D'Ambly v. Exoo*, doxing law, and support for the Anti-Doxing League. (Full Haus Episode 130, May 27, 2022.) At his deposition, Trainor confirmed the appearance and

characterized the ADL as a deliberate tool to "draw the bad actors out from the shadows." Dkt. 478, 19:15–20:3.

17.     At his deposition, Trainor admitted the Anti-Doxing League "would not exist" but for the *Couture v. Noshirvan* litigation. Dkt. 477, 20:4–20:20.When asked directly, Trainor answered: "Correct." Dkt. 477, 21:7-10.  Trainor is the sole member of the ADL: "I'm the only one." Dkt. 477, 19:2–9.

18.     In an email dated May 30, 2023—from Patrick Trainor to Joseph A. Camp on Trainor's law office letterhead, admitted as his at deposition—Trainor wrote about Noshirvan: "That's too bad. Hopefully he starts another. <u>We</u> want him collecting from his followers now." Dkt. 477, 72:5–17 (TRA 241). This is one of several of Trainor's own written confirmations of coordination with Camp a/k/a joey@joeycamp2020. See, e.g., Dkt. 477, Ex. 6, pgs. 263, 353-5, Ex. 10, Ex. 11, p.TRA0722-7, TRA693-713.

19.     Trainor alleges that Noshirvan emailed him accusations while blind-copying an FBI agent and supplemented an OAE complaint while blind-copying a government recipient. Dkt. 446, ¶¶ 56–57. In his RFP response, Trainor claimed the documents are in Noshirvan's possession at D.E. 196-3 in *Couture v. Noshirvan*, 2:23-cv-00340. **See Exhibit A**,  I-5. But Trainor cannot utilize documents from another case that were never produced by him in this case.

20.     In response to RFPs A-1 through A-5—requesting all documents identifying, capturing, and showing third-party publication of each alleged

defamatory statement—Trainor refused to produce any documents, asserting only that Noshirvan "already has" the materials. Ex. A, A-1 to A-5. Trainor produced no documents, no authenticated screenshots, no platform metadata, no engagement data, and no evidence of republication. *See id.*

21. In response to RFPs C-1 through C-6—requesting all documents supporting the civil conspiracy claim—Trainor refused to produce any documents — and cited to a different case. Ex. A, C-1 to C-4. He confirmed he has no pre-filing communications identifying the alleged conspiracy or its participants. Ex. A, C-6 ("none"), and no communications with @credibleintel or @joeyscramps2020. Ex. A. E-3 to E-4 ("none").

22. In response to RFPs D-1 through D-5—requesting all communications with McGibney and documents showing Noshirvan authorized or knew of McGibney's posts—Trainor refused to produce any documents. Ex. A, D-1 through D-5.

23. In response to RFPs I-1 through I-4—requesting the Pennsylvania State Police, FBI, OAE, and U.S. Marshals complaints Trainor placed at issue—Trainor refused to produce any of them, asserting only that they are "already in Defendant's possession." Ex. A, I-1 through I-4.   He produced no complaint, no attachment, no agency response, and no correspondence. *Id.* He identified no agency findings in his favor (Ex. A, I-6) and confirmed no investigation is pending (Ex. A,  I-7: "no such investigation exists").

24.    In response to RFPs J-1 through J-8—requesting all damages evidence—Trainor refused to produce anything, citing the defamation per se presumption. Ex. A, J-1, J-2, J-4, J-5.  He confirmed he has: no disciplinary action documents Ex. A, J-3 ("none"), no expert opinions, report, or calculations, Ex. A, J-7 ("none"), and no lost revenue, Ex. A, J-8.

25.    Trainor's witness list identifies no original publisher, platform custodian, Bullyville custodian, Instagram custodian, or X/Twitter custodian with personal knowledge to authenticate the paragraph 35(a)–(h) publications. Dkt. 613 at 2–8. A generic reservation of "Records Custodians, as needed" identifies no witness, source, or authenticating testimony. See Dkt. 613 at 2–8. Trainor chose not to depose McGibney or any other third party despite having the opportunity to do so. See Dkt. 390 at 2.

26.    Noshirvan's exhibit objections confirm that Trainor has little to no chance of introducing most of his proposed exhibits into evidence.  See Exhibit B, p. 2–23. And none of the proposed exhibits that may potentially be admitted into evidence help establish anything related to Trainor's counterclaims. *See id.*

27.    Trainor served no pre-suit retraction demand and cannot produce one in response to this motion.

## III.    Legal Standard

Summary judgment is required where "there is no genuine dispute as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Once the movant identifies an absence of evidence on an essential element, the nonmovant must point to specific admissible evidence—not speculation or conclusory allegations. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018). Where a public-figure claimant must prove actual malice by clear and convincing evidence, the Court determines whether the evidence would permit a reasonable jury to find actual malice with convincing clarity. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986).

## IV.   ARGUMENT

### A.   The Paragraph 35(a)–(d) Statements Are Time-Barred

New Jersey's one-year statute of limitations for defamation, N.J.S.A. 2A:14-3, bars any claim based on a publication predating July 30, 2024. *See Petro-Lubricant Testing Labs., Inc. v. Adelman*, 233 N.J. 236, 258–60 (2018) (single-publication rule). The counterclaim identifies paragraph 35(a)–(d) as the pre-July 30, 2024 group. The September 2022 and April 2023 "Bullyville" screenshots are untimely. See Dkt. 446, p. 83. Conspiracy claims follow the underlying tort's limitations period. N.J.S.A. 2A:14-1. Trainor cannot revive time-barred publications by recasting them as background, republication, or emotional distress.

### B.   The Paragraph 35(e)–(h) Statements Are Mcgibney's, Not Noshirvan's, And Are Independently Dispositive

Defamation requires proof that the defendant published the challenged statement. *DeAngelis v. Hill*, 180 N.J. 1, 13 (2004). Three independent grounds defeat any claim that the paragraph 35(e)–(h) statements are attributable to Noshirvan.

First, the record establishes McGibney acted on his own initiative. See SUMF, ¶¶8-15. McGibney's sworn declaration confirms he contacted Trainor on January 15, 2024 because he independently learned Trainor had misrepresented facts to the court—not because Noshirvan directed him to. Dkt. 390-1, ¶ 15. McGibney's January 15, 2024 email to Trainor expressly states that Noshirvan never uploaded videos to Bullyville, never administered any Bullyville entity, and had no connection to Bullyville's posts. Dkt. 390-3. That contemporaneous denial—made by McGibney directly to Trainor—is dispositive on the attribution question and defeats any claim of actual malice as to those statements. A speaker who received a direct, contemporaneous written denial that Noshirvan controlled the relevant publications cannot claim Noshirvan published them with actual knowledge of falsity.

Second, in discovery, Trainor refused to produce a single document showing that Noshirvan "author[ized], directed, requested, or encouraged McGibney to publish any specific statement" (Ex. A, D-3) or that McGibney published "with Noshirvan's knowledge, consent, or approval" (ExA, D-4). His objection—that such documents are "already in Defendant's possession"—is not a substitute for admissible evidence. See *Jutrowski*, 904 F.3d at 288–89.

Third, Trainor's own defamation suit against McGibney—Case No. 2:24-cv-08873 (D.N.J.)—premised on McGibney's declaration and the same statements, was dismissed for failure to state a cause of action. Dkt. 390-1, ¶ 21.) If Trainor could not state a defamation claim against the actual author of those statements, he cannot state one against Noshirvan, who did not publish them at all.[2]

### C. Trainor Has No Admissible Evidence To Prove Any Element Of His Counterclaims

#### i. Authentication and Publication

To prove publication, Trainor must present admissible evidence that each challenged statement was made and communicated to a third party. *DeAngelis*, 180 N.J. at 13. In response to RFPs A-1 through A-5, Trainor produced nothing. See Ex. A, A-1 through A-5. To authenticate a screenshot or social-media post, the proponent must establish it is what it purports to be, Fed. R. Evid. 901(a), from a witness with personal knowledge, Fed. R. Evid. 602. Trainor's witness list identifies no platform custodian for any alleged publication, and Trainor chose not to depose McGibney or any other third party despite having the opportunity. Dkt. 390 at 2; SUMF ¶ 26. He cannot authenticate third-party posts through his own testimony alone.

#### ii. "Of and Concerning" Trainor.

---

[2] See 2:24-cv-08873, Dkts. 20, 22 and 31("the alleged defamation in the Florida Action declaration is protected by the litigation privilege."); *see Shoul v. Select Rehab., LLC*, No. 1:21-CV-00836, 2022 WL 2118322 at *9, (M.D. Pa. June 13, 2022) (noting that a plaintiff alleging defamation must state the source and substance of the communication at issue, as well as the date and circumstances under which specific statements were made).

The screenshots at Dkt. 446 page 82-3 do not identify Trainor as their subject and cannot support any speech-based claim. *Ward v. Zelikovsky*, 136 N.J. 516, 529 (1994). The Dkt. 446, page 82 screenshot bears no date and states only "Sounds like Patrick Trainor"—inferential commentary, not a provably false statement of fact. New Jersey protects rhetorical hyperbole and opinion based on disclosed facts. *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 167–70 (1999).

### iii.    Civil Conspiracy.

Civil conspiracy requires an agreement and an underlying tort. *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177–78 (2005). This claim fails at every element. Trainor confirmed in his RFP responses that he has "none" of the pre-filing communications identifying the alleged conspiracy (Ex. A., C-6) and "none" of the communications with the alleged co-conspirator accounts (Ex. A, E-3, E-4). McGibney's declaration establishes that he acted independently and that Camp—did in fact—harass the WeServeNJ process server on February 6, 2024, as corroborated by two sworn affidavits. Dkt. 390.-1, ¶¶ 17–20; Hesin Aff., Dkt. 390-5; Vays Aff., Dkt. 390-6. Trainor's own communications with Camp undermine his conspiracy theory and preclude a reasonable inference that Noshirvan directed the alleged conduct: in his May 30, 2023 email to Camp—the same joey@joeycamp2020 account he claims he has d nothing to do with— carbon copied Trainor on an email to WeServeNJ.  In a different email, Trainor wrote to Camp ("joey@joeycamp2020 ") "We want him collecting from his followers now," actively coordinating with Camp to monitor and

exploit Noshirvan. Dkt. 478, 73:7–17 (TRA 241). A Trainor who was coordinating with Camp cannot simultaneously claim to be the target of that conspiracy. Moreover, the permanent restraining order issued by the Superior Court of California against Camp—protecting McGibney, his family, his attorney, and others—establishes that Camp's pattern of targeted harassment against McGibney is a matter of court record, not an invention of Noshirvan. Dkt. 390-2.

### D.    Falsity, Fault, Damages, and Causation.

A false statement of fact is the *sine qua non* of defamation. *Ward*, 136 N.J. at 529. Trainor produced no evidence of falsity in response to RFP B-1. See Ex. A. B-1. McGibney's January 15, 2024 email—delivered directly to Trainor before any of the Instagram posts at issue—disclosed the factual basis for each challenged statement, including that Trainor had misrepresented facts to the court and that Noshirvan had no control over Bullyville. See Dkt. 390-3. That disclosed factual predicate is the foundation for protected opinion and defeats falsity. As for damages, Trainor refused all of RFPs J-1 through J-8 by invoking the defamation *per se* presumption—but that presumption does not relieve a public-figure plaintiff or  private  citizens in matters of public concern  of the constitutional obligation to prove actual malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50 (1974); See *World Mission Soc'y, Church of God v. Colon*, 2015 N.J. Super. LEXIS 37, at *8-9 (Super. Ct. Ch. Div. Feb. 9, 2015)(New Jersey has "expanded application of the requirements of proof of actual malice to statements regarding private    citizens in matters of public concern"). Trainor

confirmed he has suffered no disciplinary action (Ex. A, J-3 ("none")) and received no platform enforcement decisions against Noshirvan's content (Ex. A, H-3, H-4 ("none")).

### E.    Full Haus Episode 130 and the ADL Controversy Defeat Any Claim of Falsity or Actual Malice

Trainor's voluntary appearance on Full Haus Episode 130 (May 27, 2022) as a named attorney discussing *D'Ambly v. Exoo*, doxing law, and ADL advocacy supplies the disclosed public facts from which speakers could draw protected opinions about his public role and matters of public concern. A digital copy to be provided as **Exhibit C**. At deposition, Trainor confirmed the appearance, called the ADL a deliberate mechanism to "draw the bad actors out from the shadows," and admitted the ADL would not exist but for the Couture litigation. See SUMF ¶¶16-19. These admissions, combined with McGibney's email directly informing Trainor of the factual bases for the challenged statements, leave no basis for a finding of actual malice by clear and convincing evidence. *See World Mission Soc'y, Church of God*, 2015 N.J. Super. LEXIS 37, at *8-9

### F.    Derivative Claims Fail with the Underlying Tort

False light requires a false publicized implication highly offensive to a reasonable person, plus the requisite fault. *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 585–89 (2009). Civil conspiracy requires an agreement and a completed

underlying tort. *Banco Popular*, 184 N.J. at 177–78. Because no underlying tort survives, all derivative claims fail as a matter of law.

### G.     Trainor Is A Limited-Purpose Public Figure And Cannot Prove Actual Malice By Clear And Convincing Evidence

A claimant who voluntarily injects himself into a public controversy is a limited-purpose public figure for statements germane to that controversy. *Gertz.*, 418 U.S. at 345; *Sisler v. Gannett Co.*, 104 N.J. 256, 274–79 (1986); *Marcone v. Penthouse Int'l Magazine for Men*, 754 F.2d 1072, 1083–85 (3d Cir. 1985). Trainor's own record—deposition testimony, public podcast appearance, and ADL incorporation—compels that conclusion.

Trainor deliberately created the Anti-Doxing League on May 17, 2022, appeared publicly on Full Haus Episode 130 as "Attorney Patrick Trainor" to discuss doxing law and ADL advocacy, testified under oath that the ADL was designed to "draw bad actors out from the shadows," and admitted the ADL would not exist but for the Couture litigation. Dkt. 478, 19:1–20:20; 21:8–22:2 ("we formed that [the ADL]"). He is the sole member of the ADL. Dkt. 478, 19:5–9. He is not a private figure who stumbled into a controversy—he created and sustained it. The inquiry is controversy-specific: whether Trainor is a limited-purpose public figure for statements germane to the doxing, ADL, and litigation dispute. *Gertz*, 418 U.S. at 351. On that question his own testimony is conclusive.

As a limited-purpose public figure, Trainor must prove actual malice—knowledge of falsity or reckless disregard for truth—by clear and convincing evidence. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964); *Anderson*, 477 U.S. at 255–57. He cannot. McGibney's January 15, 2024 email—sent directly to Trainor before the Instagram posts at issue—disclosed the factual basis for every challenged statement, including the explicit representation that Noshirvan had no control over Bullyville. Dkt. 390-3. Trainor thus had contemporaneous notice of the factual predicate for the challenged speech. A speaker who acts on a documented factual basis after giving the subject notice and an opportunity to respond cannot be found to have acted with actual malice. *See St. Amant v. Thompson*, 390 U.S. 727, 731-33 (1968); *Cf. Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). In discovery, Trainor produced nothing to show Noshirvan's subjective state of mind as to any specific statement. SUMF ¶¶ 21–25. This failure also defeats presumed damages, punitive damages, and any false-light claim. See, e.g., *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 104 N.J. 125, 151 (1986); *W.J.A. v. D.A.*, 210 N.J. 229, 242, 43 A.3d 1148, 1156 (2012)(requiring of proof of actual malice to statements regarding private citizens in matters of public concern; and limiting "presumed damages" to nominal damages).

    **H.**    **The Agency Complaints Are Excluded Under Rule 37(c)(1) And, In Any Event, Are Privileged**

Page **17** of **27**

Trainor's counterclaim places at issue complaints he alleges were filed with the Pennsylvania State Police, FBI, OAE, and U.S. Marshals. Dkt. 446, ¶¶ 56–59. In discovery, Trainor refused to produce any of them (Ex. A, I-1 through I-4). That refusal should be dispositive.

Rule 37(c)(1) precludes a party from using at summary judgment any information not properly disclosed unless the failure was substantially justified or harmless. Fed. R. Civ p. 37. The Third Circuit weighs prejudice, ability to cure, disruption, bad faith, and importance of the evidence. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719–20 (3d Cir. 1997). Every factor favors exclusion. Disocvery closed in September of 2025. Dkt 456. Noshirvan was provided limited discovery. See Dkt. 630. Noshirvan could not examine the actual words, recipients, dates, or privilege status of any complaint; could not re-depose Trainor about withheld content; and cannot test causation or damages. Prejudice is irreversible. Trainor's RFP Responses confirm no agency findings favor Trainor and no investigation is pending. See Ex. A, I-1 and I-7.   Once excluded, any theory premised on governmental reporting fails entirely.

Independently, McGibney's declaration establishes the broader context: Camp—armed with a decade-long history of harassing McGibney, his family, and friends, documented by a California restraining order (Dkt. 390-2)—was the actor targeting WeServeNJ's process server. Communications made in good faith to law-

enforcement and disciplinary bodies to report genuine concerns fall within New Jersey's qualified privilege. *Erickson v. Marsh & McLennan Co.*, 117 N.J. 539, 563 (1990)(holding that a qualified privilege applies where the speaker responds to an inquiry from a person or entity with a legitimate interest in the subject matter of the communication); *Govito v. W. Jersey Health Sys., Inc.*, 332 N.J. Super. 293, 307–13 (App. Div. 2000)(allowing privilege for any "communication 'made bona fide upon any subject-matter in which the party communicating has an <u>interest</u>, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, although it contains criminatory matter which, without this privilege, would be slanderous and actionable.'"). Trainor has produced no evidence of malice sufficient to defeat that privilege.

## I.     The Paragraph 35(e)–(h) Materials Are Independently Excluded Under Rule 37

The same Rule 37(c)(1) analysis applies to the paragraph 35(e)–(h) publications. Trainor refused RFPs A-1 through A-5 in their entirety. See Ex. A, A-1 through A-5. Rule 34 required Trainor to identify and produce the materials he intended to rely upon, and Rule 56 requires admissible evidence with authentication.

His witness list identifies no platform custodian, no original publisher, and no witness with personal knowledge of the creation, dating, authorship, or preservation of those posts. Dkt. 613. The generic "Records Custodians, as needed" placeholder identifies no witness, source, or records. Trainor also chose not to depose

McGibney — the one person who could have authenticated Bullyville's publications — despite having the opportunity. Dkt. 390-1 at 2. Noshirvan could not subpoena custodians, examine metadata, or depose publishers. Prejudice is irreversible.

### J. Litigation-Related Communications Are Barred By The Litigation Privilege

New Jersey's litigation privilege protects communications made in judicial or quasi-judicial proceedings by litigants, to achieve the objects of the litigation, that bear a logical relation to the action. *Hawkins v. Harris*, 141 N.J. 207, 216–17 (1995); *Loigman v. Twp. Comm. of Middletown*, 185 N.J. 566, 584–85 (2006). Trainor alleges that McGibney's email and letter were attached as exhibits to a declaration filed in this action. Dkt. 446, ¶ 31. McGibney confirms they were. Dkt. 390-1, ¶¶ 15–16. Any claim premised on those litigation-filed communications is barred.

### K. The New Jersey Retraction Statute, N.J.S.A. 2a:43-1 And 2a:43-2, Independently Bars All Damages Beyond Proven Special Damages Because Trainor Served No Retraction Demand And Has No Evidence Of Special Damages.

New Jersey's retraction statute imposes a mandatory damages-limiting framework on defamation plaintiffs who fail to give a defendant the opportunity to correct an alleged false statement before suit. N.J.S.A. 2a:43-2. Trainor admittedly served no retraction demand. That failure has three compounding legal consequences under the statute: it forfeits the presumption of damages, it triggers the statute's special-damages-only limitation, and it defeats any mitigation argument

Trainor might raise about any  continued publication. Trainor cannot escape those consequences by labeling the demand requirement "irrelevant" — the statute does not permit that election.

### i.       The Text and Structure of N.J.S.A. 2A:43-1 and 2A:43-2

New Jersey's retraction statute, N.J.S.A. 2A:43-1 et seq., establishes an interlocking framework governing damages in defamation actions against publishers. N.J.S.A. 2A:43-2 states that "the defendant, in an action for libel against the owner, manager, editor, publisher or reporter of any newspaper, magazine, periodical, serial or ***other publication*** in this state, *may give proof of intention; and* plaintiff, unless he shall prove either ***malice in fact*** (actual malice) or that defendant, after having been requested by plaintiff in writing to retract the libelous charge in as public a manner as that in which it was made, failed to do so within a reasonable time, ***shall recover only his actual damage proved and specially alleged in the complaint***."  In short, Trainor's recovery is limited to damages he did not plead and cannot prove — that is, actual, out-of-pocket pecuniary losses. The provision extinguishes claims for presumed general damages and punitive damages when a presuit retraction letter has not been sent, and actual malice not proven. The statutory scheme makes plain that the demand is the trigger — it is the mechanism that gives the defendant the opportunity to retract and thereby limit damages. A plaintiff who never pulls the trigger deprives the defendant of that statutory opportunity and simultaneously forfeits the enhanced damages that the statute was designed to

moderate. See *Petro-Lubricant Testing Labs., Inc. v. Adelman,* 233 N.J. 236, 259 n.5, 184 A.3d 457, 470 (2018).

ii.    **The Statute's Special-Damages Requirement: What Trainor Must Prove and Cannot**

The phrase "special damages" in N.J.S.A. 2A:43-2 has a specific legal meaning that is considerably more demanding than the colloquial phrase "actual harm." Special damages in defamation require the plaintiff to plead and prove specific, identifiable, out-of-pocket pecuniary losses that were directly caused by the particular defamatory statement. See *Nuwave Inv. Corp. v. Hyman Beck & Co., Inc.,* 221 N.J. 495, 498, 114 A.3d 738, 740 (2015) They must be specifically itemized—not estimated, inferred, or presumed. They must be causally traced to the defendant's specific publication—not to market conditions, the plaintiff's own conduct, or other independent events. And they must be proven with reasonable certainty—not approximated, speculated, or derived from a general claim of reputational diminishment. *Ward,* 136 N.J. at 540(requiring proof of special damages requires a plaintiff to demonstrate harm to reputation from an alleged defamatory statement); *Arturi v. Tiebie,* 73 N.J.Super. 217, 222, 179 A.2d 539 (App.Div.1962)(observing that direct harm, i.e., emotional distress caused by plaintiff's knowledge that he was defamed, is not special harm because only harm to reputation is compensable). *Mayflower Transit, LLC v. Prince,* 314 F. Supp. 2d 362, 379 (D.N.J. 2004).

Generalizations are not special damages. Special damages require identification of a specific person or class of persons who, having heard the defamatory statement, altered their conduct toward the plaintiff in a way that caused a concrete economic loss. An allegation that "people think less of me" does not meet this standard. *Ward*, 136 N.J. at 540; (2) Subjective feelings of embarrassment, anxiety, or reputational hurt are not special damages. See *Arturi*, 73 N.J.Super. 217, 222, 179 A.2d 539. Trainor produced no such evidence; (3) A general claim that business "declined" following a publication is not special damages unless the plaintiff identifies the specific client or matter lost, establishes that the client or referral source was aware of the specific statement, and demonstrates that awareness caused the departure or non-engagement. See *Mayflower Transit*, 314 F. Supp. 2d at 379–80; (4) Attorney's fees and costs incurred in bringing the defamation action itself are not special damages. And Trainor incurred no attorneys fees in bring his case — he is *pro se*.

Against these requirements, Trainor's record is bare. In response to eight separate document requests covering every category of damages—lost clients, lost revenue, reputational harm, emotional distress, out-of-pocket expenses, income records, expert opinions, and trial damages exhibits (RFPs J-1 through J-8)—Trainor produced nothing. See Ex. A, J-1 through J-8. He identified no lost client by name. He produced no billing records. He produced no tax returns or profit-and-loss statements that would permit a before-and-after income comparison. He produced

no medical records corroborating emotional distress. He retained no expert to calculate lost income or reputational harm. He identified no specific person who heard a specific statement and thereafter declined to engage or refer business to him. His sole response to every damages request was to invoke the defamation per se presumption—a presumption he has forfeited.

### iii. Trainor's Admission That He Served No Retraction Demand Is a Forfeiture of the Presumption and a Concession That the Statute's Special-Damages Limitation Applies

Trainor's RFP A-6 response is dispositive on the demand question. RFP A-6 requested all documents reflecting any demand by Trainor that Noshirvan retract, correct, or remove any alleged defamatory statement, including any notice served pursuant to N.J.S.A. § 2A:43-1 et seq. Trainor's response: he objected that the request "seeks irrelevant information about an irrelevant retraction that Plaintiff was not required to demand." See Ex. A, A-6.

### iv. The Challenged Statements Involve Matters Of Public Concern, Independently Barring Presumed Damages

New Jersey prohibits presumed damages where the challenged statements involve a public figure or a matter of public concern, requiring instead proof of actual economic or pecuniary loss. *World Mission Soc'y*, 2015 N.J. Super. LEXIS 37, at *9; N.J. Stat. § 2A:43-2. Both independent prongs are satisfied here. The public-concern prong is satisfied independently and as to every challenged statement: the paragraph 35 statements address attorney conduct in active federal litigation, discussing social

harm and federal litigation on the internet, complaints to law-enforcement and bar disciplinary bodies, the activities of a public anti-doxing advocacy organization, and commentary on publicly filed court proceedings — each of which is a matter in which the community has a legitimate interest far beyond the purely private disputes of these parties. World Mission Soc'y, Church of God, 2015 N.J. Super. LEXIS 37, at *14; *Connick v. Myers*, 461 U.S. 138, 146 (1983); *Sisler*, 104 N.J. 256, 271–79 (1986); see *Hawkins v. Harris*, 141 N.J. 207, 216–17 (1995).

Because both prongs of the *World Mission Soc'y* standard are met, Trainor must prove actual economic or pecuniary loss — not presumed harm, not generalized reputational injury, not emotional distress, and not litigation costs. *Ward,* 136 N.J. at 540; *Mayflower Transit, LLC,* 314 F. Supp. 2d at 379. He has none.

## V.    CONCLUSION

No reasonable jury could find for Trainor. The paragraph 35(a)–(d) statements are time-barred and barred by Rule 37, and the paragraph 35(e)–(h) statements are McGibney's own publications, not Noshirvan's. Trainor produced no competent evidence, is a limited-purpose public figure, the statements at issue are a matter of public concern, and he cannot prove actual malice by clear and convincing evidence. Noshirvan therefore requests summary judgment on all remaining counterclaims.

Respectfully  submitted,

Nicholas A. Chiappetta, Esq.
**Chiappetta Trial Lawyers**
Attorneys for Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax:    (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com
www.chiappettalegal.com

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that conferral is not required for this motion for summary judgment. See Local Rule 3.01(g).

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send notice of electronic filing to the following: all counsel of record.

*/s/ Nicholas A. Chiappetta*
Nicholas A. Chiappetta

# Exhibit Index

| Exhibit | Description | Docket / Source |
|---------|-------------|-----------------|
| A | Counter-Plaintiff Patrick Trainor's Responses and Objections to Counter-Defendant Danesh Noshirvan's First Request for Production (served Apr. 14, 2026) | Discovery responses served by Trainor |
| B | Noshirvan's Objections to Trainor's (as counter-plaintiff) Trial Exhibit List | Filed in this action |
| C | Full Haus Episode 130 — 'Support the ADL*' (May 27, 2022) [Digital copy to be provided with binder to the Court] | Publicly available podcast episode |