UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANESH NOSHIRVAN, an individual,

Plaintiff,

v. Case No: 2:23-cv-01218-KCD-KRH

JENNIFER COUTURE, an individual; RALPH GARRAMONE M.D., an individual; RALPH GARRAMONE M.D. P.A d/b/a GARRAMONE PLASTIC SURGERY; CENTRAL PARK OF SOUTHWEST FLORIDA, LLC; OMG REALTY, LLC; THE LAW OFFICE OF PATRICK TRAINOR ESQ, LLC d/b/a THE LAW OFFICE OF PATRICK TRAINOR; PATRICK TRAINOR, an individual; and ANTI-DOXING LEAGUE INC.,

Defendants.

---

# ORDER

This case begins with a viral video. Plaintiff Danesh Noshirvan is a citizen journalist who built a social media following by exposing bad behavior in public spaces. In January 2022, he posted a video of Defendant Jennifer

Couture confronting a young woman in a Dunkin Donuts parking lot. The video caught fire, resulting in criminal charges for Couture and public backlash. Couture and her now-husband, Defendant Dr. Ralph Garramone, allegedly decided to get even.

According to Noshirvan, Couture and Garramone—acting individually and through Garramone's various business entities—hired a convicted computer hacker named Joseph Camp to retaliate. Camp, in turn, connected the couple with Defendant Patrick Trainor, a New Jersey lawyer who operates the Anti-Doxing League. What followed, Noshirvan alleges, was a retaliatory conspiracy by these defendants to systematically destroy his life and livelihood. (*See* Doc. 434.)[1]

Trainor responded to Noshirvan's lawsuit with counterclaims for defamation and civil conspiracy. (Doc. 446.) According to Trainor, Noshirvan used his social media account to falsely brand Trainor as a "Nazi," a "White supremacist," and a "pedophile." Trainor also alleges that Noshirvan enlisted two non-parties—James McGibney (who runs the account @bullyville) and an anonymous user known as @credibleintel—to amplify the smear campaign and republish the offending statements. Noshirvan then allegedly weaponized

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and subsequent citations.

these posts to file bogus complaints against Trainor with state and federal law enforcement, as well as the New Jersey Office of Attorney Ethics. (*Id.* at 79-97.)

Noshirvan now moves for summary judgment on the remaining counterclaims. He argues that Trainor's case collapses under a cascade of legal and evidentiary failures. The Court need not belabor the point as the outcome is simple. Trainor's claims fail as a matter of law, and therefore, Noshirvan's Amended Motion for Summary Judgment (Doc. 664) is **GRANTED**.

## I. Background

Trainor's counterclaims hinge on the digital alliance between Noshirvan, McGibney, and the anonymous user @credibleintel. Though the parties squabble over the exact timeline, the record shows Noshirvan and McGibney joined forces sometime in 2022. They stayed in regular contact, with McGibney at one point sending Noshirvan cash via Venmo and praising the duo as "the most brutal heavy hitters out there."

The conflict with Trainor ignited in January 2024, when McGibney emailed Trainor to accuse him of misrepresenting facts to a court. That private dispute quickly spilled onto the internet. Between February 2024 and 2025, Noshirvan, McGibney, and @credibleintel unleashed a barrage of social media posts targeting Trainor. The publications accused him of harassment,

professional misconduct, conspiring with a fugitive, and being a Neo-Nazi and pedophile. According to Trainor, the offending posts remain publicly visible today.

Seeking to hold Noshirvan liable for the professional and economic fallout, Trainor filed his defamation and conspiracy counterclaims on July 30, 2025. (Doc. 446). The Court will unpack the specific defamatory statements in more detail below as necessary to resolve the pending motion.

## II. Legal Standard

Summary judgment is not a substitute for trial. It is appropriate only "when a movant shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Gonzalez v. Indep. Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at *2 (11th Cir. Jan. 30, 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019).

"The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial." *Andrews v. Ciccone*, No. 3:23-CV-88-MMH-SJH, 2025 WL 2508878, at *2 (M.D. Fla. Sept. 2, 2025). "[A] fact is material if it may affect the outcome of the case under the applicable substantive law." *Toca v. Debonair Props. LLC*, No. 2:23-CV-303-KCD, 2025 WL 2106674 (M.D. Fla. July 28, 2025).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). This requires the nonmovant to "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim." *Alexander as trustee of Franklin Pharmacy, LLC v. Aaron*, No. 3:15-CV-1314-AKK, 2017 WL 11437294, at *1 (N.D. Ala. June 1, 2017); *see also Diaz v. Kaplan Higher Educ., L.L.C.*, 820 F.3d 172, 177 (5th Cir. 2016).

## III. Discussion

Noshirvan presses several arguments against the counterclaims, but only three are relevant here. First, he contends that New Jersey's statute of

limitations bars a subset of Trainor's claims. (Doc. 664 at 10.) Second, he argues that Trainor cannot pin legal responsibility on him for statements independently published by McGibney. (*Id.* at 10-14.) Third, he maintains that the remaining statements are not actionable defamation. (*Id.* at 10-12.)

Trainor offers a rather muted defense. He ignores the statute of limitations entirely and abandons his theory regarding @credibleintel. His only substantive argument is that Noshirvan secretly green-lit McGibney's publications. (Doc. 667 at 18-22.) Unlike the other issues in this case, a reasonable jury can only reach one conclusion here: Trainor's claims fail.

Before jumping into the analysis, the Court previously found that New Jersey law governs Trainor's counterclaims. *See Noshirvan v. Couture*, Case No. 2:23-cv-01218-JES-DNF, 2026 WL 507700, at *10-12 (M.D. Fla. Feb. 24, 2026). Neither party has argued otherwise here, so the Court will continue to apply New Jersey law.

**a. Statute of Limitations**

Under New Jersey law, a defamation claim comes with a one-year expiration date from publication. *See* N.J. Stat. § 2A:14-3. A civil conspiracy claim tethered to that defamation meets the same fate. *See Speedwell, LLC v. Town of Morristown*, No. 21CV18796 (EP) (JRA), 2023 WL 2207588, at *9 (D.N.J. Feb. 24, 2023) ("[T]o succeed on a civil conspiracy claim, a plaintiff must

assert a viable underlying tort claim."); *cf. See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs., & Prods. Liab. Litig.*, 553 F. Supp. 3d 211, 233 (D.N.J. 2021).

Trainor filed his counterclaims on July 30, 2025. So the math is straightforward: any publications made beyond a year from that are time-barred. As such, Trainor's counterclaims are dismissed to the extent he relies upon any statements from before July 30, 2024. (Doc. 446 ¶¶ 35(a)–(d).)

**b. Lack of Agreement or Approval**

A civil conspiracy requires more than just two people acting badly at the same time. Under New Jersey law, a plaintiff must prove four things: "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages." *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 (3d Cir. 2003). The heart of the claim, of course, is the agreement. A plaintiff need not produce a formal contract or a smoking-gun email. Circumstantial evidence and reasonable inferences can be enough to get the question to a jury. *See Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985, 988 (N.J. Super. Ct. App. Div. 1993); *see also Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). But the plaintiff must still put forward

enough concrete proof to show that the defendants actually formed a meeting of the minds to achieve the conspiracy's objective.

Viewing the documents cited by Trainor that he contends evidence a conspiracy between Noshirvan and McGibney, no reasonable jury could find an agreement to defame. Trainor's first document reflects McGibney offering to post about Noshirvan's lawsuit on two social media accounts "couture.camp" and "bullyville"—nothing more. (Doc. 667-3.) Other communications between Noshirvan and McGibney are either too temporally disjunctive from the underlying conspiracy (Doc. 667-10), do not relate to any conspiracy at all (Doc. 667-11), or discuss a motion filed by Trainor or a drafted filing rather than the alleged defamatory posts. (Doc. 667-4; Doc. 667-12.) Through no stretch of the imagination could a reasonable jury conclude Noshirvan, McGibney, and @credibleintel entered an agreement to defame Trainor based on these documents. Accordingly, Noshirvan is entitled to summary judgment for Trainor's civil conspiracy counterclaim.

For these same reasons, Noshirvan is also entitled to summary judgment for Trainor's defamation claim as it relates to McGibney's publications. Without showing any agreement, Trainor cannot prove that Noshirvan published the alleged defamatory statements. *See, e.g.*, *DeAngelis v. Hill*, 847

A.2d 1261, 1267-68 (N.J. 2004) (laying out the elements of defamation where the defendant is required to publish the alleged defamatory statement).

**c. Opinions Not Actionable**

To succeed on a defamation claim, a plaintiff must prove: "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Hyman v. Rosenbaum Yeshiva of N. Jersey*, 317 A.3d 1260, 1276 (N.J. 2024) (Patterson, J., concurring). A statement is only actionable if it "can be proved true or false." *Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129 (1999). "Statements of opinion . . . generally cannot be proved true or false." *Id.*

The only remaining statement supporting Trainor's claim is Noshirvan's Instagram story that compares him to Kash Patel. The post features a screenshot of Senator Dick Durbin questioning Patel about his appearances on a podcast whose host "promotes conspiracy theories and worked with a neo-Nazi." Below the exchange, a caption reads, "Sounds like Patrick Trainor." Trainor insists this post is actionable because it effectively brands him a neo-Nazi.

But rhetorical hyperbole and name-calling do not amount to defamation. Under New Jersey law, a general statement accusing someone of bias is an

opinion. *See Specht v. Suarez*, 798 F. Supp. 3d 485, 505 (D.N.J. 2025). Instead, there must be some other "reasonably specific facts that are capable of objective proof of truth or falsity." *Ward v. Zelikovsky*, 643 A.2d 972, 983 (N.J. 1994). Generalized accusations of bigotry or extreme bias—without a tether to specific, verifiable facts—are protected opinions. *Gomez Noriega v. City of Jersey City*, No. 2:24-CV-10599-WJM-JRA, 2025 WL 1104016, at *11 (D.N.J. Apr. 14, 2025) (statement that the plaintiffs "hate Jews" was not actionable as defamation); *Jorjani v. New Jersey Inst. of Tech.*, No. 18-CV-11693, 2019 WL 1125594, at *7 (D.N.J. Mar. 12, 2019) ("[C]alling someone a racist, hater, or bigot—without more—will not result in defamation liability[.]"). Noshirvan's snarky caption is a textbook example of a non-actionable, rhetorical comparison.

## IV. Conclusion

Trainor cannot defeat summary judgment with a patchwork of stale claims, non-actionable opinions, and a conspiracy theory lacking an actual agreement. Yet that is all he offers. Trainor has failed to muster the specific facts necessary to show a conspiratorial agreement between Noshirvan and his associates. Strip away the conspiracy framework, and Trainor's defamation case reduces to statements that are either time-barred or constitutionally protected hyperbole. Accordingly, it is **ORDERED:**

(1) Noshirvan's Amended Motion for Summary Judgment (Doc. 664) is **GRANTED** against Trainor who shall take nothing from his counterclaims. Judgment shall be withheld until the conclusion of trial.

(2) Noshirvan's Motion for Summary Judgment (Doc. 662) is **DENIED as moot.**

**ENTERED** in Fort Myers, Florida on August 28, 2026.

Kyle C. Dudek
United States District Judge