**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| DANESH NOSHIRVAN a/k/a @THATDANESHGUY,<br><br>Plaintiffs,<br><br>v.<br><br>JENNIFER COUTURE, et al.,<br><br>Defendants. | Civil Case No.: 2:23-cv-01218 |
| PATRICK TRAINOR,<br><br>Counterclaim-Plaintiff<br><br>v.<br><br>DANESH NOSHIRVAN,<br><br>Counterclaim-Defendant | |

**COUNTER-PLAINTIFF'S MOTION FOR RECONSIDERATION AND CLARIFICATION OF THE ORDER GRANTING COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

By Order dated August 28, 2026, (hereinafter "Order") [D.E. 674] the Court granted Counter-Defendant Danesh Noshirvan's ("Defendant") Motion for Summary Judgment ("Def. MSJ."). [D.E. 664]. The Court's ruling that Defendant's defamatory *per se* statements about Counterclaim-Plaintiff Patrick Trainor ("Trainor") are "statements of opinion" and "rhetorical hyperbole" is the result of a misinterpretation of the Court's cited authorities. *Order* at 9-10. To prevent a

manifest error of law, Trainor moves the Court for reconsideration of its Order on the grounds set forth below in the accompanying memorandum of law.

Moreover, Trainor requests that the Court provide clarification about which facts it derived from which paragraph(s) of Defendant's *Statement of Undisputed Material Facts* and relied upon in its Order that granted Defendant's motion. *Def. MSJ.* at 3-9.

## MEMORANDUM OF LAW

### I. Introduction

Defendant published defamatory *per se* statements that said Trainor was a neo-Nazi and White supremacist, and supporter of similar ideologies, when he knew these statements were false. Trainor served Requests for Production ("RFP") and Interrogatories that demanded Defendant produce evidence or information he possessed that proved Trainor made statements or published writings in support of neo-Nazi, White supremacist, or similar ideologies, and for evidence or information that showed Trainor was a member of such organizations, or supported these beliefs. Defendant could not produce any evidence or information to support his statements.

The Court granted Defendant's motion based upon a misplaced interpretation of law within the authorities the Court cited to find Defendant's defamatory *per se* statements were "statements of opinion" and "rhetorical hyperbole." *See Order* at 9-10 *quoting Lynch v. New Jersey Educ. Ass'n,* 161 N.J. 152, 735 A.2d 1129 (1999), *citing Specht v. Suarez*, 798 F. Supp. 3d 485, 505 (D.N.J. 2025); *quoting Ward v. Zelikowsky*,

643 A.2d 972, 983 (N.J. 1994), *Gomez Noriega v. City of Jersey City*, No. 2:24-cv-10599-WJM-JRA, 2025 WL 1104016 (D.N.J. Apr. 14, 2025); *Jorjani v. New Jersey Inst. of Tech.*, No. 18-cv-11693, 2019 WL 1125594, at 7 (D.N.J. Mar. 12, 2019).

In the cited authorities, the defendants' statements were non-actionable statements of opinion, because the courts found defendants had formed opinions based upon the plaintiffs prior writings or speech. In this case, there is no basis for Defendant to form an opinion, because Trainor has not made, nor published such writings or statements, and Defendant could not produce evidence or information that proved he did.

The Court cited *Ward,* which states that "[a] proper analysis of the alleged slanderous statement requires examination of the content of defendant's entire statement and the context in which it was made," but the Court failed to consider the context in which Defendant published his defamatory *per se* statements. *Ward*, 643 A.2d 983. *See also Jorjani,* 2019 WL 1125594, at 4, 6, *citing Ward*, 643 A.2d at 983.

The context in which Defendant published his defamatory *per se* statements was that Defendant knew his statements were false, and he knew that before he published his defamatory *per se* statements, because Trainor's RFPs and Interrogatories asked Defendant to produce evidence or information that supported his statements, but he could not.

Further, Defendant published these statements following a hearing on Trainor's motion to compel, where Defendant was ordered by the Court to produce evidence or information that showed Trainor marketed to "supremacists, proud

boys, and nazi sympathizers," and Defendant could not produce any evidence or information supporting this allegation. *See Order* dated January 27, 2025 [D.E. 241].

Further, the context of Defendant's defamatory *per se* statements is Defendant is the party whose social media statements consistently expresses racial animus towards White people. Defendant says that all White people are racist, refers to White people as "entitled White motherfuckers" and the "White skin for me [him]" was why he hated White people. *See Trainor's Amended Answer with Affirmative Answers and Counterclaims* ("Tr. Counter."), at 2, 9, 22, ¶¶ 8, 105, image copies of Defendant's statements follow ¶¶ 8 and 105 [D.E. 446]; *See also Trainor's Response to Motion in Limine* at 4, ¶ 5 ("Tr. Res. Limine") [D.E. 600] (Defendant's bad faith attempt to impute his own statements and arguments to Trainor).

Moreover, the context of Defendant's defamatory per se statements is that Defendant publishes these statements to his more than two (2) million social media followers, where he holds himself out as an authority who's facts are above reproach, who has inside connections to state and federal law enforcement, and whose "journalism has been picked up by major news media organizations." *Third Amended Complaint ("TAC") at 5 [D.E. 434].*

The Order contains factual mistakes that were inserted by the Court. The Court inserted as an alleged fact the following statement "*Camp, in turn, connected the couple with Defendant Patrick Trainor, a New Jersey lawyer…*" *Order* at 2 [D.E. 674]; *See also Trainor Opposition to Defendant's Motion for Summary Judgment* ("Tr. Opp.") at 20-21 [D.E. 667]. This statement has been repeatedly denied, unproven, and Defendant

failed to adduce evidence or information that disproves the denials, or that proves the statement is factual. In fact, the Court rejected this claim following the evidentiary hearing on May 19, 2025, and the Court reviewed all communications Trainor received from email addresses purporting to belong to Camp. Judge Steele ruled that "[n]one of the evidence presented at the evidentiary hearing establishes any of Noshirvan's [Defendant's] allegations…the communications between Trainor and Camp were mostly unilateral messages from Camp to Trainor." *Order and Opinion, Evidentiary Hearing* on *May 19, 2025*,("Order Ev. Hear.") dated August 12, 2025, at 14-15.

Lastly, Trainor's "rather muted defense" [*Order* at 6] as described by the Court, neglects to acknowledge Defendant's defective statement of undisputed facts [Def. MSJ. at 3-6], and that Defendant regurgitated arguments from his *Motion to Dismiss Trainor's Counterclaims* ("Def. MTD") at 5-25 [D.E. 458] that were rejected by the Court, *e.g.*, Trainor was a public figure, claims barred by the statute of limitations, defamatory *per se* statements were protected by the litigation privilege. *See Order and Opinion on Denying Defendant's Motion to Dismiss Trainor's Counterclaims* ("Opinion TAC"), at 6-7, 34 [D.E. 603].

## II. Summary of Relevant Facts

1. Trainor has never published or made statements in support of neo-Nazi, White supremacist, or similar ideologies, nor has he ever been a member of, or belonged to organization(s) that support such beliefs.

2. In his written responses Trainor's RFP's and Interrogatories Defendant admitted that he did not possess information or evidence that proved Trainor published or made statements in support of neo-Nazi, White supremacist, or similar ideologies, because he produced no evidence or information that proved Trainor did. *Tr. Opp.* at 18-24.

3. In his written responses Trainor's RFP's and Interrogatories Defendant admitted that he did not possess information or evidence that proved Trainor was ever a member of a neo-Nazi, White supremacist, or ideologically similar organization(s), or that Trainor subscribed to said beliefs, because he produced nothing. *Id.*

4. On January 24, 2025, Magistrate Dudek conducted a hearing on Trainor's motion to compel Defendant to produce responses to Trainor's RFP's. Pursuant to the hearing, the Court ordered Defendant to produce all documents in his possession that showed Trainor marketed to "supremacists, proud boys, and nazi sympathizers." *See Order* dated January 27, 2025 [D.E. 241]; *See also Tr. Opp.* at 18-24. Defendant did not produce evidence or information that supports his statements.

5. On May 5, 2025, in spite of not possessing any proof, Defendant published defamatory *per se statements* that defamed Trainor as a neo-Nazi. *Trainor Countercomplaint* ("Tr. Counter.") at 81-82, ¶ 8 [D.E. 446].

6. On April 24, 2026, again in spite of not possessing any proof, Defendant defamed Trainor as a White supremacist during Episode 8 of his

YouTube podcast. *See Trainor's Opposition to Motion for Summary Judgment,* at 4 ("Tr. Opp.") [D.E. 667].

7. After admitting that he possessed no evidence or information that supports his defamatory *per se* statements about Trainor, Defendant published them anyway.

## III. Legal Standard

A district court should grant a motion for reconsideration when the moving party "sets forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Stalley v. ADS All. Data Sys., Inc.*, 296 F.R.D. 670, 687 (M.D. Fla. 2013). "Courts have recognized three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice." *Florida Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds,* Inc., 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998). A district court has the power to modify or vacate any non-final order at any point before final judgment. *CSX Transp., Inc. v. City of Pensacola, Fla.*, 936 F. Supp. 885, 889 (N.D. Fla. 1995).

Further, Trainor seek clarification from the Court concerning the facts from Defendant's *Statement of Undisputed Material Facts* ("SUMF") the Court relied upon to grant Defendant's motion for summary judgment. Defendant's SUMF is not a concise, non-argumentative statement of facts, rather, Defendant asserted multiple allegations per numbered paragraph, combined with speculation, legal conclusions, mischaracterizations, and Defendant failed to include pinpoint citations to

supporting facts. Defendant's defective SUMF renders it impossible to distinguish alleged facts, and Trainor is entitled to know which alleged facts and pinpoint citations the Court relied upon to grant Defendant's motion.

## IV. Argument

Trainor's motion should not be construed as his venting dissatisfaction with the Court's reasoning, because a Court that has made an error in the application of controlling law has not made a reasoned decision. The Court's finding that Defendant's statements were statements of opinion and rhetorical hyperbole, therefore, were not actionable is a misinterpretation of controlling law that will result in a manifest error of law if it stands. *Order* at 2, 9-10 *quoting Lynch v. New Jersey Educ. Ass'n,* 161 N.J. 152, 735 A.2d 1129 (1999), *Specht v. Suarez*, 798 F. Supp. 3d 485, 505 (D.N.J. 2025); *quoting Ward v. Zelikowsky*, 643 A.2d 972, 983 (N.J. 1994), *citing Gomez Noriega v. City of Jersey City*, No. 2:24-cv-10599-WJM-JRA, 2025 WL 1104016 (D.N.J. Apr. 14, 2025); *quoting Jorjani v. New Jersey Inst. of Tech.*, No. 18-cv-11693, 2019 WL 1125594, at 7 (D.N.J. Mar. 12, 2019).

Under *Ward*, the leading case, "[c]ourts do not automatically decide a case on the literal words of the challenged statement[] [r]ather, courts must consider the impression created by the words used as well as the general tenor of the expression as experienced by a reasonable person." *Ward v. Zelikowsky*, 643 A.2d 972, 980 (N.J. 1994). The "courts are required to examine the offending statements in the context in which the statements were made to determine whether the statements support a

claim for defamation." *Id.* at 983. Further, "[a] statement can be defamatory only if it can be proved true or false." *Lynch v. New Jersey Educ. Ass'n,* 161 N.J. 152, 167, 735 A.2d 1129, 1137 (1999)).

In the Court's cited authorities, those courts found defendants statements were opinions based on the plaintiffs published writings or speech. Here, Defendant did not possess statements or writing by Trainor that he could rely on to form an opinion. In *Ward*, during a condominium owners meeting, defendant said of the plaintiff "[t]hey don't like jews." *Ward,* 643 at 975. The court found Defendant's statement was an opinion, because it was based on defendant's conversation with a third party who told defendant that plaintiff made anti-Semitic statements. *Id.* at 977. Ward does not stand for the notion that a party can defame another when he is fully aware his statements or false and then claim it is hyperbole.

In *Jorjani*, the plaintiff, ironically, an Iranian-American philosophy professor at New Jersey Institute of Technology ("NJIT"), authored an essay, wherein, he opines about the role genetics play in the intellectual capabilities of various races and intellectual superiority of some races. *Jorjani v. New Jersey Inst. of Tech.*, No. 18-cv-11693, 2019 WL 1125594, at 1 (D.N.J. Mar. 12, 2019) In addition to the essay, a far-left organization masqueraded as a student to secretly record a private conversation between plaintiff and the alleged student, where the plaintiff allegedly reiterated statements from the essay and theorized that by 2050 opinions in Europe of Hitler will change, such that Hitler will be seen as a great leader. *Id.*

Plaintiff's essay and recorded statements were the subject of an online New York Times op-ed. *Id.* at 1-2. After the op-ed was published various members of NJIT's faculty and administration published statements that said the plaintiff was a White supremacist, full of racism, unfit to teach, and was promoting pseudo-science. *Id.* 6-8. Plaintiff sued to be reinstated and his suit alleged the statements released by NJIT's faculty and administrators were defamatory. *Id.* at 3-8.

The Court citing *Ward*, held that analysis to determine if defendants' statements support a claim for defamation requires that the "courts must still examine the context in which the statements were made". *Id.* at 7. In *Jorjani*, Defendant's argued that "Plaintiff's recorded statements and theories are pseudo-science; racist; similar to those used to support slavery, Jim Crow laws, and the Holocaust; ***have been discredited***; and have no place in academia." *Id.* at 6. Based on that the Court found the context of defendants' statements was to be "properly understood as defendants expressing opinions" of what they described as Plaintiffs racist, "discredited theories and pseudo-science." *Id.*

In *Gomez*, plaintiff's claims for defamation under the New Jersey Tort Claims Act were denied on a procedural defect, because Plaintiff failed to file the requisite pre-suit notice. *Gomez Noriega v. City of Jersey City*, No. 2:24-cv-10599-WJM-JRA, 2025 WL 1104016 (D.N.J. Apr. 14, 2025). Plaintiff was fired as a staffer from a far-left candidate's campaign for governor of New Jersey, because he made two or three $50 monthly donations to his sister campaign for the Missouri Secretary of State, where the sister was allegedly a far-right candidate. Plaintiff sued after he was fired,

because he was called racist for donating to his sister's campaign. The Court found his donations were speech and in dicta at footnote 9 without discussion of the context, stated "[g]eneralized accusations of bigotry or extreme bias-without a tether to specific, verifiable facts-are protected opinions." *Id.* fn. 9.

Further, the court quoted *Lynch v. New Jersey Educ. Ass'n,* 735 A.2d 1129 (1999), which is not applicable to Trainor, because the Lynch plaintiff was an elected New Jersey State Senator, therefore, a public figure, whereas, this Court already ruled that Trainor is private figure, when it rejected Defendant's attempts to portray Trainor as a limited-public figure. *Opinion TAC* at 6-7, 34.

In *Specht*, the plaintiff who was a supervisory county prosecutor posted a statement to a "workplace Slack group chat" where he said "a particular software platform used by the county prosecutor's office identifies as Mexican[] - [i]t sleeps when the sun is hottest." *Specht v. Suarez*, 798 F. Supp. 3d 485, 491. (D.N.J. 2025). The prosecutor also posted a "Wall Street Journal opinion piece [that] he posted to his Facebook account" that co-workers disagreed with. *Id.* at 491, 500.

A law firm was hired to investigate the prosecutor's Slack comment and Facebook post. The investigation found one prosecutor who was in the Slack chat found the prosecutor's comment "racist and discriminatory" and became "visibly upset" by it. *Id.* 498. Moreover, the software provider "emailed the county prosecutor to say he was disturbed to learn about the racist joke." *Id.* The investigation resulted in the prosecutor's termination and he sued to be reinstated. *Id.* at 492. The issue before the court in *Specht* was whether the plaintiff's Slack

statement and Facebook posts were racist and a terminable offense. The court found Plaintiff's Slack comment was "certainly" racist and "the kind of thing that can cause the person who made the comment to be fired." *Id.* at 497–98.

Unlike the Plaintiff's in the Court's cited authorities, where it was found that Defendant's formed opinions based on the plaintiffs' statements or writings that were deemed to be racist in nature, Trainor made no such statements or published any writings that Defendant could cite as the basis of his alleged opinion.

Moreover, a statement is defamatory "if it can be proved true or false." *Lynch, 735 A.2d at 1137.* Under *Ward*, the plaintiff prevails "if the underlying or impled facts are untrue" and statements are non-actionable rhetorical hyperbole, when they are "less likely to imply specific facts." *Ward*, 643 A.2d at 980.

Here, Defendant's statements are gratuitous defamation *per se*, that Defendant knew were false when he made them, because he knew he possessed no evidence or information that supported his statements.

Defendant published his defamatory *per se* statements when he had already responded to Trainor's RFPs and Interrogatories, but did not produce evidence or information that proved Trainor was ever an associate or member of a neo-Nazi, White supremacist, or any similar organization, or the he published statements in support of, or espoused such beliefs. Eleventh Circuit case law, which allows circumstantial evidence to prove support for, or membership in such organizations, provides Defendant an opportunity to prove his statements truthful, but he could not do that.

The Eleventh Circuit recognizes several markers, including publication of supportive statements, tattoos, t-shirts, paraphernalia, and memorabilia bearing Nazi insignia, and/or the phrases "1488," "White Pride," "Pure Bred," "Nazi" as indicia of membership supporting such beliefs, and as membership in such organizations or to identify supporters of White supremacist beliefs and/or membership in such organizations. *United States v. Wilson,* 750 Fed. Appx. 877, 879 (11th Cir. 2018).

Defendant adduced no evidence or information that shows Trainor has these tattoos, or possesses t-shirts, clothing, paraphernalia, or memorabilia bearing any of the above insignia or phrases. Defendant's statements are pure pabulum that are product of the hatred of White people that Defendant has expressed in his published social media messages.

Respectfully submitted,

Date: September 8, 2026

Patrick Trainor, Esquire
**LAW OFFICE OF PATRICK TRAINOR, ESQ., LLC**
19 Union Avenue, Suite 201
Rutherford, New Jersey 07070
P: (201) 777-3327
F: (201) 896-7815
pt@ptesq.com
*Attorney for Plaintiff*

## LOCAL RULE 3.01 CERTIFICATION

On September 8, 2026, pursuant to M.D. Fla. L. R. 3.01(g), counsel for Counter-Plaintiff presented the basis for this motion to counsel for Defendant during an electronic conferral, and counsel for Defendant opposes this motion.

September 8, 2026

Patrick Trainor
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

September 8, 2026

Patrick Trainor
*Attorney for Plaintiff*