**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

DANESH NOSHIRVAN,
an individual,

Plaintiff,
v.

JENNIFER COUTURE, et al.,

Defendants.
_____________________________/

CASE NO.: 2:23-cv-01218-KCD-KRH

District Judge: Hon. Kyle C. Dudek
Magistrate Judge: Hon. Kyle R. Huguelet

PATRICK TRAINOR,

Counterclaim-Plaintiff,
v.

DANESH NOSHIRVAN,

Counterclaim-Defendant.
_____________________________/

**PLAINTIFF/COUNTERCLAIM-DEFENDANT'S RESPONSE IN OPPOSITION TO PATRICK TRAINOR'S MOTION FOR RECONSIDERATION AND CLARIFICATION OF THE ORDER GRANTING SUMMARY JUDGMENT (Doc. 676)**

Plaintiff/Counterclaim-Defendant Danesh Noshirvan ("Noshirvan") responds in opposition to Counterclaim-Plaintiff Patrick Trainor's ("Trainor") Motion for Reconsideration and Clarification (Doc. 676) (the "Motion") of this Court's August 28, 2026 Order granting summary judgment on Trainor's remaining counterclaims (Doc. 674) (the "Order"). The Motion identifies no intervening change in law, no new evidence, and no clear error. It instead asks the Court to adopt an opinion-versus-fact test that no court applies, on the strength of arguments and authorities Trainor never

presented in his opposition to summary judgment. And even on its own terms the Motion attacks only one of the Order's three independent grounds, leaving the other two—the statute of limitations and the absence of any agreement between Noshirvan and James McGibney—entirely unchallenged. The Motion should be denied.

## I. Background

Trainor's counterclaims for defamation and civil conspiracy rested on eight alleged statements identified in paragraph 35(a)–(h) of his pleading and on the theory that Noshirvan, McGibney, and an anonymous account acted in concert to publish them. (Doc. 446 ¶ 35; Order at 2–3.) Noshirvan moved for summary judgment. (Docs. 662, 664.) Among other things, the motion argued that the undated Instagram story reproduced at page 82 of Trainor's counterclaim—a screenshot of Senator Durbin questioning Kash Patel, captioned "Sounds like Patrick Trainor"—was "inferential commentary, not a provably false statement of fact," and that New Jersey "protects rhetorical hyperbole and opinion." (Doc. 664 at 12–13 (citing *Ward v. Zelikovsky*, 136 N.J. 516, 529 (1994), and *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152, 167–70 (1999)).)

Trainor's opposition did not engage that argument. (Doc. 667.) It cited no authority on the fact-opinion distinction, did not discuss *Ward* or *Lynch*, and did not attempt to explain how the words "Sounds like Patrick Trainor" could be proven true or false. Its only reference to the post was a one-sentence response to Noshirvan's statement of facts asserting that the image "shows a defamatory per se statement" in which Noshirvan "referred to Trainor as a neo-Nazi." (Doc. 667 at 7–8, ¶ 7(b).) As the Court observed, Trainor "ignore[d] the statute of limitations entirely," abandoned his

theory as to @credibleintel, and confined his substantive argument to the claim that Noshirvan "secretly green-lit McGibney's publications." (Order at 6.)

The Court granted the motion on three independent grounds. First, applying New Jersey's one-year limitations period, the Court held the counterclaims barred to the extent they rely on statements published before July 30, 2024, which disposed of the paragraph 35(a)–(d) statements. (Order at 6–7.) Second, reviewing every document Trainor cited as evidence of a conspiracy, the Court held that "no reasonable jury could find an agreement to defame," which disposed of the civil conspiracy count and of the defamation count insofar as it rested on McGibney's publications. (Order at 7–9.) Third, turning to "[t]he only remaining statement"—the Kash Patel Instagram story—the Court held that the "snarky caption is a textbook example of a non-actionable, rhetorical comparison" under New Jersey law. (Order at 9–10.) Judgment was withheld until the conclusion of trial. (Order at 11.)

The Motion challenges only the third ruling. It contends the Court "misinterpret[ed]" its own authorities because, in Trainor's reading, a statement can qualify as opinion only when the speaker formed it from the plaintiff's own "prior writings or speech," and because the relevant "context" is that Noshirvan supposedly "knew his statements were false" in light of his discovery responses. (Mot. at 3, 9, 12.) The Motion also complains of a sentence in the Order's introduction summarizing Noshirvan's allegations, characterizes the Court's description of his opposition as unfair, and asks the Court to identify "which facts it derived from which paragraph(s)" of Noshirvan's statement of undisputed material facts. (Mot. at 2, 4–5, 7–8.)

## II. Legal Standard

Because judgment has not been entered, the Order is interlocutory and may be revised under Rule 54(b). But the availability of that power does not relax the standard for exercising it. "Reconsideration of a previous order is an extraordinary remedy to be employed sparingly." *Lamar Advert. of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 489 (M.D. Fla. 1999). Courts in this District recognize three grounds for reconsideration—an intervening change in controlling law, the availability of new evidence, and the need to correct clear error or prevent manifest injustice—and require the movant to "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Fla. Coll. of Osteopathic Med., Inc. v. Dean Witter Reynolds, Inc.*, 12 F. Supp. 2d 1306, 1308 (M.D. Fla. 1998); *PaineWebber Income Props. Three Ltd. P'ship v. Mobil Oil Corp.*, 902 F. Supp. 1514, 1521 (M.D. Fla. 1995). Trainor cites the same standard. (Mot. at 7.)

What a motion for reconsideration may not do is equally settled. It cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009)( This prohibition includes new arguments that were "previously available, but not pressed."). A motion that only relitigates what has already been found lacking, or that presents for the first time arguments and authorities available when the underlying motion was briefed, should be denied. *Wilchombe, 555 F.3d at 957* (denial of a motion to amend is "especially soundly exercised" when a party gives no reason for not

previously raising an issue); see *Arthur v. King*, 500 F.3d 1335, 1343-44 (11th Cir. 2007). The Motion fails at every step of that analysis.

## III. Argument

### A. The Motion Raises Arguments Trainor Never Made In Opposing Summary Judgment

Noshirvan's motion squarely argued that the "Sounds like Patrick Trainor" caption was non-actionable inferential commentary and rhetorical hyperbole, and cited *Ward* and *Lynch* for the point. (Doc. 664 at 12–13.) Trainor had every opportunity to respond. He did not. His opposition contains no discussion of the fact-opinion distinction, no analysis of the words of the post, and none of the authorities—*Ward*, *Lynch*, *Jorjani*, *Gomez Noriega*, *Specht*, or *United States v. Wilson*—on which the Motion now relies. (See Doc. 667.) Nor did the opposition advance the theory that now anchors the Motion: that a statement of opinion must be grounded in the plaintiff's own writings, or that the speaker's discovery responses supply the "context" for the fact-opinion inquiry.

Every one of those arguments was available to Trainor in June 2026. *Ward* was decided in 1994; *Lynch* in 1999; *Jorjani* in 2019; *Gomez Noriega* and *Specht* in 2025; *Wilson* in 2018. The discovery responses and the January 27, 2025 discovery order on which the Motion relies predate the summary judgment briefing by more than a year. A party who elects not to respond to a dispositive argument cannot, after losing, demand a second round of briefing on the theory that the Court should have made his

arguments for him. See *Michael Linet*, 408 F.3d at 763; *Wilchombe*, 555 F.3d at 957. That alone warrants denial.

Trainor's complaint that the Court characterized his opposition as "rather muted" (Mot. at 5) only confirms the point. The Motion does not identify a single argument on the opinion issue that the Court overlooked, because there was none to overlook. Trainor's objections to the form of Noshirvan's statement of facts (Doc. 667 at 2–4) are not a substitute for a response on the merits, and the Court did not rely on any of the contested paragraphs in reaching its decision. (See Part III.F, infra.)

### B. The Court Correctly Held That "Sounds Like Patrick Trainor" Is Non-Actionable Opinion And Rhetorical Hyperbole

Even if the Court were inclined to reach arguments Trainor forfeited, the Motion identifies no error, much less a clear one. The Motion's central premise—that a statement may be treated as opinion only if the speaker formed it from "the plaintiffs['] prior writings or speech" (Mot. at 3, 9, 12)—is not the law of New Jersey, of the Eleventh Circuit, or of any jurisdiction. It is a test Trainor has constructed from the facts of the cases the Court cited, and it inverts the analysis those cases actually apply.

*1. The fact-opinion inquiry turns on content, verifiability, and context as perceived by a reasonable reader—not on the speaker's sources or state of mind.* Under New Jersey law, whether a statement is capable of defamatory meaning is a question of law for the court, and the answer "depends on its content, verifiability, and context." *Ward*, 136 N.J. at 529; *DeAngelis v. Hill*, 180 N.J. 1, 14–15 (2004). A statement is actionable only

if it "can be proved true or false," and "[s]tatements of opinion . . . generally cannot be proved true or false." *Lynch*, 161 N.J. at 167–68 (relying on *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20–21 (1990)). The First Amendment independently protects "rhetorical hyperbole" and "loose, figurative" language that no reasonable reader would understand as "stating actual facts." *Milkovich*, 497 U.S. at 20–21; *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6, 14 (1970) ("blackmail"); *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 284–86 (1974) ("traitor"); *Horsley v. Rivera*, 292 F.3d 695, 701–02 (11th Cir. 2002) ("accomplice to homicide," uttered during a heated televised exchange, was non-actionable hyperbole).

Each element of that inquiry is measured from the standpoint of the audience. Trainor himself quotes the governing formulation: courts "must consider the impression created by the words used as well as the general tenor of the expression *as experienced by a reasonable person*." (Mot. at 8 (quoting *Ward*, 136 N.J. at 529-30 ("properly understood by reasonable listeners")) (emphasis added).) Nothing in that test asks what the speaker knew, what the speaker had read, or what the speaker could later produce in discovery. Those questions bear on fault—the negligence or actual-malice element of a defamation claim—which is analytically distinct from, and reached only after, the threshold determination that the statement asserts a verifiable fact. See *DeAngelis*, 180 N.J. at 13–14 (listing falsity and fault as separate elements); *Milkovich*, 497 U.S. at 19–20. A statement that cannot be proven true or false cannot be "false," and no quantum of ill will on the speaker's part changes that. The Motion's

repeated insistence that Noshirvan "knew" his statement was false (Mot. at 3, 12) therefore answers a question the Court never had to reach.

*2. The Motion misreads every authority the Court cited.* Trainor asserts that in *Ward*, *Jorjani*, *Gomez Noriega*, and *Specht* the statements were held to be opinion "because the courts found defendants had formed opinions based upon the plaintiffs['] prior writings or speech." (Mot. at 3.) That is not what those cases hold.

*Ward* is the controlling decision of the New Jersey Supreme Court. The defendant announced at a condominium association meeting that the plaintiffs—private individuals—"don't like Jews." 136 N.J. at 522–23. The court reversed a jury verdict for the plaintiffs and held the statement non-actionable as a matter of law, reasoning that a generalized accusation of bigotry is not the type of statement that can be verified and, uttered in the heat of a contentious meeting, would be understood by listeners as an expression of the speaker's viewpoint rather than as an assertion of fact. *Id.* at 531–36. The court did not hold, as Trainor suggests, that the statement was protected because the defendant had a factual basis for it drawn from a prior conversation. Had the outcome turned on the adequacy of the speaker's basis, the question would have been one of fact for the jury—which is precisely the result the Supreme Court set aside. Trainor's further assertion that "*Ward* does not stand for the notion that a party can defame another when he is fully aware his statements [are] false and then claim it is hyperbole" (Mot. at 9) simply restates his conflation of fault with verifiability. *Ward* holds that a bare accusation of bigotry is unverifiable; whether the accuser believed it is beside the point.

*Jorjani* and *Gomez Noriega* apply *Ward* to exactly the kind of statement at issue here. *Jorjani* holds that calling someone a racist, hater, or bigot—without more—will not result in defamation liability. 2019 WL 1125594, at *7. *Gomez Noriega* holds that generalized accusations of bigotry or extreme bias—without a tether to specific, verifiable facts—are not actionable. 2025 WL 1104016, at *11 n.9. Trainor observes that the *Jorjani* plaintiff had authored an essay and that the *Gomez Noriega* plaintiff had made political donations. (Mot. at 9–11.) But neither court conditioned its holding on the existence of such material; both stated a categorical rule that generalized accusations of bigotry are unverifiable. And Trainor's effort to dismiss the *Gomez Noriega* footnote as "dicta" (Mot. at 11) goes nowhere: the Court cited it as one of several authorities for a proposition that *Ward* itself establishes.

*Specht* is no different. Trainor devotes a page and a half to the facts of the plaintiff's Slack message and the internal investigation that followed (Mot. at 11–12), but never addresses the page the Court cited—798 F. Supp. 3d at 505—which addresses the plaintiff's defamation claim and holds that a general statement accusing someone of bias is opinion. Whatever the *Specht* court concluded about whether the plaintiff's joke was racist has nothing to do with the proposition for which the Court cited the decision. See *Specht*, 798 F. Supp. 3d at 506 ("an accusation of bigotry," does not count as false for New Jersey defamation law).

Finally, Trainor argues that *Lynch* is "not applicable" because the *Lynch* plaintiff was a public figure while this Court has treated Trainor as a private figure. (Mot. at

11.) The Court cited *Lynch* for the requirement that an actionable statement be capable of being proven true or false. (Order at 9.) That requirement derives from *Milkovich* and applies to every defamation plaintiff regardless of status; the fault standard varies with the plaintiff's status, but the threshold requirement of a verifiable factual assertion does not. *Ward* itself involved private plaintiffs and applied the same rule. 136 N.J. at 529–31. Trainor's status is irrelevant to the ground on which the Court ruled.

*3. Discovery responses are not "context."* The Motion's alternative theory is that the Court "failed to consider the context" of the post, and that the relevant context is that Noshirvan "knew his statements were false" because he had been unable to produce documents in response to Trainor's discovery requests and a January 2025 discovery order. (Mot. at 3–4, 12.) This argument fails for three reasons.

First, it misunderstands what "context" means. Context in the fact-opinion analysis refers to the setting in which the reasonable reader encounters the statement—the medium, the surrounding content, the nature of the discourse, and the audience's expectations. *Ward*, 136 N.J. at 532–33; *Horsley*, 292 F.3d at 702. A reader of Noshirvan's Instagram story in May 2025 knew nothing of the parties' discovery disputes. Those disputes could not have shaped the reader's impression of the words and therefore form no part of the inquiry.

Second, the argument is a *non sequitur* even on its own terms. A party's inability to produce documents responsive to a discovery request is not an admission that a statement is false; it is, at most, an absence of one kind of evidence of truth. Falsity is Trainor's burden to prove, not Noshirvan's to disprove. *Phila. Newspapers, Inc. v. Hepps*,

475 U.S. 767, 776–77 (1986); *Dairy Stores, Inc. v. Sentinel Publ'g Co.*, 104 N.J. 125, 151 (1986). And the January 27, 2025 order (Doc. 241) that Trainor invokes concerned a request for documents about marketing of the Anti-Doxing League; it made no finding about the truth or falsity of any statement and predates the post by months.

Third, the "context" Trainor asks the Court to consider is not in the summary judgment record. The Motion's "Summary of Relevant Facts" cites only Trainor's own opposition brief for the proposition that Noshirvan "admitted" he had no supporting evidence (Mot. at 6, ¶¶ 2–4 (citing "Tr. Opp. at 18–24")), and cites nothing at all for its assertion that Trainor has never supported the ideologies in question (Mot. at 5, ¶ 1). Trainor filed no declaration in opposition to summary judgment. Argument in a brief is not evidence, Fed. R. Civ. P. 56(c)(1)(A), and an unsupported assertion in a motion for reconsideration is not "new evidence."

*4. The actual context confirms the Court's ruling.* When the post is examined in the setting a reasonable reader would encounter it, the Court's conclusion is unavoidable. The statement was a caption on a social-media story—a medium in which readers expect commentary, snark, and opinion rather than factual reporting. See, e.g., *Ganske v. Mensch*, 480 F. Supp. 3d 542, 553 (S.D.N.Y. 2020). It was published by one side of a long-running, publicly litigated dispute about the other, a setting in which audiences anticipate invective and discount it accordingly. *Ward*, 136 N.J. at 532–33; *Horsley*, 292 F.3d at 702. And the words themselves are comparative, not declarative: "Sounds like Patrick Trainor" does not assert that Trainor is anything. The screenshot to which the caption was appended depicted a senator questioning a

nominee about his appearance on a podcast whose host was said to have "worked with a neo-Nazi." (Order at 9.) The caption thus draws an analogy between Trainor and a public official who appeared on a podcast with a controversial host. It is two steps removed from the assertion Trainor attributes to it—that he is himself a neo-Nazi—and the analogy is tethered to a disclosed and undisputed fact: Trainor's own appearance as a guest on a podcast, which he confirmed at deposition. (Doc. 664 at 6–7, ¶ 16 (citing Doc. 478 at 19:15–20:3).) Opinion drawn from disclosed facts is protected for that additional reason. *Kotlikoff v. Cmty. News*, 89 N.J. 62, 68–69 (1982); *Lynch*, 161 N.J. at 167–70.

Trainor's remaining "context" arguments—that Noshirvan has a large audience and that Noshirvan has made statements about White people that Trainor characterizes as expressing racial animus (Mot. at 4)—are cited only to Trainor's own pleadings and prior briefs, and in any event have no bearing on whether the words "Sounds like Patrick Trainor" are capable of being proven true or false. The size of a speaker's audience does not convert opinion into fact, and a speaker's supposed motives go, at most, to fault. The Motion's closing assertion that Noshirvan's statements are the "product of the hatred of White people" (Mot. at 13) is invective, not legal argument, and underscores the point: heated accusations of bigotry between adversaries are the paradigm of non-actionable opinion under *Ward*.

*5. The "markers" argument and* United States v. Wilson *are irrelevant.* Trainor closes by citing *United States v. Wilson*, 750 F. App'x 877 (11th Cir. 2018), an unpublished criminal appeal, for the proposition that membership in White-

supremacist organizations may be shown by tattoos, clothing, and paraphernalia, and by arguing that Noshirvan produced no such evidence about him. (Mot. at 12–13.) The argument is new, and it proves too much. The question is not whether Noshirvan could prove that Trainor is a neo-Nazi; the question is whether the caption asserted that he is one, in terms a reasonable reader would take as a verifiable statement of fact. The Court correctly answered no. Trainor's suggestion that the accusation could be tested by inventorying his wardrobe illustrates why generalized accusations of bigotry are treated as opinion: the "proof" Trainor proposes would establish, at most, that he does not belong to an organization the caption never mentioned.

### C. The Motion Leaves The Order's Two Independent Grounds Unchallenged

The Motion attacks only Part III.c of the Order. It does not challenge the Court's holding that all statements published before July 30, 2024 are time-barred (Order at 6–7), and it does not challenge the Court's holding that no reasonable jury could find an agreement between Noshirvan and McGibney to defame Trainor, which disposed of the civil conspiracy count and of the defamation count to the extent it rests on McGibney's publications (Order at 7–9). Those rulings stand regardless of the outcome of the Motion, and they independently dispose of every counterclaim except the single remaining statement addressed in Part III.c.

Trainor's passing suggestion that the Court "rejected" Noshirvan's statute-of-limitations argument at the pleading stage (Mot. at 5) is both immaterial and inconsistent with his own prior filing. In his response to Noshirvan's statement of

undisputed facts, Trainor "[a]gree[d] that the Court ruled that the defamatory per se statements Defendant published about Trainor prior to July 30, 2024, are barred by the New Jersey statute of limitation." (Doc. 667 at 6, ¶ 5 (citing Doc. 603 at 33).) Having conceded the point in June, Trainor cannot recast it in September, and the Motion does not actually ask the Court to revisit it. Trainor's references to the public-figure and litigation-privilege issues (Mot. at 5) are equally beside the point: the Order did not rest on either.

**D. The Order Contains No "Factual Mistakes."**

Trainor contends the Court "inserted as an alleged fact" the statement that "Camp, in turn, connected the couple with Defendant Patrick Trainor." (Mot. at 4.) The sentence appears in the Order's introductory paragraph, which begins "According to Noshirvan," continues "What followed, Noshirvan alleges," and cites the Third Amended Complaint. (Order at 2 (citing Doc. 434).) It is a summary of the allegations that frame the case, expressly identified as such, not a finding of fact. It played no role in any of the three grounds on which the Court ruled, none of which depends on how Trainor came to be involved with Couture and Garramone. An accurate recitation of one party's allegations is not a "manifest error."

**E. The Unpleaded April 2026 Podcast Statement Cannot Support Reconsideration**

The Motion's statement of facts asserts that on April 24, 2026, Noshirvan "defamed Trainor as a White supremacist during Episode 8 of his YouTube podcast." (Mot. at 6–7, ¶ 6.) That alleged statement is not among the eight statements pleaded

in paragraph 35 of the counterclaim, which was filed on July 30, 2025—nine months before the statement is said to have been made. (Doc. 446 ¶ 35.) It was raised for the first time in Trainor's opposition to summary judgment, and even there only by unsupported assertion. (Doc. 667 at 4, ¶ 2.) A party "may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). The Court properly confined its analysis to the statements Trainor pleaded, and the Motion offers no transcript, recording, declaration, or other record evidence of what was said. An unpleaded and unproven statement is not a basis for reconsideration.

### F. The Request For "Clarification" Should Be Denied

Trainor asks the Court to identify "which facts it derived from which paragraph(s)" of Noshirvan's statement of undisputed material facts. (Mot. at 2, 7–8.) The request rests on a false premise. The Order does not rely on Noshirvan's statement of facts for any of its holdings. The limitations ruling rests on the filing date of Trainor's own counterclaim and the dates of the statements pleaded in it. (Order at 7 (citing Doc. 446 ¶¶ 35(a)–(d)).) The conspiracy ruling rests on the Court's review of the documents Trainor himself submitted as evidence of an agreement. (Order at 8 (citing Docs. 667-3, 667-4, 667-10, 667-11, 667-12).) And the opinion ruling rests on the text of the Instagram story as reproduced in Trainor's own pleading. (Order at 9 (citing Doc. 446 at 82).) Trainor's objections to the form of the statement of facts were fully aired in his opposition (Doc. 667 at 2–4) and were before the Court when it ruled.

Nor does any rule entitle a litigant to an annotated order. The Federal Rules provide that a court "is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56." Fed. R. Civ. P. 52(a)(3). The Order in any event explains its reasoning with precision, identifying the statements at issue, the documents reviewed, and the legal basis for each conclusion. There is nothing ambiguous to clarify. A request that the Court rewrite its order to Trainor's specifications, so that he may identify further points of disagreement, is not a proper motion for clarification; it is an invitation to further relitigation, which the reconsideration standard forecloses.

## IV. Conclusion

The Motion presents no new law, no new evidence, and no error. It advances arguments that Trainor chose not to make when the issue was properly before the Court, misreads the authorities on which the Order rests, and leaves two independent and dispositive grounds for the Order untouched. Noshirvan respectfully requests that the Court deny Trainor's Motion for Reconsideration and Clarification (Doc. 676) in its entirety.

Dated: September 09, 2026

Respectfully submitted,

Nicholas A. Chiappetta, Esq.
Florida Bar No. 1006407
**Chiappetta Trial Lawyers**
Attorneys for Noshirvan
2101 Vista Parkway, Suite 258
West Palm Beach, Florida 33411
Direct: (561) 768-4500
Fax: (561) 768-4600
service@chiappettalegal.com
nick@chiappettalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 09, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Nicholas A. Chiappetta
Nicholas A. Chiappetta