FILED - USDC - FLMD - FTM
SEP 24 2026 PM12:30

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

CASE NO. 2:23-CV-01218-KCD-KRH

DANESH NOSHIRVAN
an individual,

Plaintiff,

v.

JENNIFER COUTURE, an individual,
*RALPH GARRAMONE M.D.*, an individual,
RALPH GARRAMONE, M.D., P.A. d/b/a
GARRAMONE PLASTIC SURGERY,
CENTRAL PARK OF SOUTHWEST
FLORIDA, LLC, OMG REALTY, LLC,
THE LAW OFFICE OF PATRICK TRAINOR
ESQ., LLC d/b/a THE LAW OFFICE OF
PATRICK TRAINOR, PATRICK TRAINOR,
an individual, and
ANTI-DOXING LEAGUE INC.

Defendants.
_________________________________________/

*RALPH GARRAMONE, M.D., P.A. d/b/a*
GARRAMONE PLASTIC SURGERY,
JENNIFER COUTURE, an individual,
RALPH GARRAMONE, M.D., an individual,

Counter-Plaintiffs,

v.

DANESH NOSHIRVAN,

Counter-Defendant.
_________________________________________/

**TIME-SENSITIVE MOTION TO RESOLVE THRESHOLD WITNESS ISSUES AND FOR LEAVE TO RENEW PROTECTIVE RELIEF**

Nonparty Richard A. Luthmann, Jr., appearing solely to protect his own interests as a prospective witness and more broadly as a journalist and member of the press, requests a ruling on the threshold procedure by October 9, 2026, and on any remaining protective issues by October 23, 2026. The trial term begins December 1, 2026; the final pretrial conference is November 20. Docs. 672, 675. Deciding these questions only as testimony begins could make relief ineffectual: confidential information cannot be undisclosed, and contemporaneous reporting cannot be restored after the trial. These proposed decision dates permit ordinary opposition, orderly trial preparation, and a meaningful opportunity for an aggrieved person to seek whatever review or interim relief the Eleventh Circuit has jurisdiction to provide. They are requested dates, not existing deadlines. This motion seeks no continuance of trial.

The threshold request is important. Judge Steele denied intervention and allowed renewal of protective relief only after resolution of the witness-related motions in limine. Doc. 659 at 5–6 & n.2. Luthmann does not renew intervention. He first requests prompt resolution of the portions of Docs. 598 and 599 identified in that order, followed by consideration of the protective relief set out below. If that sequence cannot be completed promptly, he asks the Court expressly to modify only the timing condition in Doc. 659 and permit consideration now. Until the Court grants that procedural relief, the substantive requests below are presented conditionally, not as an assertion that Luthmann may disregard Doc. 659.

## I. The precise relief requested

The Court should require each party wishing to call Luthmann to identify the documents he must authenticate, any additional testimony sought, its relationship to a presently live claim or

defense, and why reasonably available alternatives will not suffice. If authentication can be resolved and no other material testimony remains, the Court should remove him from that party's witness list. If live testimony is necessary, the Court should set it at the earliest practicable point, preferably first, define its permissible subjects, and discharge him from further attendance and sequestration when that testimony is complete unless a concrete basis for recall remains.

Before compelling disputed newsgathering information, the Court should determine the applicable privilege, its factual foundation, any waiver, and whether the requesting party has satisfied the governing standard. Before permitting inquiry into private medical information or a prior Fifth Amendment invocation, it should require a particularized proffer and rule outside the jury's presence. The Court should also clarify that an evidentiary ruling governing presentation at trial does not, without a separate lawful order, prohibit independent reporting outside court.

Finally, an order compelling disputed disclosure or imposing a new restriction on Luthmann's independent reporting should specify its grounds, scope, effective date, and duration. Luthmann requests a fourteen-day administrative stay of that particular obligation, if imposed, to permit a prompt request for district-court and appellate relief. He does not claim that mentioning the First Amendment creates an automatic appeal or stay.

## II. <u>The record warrants a present decision</u>

### A. <u>The prior order preserved protective relief but controlled its timing</u>

On March 4, 2026, Luthmann filed his motion and declaration at Docs. 620 and 621. On May 11, the late, great Judge Steele denied intervention and denied protective relief without prejudice. He identified a motion to exclude Luthmann's testimony, Doc. 598 at 7, and a motion to exclude his emails to the Trainor defendants, Doc. 599 at 16. He explained that those motions

might resolve the dispute. Doc. 659 at 5. His instruction was express: "Luthmann is not permitted to refile his motion to intervene." Id. at 5 n.2. Exhibit A supplies the complete order.

The public docket reviewed through Doc. 678 does not disclose a decision resolving those two identified requests. Luthmann therefore seeks a sequencing decision rather than pretending that the condition has been satisfied. If the Court has resolved them in an oral ruling or an entry not reproduced on the public docket, he requests identification of that disposition and application of it to the remaining protective questions.

Since Doc. 659, this action was assigned to Judge Dudek, the December trial term was set, and Noshirvan obtained summary judgment on Trainor's counterclaims. Docs. 670–674. The latter ruling may change the need for some testimony, but it does not necessarily dispose of the motions *in limine* or every claim against the Trainor defendants. Noshirvan has also moved for summary judgment on the Garramone counterclaim. Doc. 678. A current evidentiary proffer should address the claims that will actually be tried, not merely repeat a witness designation prepared for an earlier posture.

**B. <u>The witness list promises authentication and a Fifth Amendment invocation</u>**

Noshirvan's filed witness list describes Luthmann's expected testimony in one sentence: "Mr. Luthmann will authenticate documents and plead the fifth again." Doc. 610-12 at 7, item 18 (Ex. B). Yet the correspondence filed with Luthmann's declaration reflects that he had offered authentication and stated that he did not intend to invoke the Fifth Amendment. Doc. 621 at 12–13, 19–21 (Ex. C). The present declaration renews a concrete offer to authenticate specifically identified, complete, and accurate copies of his own publications and communications after reviewing them. His September 20, 2026 conferral request made that offer directly to counsel and

asked them to identify both the documents and any remaining need for live testimony. As of his September 23 follow-up, no counsel had responded. Luthmann Decl. ¶¶ 26–30; Ex. H at 1–3.

That offer does not concede the truth of every statement, the completeness of an opponent's excerpt, relevance, admissibility, or waiver of unrelated privileges. Nor does a unilateral offer itself establish an agreed stipulation. It does, however, require a practical answer: which genuine authentication dispute still needs this journalist on the stand, and what additional admissible testimony is actually sought?

The prediction that he will "plead the fifth again" likewise deserves correction or a supporting proffer. A lawyer cannot supply a witness's future constitutional decision by writing it into a list. Luthmann's present intention to answer proper questions does not erase his earlier testimony or decide any issue of waiver. It does defeat the premise that a future refusal may simply be assumed.

### C. <u>The Court has already found misconduct by both Noshirvan and Chiappetta</u>

The concern about misuse of litigation rests on more than Luthmann's dislike of Mr. Noshirvan and opposing counsel (which is admittedly substantial). In Doc. 454, Judge Steele found that Noshirvan's deposition conduct showed subjective bad faith. Id. at 29. He found specified post-deposition accusations against Julian Jackson-Fannin false and intentionally directed toward foreseeable harassment and intimidation. Id. at 30–31. He also held: "Chiappetta also acted in bad faith and is subject to sanctions under the Court's inherent powers." Id. at 31. The order publicly reprimanded Chiappetta and warned Noshirvan that similar conduct could bring more severe sanctions, including dismissal. Id. at 33–35. Exhibit D contains the complete opinion, including its limitations and findings unfavorable to Luthmann.

Those findings establish that both men have been bad actors in the conduct adjudicated by this Court. They do not automatically establish that every later motion or witness designation is abusive. Here, however, they strengthen the reason to test a designation that pairs an apparently curable authentication task with a promised constitutional spectacle. Noshirvan and Chiappetta must not be permitted to use the machinery of a federal trial to "buffalo" the First Amendment—to obtain through unnecessary witness burdens a restriction on reporting they have not justified directly. The requested protection turns on necessity, privilege and burden, not punishment for disfavored speech.

Candor also requires addressing the other side of Doc. 454. Judge Steele found (based on Couture's testimony and without the benefit of Luthmann's) that Couture supplied Luthmann with expert disclosures after obtaining an assurance against further sharing; that Luthmann published them contrary to that assurance; and that publication led to harassment and the expert's withdrawal. Id. at 15, 17–18. The Court denied the requested bad-faith sanctions against Couture, but granted scheduling relief. It also noted that a protective order subsequently restricted dissemination of nonpublic expert reports. Id. at 15, citing Doc. 251. That is not a judgment exonerating Luthmann from every conceivable claim or conferring immunity from testimony. It is a reason to require an identified, claim-specific proffer and adjudicate any applicable privilege, rather than make the untenable assertion that he could possess no relevant firsthand information.

**D. <u>Noshirvan himself invokes the connection to Luthmann's stayed case</u>**

In his September 4 opposition in Luthmann v. Noshirvan, No. 2:25-cv-00337, Noshirvan, through Chiappetta, characterized this action as involving "overlapping publications and witnesses" and the same online conduct pleaded as a "repeatable method." Case 337, Doc. 106 at 18 (Ex. E). He argued that the Couture action's resolution "will narrow, and may eliminate,

disputed issues" in Luthmann's case. Id. He alternatively proposed deciding his dismissal motion while pleading, discovery, and scheduling remained stayed. Id. at 19. These are his litigation positions, not judicial findings that the trial will bind Luthmann.

Case 340 has now also been transferred to Judge Dudek. Couture v. Noshirvan, No. 2:23-cv-00340, Doc. 225 (Sept. 16, 2026). Common assignment permits informed coordination; it does not consolidate the cases. Luthmann does not acquire party status in 1218 because he is plaintiff in 337, and he seeks no ruling here lifting the stay in 337. But the overlap invoked by Noshirvan makes an early definition of Luthmann's role especially sensible. Noshirvan cannot establish the necessity of restricting a journalist merely by describing another case as related.

**E. <u>Trial exclusions and restrictions on publication must remain distinct</u>**

Doc. 593 seeks exclusion of inflammatory characterizations from trial, including references in testimony, exhibits and argument. Id. at 2–3, 20–21 (Ex. F). Luthmann recognizes that this is an evidentiary motion, not an existing order gagging the press. Its merits should be decided under the applicable evidence rules. The concern here is avoiding an unwarranted expansion of any resulting order into a restriction on independent public reporting merely because the reporter appears on a witness list.

Noshirvan's earlier testimony adds context, without establishing an independent threat. When explaining his failure to attend a conference in Case 337, he referred to Luthmann's prior Fifth Amendment invocation and said, "I thought this would not be someone I would have to worry about any longer." Sept. 10, 2025 Tr. 58–59, reproduced at Doc. 621 at 96–97 (Ex. G). The surrounding exchange concerns Noshirvan's expectations about litigation and his missed calendar obligation. Luthmann relies on that limited context, not as a claim that the words alone prove a plan to suppress the press.

**F. <u>Renewed conferral requests have produced no answer to concrete proposals</u>**

On September 20, 2026, at 11:57 a.m., Luthmann requested a substantive conference about this motion. He identified the threshold problem under Doc. 659 and seven proposed subjects for agreement: an early ruling; a current evidentiary proffer; authentication by stipulation or declaration; limited attendance and sequestration; advance rulings on disputed questioning; defined limits on reporting restrictions; and time to seek available review. He invited partial agreement and alternatives, offered a telephone discussion, and requested a response by September 22 at 5:00 p.m. Eastern. That was his proposed response time, not a court-imposed deadline. Ex. H at 2–3; Luthmann Decl. ¶¶ 26–29.

On September 23 at 11:43 a.m., Luthmann followed up with Chiappetta and the other counsel and recipients shown in the email header. He reported that he had received no response from any counsel and stated: "I remain available to meet and confer." Ex. H at 1. Thus, as of that documented follow-up, counsel had supplied no position on the proposed accommodations, no counterproposal, and no conference time. The record identifies written requests and an offer to speak by telephone; it does not establish that a telephone conference occurred or that a telephone call was attempted. Id.; Luthmann Decl. ¶¶ 29–30.

Luthmann submits the entire four-page email record, including his pointed commentary. He relies on the concrete requests and his continuing willingness to discuss them, not on the personal or political characterizations in the correspondence. Silence does not establish consent, a concession that his testimony is unnecessary, or purposeful evasion. It does leave serious questions about testimony, privileged information, and contemporaneous reporting unresolved. A witness designation should be supported by an identifiable evidentiary need, and the Court should not

allow unanswered invitations to discuss that need to postpone a decision until meaningful protection is no longer possible.

Judge Dudek's published procedures require a substantive conversation and caution that mere attempts to confer do not satisfy Local Rule 3.01(g). Luthmann therefore does not certify a completed conference. He invokes the unavailable-opponent procedure in Rule 3.01(g)(3), requests consideration of the documented efforts and a timely supplemental certificate, and undertakes to continue diligent contact efforts for three days after filing. If the Court finds the present showing insufficient to use that procedure, he requests a short opportunity to complete conferral, with a definite date for counsel to participate, rather than allowing the witness issues to remain unresolved into trial. He seeks no sanctions for nonresponse on this record. Authorities: M.D. Fla. Local Rule 3.01(g)(1)–(3); Judge Kyle Dudek, Preferences, Motions, Local Rule 3.01(g) (reviewed September 23, 2026).

## III. A narrow protective order is authorized and workable

### A. The Court can resolve the threshold and manage actual witness burdens

Rule 16(c)(2)(C), (D), (L) and (P) permits management of evidentiary questions, unnecessary proof, special procedures for difficult actions, and other matters facilitating fair and efficient disposition. Rule 611(a) directs reasonable control over witness examination to ascertain the truth, avoid wasted time, and protect witnesses from harassment or undue embarrassment. These powers support a current proffer and an orderly sequence for Luthmann's testimony without granting him intervenor status.

Rule 26(c)(1) additionally permits protection, on good cause, of a person from whom discovery is sought. Rule 45(d)(1) requires the issuing party or attorney to avoid undue burden or expense, and Rule 45(d)(3)(A)(iii)–(iv) requires appropriate protection from privileged disclosure

and undue burden on a timely motion in the court for the district where compliance is required. Luthmann does not ask the Court to quash an unidentified or hypothetical subpoena. Any request to quash a presently served subpoena must identify the instrument, service, compliance location and disputed commands; any later instrument remains subject to the proper court's authority and the applicable deadlines. The immediate dispute concerns the filed witness designation and trial management.

If the expired general motions deadline would otherwise bar this request, good cause exists for the limited adjustment under Rule 16(b)(4): Doc. 659 expressly deferred renewal, the new trial calendar fixes the prospective harm, and intervening merits rulings may change the witness's relevance. A successor judge's appointment alone is not a reason to disregard a prior order. Resolving the condition the prior judge imposed, or modifying only its timing to make the preserved remedy usable, respects that order.

**B. Privilege must be decided for the information actually sought**

In United States v. Capers, 708 F.3d 1286, 1303–04 (11th Cir. 2013), the Eleventh Circuit applied a qualified privilege protecting professional newsgathering in civil and criminal proceedings. The requesting party must establish high relevance, necessity to proper presentation of the case, and unavailability from other sources. The court sustained protection because the requesting party had not established the absence of an alternative source. Id. Applying that analysis requires knowing what information the witness is expected to supply.

Rule 501 requires attention to governing substantive law: state law governs privilege concerning a claim or defense for which state law supplies the rule of decision in a civil case. Where Florida law governs the particular inquiry, Fla. Stat. § 90.5015 requires a clear and specific showing of material relevance to unresolved issues, unavailable alternative sources, and a

compelling interest. Subsection (3) requires a hearing and clear, specific findings before ordering the protected portion disclosed. Subsection (4) addresses publication without waiver; subsections (6)–(7) expressly contemplate authentication affidavits while preserving scrutiny of authenticity and accuracy.

The Florida definition also contains specific requirements, which Luthmann meets. He has supplied an audience count and holds himself out as a journalist. Luthmann's declaration supplies his professional reporting background; if the statutory occupational foundation is disputed, he requests an opportunity to supply the particular facts and evidence relevant to the information sought. His federal privilege argument and ordinary protections against unnecessary or harassing examination remain independently presented.

Nor does calling a communication "journalism" settle the issue. Personal participation in events, an already disclosed communication, an applicable statutory exclusion, or a demonstrated waiver can require different treatment. Herbert v. Lando, 441 U.S. 153, 169–77 (1979), rejects an absolute First Amendment privilege against editorial inquiry relevant to a defamation claim against the publisher. Luthmann seeks a qualified, item-specific determination, not categorical immunity for everything he has written or done. His status as a plaintiff elsewhere neither destroys a valid privilege here nor creates one where none exists.

The practical procedure is straightforward: require specific questions or subjects and identified exhibits; permit a privilege description that does not itself disclose the protected information; require the proponent's necessity and alternatives showing; and resolve disputed matters outside the jury's presence. If confidential examination of a document is necessary, it should occur through a court-authorized in camera or properly restricted submission. No confidential source need be exposed merely to explain the objection.

### C. Resolve authentication first and avoid unnecessary sequestration

Under Rules 401–403 and 611(a), the Court may eliminate needless cumulative testimony while preserving evidence with genuine probative value. Luthmann offers a document-by-document stipulation or appropriate authentication declaration. The requesting party should explain why that will not resolve its foundational issue, or identify the additional material testimony. The Court need not assume that an affidavit automatically makes all evidence admissible or compel the parties to agree about contested facts.

If relevant testimony remains, early examination followed by an express ruling on discharge and recall is a practical accommodation. A pretrial recorded deposition is another possible solution if the parties stipulate to its trial use or the requirements of Rule 32 and the evidence rules are otherwise met. Taking a deposition does not by itself excuse a witness from trial or end sequestration. Those matters require agreement or an order supported by the applicable rules.

Rule 615(a) ordinarily requires courtroom exclusion of witnesses on request and contains no general press exception.[1] Luthmann does not ask for one. His party status in 337 does not trigger the natural-person-party exception in 1218. Instead, the Court should first decide whether testimony remains necessary and, if so, limit the period during which he remains a prospective witness. A speculative reservation of recall should not perpetuate exclusion after the identified evidentiary purpose has been served.

---

[1] Luthmann is prepared to seek a final legal determination on this point and on these facts, as he has covered this matter as a journalist and reporter for years and has declared his intention to continue to cover this case and related matters for journalistic and reporting purposes. His position is that the press clause of U.S. Constitution Amendment I is implicated. Luthmann: "No law" means no law.

Rule 615(b) makes a second distinction: courtroom exclusion alone does not automatically bar access to trial testimony outside the courtroom. Such restrictions require an additional order. Any restriction the Court finds necessary to prevent tailoring should identify what Luthmann may not access, how long the restriction lasts, and its factual justification. He requests an express end to that restriction upon discharge, absent a supported continuing need.

### D. Protect private medical information through specific rulings

Questions about medical history, diagnoses, treatment or appointments should require an advance explanation of their relevance to a live issue and consideration of less intrusive proof. Rules 403 and 611(a) permit control of harassment and unfair embarrassment; Rule 26(c) supplies protection where discovery is involved. The proposal does not shield genuinely relevant facts about perception, memory, bias, or an asserted claim merely because they concern health.

Luthmann does not assert that HIPAA creates a blanket testimonial privilege or that every physician communication is privileged under federal law. An actual psychotherapist communication can present a distinct question under Jaffee v. Redmond, 518 U.S. 1, 10–15 (1996) or applicable state law, subject to foundation and waiver. The Court should decide any such specific claim before disclosure, and should avoid placing unnecessary medical details in the public record merely to resolve relevance.

### E. Correct the future Fifth Amendment prediction and rule on any proposed historical use

Luthmann presently intends to answer proper nonprivileged questions. That does not permit him to make a prospective waiver of every conceivable question or to erase a prior invocation. It also does not justify presenting counsel's prediction of a future invocation as a settled fact. The witness description should be corrected to identify the testimony actually sought.

The Court should require advance notice before any party asks a question for the purpose of eliciting an invocation or argues an inference from earlier testimony. It can then decide relevance, context, prejudice, and any applicable privilege outside the jury's presence. Baxter v. Palmigiano, 425 U.S. 308, 318–20 (1976), permits adverse inferences in appropriate civil circumstances; it does not make every historical invocation admissible for every purpose, particularly against a different person. Luthmann requests that determination, not a criminal-case rule mechanically transplanted into this civil action.

## IV. Protect reporting and preserve a meaningful opportunity for review

An evidentiary order determines what may be presented in the proceeding. It should not become a prohibition on independent publication by implication. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 558–70 (1976), imposes demanding scrutiny on prior restraints directed at reporting. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 32–37 (1984), nevertheless permits properly supported restrictions on information obtained through compelled discovery and distinguishes information acquired from other sources. Neither case licenses violation of a valid protective order, witness intimidation, juror contact, or disruption of proceedings.

Luthmann seeks a precise clarification: any ruling on Doc. 593 governs its specified trial use; it does not silently create an independent publication ban. A proposed restraint extending further must be identified, noticed, and justified under the standard applicable to the actual restriction. This motion does not seek a declaration that every past or future Luthmann publication is lawful, or an adjudication of defamation claims pending in another case.

Timing is part of effective protection. The loss of First Amendment freedoms, when actually shown, can constitute irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion). Here the claimed harm is concrete: loss of contemporaneous observation

during the identified trial, inability to report events firsthand when they occur, and compelled disclosure of protected information before the objection can be reviewed. The Court can assess those harms against the specific evidentiary need rather than allow an avoidable last-minute collision.

Early adjudication must allow use of the proper appellate procedure. Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 108–12 (2009), rejects automatic collateral-order review of adverse attorney-client disclosure orders and discusses limited alternative routes. It does not decide every possible order affecting a nonparty journalist. Any appeal must independently satisfy 28 U.S.C. §§ 1291 or 1292; any mandamus petition must satisfy the demanding requirements of Cheney v. United States District Court, 542 U.S. 367, 380–81 (2004), including lack of adequate alternative relief, a clear and indisputable right, and appropriateness under the circumstances. An ordinary discovery ruling does not become an injunction merely because the movant gives it that name.

For those reasons, Luthmann requests a reasoned written ruling sufficiently before trial, followed, if necessary, by a fourteen-day administrative stay limited to compelled disclosure or a newly imposed reporting restraint. Any longer stay would require a separate showing. Where applicable, he would first seek a stay in this Court under Federal Rule of Appellate Procedure 8; a mandamus application would proceed under Rule 21. If a magistrate judge enters a nondispositive order, objections ordinarily proceed under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A); neither an objection nor a petition should be assumed to stay compliance. The schedule should permit orderly use of the proper route, not promise a route the law does not provide.

## V. Requested disposition

Luthmann respectfully requests that the Court:

1. By October 9, 2026, resolve the portions of Docs. 598 and 599 identified in Doc. 659, or expressly modify only Doc. 659's timing condition to permit the protective issues presented here to proceed now; leave the denial of intervention undisturbed.
2. Require any party seeking Luthmann's testimony to submit, within seven days of the threshold order, a current proffer identifying exhibits, testimony, relevance to live issues, estimated examination time, and inadequacy of available alternatives; permit a focused response from Luthmann if additional material is required.
3. By October 23, 2026, if reasonably practicable after opposition and necessary factual development, resolve the protective requests: eliminate unnecessary testimony; otherwise set early, limited examination and express discharge or a supported recall arrangement.
4. Require advance, question-specific resolution of contested newsgathering privilege, medical-privacy inquiries, and proposed use of a Fifth Amendment invocation; order no protected disclosure without the findings required by the applicable law.
5. Require correction or substantiation of the prediction that Luthmann will invoke the Fifth Amendment; specify the scope and duration of any Rule 615(b) restriction; clarify that trial-evidence restrictions do not themselves prohibit independent reporting.
6. If disputed disclosure or a new reporting restraint is ordered, specify its basis and effective date and grant a fourteen-day administrative stay of that obligation to

allow an aggrieved person to seek appropriate review; preserve the existing trial term and all unrelated proceedings.

7. Permit use of Local Rule 3.01(g)(3) upon the documented showing of unanswered conferral requests and a timely supplement; alternatively, set a short opportunity for a substantive conference and supplemental certification without deferring the threshold issues until trial.
8. Grant any further narrowly tailored protection necessary to prevent demonstrated harassment or undue burden in Luthmann's examination, without deciding the merits of another action or awarding new sanctions on this motion.

The Court can preserve legitimate testimony and an orderly trial without making a witness list a substitute for a justified restriction on the press. The time to establish those limits is before the constitutional and practical harm occurs.

Respectfully submitted,

Dated: Naples, Florida
September 23, 2026

RICHARD A. LUTHMANN, JR.
4199 Los Altos Court
Naples, FL 34109
Tel: (239) 631-5957
Email: richard.luthmann@protonmail.com

**Local Rule 3.01(g) Certificate**

I certify the following conferral efforts and their documented result. On September 20, 2026, at 11:57 a.m., I emailed counsel requesting a substantive conference about the proposed protective motion. I described its seven principal requests, invited agreement on all or part and proposed alternatives, offered to coordinate a telephone discussion, and requested a response by September 22 at 5:00 p.m. Eastern. On September 23 at 11:43 a.m., I sent the follow-up reproduced at Exhibit H, page 1, to Nicholas Chiappetta and the other counsel and recipients identified in its header. I stated that no counsel had responded and that I remained available to confer. Exhibit H contains the complete four-page email record.

As of that September 23 follow-up, no substantive conference had occurred and no counsel had communicated agreement, partial agreement, opposition, a counterproposal, or a proposed conference time. Each party's position therefore remained unknown. I do not characterize this motion as unopposed or certify that written attempts constitute a completed conference. This certificate reports the documented status as of September 23, 2026, at 11:43 a.m.; any later response or conference must be reported accurately before filing or by prompt supplement.

Because the requested participants had not made themselves available in response to those communications, I invoke Local Rule 3.01(g)(3), subject to the Court's determination of the sufficiency of these efforts. I remain available for a substantive telephone or video conference and will diligently try to contact opposing counsel for three days after filing. Promptly after contact or expiration of those three days, I will supplement the motion to state the efforts made, the means and participants of any actual conference, each party's communicated position, and whether any issue has been resolved. The prefiling period since my September 20 email does not replace the rule's postfiling follow-up period.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2026, I sent for filing the foregoing with the Clerk of Court of the Middle District of Florida, Fort Myers Division, by overnight courier, and that delivery of these papers will be made via the court's CM/ECF system, which will send notice of electronic filing to all parties by way of the caption.

[signature]

RICHARD A. LUTHMANN, JR.