FILED - USDC - FLMD - FTM
SEP 24 2026 PM12:30

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

CASE NO. 2:23-CV-01218-KCD-KRH

DANESH NOSHIRVAN
an individual,

Plaintiff,

v.

JENNIFER COUTURE, an individual,
*RALPH GARRAMONE M.D.*, an individual,
RALPH GARRAMONE, M.D., P.A. d/b/a
GARRAMONE PLASTIC SURGERY,
CENTRAL PARK OF SOUTHWEST
FLORIDA, LLC, OMG REALTY, LLC,
THE LAW OFFICE OF PATRICK TRAINOR
ESQ., LLC d/b/a THE LAW OFFICE OF
PATRICK TRAINOR, PATRICK TRAINOR,
an individual, and
ANTI-DOXING LEAGUE INC.

Defendants.
_______________________________________/

*RALPH GARRAMONE, M.D., P.A. d/b/a*
GARRAMONE PLASTIC SURGERY,
JENNIFER COUTURE, an individual,
RALPH GARRAMONE, M.D., an individual,

Counter-Plaintiffs,

v.

DANESH NOSHIRVAN,

Counter-Defendant.
_______________________________________/

**DECLARATION OF RICHARD A LUTHMANN JR IN SUPPORT OF TIME-SENSITIVE PROTECTIVE RELIEF**

I, Richard A. Luthmann, Jr., declare as follows:

1. I am an adult residing in Collier County, Florida. I make this declaration from personal knowledge except where I expressly identify a court record as the source of a statement. I can testify competently to the matters within my personal knowledge. My descriptions of pleadings distinguish what a litigant requested from what the Court decided.
2. I am an investigative journalist. I regularly gather information, review records, communicate with sources, and write and publish news and commentary. My work has appeared through This Is For Real on Substack, Florida Gulf News, and other outlets identified in my earlier declaration, filed March 4, 2026, at Doc. 621. I have reported extensively on Danesh Noshirvan, the influence of the foreign enemies of America, Cancel Culture, and this related Fort Myers litigation concerning Jennifer Couture, Ralph Garramone, and their related businesses. Recently, my reporting is often sharply critical of Noshirvan and Nicholas Chiappetta. I do not present that criticism as proof of every factual contention in my articles.
3. Previously, I wrote critically about Jennifer Couture before she chose to speak to me. My January 5, 2024 article drew in part on information from Noshirvan and Chiappetta. Jennifer Couture initially followed certain advice not to contact me. Months later, she explained to me that she believed my account was wrong, invited me to the Garramone Plastic Surgery office, and answered my questions — TRUTHFULLY.
4. Around that time, I also discovered that the statements provided by Noshirvan and Chiappetta were very dishonest and ideologically driven. After a review of all the facts and circumstances, I subsequently changed my view. I believe Noshirvan to be a public hazard and a dangerous subversive force, controlled, in large part, by the foreign enemies of

America, including foreign governments (and their proxies like George Soros and Neville Singham), and a domestic terrorist organization known as the DEMOCRATIC SOCIALISTS OF AMERICA. Noshirvan is the "ideological brother" of Hasan Piker, who not only believes that America "deserved 9-11," but who hates Jews, Israel, Donald Trump, Republicans, Christians (White, Black, and Brown), Conservatives, traditional values, and anyone who opposes the revolutionary philosophy of ANTIFA and the Red-Green Alliance, driven by Revolutionary Marxist and Radical Islamic Terror ideology.

5. My claim to protection concerns information acquired in professional newsgathering. The applicable work undertaken for gain or livelihood, the news organization, and my employment or independent-contractor capacity when I obtained the information were previously disclosed, and Judge Dudek has previously referred to me as a journalist from the bench. I can provide information-specific foundation without unnecessarily identifying a protected source. I am not asserting that a professional title alone makes every communication privileged.

6. I am the plaintiff in Luthmann v. Noshirvan, No. 2:25-cv-00337. I am not a party to Case 1218. I seek the relief described in my motion for myself and do not purport to represent any defendant, corporation, source, publication, or other nonparty. My personal litigation interest and my reporting interest both exist; I do not conceal either.

7. I intend to attend and report on the public proceedings during the December 1, 2026 trial term in Case 1218, subject to lawful court orders. I want to observe testimony and the presentation of evidence firsthand so that I can report promptly and accurately. Reading a transcript later would not restore the same opportunity to observe and report

contemporaneously. An exclusion lasting through much of the trial would substantially impair the reporting I intend to perform.

8. Exhibit A is a copy of Judge Steele's May 11, 2026 order, Doc. 659. I understand that it denied my intervention request and conditioned renewed protective relief on resolution of the identified motions in limine. I am not renewing intervention. My present motion first asks the Court to resolve that condition or expressly permit the protective issues to be considered now.

9. Exhibit B is Noshirvan's filed witness list, Doc. 610-12. At page 7, item 18, it states: "Mr. Luthmann will authenticate documents and plead the fifth again." I cannot speak for the purpose in counsel's mind. I can identify the description he filed and the effect an unnecessary designation would have on my ability to attend the trial.

10. Exhibit C reproduces the first twenty-two ECF pages of Doc. 621: my previously filed declaration and its appended February email correspondence. The correspondence includes my February 18 request and February 20 follow-up to counsel about my proposed testimony, authentication, privileges, and reporting. The email's March 1 print header is not the date of the February 20 message. I identify these as historical communications, not a substitute for a new conference about the present motion.

11. Those communications reflect that I offered to authenticate my publications and stated that I did not intend to invoke the Fifth Amendment at trial. I renew a practical offer now: upon receiving the specifically identified documents or recordings, I will review them and, where accurate, authenticate my authorship or publication and the completeness and accuracy of the copy. I am willing to execute an appropriate stipulation or declaration addressing those identified foundational facts.

12. I do not stipulate in advance to the accuracy of an unseen item or a selective excerpt. Authentication of a publication is not an agreement that every assertion in it is true or admissible, or that another person's interpretation is correct. I reserve legitimate objections to completeness, relevance, hearsay, privilege and other grounds. I will identify an actual authentication disagreement specifically rather than use a blanket objection to avoid an ordinary foundational task.

13. My present intention is to answer proper, relevant, nonprivileged questions truthfully. I do not presently intend to invoke the Fifth Amendment in response to such questions. I cannot accurately promise what decision an unforeseen question might require, and this declaration is not an advance waiver of every constitutional or evidentiary protection.

14. I previously invoked the Fifth Amendment. My earlier filings describe my concerns about Noshirvan's criminal accusations and retaliatory efforts announced by Noshirvan and his associates, including but not limited to Mr. James McGibney and a shadowy Internet figure known only as "CredibleIntel," who both publicly claimed an ability to influence governmental investigations and prosecutions. As a victim of Lawfare, I was not about to volunteer information. What changed was Judge Steele's subsequent rulings in this case. I was attacked by these minions, in large part, because my journalism, my failure to accede to Noshirvan and Chiappetta's demands, and my characterization of Joey Camp as a "Hero Journalist" for documenting ANTIFA's wholesale destruction of American cities in 2020, including Kenosha, Wisconsin, Portland, Oregon, and Denver, Colorado. His undercover photojournalism detailed the desecration of the Gus J. Solomon Federal Courthouse by subversive ANTIFA insurgents, and Camp's activities led to the criminal group placing a bounty on Camp's life; he now lives in exile in fear for his life. I do not ask the Court to

erase any of that history. I also do not adopt any suggestion in the earlier papers that a civil sanctions ruling granted me immunity from prosecution, eliminated every possible basis for the privilege, or conclusively established that I had no relevant information. Those are not factual propositions I can establish by declaration.

15. I have firsthand knowledge of my own publications and communications, including communications with people involved in this litigation. I am not claiming otherwise. Whether any particular communication supplies admissible evidence about a live claim depends on the subject and the applicable rules. I ask that the actual subject be identified before I must choose between disclosure and an objection in front of the jury.

16. My work can involve communications with sources and information not published in an article. If a party seeks such material, I request enough specificity to identify the information, explain the capacity in which I obtained it, and assert any privilege that actually applies. I do not claim that every person with whom I communicate is a confidential source, that published information is secret, or that a label supplies protection for nonjournalistic conduct.

17. I would cooperate with a reasonable schedule for any testimony the Court determines is necessary. My preference is to resolve authentication before trial and, if additional testimony is required, to provide it at the earliest practicable point and be expressly discharged when finished. I would consider a properly arranged recorded deposition with an agreed or otherwise lawful basis for its trial use. I do not assume that merely taking a deposition releases me from a subpoena or sequestration.

18. My current trial-subpoena status is: I HAVE NOT BEEN SERVED. I seek a present ruling on the filed witness designation and trial procedure and preserve timely objections to any actual compulsory process.

19. I request advance consideration of any proposed inquiry into private medical information. I do not ask for a ruling that medical facts can never be relevant. My concern is unnecessary public disclosure and embarrassment before a relevance or privilege dispute can be heard. I do not submit private medical records with this declaration because the present request can be explained without publishing them.

20. Exhibit D is the complete August 12, 2025 opinion and order, Doc. 454. I rely on its findings about Noshirvan's and Chiappetta's conduct as findings concerning the events the Court actually adjudicated. The opinion also contains adverse discussion of me, including the publication of expert disclosures supplied by Couture and the consequences the Court attributed to that publication. I include the complete opinion so that the Court and the parties can evaluate the request with that context, rather than a selective quotation suggesting that I was exonerated from every issue.

21. Exhibit E reproduces ECF pages 16–21 of Noshirvan's September 4, 2026 opposition in Case 337, Doc. 106. These pages contain his complete section arguing that the stay should remain, his conclusion, and signature and service information. At page 18, he describes "overlapping publications and witnesses" and argues that the Couture action's resolution may narrow or eliminate issues in my case. I identify that as his argument. It is not a statement that the Court has already accepted his proposed treatment of my claims.

22. Exhibit F reproduces ECF pages 1–3 and 20–22 of Doc. 593, Noshirvan's February 17, 2026 *motion in limine*. These excerpts contain the caption, introduction, and requested relief with signature and service pages. I understand the motion seeks restrictions on trial presentation. My request is that any resulting order specify its actual reach and not be treated as an unwritten prohibition on independent lawful reporting.

23. Exhibit G reproduces the cover and transcript pages 57–59 of the September 10, 2025 Case 337 hearing transcript as filed at Doc. 621, ECF pages 39 and 95–97. I participated in that hearing. The passage records Noshirvan explaining his failure to attend an earlier conference and his expectations concerning my prior Fifth Amendment invocation. I include the surrounding questions and answers rather than portray the quoted phrase as a standalone admission of an unlawful plan.

24. My concern is that Noshirvan and Chiappetta will use my witness designation to restrict my reporting beyond any genuine evidentiary need. That is my inference from the designation, the authentication offer, the history reflected in the attached records, and the burden that sequestration would impose. I do not claim personal knowledge of their private discussions or ask the Court to substitute my inference for findings.

25. I will obey lawful court orders. I seek no permission to contact jurors, influence witnesses improperly, disclose material in violation of a protective order, or disrupt proceedings. I want the Court to define any actual restrictions in advance so that I can comply, perform my reporting work to the extent permitted, and seek appropriate review of an adverse ruling through lawful procedures.

26. Prompt adjudication matters to me. Once confidential information has been compelled and disclosed, a later ruling cannot restore its confidentiality. Once a day of trial has passed while I am unnecessarily excluded, I cannot recover the opportunity to observe it as it happened. I request an early ruling so that the Court can grant appropriate protection and so that any aggrieved person has time to seek available review without disrupting the December trial term.

27. Exhibits A–G contain copies of the identified filed records. For excerpts, the index states the omitted ranges and gives the source location; I do not represent an excerpt as the complete filing. Original ECF page markings are retained. Exhibit H contains the correspondence described below. Exhibit labels and divider pages are organizational additions and are not part of the original records.

28. Exhibit H is a true and correct copy of the four-page email printout titled "Re: Local Rule 3.01(g) Conferral: Proposed Time-Sensitive Motion for Protective Relief | Noshirvan v. Couture, No. 2:23-cv-01218." It contains my September 23, 2026 follow-up and the quoted text of my September 20, 2026 request. I sent those messages from my email account. The printout includes the displayed header, message text, signatures, and embedded image. The times stated here are the times displayed in that record.

29. On September 20, 2026, at 11:57 a.m., I requested a substantive conference concerning the present motion. I addressed the request to Mr. Chiappetta and the other counsel in Case 1218. I explained that I was not renewing intervention, identified Judge Steele's timing condition, and described the requested October 9 and October 23 decision dates. I sought their clients' positions on seven specific categories of relief, including authentication alternatives, the actual testimony needed, early testimony and discharge, privileged and private information, limits on reporting restrictions, and an opportunity to seek available review. Ex. H at 2–3.

30. I offered to review specifically identified documents and authenticate complete and accurate copies of my publications and communications through an appropriate stipulation or declaration. I asked counsel to explain any remaining need for live testimony. I also asked for the basis for retaining the prediction that I would invoke the Fifth Amendment, or agreement

to correct it. These proposals were intended to resolve or narrow the motion before judicial intervention. They were not an agreement to waive otherwise valid objections. Ex. H at 2–3.

31. I requested a response by 5:00 p.m. Eastern on September 22 and offered to coordinate a mutually available time for a telephone discussion. That response time was my request, not a deadline imposed by the Court. I expressly invited agreement on individual requests and proposed alternatives. I did not demand acceptance of every request as a condition of discussing the matter. Ex. H at 3.

32. On September 23, 2026, at 11:43 a.m., I sent the follow-up shown on the first page of Exhibit H. Its recipients included Mr. Chiappetta and the additional counsel and recipients listed in that header. At that time, I had received no response from any counsel to the intended application. I wrote: "I remain available to meet and confer." No substantive conference had occurred as of that follow-up. No counsel had provided me with a position on the proposed relief, a counterproposal, or a conference time. These statements describe the status at that time, not an assumption about later communications. Ex. H at 1.

33. I submit the complete correspondence, including my pointed personal and political commentary, so that the Court can assess the exchange in context. I rely on the correspondence here to establish what I requested, the alternatives I offered and my availability to discuss them. I am not offering those characterizations as proof of the facts underlying the requested protective relief. I remain willing to discuss each proposal substantively and to narrow the motion through specific agreements.

34. My conferral efforts described here were by email and included an offer to speak by telephone. I do not represent that these emails establish a completed telephone or video conference, or that I placed a call documented nowhere in this record. Nor do I treat silence

as agreement or claim personal knowledge of why counsel did not respond. The unanswered requests leave the practical issues affecting my reporting unresolved. I remain available to confer and intend to continue diligent efforts and report the actual results as required by Local Rule 3.01(g)(3).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 23, 2026, in Naples, Florida.

RICHARD A. LUTHMANN, JR.